MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

CATHERINE M.A. CARROLL*
catherine.carroll@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Plaintiffs Apple Inc., Cisco
Systems, Inc., and Intel Corporation*

*\* Pro hac vice application forthcoming*

DANIEL T. SHVODIAN (CA SBN 184576)
DShvodian@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 838-4300
Facsimile: (650) 737-5461

*Attorney for Plaintiff Google LLC*

*A complete list of parties and counsel appears
on the signature page per Local Rule 3-4(a)(1)*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, and INTEL CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> ANDREI IANCU, in his official capacity as Under Secretary of Commerce for Intellectual Property and Director, United States Patent and Trademark Office, <br><br> Defendant. | Case No.:   5:20-cv-6128 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Administrative Procedure Act Case |

**INTRODUCTION**

1.      This action under the Administrative Procedure Act ("APA") challenges a rule adopted by the Director of the U.S. Patent and Trademark Office ("PTO") governing that agency's consideration of petitions to institute inter partes review ("IPR")—an administrative proceeding for determining the patentability of previously issued patent claims.

2.      A strong patent system is vital to protecting the massive research and development investments that fuel Plaintiffs' innovative products and services.  And a crucial element of any strong patent system is a mechanism for "weeding out" weak patents that never should have been granted because the claimed invention was not novel or would have been obvious in light of prior art. *Thryv, Inc. v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1374 (2020).  Such patents threaten innovation—particularly in the hands of non-practicing entities that use the patent system not to spur their own inventions, but to extract monetary returns by asserting weak patents in infringement suits. As frequent targets of such tactics, Plaintiffs have a strong interest in having an efficient and accessible means for challenging weak patents that should never have issued to ensure that such patents cannot hamper innovation.

3.      IPR was a centerpiece of Congress's efforts to strengthen the U.S. patent system in the Leahy-Smith America Invents Act ("AIA").  In enacting the AIA in 2011, Congress recognized that innovation is inhibited when invalid patents are issued and then deployed in litigation against technology inventors and developers.  And Congress found existing procedures for challenging already-issued patents, including litigation, to be insufficient to protect the patent system.  Congress accordingly created IPR to provide a more efficient and streamlined administrative alternative to litigation for determining patentability before specialized patent judges.  IPR has served to enhance the U.S. patent system and strengthen U.S. technology and innovation by weeding out thousands of invalid patent claims.

4.      To ensure that IPR fulfills its purpose as a superior alternative to litigation over patent validity, the AIA specifically contemplates that IPR will be available to determine the patentability of patent claims that are also the subject of pending patent infringement litigation.

5.      In the agency action challenged in this suit (referred to here as the "*NHK-Fintiv* rule"), however, the Director determined that the PTO could deny a petition for IPR based on a balancing of discretionary factors relating to the pendency of parallel patent infringement litigation—factors that appear nowhere in the AIA.  The agency's application of that rule has dramatically reduced the availability of IPR, regardless of the weakness of the patent claims being challenged, thereby undermining IPR's central role in protecting a strong patent system.

6.      The *NHK-Fintiv* rule violates the AIA, which allows IPR to proceed in tandem with infringement litigation involving the same patent claims so long as the IPR petition is filed within one year after the petitioner was served with the complaint in the infringement suit.  Congress dictated in the AIA exactly when litigation should take precedence over IPR and vice versa, and the *NHK-Fintiv* rule contravenes Congress's judgment.  Indeed, the *NHK-Fintiv* rule defeats the purpose of IPR, which is to provide a streamlined and specialized mechanism for clearing away invalid patents that never should have issued, and to do so without the substantial costs, burdens, and delays of litigation.

7.      The *NHK-Fintiv* rule is also arbitrary and capricious because its vague factors lead to speculative, unpredictable, and unfair outcomes and will not advance the agency's stated goal of promoting administrative efficiency.

8.      Finally, even if it were not contrary to law, the *NHK-Fintiv* rule is procedurally invalid because it was not adopted through notice-and-comment rulemaking.  Both the APA and the AIA obligated the Director to follow that procedure, yet the Director instead propounded the *NHK-Fintiv* rule through an internal process within the PTO for establishing binding rules by designating select decisions of the Patent Trial and Appeal Board as "precedential"—a process that provides for no opportunity for or consideration of public input.

9.      The Court should therefore declare the *NHK-Fintiv* rule unlawful and set it aside under the APA.  The Court should further permanently enjoin the Director from applying the rule or the non-statutory factors it incorporates to deny institution of IPR.

**JURISDICTION AND VENUE**

10.     This case arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

11.     Pursuant to 5 U.S.C. § 702, Defendant has waived sovereign immunity for purposes of this suit.

12.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by 5 U.S.C. §§ 702-706, by Federal Rules of Civil Procedure 57 and 65, and by the inherent equitable powers of this Court.

13.     Venue is proper in this District under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 because at least one Plaintiff maintains its headquarters in this District.

