JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
GARY FELDON, D.C. Bar No. 987142
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C.  20044
Telephone:  (202) 598-0905
Facsimile:  (202) 616-8470
Email: gary.d.feldon@usdoj.gov

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., *et al.* | ) Case No.: 5:20-cv-06128-EJD |
| | ) |
| Plaintiffs, | ) **Notice of Motion and Motion to Dismiss** |
| | ) **Plaintiffs' Amended Complaint** |
| v. | ) |
| | ) Hon. Edward J. Davila |
| ANDREI IANCU, in his official capacity only, | ) |
| | ) Hearing Set for March 11, 2021, 9:00 a.m. |
| Defendant. | ) |

## TABLE OF CONTENTS

STATEMENT OF ISSUES ........................................................................................... 1

LEGAL BACKGROUND ........................................................................................... 2

I.  Statutory Framework ...................................................................................... 2

II.  Regulatory Framework .................................................................................. 4

III.  Precedential Board Opinions ........................................................................ 4

IV.  Institution Factors for IPR Petitions .......................................................... 5

PROCEDURAL BACKGROUND................................................................................ 6

LEGAL STANDARD.................................................................................................. 7

ARGUMENT .............................................................................................................. 8

I.  Plaintiffs Lack Standing Because They Cannot Establish Either a Concrete Injury or that Their Purported Injuries Would Be Redressed by the Relief Sought...................... 8

II.  Plaintiffs' Claims Are Not Justiciable Under the APA. ................................... 9

    A.  The AIA Precludes Collateral Challenges to the Merits of the Intermediate Decisions in IPR Proceedings, Particularly the Institution Decision.................... 10

    B.  The Considerations Guiding the USPTO's Decision Whether to Institute *Inter Partes* Review Are Committed to Agency Discretion And Beyond Judicial Review.......................... 12

        1.  There Is No Meaningful Standard for Review of the Factors the Board May Take Into Account When Exercising the Director's Discretion Under § 314(a). ....................... 12

        2.  Deciding and Applying the Relevant Considerations for Whether to Institute IPR Proceedings Requires Balancing Priorities Within the USPTO's Expertise. ................... 14

    C.  Adopting Non-Dispositive, Non-Exhaustive Factors Guiding the Board's Exercise of the Director's Discretion to Institute an *Inter Partes* Review Is Not a Final Agency Action. ................ 15

CONCLUSION........................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alto v. Black*,
   738 F.3d 1111 (9th Cir. 2013) ....................................................................... 9

*Bennett v. Spear*,
   520 U.S. 154 (1997) ..................................................................................... 15

*Block v. Cmty. Nutrition Inst.*,
   467 U.S. 340 (1984) ..................................................................................... 10

*Brown v. District of Columbia*,
   115 F. Supp. 3d 56 (D.D.C. 2015) ................................................................ 17

*Calvillo Manriquez v. Devos*,
   345 F. Supp. 3d 1077 (N.D. Cal. 2018) ....................................................... 15

*City of Oakland v. Lynch*,
   798 F.3d 1159 (9th Cir. 2015) ..................................................................... 16

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
   452 F.3d 798 (D.C. Cir. 2006) ..................................................................... 15

*Ctr. for Policy Analysis on Trade & Health (CPATH) v. Office of U.S. Trade Representative*,
   540 F.3d 940 (9th Cir. 2008), *as amended* (Oct. 8, 2008) ..................... 12, 14

*Cuozzo Speed Techs., LLC v. Lee*,
   136 S. Ct. 2131 (2016) ........................................................................ *passim*

*Dalton v. Specter*,
   511 U.S. 462 (1994) ..................................................................................... 16

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) ......................................................................................... 10

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
   543 F.3d 586 (9th Cir. 2008) .............................................................. 8, 15, 17

*FTC v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980) ............................................................................... 15, 16

*Heckler v. Cheney*,
 470 U.S. 821 (1985) ................................................................ 12, 13, 14

*Hinck v. United States*,
 550 U.S. 501 (2007) .......................................................................... 11

*Hoffman v. Jeffords*,
 175 F. Supp. 2d 49 (D.D.C. 2001),
 *aff'd*, No. 02-5006, 2002 WL 1364311 (D.C. Cir. May 6, 2002) ............................................. 10

*In re Cisco Systems Inc.*,
 No. 2020-148, 2020 WL 6373016 (Fed. Cir. Oct. 20, 2020) ................................... 7, 13, 14, 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
 511 U.S. 375 (1994) ............................................................................ 8

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ........................................................................ 8, 9

*Lujan v. Nat'l Wildlife Fed'n*,
 497 U.S. 871 (1990) ..................................................................... 15, 16

*Nat'l Ass'n of Home Builders v. Norton*,
 415 F.3d 8 (D.C. Cir. 2005) ................................................................ 17

*Nat'l Min. Ass'n v. McCarthy*,
 758 F.3d 243 (D.C. Cir. 2014) ............................................................. 16

*Oil States Energy Servs., LLC v. Greene's Energy Grp.*,
 138 S. Ct. 1365 (2018) ..................................................................... 3, 9

*Oregon v. Legal Servs. Corp.*,
 552 F.3d 965 (9th Cir. 2009) ................................................................. 8

*Planned Parenthood of Wisc., Inc. v. Azar*,
 316 F. Supp. 3d 291 (D.D.C. 2018),
 *vacated as moot*, 942 F.3d 512 (D.C. Cir. 2019) ............................................. 16, 17