14.     The *NHK-Fintiv* rule is final agency action subject to judicial review under 5 U.S.C. § 704.

**INTRADISTRICT ASSIGNMENT**

15.     This action arises in the San Jose Division because a substantial part of the events giving rise to Plaintiffs' claims occurred in Santa Clara County, California, where all Plaintiffs maintain their headquarters.

**PARTIES**

16.     Plaintiff Apple Inc. ("Apple") is a California corporation having its principal place of business at One Apple Park Way, Cupertino, California, 95014.

17.     Plaintiff Cisco Systems, Inc. ("Cisco") is a California corporation having its principal place of business at 170 West Tasman Drive, San Jose, California, 95134.

18.     Plaintiff Google LLC ("Google") is a Delaware limited liability company having its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, 94043.

19.     Plaintiff Intel Corporation ("Intel") is a Delaware corporation having its principal place of business at 2200 Mission College Boulevard, Santa Clara, California, 95054.

20.     Defendant Andrei Iancu is the Under Secretary of Commerce for Intellectual Property and Director of the PTO.  The Director oversees the operations of the PTO and is statutorily vested

1    with the authority to decide whether to institute IPR of a patent claim.  35 U.S.C. § 314.  Defendant

2    Iancu is being sued in his official capacity.  His principal place of business is in Alexandria, Virginia.

3                                    **FACTUAL ALLEGATIONS**

4                                     **The Patent System**

5         21.    "To promote the progress of science and useful arts," the Constitution empowers

6    Congress to "secur[e] for limited times to … inventors the exclusive right to their … discoveries."

7    U.S. Const., art. I, § 8, cl. 8.  The U.S. patent system has long fueled American economic growth and

8    innovation.  Plaintiffs each strongly support and rely on a strong patent system that lends robust legal

9    protection to meritorious patent claims.

10        22.    Apple is an American success story and developer of iconic consumer devices and

11   software that have transformed the American economy.  With more than 90,000 employees in the

12   United States, Apple is one of the country's largest employers in the high-technology business sector.

13   Overall, Apple supports 2.4 million jobs in all 50 states.  Last year, Apple spent over $60 billion with

14   more than 9,000 domestic suppliers across the country, including at manufacturing locations in 36

15   states.  Apple invests billions of dollars annually in U.S. research and development, and it owns more

16   than 22,000 U.S. patents that protect that investment.

17        23.    Cisco is an American and worldwide leader in information technology, networking,

18   communications, and cybersecurity solutions.  Cisco is a strong supporter of the U.S. patent system,

19   owning more than 16,000 U.S. patents, which protect more than $6 billion in annual spending on

20   research and development.  Cisco's 20,000 worldwide engineers constantly invent new ways to better

21   connect the world.  As a result of its commitment to innovation and intellectual property, Cisco files

22   more than 700 patent applications each year seeking protection for those inventions.

23        24.    Google is a diversified American technology company whose mission is to organize

24   the world's information and make it universally accessible and useful.  Google offers leading web-

25   based products and services that are used daily around the world.  With over 100,000 employees,

26   Google invests over $20 billion annually to invent and develop its products and services, and it relies

27   on a strong and balanced patent system to protect them—owning more than 25,000 U.S. patents.

28

25.     Intel is a global leader in the design and manufacture of semiconductor products, including hardware and software products for networking, telecommunications, cloud computing, artificial intelligence, autonomous driving, and other applications.  Intel's chips power a large percentage of the world's computers, from home-office desktops and laptops to the servers that support the digital economy.  To develop and improve these products, Intel makes significant investments.  Intel currently has more than 42,000 employees actively engaged in research and development worldwide; in the United States, Intel employs more than 52,000 workers.  In 2019 alone, Intel spent more than $13 billion on research and development and more than $16 billion on manufacturing.  These investments are protected by more than 25,000 U.S. patents, with more than 10,000 U.S. patent applications pending.

26.     Each Plaintiff's success in developing transformative, cutting-edge technologies depends on a patent system that provides strong legal protections for meritorious patents while ensuring that weak patents cannot be exploited in litigation to inhibit innovation.

### Inter Partes Review

27.     The U.S. patent laws have long provided both administrative and judicial paths for challenging the validity of patent claims after a patent has been issued.  By 2011, however, Congress rightly perceived a "growing sense that questionable patents [we]re too easily obtained" and "too difficult to challenge" through existing procedures.  H.R. Rep. No. 98, at 39-40, 112th Cong., 1st Sess. (2011) ("House Report").  Congress responded by creating IPR in the AIA to strengthen the patent system.  Pub. L. No. 112-29, § 6(a), 125 Stat. 284, 299 (2011).

28.     As a centerpiece of the AIA, IPR provides "an administrative process in which a patent challenger may ask the [PTO] to reconsider the validity of earlier granted patent claims." *Thryv*, 140 S. Ct. at 1370; *see* 35 U.S.C. § 311 *et seq.*  Congress intended IPR to provide an improved alternative to litigation over the validity of previously granted patents by "establish[ing] a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs."  House Report at 39-40.