*Pregis Corp. v. Kappos*,
 700 F.3d 1348 (Fed. Cir. 2012) ....................................................... 11, 13

*Reno v. Catholic Social Servs., Inc.*,
 509 U.S. 43 (1993) ........................................................................... 15

*Saint Regis Mohawk Tribe v. Mylan Pharmas. Inc.*,
 896 F.3d 1322 (Fed. Cir. 2018) ........................................................... 13

*SAS Inst., Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) ............................................................................................ 3

*Sierra Club v. Jackson*,
  648 F.3d 848 (D.C. Cir. 2011) .............................................................................. 14

*Sierra Club v. Johnson*,
  614 F. Supp. 2d 998 (N.D. Cal. 2008) .................................................................. 12

*St. Clair v. City of Chico*,
  880 F.2d 199 (9th Cir. 1989) .................................................................................. 8

*Thryv, Inc v. Click-To-Call Techs., LP*,
  140 S. Ct. 1367 (2020) .......................................................................................... 11

**Statutes**

5 U.S.C. § 701(a) ............................................................................................................ 10

5 U.S.C. § 701(a)(2) ....................................................................................................... 12

5 U.S.C. § 704 ......................................................................................................... 10, 15

35 U.S.C. § 2(b)(2)(A) ................................................................................................ 4, 13

35 U.S.C. § 3(a)(2) ...................................................................................................... 4, 13

35 U.S.C. § 6(a) ............................................................................................................... 4

35 U.S.C. § 141(c) .......................................................................................................... 11

35 U.S.C. § 311 ................................................................................................................ 2

35 U.S.C. § 312 ................................................................................................................ 2

35 U.S.C. § 313 ................................................................................................................ 3

35 U.S.C. § 314 ................................................................................................................ 3

35 U.S.C. § 314(a) ................................................................................................ 5, 11, 12

35 U.S.C. § 314(b)(1) ...................................................................................................... 3

35 U.S.C. § 314(b)(2) ...................................................................................................... 3

35 U.S.C. § 314(d) ......................................................................................... 3, 9, 11, 12

35 U.S.C. § 315(b) .......................................................................................................... 11

35 U.S.C. § 315(e) .......................................................................................................... 16

35 U.S.C. § 316 .......................................................................................... 3, 4, 13, 14

35 U.S.C. § 316(a)(11) ..................................................................................................... 3

35 U.S.C. § 318(a) ...................................................................................................... 3, 16

35 U.S.C. § 319 ........................................................................................................... 3, 11

Leahy-Smith America Invents Act of 2011,

    Pub. L. No. 112-29, 125 Stat. 29 (2011) ................................................................ 2

**Regulations**

37 C.F.R. 42.108(c) ......................................................................................................... 4

37 C.F.R. § 42.4(a) .......................................................................................................... 3

37 C.F.R. § 42.22 ............................................................................................................. 3

37 C.F.R. § 42.223 ........................................................................................................... 3

**Legislative Authorities**

H. Rep. No. 112-98 (2011) ............................................................................................. 6

157 Cong. Rec. S592 (daily ed. Feb. 28, 2011) ............................................................ 6

### STATEMENT OF ISSUES

1. Whether Plaintiffs have standing to challenge an agency policy when the policy does not cause Plaintiffs a concrete injury and Plaintiffs' speculative injuries would not be redressed by the relief Plaintiffs seek.

2. Whether the America Invents Act of 2011 displaces any cause of action under the Administrative Procedure Act to challenge the considerations upon which the Director of the U.S. Patent and Trademark Office relies in exercising his unreviewable discretion to deny *inter partes* review.

3. Whether the considerations an agency uses to reach a decision committed to agency discretion by law are similarly committed to agency discretion and therefore not subject to judicial review under the Administrative Procedure Act.

4. Whether Defendant adopting non-dispositive, non-exhaustive factors to guide the discretionary decision whether to institute *inter partes* review is a final agency action ripe for review under the Administrative Procedure Act when those factors have no immediate impact on outside parties' substantive rights.

Plaintiffs Apple Inc., Cisco Systems, Inc., Google LLC, Intel Corporation, Edwards Lifesciences Corp., and Edwards Lifesciences LLC (collectively, "Plaintiffs") have brought suit under the Administrative Procedure Act ("APA") against Defendant Andrei Iancu ("Director" or "Defendant") in his official capacity as Under Secretary of Commerce for Intellectual Property and Director, United States Patent and Trademark Office ("USPTO"), asserting that the Director acted unlawfully when he designated as precedential two opinions by the Patent Trial and Appeal Board ("Board"). The opinions set forth non-dispositive, non-exhaustive factors for the Board to consider when deciding whether to grant a petition for *inter partes* review in light of a pending district court proceeding that implicates similar issues as the petition.

The Court should dismiss Plaintiffs' claims in full. Initially, Plaintiffs lack standing because they have not suffered cognizable injuries, and the relief they seek would not redress their purported injuries. Further, the America Invents Act of 2011 ("AIA"), Pub L. No. 112-29, 125 Stat. 29 (Sept. 16, 2011), forecloses a cause of action under the APA. Even if the APA provided a cause of action, however, that statute does not permit review of non-final agency actions, like the ones challenged here.