29.     Several features of IPR make it advantageous compared to litigation for determining whether an issued patent's claims are patentable.  IPR is conducted by the expert patent judges of the Patent Trial and Appeal Board ("Board"), who are appointed by the Secretary of Commerce and must be "persons of competent legal knowledge and scientific ability."  35 U.S.C. § 6(a), (c).  In contrast, patent validity disputes in court are resolved by lay jurors who need not have—and often lack—any specialized technical experience relevant to the patent claims at issue.  Moreover, unlike jury trials, which typically end in general verdicts, IPR ends with the Board's "final written decision," *id.* § 318(a), which enables more informed appellate review.  And while bad patents can be held unpatentable in IPR by a preponderance of the evidence, *id.* § 316(e), those same patents will survive litigation unless the challenger proves invalidity by clear and convincing evidence, *see Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011).

30.     IPR is also more streamlined and efficient than litigation.  An IPR petitioner may challenge a claim's patentability only on limited grounds.  35 U.S.C. § 311(b).  The scope of discovery in IPR proceedings is more limited than in civil litigation.  *See id.* § 316(a)(5); 37 C.F.R. § 42.51.  The AIA also limits how long the Director may take to decide whether to institute IPR, 35 U.S.C. § 314(b), and, if IPR is instituted, how long the Board may take to issue its final decision on patentability, *id.* § 316(a)(11).  As a result, the life-span of an IPR from the filing of a petition to a final written decision is typically only 18 months.  *See id.* § 316(a)(11); 37 C.F.R. § 42.107.

### The Availability Of IPR In Parallel With Infringement Actions

31.     Given its purpose to provide an efficient alternative to litigation, Congress expected that IPR would often proceed in parallel with litigation in which the validity of the same patent claims is at issue—particularly in cases where a defendant accused of patent infringement in a lawsuit seeks to challenge the asserted patent claims through IPR.  Several provisions of the AIA reflect that expectation and govern the interaction between IPR and litigation.

32.     The AIA permits a party accused of infringement to file a petition for IPR with regard to the same patent claims that are being asserted in the pending infringement suit, so long as the petition is filed within "1 year after the date on which the petitioner … is served with a complaint

1   alleging infringement of the patent." 35 U.S.C. § 315(b).  And although the AIA forecloses IPR if

2   the petitioner has previously "filed a civil action challenging the validity of a claim of the patent," *id.*

3   § 315(a)(1), it expressly permits a petitioner to assert invalidity arguments in a counterclaim in

4   litigation without forgoing IPR, *id.* § 315(a)(3).

5          33.     The AIA also removed statutory provisions that previously restricted the PTO's

6   review of patent claims that had been the subject of a challenge to the patent's validity in district

7   court.  Before the creation of IPR, parties could challenge issued patents pursuant to an administrative

8   procedure known as inter partes reexamination, but no such review could be maintained if a court

9   entered "a final decision" concluding that the petitioner "ha[d] not sustained its burden of proving the

10  invalidity" of the patent.  35 U.S.C. § 317(b) (2006).  The AIA eliminated that rule and imposed no

11  similar limitation on IPR, which replaced inter partes reexamination.

12         34.     Apart from the one-year deadline in § 315(b), and the prohibition in § 315(a)(1) on

13  filing an IPR petition after filing a suit challenging patent validity, no provision in the AIA expressly

14  requires or even permits the Director (or the Board as his delegee) to deny IPR petitions based on

15  pending litigation involving the same patent claims.

16                             **The *NHK* And *Fintiv* Decisions**

17         35.     The AIA specifies several requirements that must be met for the Director of the PTO

18  to grant a petition for, or "institute," IPR, and enumerates discretionary grounds on which the

19  Director may decline to institute IPR even if those preconditions are met.  *E.g.*, 35 U.S.C.

20  §§ 311(c)(1)-(2), 312(a)(1)-(5), 315(a)(1)-(2).  For example, the Director "may not" institute IPR

21  "unless" he determines, based on the IPR petition, that "there is a reasonable likelihood that the

22  petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id.*

23  § 314(a).  And the Director "may take into account whether, and reject the petition or request

24  because, the same or substantially the same prior art or arguments previously were presented to the

25  [Patent] Office." *Id.* § 325(d).

26         36.     The Director has delegated to the Board the authority to decide whether to institute

27  IPR.  37 C.F.R. § 42.4(a); *see id.* §§ 42.2, 42.108.

28

37.     In two recent decisions, the Board articulated an additional standard, found nowhere in the AIA, under which the Board may decline to institute IPR based on the pendency of litigation over the validity of the same patent claims—even if the petition was timely filed within the one-year deadline set by 35 U.S.C. § 315(b).

38.     In *NHK Spring Co. v. Intri-Plex Technologies, Inc.*, the Board declared that "the advanced state of [a parallel] district court proceeding … weighs in favor of denying the [IPR] Petition under § 314(a)."  No. IPR2018-00752, Paper 8, at 20 (P.T.A.B. Sept. 12, 2018) (attached hereto as Ex. A; also available at 2018 WL 4373643).