**LEGAL BACKGROUND**

I.  **Statutory Framework**

When Congress passed the AIA, it modified the USPTO's longstanding authority to review the patentability of existing patent claims. *See Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2137 (2016). Currently, the most common means of reviewing patents under the AIA is termed "*inter partes* review" or "IPR." *Id.* By filing an IPR petition, "a third party [may] ask the U.S. Patent and Trademark Office to reexamine the claims in an already-issued patent and to cancel any claim that the agency finds to be unpatentable in light of prior art." *Id.* at 2136; *see also* 35 U.S.C. §§ 311, 312 (setting forth procedural and substantive requirements for a petition to institute IPR proceedings).

"The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition . . . and any response filed . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least [one] of the claims challenged in the petition." *Id.* § 314(a); *see also id.* § 313 (patent owner may file preliminary response).  However, the AIA contains "no mandate to institute review." *Cuozzo Speed Techs.*, 136 S. Ct. at 2140; *see also SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1356 (2018).  Instead, "[t]he decision whether to institute inter partes review is committed to the Director's discretion." *Oil States Energy Servs., LLC v. Greene's Energy Grp.*, 138 S. Ct. 1365, 1371 (2018).  The Director's determination whether to institute review is "final and nonappealable." 35 U.S.C. § 314(d).  By regulation, the Director has delegated his authority to decide IPR petitions to the Board.  37 C.F.R. § 42.4(a).

Within three months of the date that the patent holder files its preliminary response to a petition, the Board must decide whether to grant it.[1]  35 U.S.C. § 314(b)(1).  If the Board finds that a petition is eligible for review and chooses to institute proceedings, the Board conducts a trial on the validity of the challenged patent claims.  *Id.* § 6(a); *see also id.* §§ 314, 318(a).  IPR trial proceedings provide the patent holder with the opportunity to further respond to the petition, to file motions, to cross-examine witnesses, and, potentially, to file a sur-reply.  *Id.* § 316(a)(8); 37 C.F.R. §§ 42.22, 42.223.

Within one year after granting an IPR petition, the Board must issue a final written decision based on all the evidence in the record.  35 U.S.C. § 316(a)(11); *see also Cuozzo Speed Techs.*, 136 S. Ct. at 2136.  Written decisions by the Board in IPR proceedings are final agency actions that establish the legal validity of the patent claims.  35 U.S.C. § 318(a).  A dissatisfied party may appeal the Board's final written decision on patentability to the Federal Circuit.  *Id.* § 318(a), § 319.

---

[1] If no preliminary response is filed, the decision must be made within three months of the last date it could have been filed.  35 U.S.C. § 314(b)(2).

## II.      Regulatory Framework

Congress conferred on the USPTO Director authority to establish regulations that "govern the conduct of proceedings in the Office."  35 U.S.C. § 2(b)(2)(A).  When it enacted the AIA, Congress charged the Director with prescribing regulations related to thirteen distinct aspects of the IPR process, including "setting forth the standards for the showing of sufficient grounds to institute a[n *inter partes*] review."  *Id.* § 316(a)(2); *see* 37 C.F.R. 42.108(c).  Notably, Congress did not instruct the Director to promulgate regulations setting forth the standards for the exercise of the discretion whether to institute IPR proceedings.[2]  *See id.*; *see also Cuozzo Speed Techs*, 136 S. Ct. at 2137.

## III.      Precedential Board Opinions

In addition to empowering the Director to promulgate regulations, Congress made the Director "responsible for providing policy direction and management supervision for the" USPTO.  35 U.S.C. § 3(a)(2).[3]  The Director can exercise this supervision in a variety of ways, such as overseeing Board executives, publishing guidance materials (*e.g.*, the Trial Practice Guide), issuing memoranda on the handling of recurring issues before the Board, and designating Board decisions as precedential.  Pursuant to this authority, the Director issued Standard Operating Procedure 2 ("SOP 2") in 2018, addressing the Director's ability to provide policy direction to the Board through precedential opinions.[4]

As SOP 2 explains, the Director can designate a Board opinion (or portion thereof) as precedential.  SOP 2 (ECF No. 51-2).  "A precedential decision is binding Board authority in subsequent matters involving similar facts or issues."  SOP 2 at 11.  Regardless of the procedural

---

[2]  Although there is no requirement for the Director to do so, the Director has issued a request for comments seeking the public's view on, among other things, the appropriate factors to consider for discretionary denials of inter partes review.  *See* Request for Comments on Discretion to Institute Trials Before the Patent Trial and Appeal Board, __ Fed. Reg. __, available as of October 19, 2020, at https://public-inspection.federalregister.gov/2020-22946.pdf.

[3]  In addition, the Director has independent authority as a Board member.  *See* 35 U.S.C. § 6(a).

[4]  *Available at* https://www.uspto.gov/sites/default/files/documents/SOP2%20R10%20FINAL.pdf.

path a case has taken, "[n]o decision or portion thereof may be designated as precedential or informative pursuant to [SOP 2] without the Director's approval," and the Director can de-designate an opinion at any time.[5] *Id. at* 8-11.  Further, SOP 2 does not "limit the Director's authority to issue, at any time and in any manner, [other] policy directives[,] … including policy directives concerning the implementation of statutory provisions." *Id.* at 1-2.