39.     The Board explained in *NHK* that because a pending infringement lawsuit involving "the same prior art and arguments" as the IPR petition was "nearing its final stages," with trial "set to begin" about six months before the IPR would end, IPR "would not be consistent with an objective of the AIA … to provide an effective and efficient alternative to district court litigation."  *NHK*, Paper 8 at 20 (internal quotation marks omitted).

40.     In *Apple Inc. v. Fintiv, Inc.*, the Board elaborated on *NHK*, explaining how it would consider the pendency of a parallel infringement lawsuit when deciding whether to institute IPR.  No. IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) (attached hereto as Ex. B; also available at 2020 WL 2126495).  The Board declared it would "weigh[]" various "non-dispositive factors" to decide whether to institute IPR when parallel litigation is pending "as part of a balanced assessment of all relevant circumstances of the case, including the merits," to promote "system efficiency, fairness, and patent quality."  *Id.* at 5 (internal quotation marks omitted).

41.     Accordingly, the Board enumerated six such "factors," none of which appears in the AIA:

      1.     whether the court granted a stay or evidence exists that one may be granted if [an IPR] proceeding is instituted;

      2.     proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;

      3.     investment in the parallel proceeding by the court and the parties;

4.      overlap between issues raised in the petition and in the parallel

proceeding;

5.      whether the petitioner and the defendant in the parallel proceeding are

the same party; and

6.      other circumstances that impact the Board's exercise of discretion,

including the merits.

*Fintiv*, Paper 11 at 5-6.

42.      Although the Board offered general guidance on how it might apply some of these factors, the *Fintiv* decision did not clearly "instruct [the Board] how to weigh the factors." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. IPR2020-00122, 2020 WL 2511246, at *5 (P.T.A.B. May 15, 2020) (Crumbley, APJ, dissenting).

**Designation Of The Board's Decisions As Precedential**

43.      "[B]y default," the Board's decisions in IPR proceedings have no precedential force in future cases.  Patent Trial and Appeal Board, Standard Operating Procedure 2 (Rev. 10) ("SOP-2"), at 3, 8-9 (Sept. 20, 2018).

44.      The PTO, however, has established a procedure for designating select Board decisions as "precedential."  SOP-2 at 1-2, 8-12.  Decisions designated as precedential are "binding" on the Board "in subsequent matters involving similar factors or issues."  SOP-2 at 11.

45.      Under this procedure, the Director decides whether to designate a Board decision as precedential.  SOP-2 at 11.

46.      Although members of the public (in addition to members of the Board) may nominate a Board decision for designation as precedential, SOP-2 at 9, the designation procedure otherwise does not allow for public notice of, or any opportunity for public comment on, whether a Board decision should be designated as precedential.  SOP-2 at 8-11.

47.      The Director designated *NHK* as precedential on May 7, 2019.

48.      The Director designated *Fintiv* as precedential on May 5, 2020.

49.    By designating these decisions as precedential, the Director propounded a rule (the "*NHK-Fintiv* rule") that the Board is legally bound to apply in all its institution decisions.

50.    The Director adopted the *NHK-Fintiv* rule without notice-and-comment rulemaking.

51.    Having been established as a binding rule through the designation of the *NHK* and *Fintiv* decisions as precedential, the *NHK-Fintiv* rule constitutes final agency action.

## The Board's Application Of The *NHK-Fintiv* Rule

52.    The Board has applied the *NHK-Fintiv* rule to deny institution of numerous IPR proceedings, including many petitions brought by Plaintiffs.

53.    Following *NHK*, the Board relied on that decision to deny several IPR petitions.  *See Edwards Lifesciences Corp. v. Evalve, Inc.*, No. IPR2019-01546, 2020 WL 1486766 (P.T.A.B. Mar. 19, 2020); *Edwards Lifesciences Corp. v. Evalve, Inc.*, No. IPR2019-01479, 2020 WL 927867 (P.T.A.B. Feb. 26, 2020); *Magellan Midstream Partners L.P. v. Sunoco Partners Marketing & Terminals L.P.*, No. IPR2019-01445, 2020 WL 373335 (P.T.A.B. Jan. 22, 2020); *Next Caller Inc. v. TRUSTID, Inc.*, No. IPR2019-00962, 2019 WL 5232627 (P.T.A.B. Oct. 16, 2019); *Next Caller Inc. v. TRUSTID, Inc.*, No. IPR2019-00961, 2019 WL 5232627 (P.T.A.B. Oct. 16, 2019).

54.    For example, on March 27, 2020, the Board denied institution in *Google LLC v. Uniloc 2017, LLC*, No. IPR2020-00115, 2020 WL 1523248 (Mar. 27, 2020).  Although Google timely filed the IPR petition in that proceeding less than nine months after being served with a related infringement complaint, the Board denied the petition under *NHK* based on the trial date set in the district court's scheduling order.  *Id.* at *1, *4.  Google requested rehearing, but its request was denied.  Soon thereafter, the district court action was ordered to be transferred, and the trial date was vacated.  *Uniloc 2017, LLC v. Google LLC*, No. 18-cv-00504, 2020 WL 3064460, at *6 (E.D. Tex. June 8, 2020).