## IV.   Institution Factors for IPR Petitions

Notably for this case, the Director has designated as precedential *NHK Spring Co., Ltd. v. Intri-Plex Techs., Inc.*, No. IPR2018-00752 (Paper 8) (P.T.A.B. Sept. 12, 2018), and *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019 (Paper 11) (P.T.A.B. Mar. 20, 2020).  Both cases concern how parallel district court proceedings involving the same parties and addressing the validity of the same or similar patent claims should be taken into account when the Board determines whether to institute an IPR proceeding.  In *NHK*, the Board noted that efficiency weighed in favor of denying review when a "district court proceeding will analyze the same issues and will be resolved before any trial on the [IPR p]etition concludes."  IPR2018-00752 at 19-20.  In *Fintiv*, the Board expanded on *NHK*, explaining that "an early trial date" is one "non-dispositive factor[] considered for institution under 35 U.S.C. § 314(a)" and "should be weighed as part of a 'balanced assessment of all relevant circumstances of the case, including the merits.'"  IPR2020-00019 at 5 (quoting the Consolidated Trial Practice Guide (Nov. 2019) at 58).

The Board in *Fintiv* also identified six factors it had previously considered "relat[ing] to whether efficiency, fairness, and the merits support the exercise of authority to deny institution in view of an earlier trial date in the parallel proceedings."  *Id.* at 6.  The *Fintiv* factors are:

> (1) whether a stay exists or is likely to be granted if a proceeding is instituted;

> (2) proximity of the court's trial date to the Board's projected statutory deadline;

---

[5] Although they are not at issue in this case, "[i]nformative decisions set forth Board norms that should be followed in most cases, absent justification, although an informative decision is not binding authority on the Board."  SOP 2 at 11.

(3)  investment in the parallel proceeding by the court and parties;

(4)  overlap between issues raised in the petition and in the parallel proceeding;

(5) whether the petitioner and the defendant in the parallel proceeding are the same party; and

(6) other circumstances that impact the Board's exercise of discretion, including the merits.

*Id.* The Director designating *Fintiv* as precedential means that the Board must consider the *Fintiv* factors in future institution decisions involving parallel district court proceedings. *See* SOP 2 at 11.

The *Fintiv* factors embody a flexible approach that permits the Board to take into account all the relevant considerations to ensure that *inter partes* review promotes the "efficiency and integrity of the patent system" by remaining a faster, cheaper alternative to district court litigation, as Congress intended. *Fintiv*, IPR2020-00019 at 16; *see* H. Rep. No. 112-98, Part 1, at 48 (2011) (noting that a purpose of the AIA was to "provid[e] quick and cost effective alternatives to litigation"); 157 Cong. Rec. S592 (daily ed. Feb. 28, 2011) (stating that the post-grant proceedings in the AIA would "provide faster, less costly alternatives to civil litigation to challenge patents") (statement of Sen. Chuck Grassley).  Moreover, discernment in granting *inter partes* review ensures that the USPTO remains a valuable alternative to Article III courts, rather than instituting proceedings redundant of courts' patent claim adjudications.

## PROCEDURAL BACKGROUND

Plaintiffs are large technology companies that frequently file *inter partes* review petitions in response to patent infringement lawsuits.  Am. Compl. for Decl. & Injunctive Relief ("Am. Compl.") ¶¶ 24-27, 62.  Some of those IPR petitions have not been instituted by the Board after consideration of the *Fintiv* factors in light of co-pending district court proceedings addressing the validity of the same patent claim.  *Id.* ¶¶ 56-61.  Plaintiffs have now brought suit to set aside the

Director's designation of *Fintiv* and *NHK* as precedential Board opinions and to foreclose reliance on the *Fintiv* factors.[6]  *Id.* ¶¶ 56-63

In addition to the instant case, Plaintiffs have brought a multitude of legal challenges to the *Fintiv* factors, all without success.[7]  For example, Plaintiff Cisco Systems Inc. appealed the Board's decision not to institute its IPR petition and alternatively sought mandamus relief for review of the Board's decisions.  *In re Cisco Systems, Inc.*, 2020 WL 6373016, at *1.  In that case, the Federal Circuit rejected Cisco's argument that the Board lacked "authority to consider the status of parallel district court proceedings as part of its decision under § 314(a) in deciding whether to deny institution" of IPR proceedings.  *Id.* at *2.  The court went on to conclude that it lacked jurisdiction to consider Cisco's "procedural and substantive" challenges to the Board's "authority to consider the status of parallel district court proceedings . . . in deciding whether to deny institution" because "when the Director decides not to institute, for whatever reason, there is no review."  *Id.* (citation and internal quotation marks omitted).  The court further denied mandamus review.  *Id.*

Here, Plaintiffs have brought three claims under the APA challenging the *Fintiv* factors.  Count I alleges that the Director lacked the authority to designate *NHK* and *Fintiv* as precedential because the holdings of those cases purportedly conflict with other provisions of the AIA.  Am. Compl. ¶¶ 82-86.  Count II alleges that the *Fintiv* factors are arbitrary, capricious, and an abuse of discretion because they purportedly result in unpredictable and inefficient IPR proceedings.  *Id.* ¶¶ 87-91.  Count III alleges that the *Fintiv* factors are invalid because the Director could have

---

[6]  Because *Fintiv* followed the reasoning of *NHK*, the non-dispositive factors announced in *Fintiv* effectively subsume *NHK*'s holding.  Defendant therefore most frequently frames Plaintiffs' claims as being challenges to the *Fintiv* factors.  Although Defendant uses this formulation for clarity and brevity, the justiciability problems with Plaintiffs' claims apply to Plaintiffs' challenges to *NHK* and to *Fintiv*, both separately and collectively.