55.    On the same day that *Fintiv* was designated as precedential, the Board applied the *NHK-Fintiv* rule to deny Intel's IPR petition in *Intel Corp. v. VLSI Technology LLC*, No. IPR2020-00106, 2020 WL 2201828 (P.T.A.B. May 5, 2020).  The petition had been timely filed, but the Board concluded that the "advanced stage" of related district court litigation, overlap in the issues, and the

1    timing of trial—which was scheduled to begin approximately seven months before IPR would have

2    ended, but which was subsequently rescheduled—meant that IPR would have been "an inefficient use

3    of Board, party, and judicial resources."  *Id.* at *6.

4         56.    Eight days later, the Board applied the *NHK-Fintiv* rule to deny Apple's IPR petition

5    in *Fintiv*.  *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2486683, at *3-4, *7 (P.T.A.B.

6    May 13, 2020) (Paper 15).  In *Fintiv*, Apple had filed an IPR petition challenging the patentability of

7    certain patent claims that had been asserted against Apple in a patent infringement suit.  Apple timely

8    filed the IPR petition less than ten months after the infringement suit began.  After Apple filed its IPR

9    petition, the district court in the infringement lawsuit held a *Markman* hearing (to consider evidence

10   relevant to the interpretation of the patent claims) and then set a trial date, which it later rescheduled.

11   *Id.* at *3-4, *7.  In declining to institute IPR, the Board explained that

12        the District Court case is ongoing, trial is scheduled to begin two months before
         we would reach a final decision in this proceeding, the District Court has

13        expended effort resolving substantive issues in the case, the identical claims are
         challenged based on the same prior art in both the Petition and in the District

14        Court, and the defendant in District Court and the Petitioner here are the same
         party.

15

16   *Id.* at *7.

17        57.    The Board subsequently applied the *NHK-Fintiv* rule to deny IPR petitions filed five

18   months after service of the complaint in the pending infringement action in *Cisco Systems, Inc. v.*

19   *Ramot at Tel Aviv University Ltd.*  No. IPR2020-00122, 2020 WL 2511246 (P.T.A.B. May 15, 2020);

20   No. IPR2020-00123, 2020 WL 2511247 (P.T.A.B. May 15, 2020).  Based on the scheduled trial date

21   in pending infringement litigation, overlap in substantive issues, and the absence of a stay in the

22   district court, the Board assumed that proceeding with IPR would "duplicate effort" in the litigation,

23   *Ramot*, No. IPR2020-00122, 2020 WL 2511246, at *4—even though the district court had denied a

24   stay "without prejudice" in light of its "established practice" to entertain stay requests only *after* the

25   Board institutes IPR, *id.* at *3—and denied Cisco's IPR petitions to avoid "an inefficient use of

26   Board, party, and judicial resources," *id.* at *5; *see also Ramot*, No. IPR2020-00123, 2020 WL

27   2511247, at *5.

28

58.     Indeed, since the *NHK* and *Fintiv* decisions' designation as precedential, the Board has applied the *NHK-Fintiv* rule to deny IPR petitions filed by Plaintiffs and others on numerous occasions.  *See, e.g.*, *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00407, 2020 WL 4680039 (P.T.A.B. Aug. 11, 2020); *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00408, 2020 WL 4680042 (P.T.A.B. Aug. 11, 2020); *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00409, 2020 WL 4680047 (P.T.A.B. Aug. 11, 2020); *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00203, 2020 WL 3662522 (P.T.A.B. July 6, 2020); *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. IPR2020-00484, 2020 WL 4820592 (P.T.A.B. Aug. 18, 2020); *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. IPR2020-00122, 2020 WL 2511246 (P.T.A.B. May 15, 2020); *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. IPR2020-00123, 2020 WL 2511247 (P.T.A.B. May 15, 2020); *Ethicon, Inc. v. Bd. of Regents, Univ. of Tex. Sys.*, No. IPR2019-00406, 2020 WL 3088846 (P.T.A.B. June 10, 2020); *Google LLC v. Uniloc 2017, LLC*, No. IPR2020-00115, 2020 WL 1523248 (P.T.A.B. Mar. 27, 2020); *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00498, 2020 WL 4820595 (P.T.A.B. Aug. 19, 2020); *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00526, 2020 WL 4820610 (P.T.A.B. Aug. 18, 2020); *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00527, 2020 WL 4820610 (P.T.A.B. Aug. 18, 2020); *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00141, 2020 WL 3033208 (P.T.A.B. June 4, 2020); *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00142, 2020 WL 3033209 (P.T.A.B. June 4, 2020); *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00158, 2020 WL 2563448 (P.T.A.B. May 20, 2020); *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00112, 2020 WL 2544910 (P.T.A.B. May 19, 2020); *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00113, 2020 WL 2544912 (P.T.A.B. May 19, 2020); *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00114, 2020 WL 2544917 (P.T.A.B. May 19, 2020).