[7]  *See id.* ¶ 57 (motion for rehearing denied); *In re Cisco Systems Inc.*, No. 2020-148, 2020 WL 6373016, ___F. App'x ___ (Fed. Cir. Oct. 20, 2020); *Cisco Systems Inc. v. Ramot at Tel Aviv Univ. Ltd.*, Nos. 20-2047, -2049, ECF No. 28 (Fed. Cir. Oct. 30, 2020); *Google LLC v. Uniloc 2017 LLC*, No. 20-2040, ECF No. 21 (Fed. Cir. Oct. 30, 2020); *Apple Inc. v. Maxell, Ltd.*, No. 20-2132, ECF No. 38 (Fed. Cir. Oct. 30, 2020); *see also Apple Inc. v. Optis Cellular Tech., LLC*, Nos. 21-1043, -1044, -1046 (Fed. Cir., docketed Oct. 14, 2020).

enacted them only by notice-and-comment rulemaking.  *Id.* ¶¶ 92-95.  Defendant now moves to dismiss those claims because Plaintiffs lack standing and, regardless, would not be entitled to relief under the APA.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal when the plaintiff fails to meet his or her burden of establishing subject-matter jurisdiction.  *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  Dismissal on this basis is appropriate when, for instance, a plaintiff fails to establish the elements of standing, *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009), or brings a non-cognizable claim under the APA, *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008).

## ARGUMENT

When Congress enacted the AIA, it precluded review of challenges to the institution decision to guarantee that the Director is free to rely on any considerations he deems relevant—including the *Fintiv* factors.  Preserving the Director's discretion in this way ensures that *inter partes* review provides a quick, less expensive, and efficient alternative to district court proceedings.  Plaintiffs, however, seek to substitute their judgment for the Director's and ask that this Court set aside the *Fintiv* factors.  Instead, the Court should dismiss Plaintiffs' Amended Complaint for lack of standing and, alternatively, because Plaintiffs' claims are non-justiciable under the APA.

## I. Plaintiffs Lack Standing Because They Cannot Establish Either a Concrete Injury or that Their Purported Injuries Would Be Redressed by the Relief Sought.

"Federal courts are courts of limited jurisdiction, . . . possess[ing] only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).  A constitutional prerequisite for any federal lawsuit is that the plaintiff have standing to assert the claims brought.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992).  The three "irreducible constitutional minimum" requirements for standing are that (1) the plaintiff

"suffer[s] an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical," (2) "the injury has to be 'fairly traceable to the challenged action of the defendant,'" and (3) it is likely "that the injury will be 'redressed by a favorable decision.'" *Id.* at 560 (alterations and internal citations omitted).

Plaintiffs challenge the Director's consideration of the *Fintiv* factors because those factors were allegedly improperly adopted as well as purportedly arbitrary and capricious. Compl. ¶¶ 82-95. However, the Director's unreviewable discretion over IPR institution decisions means that Plaintiffs can establish neither an injury in fact nor redressability.

Initially, Plaintiffs lack an injury in fact. The only potential effect on Plaintiffs from the Director's consideration of the *Fintiv* factors is that the Director might deny review of one of their IPR petitions. Congress expressly rejected any right to review of an IPR petition. 35 U.S.C. § 314(d); *Oil States Energy Servs.*, 138 S. Ct. 1365, 1371 (2018) (institution decision "committed to the Director's discretion"). Thus, Plaintiffs lack a protectable right that could be invaded to meet the injury in fact requirement for standing. *See* § II.C, *infra*.

Further, success on Plaintiffs' claims would not remedy Plaintiffs' purported injuries. By statute, the Director has the unfettered discretion to consider all factors he deems relevant when deciding whether to institute *inter partes* review. Setting aside the *Fintiv* factors would leave this discretion untouched.[8] Indeed, the Board in *NHK* considered the trial dates of parallel district court proceedings before the Director designed *NHK* as precedential, proving that removing that designation would not prevent the Board from considering such trial dates when exercising discretion under § 314(a). Similarly, "the Board's decisions ha[d] balanced" the *Fintiv* factors before the Board enumerated them, so de-designating *Fintiv* would likewise not

---

[8] Paragraph 3 of the Relief Requested section of the Amended Complaint does seek a permanent injunction against the USPTO "relying on the *NHK-Fintiv* rule or the non-statutory factors it incorporates to deny institution of IPR." Am. Compl. at 20. However, the APA does not allow permanent injunctions; rather it provides for only limited relief: "affirmation, reversal or remand of the agency action." *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013).

prevent the Board from considering the factors adopted in *Fintiv*. IPR2020-00019, at 5.

Moreover, "[t]here is absolutely no way of knowing what [rule], if any," the Director would

adopt if the Court sets aside the *Fintiv* factors, precluding a showing of redressability. *See*

*Hoffman v. Jeffords*, 175 F. Supp. 2d 49, 51, 57 (D.D.C. 2001) (no standing to challenge to

senator's switch in political parties because no way to establish what alternative policies

Congress would have otherwise enacted), *aff'd*, No. 02-5006, 2002 WL 1364311 (D.C. Cir. May

6, 2002).  Indeed, vacating the *Fintiv* factors could lead the USPTO to adopt a policy even less

favorable IPR petitions, like the one proffered by Proposed Intervenor US Inventor, Inc.[9]

BecausePlaintiffs cannot show that any decision by this Court would redress their purported

harms, they lack standing.

## II.  Plaintiffs' Claims Are Not Justiciable Under the APA.

The APA does not provide judicial review when the challenged agency action is either

committed to agency discretion or precluded by statute.  5 U.S.C. § 701(a).  Such review is

limited to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C.