59.     Plaintiffs are currently awaiting institution decisions on IPR petitions that relate to pending infringement litigation, in which the Board will be bound to apply the *NHK-Fintiv* rule to decide whether to institute IPR.  Additionally, Plaintiffs regularly file IPR petitions and expect that the Board will apply the *NHK-Fintiv* rule to decide whether to grant their future petitions when parallel litigation is pending.  The Board is likely to deny at least some of Plaintiffs' pending or future IPR petitions under the *NHK-Fintiv* rule based on the pendency of litigation.

60.     Even where the Board has decided to institute IPR under the *NHK-Fintiv* rule, its decisions have been inconsistent and unpredictable, making it difficult for Plaintiffs to anticipate how the Board will weigh and apply each factor.  The rule also forces petitioners to file IPR petitions at earlier stages of litigation when there is less certainty over the patent claims at issue and their scope.

**The *NHK-Fintiv* Rule Exceeds The Director's Authority And Violates The AIA**

61.     Nothing in the AIA authorizes the Director to deny IPR petitions based on perceived overlap with pending infringement litigation involving the same patent claims.  To the contrary, the text and structure of the AIA make clear that IPR can and should proceed even where related litigation is pending.

62.     Most notably, the AIA permits IPR if the petition is filed within "1 year after the date on which the petitioner … is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b).  Congress thus explicitly determined that, so long as the IPR petition is filed within a year after a lawsuit against the petitioner starts, IPR is appropriate.

63.     Congress's decision to allow IPR where a parallel infringement lawsuit has been pending for less than one year reflects its considered policy judgment.  In enacting the AIA, Congress was aware that IPR and litigation concerning the same patent claim would often proceed in parallel, and it carefully calibrated § 315(b)'s one-year limit to ensure that IPR is not used for purposes of delay while also giving infringement defendants an adequate opportunity to investigate the claims asserted against them in litigation.  Similarly, while Congress prohibited IPR where a petitioner had previously filed its own action challenging patent validity, *see* 35 U.S.C. § 315(a)(1), Congress expressly declined to extend that prohibition to petitions where the petitioner challenged the patent's validity through a counterclaim, *see id.* § 315(a)(3).

64.     By authorizing the Board to deny institution of IPR based on the pendency of a parallel proceeding, the *NHK-Fintiv* rule overrides the congressional judgments embodied in §§ 315(a) and (b).

65.     The *NHK-Fintiv* rule also undermines the purpose of IPR as a streamlined and specialized alternative to litigation over patent validity.  Congress sought in the AIA to encourage

defendants accused of patent infringement in litigation to assert their potentially meritorious challenges to patentability in an IPR petition—thereby *inviting* overlap between IPR and litigation in which the petitioner would assert those same challenges as defenses against an infringement claim. Yet the *NHK-Fintiv* rule threatens to make IPR unavailable in precisely the circumstances where Congress intended it to operate, defeating IPR's role as a more efficient mechanism for clearing away invalid patents and ultimately weakening the patent system.

66.     Where Congress wanted to give the Director discretion to deny IPR based on parallel proceedings, it knew how to say so explicitly.  For example, as noted, the AIA provides that if the *IPR petitioner* has previously filed suit challenging the validity of a patent claim, IPR may not be instituted at all—regardless of how much time has passed between the suit and the IPR petition.  35 U.S.C. § 315(a)(1).  Similarly, Congress expressly granted the Director discretion to decide how to manage IPR when there is a parallel proceeding *before the PTO*, including by terminating the IPR proceeding, *id.* § 315(d), and by "reject[ing] the petition or request because[] the same or substantially the same prior art or arguments previously were presented to the [Patent] Office," *id.* § 325(d).  But Congress nowhere authorized denial of a timely IPR petition based on overlap with parallel litigation brought by the patent owner.  To the contrary, Congress expressly provided that a petitioner's counterclaim challenging the validity of a patent claim would not bar IPR.  *Id.* § 315(a)(3).

67.     Although the statute accords the Director some discretion in the context of evaluating the merits of IPR petitions or promulgating rules governing IPR institution, that discretion is limited. *See* 35 U.S.C. §§ 314(a), 316(b).  It certainly is not unbounded and cannot be exercised in a manner that is contrary to the statute's text, structure, and purpose.

### The *NHK-Fintiv* Rule Is Arbitrary And Capricious

68.     The Board's application of the *NHK-Fintiv* rule has already led to unjustifiable and unpredictable disparities among similarly-situated IPR petitioners, reflecting the uncertainty and malleability of the rule's factors.

69.     The *NHK-Fintiv* rule requires the Board to make institution decisions based on its speculation about the likely course of parallel litigation, producing irrational and inconsistent outcomes.  For example, if no stay has been entered in the district court, the Board must guess whether "one may be granted" if IPR is instituted.  *Fintiv*, Paper 11 at 6.