§ 704.

### A.  The AIA Precludes Collateral Challenges to the Merits of Intermediate Decisions in IPR Proceedings, Particularly the Institution Decision.

Congress may—and often does—displace the APA's default cause of action by enacting

detailed schemes for administrative and judicial review of agency action.  As the Supreme Court

has explained, judicial review under the APA will not lie "where congressional intent to preclude

judicial review is fairly discernable in the statutory scheme."  *Block v. Cmty. Nutrition Inst.*, 467

U.S. 340, 351 (1984) (quotation marks omitted).  Courts look to the "text, structure, and

purpose" of a specialized statutory review scheme to determine whether Congress's intent to

---

[9]  The speculative nature of Plaintiffs' purported injuries is evident from the fact that Proposed Intervenors US Inventor Inc.*, et al.*, have opposing interests to Plaintiffs but are seeking to compel the Director to issue a regulation.  *See* ECF No. 28.  When IPR petitioners and patent owners both claim that a rule would benefit them, it is clear that neither actually knows what the effect of that rule would be.

preclude district court jurisdiction is "fairly discernable." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012); *see also Hinck v. United States*, 550 U.S. 501, 506 (2007) (statute providing limited authorization for review displaced cause of action under the APA).

The plain text of the AIA permits aggrieved parties in *inter partes* review proceedings to appeal *only* from the Board's final written decision and *only* to the Federal Circuit. The AIA further provides that the Director's decision whether to institute an *inter partes* review is "final and nonappealable," 35 U.S.C. § 314(d), and that the only appeal available is an appeal of the Board's final written decision to the Federal Circuit, *id.* §§ 141(c), 319. *See also Cuozzo Speed Techs.*, 136 S. Ct. at 2139. Indeed, § 314(d)'s preclusion of review is particularly robust, encompassing any "questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Thryv, Inc v. Click-To-Call Techs.*, LP, 140 S. Ct. 1367, 1373 (2020) (quoting *Cuozzo Speed Techs.*, 136 S. Ct. at 2141-42); *see also Cuozzo Speed Techs*, 136 S. Ct. at 2140 (discussing congressional intent to preclude review of the IPR institution decision).

Congress could hardly have been clearer that it intended to prohibit parties from bringing collateral APA challenges to the *inter partes* review process. *See Thryv*, 140 S. Ct. at 1372-77 (discussing § 314(d)). Even when a party brings a challenge alleging that the agency violated a clear bar on institution, like the time-bar in 35 U.S.C. § 315(b), Section 314(d) precludes review, "[b]ecause § 315(b) expressly governs institution and nothing more." *Thryv*, 140 S. Ct. at 1373. Here, plaintiffs challenge the USPTO's announcement of the factors it will consider in making its decision whether to institute *inter partes* review under 35 U.S.C. § 314(a). These factors, however, go to "institution and nothing more." *Thryv*, 140 S. Ct. at 1373. Plaintiffs may not agree with the Director's exercise of his authority over the institution decision, but Plaintiffs are not entitled to an end-run around § 314(d) by framing their dissatisfaction with the agency's institution decisions as a challenge to the policies undergirding those decisions. Courts routinely find APA actions precluded in even less clear-cut contexts. *See, e.g., Pregis Corp. v. Kappos*,

700 F.3d 1348, 1358 n.1 (Fed. Cir. 2012) (Patent Act's "intricate scheme for administrative and judicial review of PTO patentability determinations . . . evinces a clear Congressional intent to preclude actions under the APA," a conclusion reinforced by the availability of *inter partes* review). Plaintiffs' claims therefore lack a valid cause of action and should be dismissed.

B. The Considerations Guiding the USPTO's Decision Whether to Institute *Inter Partes* Review Are Committed to Agency Discretion And Beyond Judicial Review.

Further, the APA does not permit courts to review the merits of agency decisions "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), or for which "statutes preclude judicial review," *id.* § 701(a)(1). Section 701(a)(2) exempts from review agency actions for "which a court would have no meaningful standard against which to judge the agency's exercise of discretion" and agency actions that "require[] a complicated balancing of a number of factors which are peculiarly within the agency's expertise." *Ctr. for Policy Analysis on Trade & Health (CPATH) v. Office of U.S. Trade Representative*, 540 F.3d 940, 944 (9th Cir. 2008), *as amended* (Oct. 8, 2008); *see also Heckler v. Cheney*, 470 U.S. 821, 830 (1985). The *Fintiv* factors meet both tests. And courts' inability to second-guess the agency's institution-related decisions is underscored by 35 U.S.C. § 314(d), which expressly precludes judicial review of such decisions.

1. *There Is No Meaningful Standard for Review of the Factors the Board May Take Into Account When Exercising the Director's Discretion Under § 314(a).*

The plain language of 35 U.S.C. § 314(a) provides no standard whatsoever for the Court to judge whether the Director has properly exercised his discretion to decide whether to institute *inter partes* review. Although the AIA provides that the Director "may not authorize" IPR proceedings if the petition is insufficient, the statute is completely silent as to which otherwise sufficient petitions merit administrative review. *See id.* This kind of permissive language is a strong indicator that Congress intended the agency's actions to be discretionary and therefore exempt from review under the APA. *See Sierra Club v. Johnson*, 614 F. Supp. 2d 998, 1003 (N.D. Cal. 2008). Indeed, the Supreme Court has expressly confirmed that the AIA contains "no mandate to institute review" and "committed [the institution decision] to the Patent Office's

discretion." *Cuozzo Speed Techs.*, 136 S. Ct. at 2140; *see also Saint Regis Mohawk Tribe v. Mylan Pharmas. Inc.*, 896 F.3d 1322, 1327 (Fed. Cir. 2018) ("If the Director decides to institute, review occurs.  If the Director decides not to institute, for whatever reason, there is no review. In making this decision, the Director has complete discretion to decide not to institute review.").  It would be illogical for Congress to confer unreviewable discretion on the Director, only to implicitly create standards for courts to apply in APA actions collaterally challenging the Director's process for deciding institution.  *See Pregis*, 700 F.3d at 1358 n.1; *see also Cuozzo Speed Techs*, 136 S. Ct. at 2140.