70.     The Board inconsistently applies the second factor, which concerns the proximity of a district court trial date to the Board's projected statutory deadline for a final written decision.  For example, after denying Apple's petition in *Fintiv* (where trial was scheduled to begin only two months before the Board would have been required to issue a final written decision in an IPR), the Board *instituted* IPR in other cases where the scheduled trial dates fell much earlier relative to the IPR decision deadline.  *See, e.g.*, *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00204, 2020 WL 3401274, at *6 (P.T.A.B. June 19, 2020) (trial scheduled for nine months before Board's decision deadline); *Apple Inc. v. SEVEN Networks, LLC*, No. IPR2020-00156, 2020 WL 3249313, at *4 (P.T.A.B. June 15, 2020) (trial scheduled for 7.5 months before Board's decision deadline).  In another case, the Board declined to institute IPR based on the expected time of trial, even though the trial date had been continued indefinitely.  *Ethicon, Inc. v. Bd. of Regents, Univ. of Tex. Sys.*, No. IPR2019-00406, 2020 WL 3088846 (P.T.A.B. June 10, 2020).

71.     The date of trial is an inherently unpredictable factor, given the frequency with which trial dates are rescheduled.  The Board even had to grant rehearing of one non-institution decision after the district court rescheduled the trial date following the Board's decision.  *Sand Revolution II, LLC v. Continental Intermodal Group – Trucking LLC*, No. IPR2019-01393, 2020 WL 581790 (P.T.A.B. June 16, 2020).  Rehearing is not an option in most cases, however, because IPR petitioners are allowed only 30 days to seek it, 37 C.F.R. § 42.71(d)(2), and a district court might reschedule trial long after that period has passed.  That is precisely what occurred in *Uniloc 2017*, where the Board denied Google's IPR petition based on a trial date that was subsequently vacated— too late for Google to obtain rehearing of the Board's denial of the IPR petition.  *See* 2020 WL 3064460, at *6.

72.     Similarly, the Board has sometimes concluded that overlap in issues favored institution, while in other cases, the Board has treated overlap as disfavoring institution.  For example, in one case, the Board stated that overlap favored institution when the Board thought trial was relatively distant, but in another case decided that overlap disfavored institution when the Board thought trial was near.  *Compare Medtronic, Inc., & Medtronic Vascular, Inc. v. Teleflex Innovations S.à.r.l.*, No. IPR2020-00135, 2020 WL 3053201 (P.T.A.B. June 8, 2020), *with Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. IPR2020-00122, 2020 WL 2511246 (P.T.A.B. May 15, 2020).  As a result, some petitioners will succeed in obtaining review of claims that overlap with those in the parallel litigation while others will not, all based on trial schedules that are inherently uncertain and subject to speculative forecasting by the Board.

73.     The *NHK-Fintiv* rule thus promotes uncertainty and unpredictability—not administrative efficiency—in the IPR process.  The rule also forces infringement defendants to file IPR petitions earlier in litigation, when there is less clarity regarding the patent claims at issue and their scope—further undermining an efficient IPR process.

74.     Any inefficiency that might result from overlap between litigation and IPR proceedings would be better addressed by a stay of the litigation pending the outcome of the IPR. *See, e.g.*, *Bell N. Res., LLC v. Coolpad Techs., Inc.*, No. 18-cv-1783-CAB-BLM, ECF No. 148 (S.D. Cal. Feb. 18, 2020) (after previously denying stay without prejudice while IPR petition was pending, granting stay of litigation after Board decided to institute IPR).  Unlike denial of IPR, a stay of the litigation does not risk irreversibly depriving the petitioner of Congress's preferred forum for resolving an unpatentability dispute.

75.     The Board's attempt to justify the *NHK-Fintiv* rule on the ground that it avoids "duplicative costs" by denying IPR when "the court and the parties have invested" substantially in the lawsuit, *Fintiv*, Paper 11 at 9, makes no sense.  By focusing on the past investment that has been made in the litigation already, the Board's explanation is irrational and rests on the fallacy of sunk costs—*i.e.*, "the equivalent of throwing good money after bad, both for the court and for the parties." *Stryker Spine v. Spine Grp. of Wis., LLC*, 320 F. Supp. 3d 985, 991 (E.D. Wis. 2018).  To the extent

that promoting efficiency is relevant to the institution decision at all, the analysis should instead compare the *future* investment needed to complete the lawsuit to the *future* investment needed to conduct IPR—a comparison that will usually favor IPR.

### The *NHK-Fintiv* Rule Is Procedurally Invalid

76.     The *NHK-Fintiv* rule is a substantive rule that alters the rights and interests of IPR petitioners by permitting the Board to deny institution of IPR based on parallel litigation.  In adopting such a rule, the Director was required by both the APA and the AIA to act through notice-and-comment rulemaking.  *See* 5 U.S.C. § 553(b), (c); 35 U.S.C. §§ 2(b)(2), 316(a).