The breadth of the Director's general authority over USPTO proceedings further confirms that Congress did not intend to establish a standard by which courts could judge how the Director makes institution decisions.  The Director has the responsibilities to "provid[e] policy direction and management supervision" for USPTO and "to govern the conduct of proceedings" there. 35 U.S.C. § 2(b)(2)(A), § (3)(a)(2)(A); *see also* SOP 2 (issued pursuant to those statutes).  Although the Director must issue some guidance by regulation, *see* 35 U.S.C. § 316, nothing limits the Director's authority to issue sub-regulatory policies on other topics. Again, Congress did not supply a statute against which the Court can judge the Director's decision-making in this regard, so the Director's actions are not subject to APA review.  *See Heckler*, 470 U.S. at 830.

Although Plaintiffs frame their claims as challenges to the Director's adopting the *Fintiv* factors without notice-and-comment, "[a]t bottom, [Plaintiffs are] challenging whether the Board has authority to consider the status of parallel district court proceedings as part of its decision under § 314(a) in deciding whether to deny institution." *In re Cisco Sys., Inc.*, 2020 WL 6373016, at *2.  Plaintiff Cisco Systems, Inc. raised the same arguments in the Federal Circuit that Plaintiffs are making here.  Like the Federal Circuit, this Court should reject Plaintiffs' claims because "[s]uch challenges, both procedural and substantive, rank as questions closely tied to the application and interpretation of statutes relating to the Patent Office's decision

whether to initiate review . . . ." *Id.* That Cisco now brings these claims through another avenue, joined by other plaintiffs, does nothing to remedy this critical defect.

Even absent the AIA's specific statutory language, agency inaction—such as the decision not to institute IPR proceedings—is a quintessential example of agency decision-making routinely committed to agency discretion. See *Heckler*, 470 U.S. at 832. As the Supreme Court explained in *Heckler*, "when an agency refuses to act[,] it generally does not exercise its coercive power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." *Id.*; *see also Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (decisions not to take enforcement action are presumptively unreviewable).

2. *Deciding and Applying the Relevant Considerations for Whether to Institute IPR Proceedings Requires Balancing Priorities Within the USPTO's Expertise.*

When Congress gave the Director discretion over the institution decision and supervisory authority over the USPTO, Congress entrusted the Director with balancing all the interests tied up in the patent system. *See* 35 U.S.C. § 316. As a decision that "requires a complicated balancing of a number of factors which are peculiarly within the agency's expertise," the decision-making process, including the factors considered, are committed to agency discretion. *CPATH*, 540 F.3d at 944. The *Fintiv* factors are designed to promote efficiency and principled resolution of IPR petitions, *Fintiv*, IPR2020-00019, at 6, but Plaintiffs assert that they cause inefficiency and unpredictability, Am. Compl. ¶¶ 77, 90. This type of judgment call is precisely the sort of decision for which the "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities" and is thus committed to agency discretion. *Heckler*, 470 U.S. at 831-32 (decisions involving factors like "whether agency resources are best spent on this violation or another" and "whether the particular enforcement action requested best fits the agency's overall policies" are committed to agency discretion). To hold otherwise would be to put the Court in the position of agency policymaker, which the APA forbids. *See CPATH*, 540 F.3d at 945.

1    Because Congress committed to the Director's discretion the authority whether to

2  institute an *inter partes* review and to issue policies attendant to that decision in accordance with

3  the AIA, Plaintiffs' claims challenging those rules are non-justiciable.

4      C.  <u>Adopting Non-Dispositive, Non-Exhaustive Factors Guiding the Board's Exercise of
        the Director's Discretion to Institute an *Inter Partes* Review Is Not a Final Agency
        Action.</u>

6      The APA permits review of only final agency actions.  5 U.S.C. § 704.  Agency action is

7  final if the action (1) "mark[s] the culmination of the agency's decisionmaking process" and (2)

8  is "one by which rights or obligations have been determined, or from which legal consequences

9  will flow."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal citations omitted).  The

10  Director's designation of *Fintiv* as precedential does not qualify as a final agency action because

11  no legal consequences flow directly from the Board considering a set of non-exhaustive, non-

12  dispositive factors the Board considers in exercising discretion over the institution decision,

13  which itself lacks any direct legal consequences.  Plaintiffs' APA claims therefore fail.