77.     The Director, however, adopted the *NHK-Fintiv* rule without notice-and-comment rulemaking, instead propounding it as a binding rule by designating the *NHK* and *Fintiv* decisions as precedential through a unilateral, internal process that involved no opportunity for public comment and no consideration by the Director of any public input.

### COUNT 1

### (Final Agency Action In Violation Of 5 U.S.C. § 706(2)(C))

78.     Under the APA, the Court "shall … hold unlawful and set aside" final agency action found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

79.     The *NHK-Fintiv* rule is final agency action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" because it violates the AIA and the Director exceeded his statutory authority in adopting it.

80.     The AIA's text and structure make clear that Congress withheld from the Director the authority to deny IPR petitions based on a parallel infringement lawsuit against the IPR petitioner that was served less than one year before the IPR petition was filed.  By allowing IPR petitions to be filed at any time within one year after the start of an infringement lawsuit involving the same patent, by allowing IPR to proceed even where the petitioner has filed a counterclaim challenging the patent's validity, and by designing IPR to serve as an efficient alternative to litigation for eliminating invalid

patent claims, Congress left no room for the Director to otherwise deny a timely IPR petition based on parallel infringement litigation.

81.      The AIA expressly contemplates that IPR and litigation can proceed simultaneously and specifies how administrative efficiency should be accounted for and best served in that circumstance.  The Director has no authority to alter that judgment.

82.      By authorizing the Board to deny institution of a timely IPR petition based on overlap with pending litigation, the *NHK-Fintiv* rule contravenes the text and structure of the AIA and undermines its purpose and the strength of the patent system.

### COUNT 2

### (Final Agency Action In Violation Of 5 U.S.C. § 706(2)(A))

83.      Under the APA, the Court "shall … hold unlawful and set aside" final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

84.      The *NHK-Fintiv* rule is final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

85.      For the reasons alleged in Count 1, the *NHK-Fintiv* rule is arbitrary, capricious, and not in accordance with law because it violates the AIA.

86.      Additionally, the *NHK-Fintiv* rule is arbitrary, capricious, and an abuse of discretion because it requires the Board to engage in substantial speculation as to the likely course of the parallel district court proceeding and because its factors are vague and malleable.  As a result, the rule produces irrational, unpredictable, and unfair outcomes, treating similarly situated IPR petitioners differently and depriving some patent infringement defendants of a speedy, efficient, and specialized forum for invalidating the patent at issue.

87.      The *NHK-Fintiv* rule is also arbitrary, capricious, and an abuse of discretion because it will not achieve its stated purpose of promoting administrative efficiency, and the Board's contrary explanations are unreasoned and not rationally connected to the facts.

**COUNT 3**

**(Final Agency Action In Violation Of 5 U.S.C. § 706(2)(D))**

88.     Under the APA, the Court "shall … hold unlawful and set aside" final agency action that is undertaken "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

89.     The *NHK-Fintiv* rule is final agency action undertaken "without observance of procedure required by law."

90.     Even if the *NHK-Fintiv* rule were not contrary to law, the Director could not adopt such a rule without notice-and-comment rulemaking.  *See* 5 U.S.C. § 553; 35 U.S.C. §§ 2(b)(2), 316(a).

91.     The Director propounded the *NHK-Fintiv* rule as a binding substantive rule without notice and comment in violation of the APA.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and:

1.     Declare that the *NHK-Fintiv* rule is unlawful;

2.     Set aside the *NHK-Fintiv* rule;

3.     Permanently enjoin Defendant, and his officers, agents, employees, assigns, and all persons acting in concert or participating with him, from relying on the *NHK-Fintiv* rule or the non-statutory factors it incorporates to deny institution of IPR;

4.     Award Plaintiffs their costs and attorney's fees and expenses as allowed by law; and

5.     Provide such other and further relief as the Court deems appropriate.


DATED: August 31, 2020                         Respectfully submitted,



By: */s/ Mark D. Selwyn*

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING

---

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

CATHERINE M.A. CARROLL*
DAVID M. LEHN*
REBECCA LEE*
catherine.carroll@wilmerhale.com
david.lehn@wilmerhale.com
rebecca.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

ALYSON ZUREICK*
alyson.zureick@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Attorneys for Plaintiffs Apple Inc., Cisco
Systems, Inc., and Intel Corporation*

DANIEL T. SHVODIAN (CA SBN 184576)
DShvodian@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: (650) 838-4300
Facsimile: (650) 737-5461

THERESA NGUYEN (CA SBN 284581)
RNguyen@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-6068
Facsimile: (206) 359-9000

ANDREW T. DUFRESNE*
ADufresne@perkinscoie.com
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703-3095
Telephone: (608) 663-7492
Facsimile: (608) 663-7499

*Attorneys for Plaintiff Google LLC*

*\* Pro hac vice application forthcoming*

<u>ATTORNEY ATTESTATION</u>

I, Mark D. Selwyn, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5- 1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories.

By: <u>/s/ *Mark D. Selwyn*</u>
Mark D. Selwyn