14      Absent a statute to the contrary, the issuance of an internal agency policy is not ordinarily

15  a final action that can be directly challenged under the APA.  *See* 5 U.S.C. § 704; *Lujan v. Nat'l

16  Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (discussing regulations).  Rather, an allegedly

17  aggrieved party must wait until there is "some concrete action applying [the rule] to the

18  claimant's situation in a fashion that harms or threatens to harm him."  *Id.*  Only in rare cases

19  will the issuance of a policy "itself affect parties concretely enough to satisfy [the finality]

20  requirement."  *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57–61 (1993); *see also Calvillo

21  Manriquez v. Devos*, 345 F. Supp. 3d 1077, 1102 (N.D. Cal. 2018); *see also FTC v. Standard Oil

22  Co. of Cal.*, 449 U.S. 232, 241-42 (1980).  Issuance of a policy is final only when the policy

23  directly causes "a certain change in the legal obligations of a party" or immediately forces

24  regulated entities to alter their day-to-day affairs.  *Ctr. for Auto Safety v. Nat'l Highway Traffic

25  Safety Admin.*, 452 F.3d 798, 811 (D.C. Cir. 2006) (citation omitted); *see also Catholic Social

26  Servs., Inc.*, 509 US at 57-58; *Fairbanks N. Star Borough*, 543 F.3d at 596-97.

Adopting the *Fintiv* factors lacked the legal effect necessary to qualify as a final agency action because, even if the factors were to dictate the outcome of IPR institution decisions, no legal consequences flow from the grant or denial of institution.  *See Dalton v. Specter*, 511 U.S. 462, 470 (1994) (legal effect necessary for finality).  The APA does not provide for review of internal agency policies or "intermediate agency actions."  *See Lujan*, 497 U.S. at 891; *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014) (internal agency guidance not final agency action).  The *Fintiv* factors are internal agency policies guiding intermediate agency actions, so Plaintiffs' claims are doubly without merit.  *See Planned Parenthood of Wisc., Inc. v. Azar*, 316 F. Supp. 3d 291, 306-08 (D.D.C. 2018), *vacated as moot*, 942 F.3d 512 (D.C. Cir. 2019).

Even if the *Fintiv* factors were dispositive of the institution decision, they would have no legal effect—and therefore could not be final—because the institution decision itself has no legal effect.  Rules governing a non-final agency decision are not themselves final agency actions.  *See id.* (criteria for generating agency recommendation not final agency action because recommendation, no matter how practically consequential, lacks direct legal effect).  Neither granting nor denying an IPR petition determines any legal rights, so the institution decision cannot be a final agency action.

As the Supreme Court has already held, the USPTO's "decision to initiate inter partes review is 'preliminary,' not 'final,'" under the APA.  *Cuozzo Speed Techs.*, 136 S. Ct. at 2140. Institution merely determines "that adjudicatory proceedings will commence," which is only one "step toward . . . the [agency's] decision on the merits."  *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241-42 (1980) (final decision to issue complaint initiating proceedings not final agency action); *City of Oakland v. Lynch*, 798 F.3d 1159, 1166-67 (9th Cir. 2015) (same for forfeiture complaint); *see also* 35 U.S.C. § 318(a) (permitting judicial review of final IPR determinations).

Likewise, denial of an IPR petition leaves intact both the patent claims and the petitioner's right to challenge those claims in federal court.  *See* 35 U.S.C. § 315(e); *see also In*

*re Cisco*, 2020 WL 6373016, at *2 (a party denied *inter partes* review nonetheless "clearly has a readily available alternative legal channel to raise its arguments concerning the validity of the asserted patents").  Alternatively, an alleged infringer can challenge the validity of a patent as a defense or counter-claim in litigation.  Indeed, Plaintiffs and other defendants in patent litigation are doing exactly this in district courts all over the country.  *E.g. Maxell, Ltd.*, No. 5:19-cv-00036, ECF No. 118 at 97; *see also* Am. Compl. ¶¶ 54-64 (listing numerous examples of IPR petitions by Plaintiffs and others denied in light of parallel district court proceedings).  Litigants do not have a substantive right to have their claims considered in a forum of their choosing.  *Cf. Brown v. District of Columbia*, 115 F. Supp. 3d 56, 73 (D.D.C. 2015) (barrier to judicial review did not violate due process because adequate administrative alternative available).

No substantive rights have been determined by the grant or denial of institution, so the institution decision itself cannot be a final agency action under the APA.  *See Fairbanks N. Star Borough*, 543 F.3d at 594; *see also Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 16 (D.C. Cir. 2005) (agency decision that "left the world just as it found it,  . . . cannot be fairly described as implementing, interpreting, or prescribing law or policy"); *see also Cuozzo Speed Techs.*, 136 S. Ct. at 2140 ("decision to initiate inter partes review is . . . not 'final'" for purpose of APA review).  The factors considered in reaching that decision are one step even further removed from any direct legal effect.  *A fortiori*, adopting the *Fintiv* factors could not have been a final agency action under the APA.  *See Planned Parenthood of Wisc.*, 316 F. Supp. 3d at 307.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.


DATED:  November 23, 2020                    Respectfully submitted,

                                             JEFFREY BOSSERT CLARK
                                             Acting Assistant Attorney General

                                             LESLEY FARBY
                                             Assistant Branch Director

1

___/s/ Gary Feldon_____
GARY D. FELDON D.C. Bar #987142
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
1100 L Street, NW
Washington, D.C. 20044
Telephone:  (202) 598-0904
E-mail:  gary.d.feldon@usdoj.gov
*Counsel for Defendant*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2020, I electronically filed the foregoing document

with the Clerk of the Court, using the CM/ECF system, which will send notification of such

filing to the counsel of record in this matter who are registered on the CM/ECF system.

Executed on November 23, 2020, in Washington, D.C.

_/s/ Gary Feldon_

GARY D. FELDON