1  MARK D. SELWYN (CA SBN 244180)          DANIEL T. SHVODIAN (CA SBN 184576)
   mark.selwyn@wilmerhale.com                DShvodian@perkinscoie.com
2  WILMER CUTLER PICKERING                  PERKINS COIE LLP
      HALE AND DORR LLP                      3150 Porter Drive
3  2600 El Camino Real, Suite 400           Palo Alto, CA 94304
   Palo Alto, California 94306              Telephone: (650) 838-4300
4  Telephone: (650) 858-6000                Facsimile: (650) 737-5461
5  Facsimile: (650) 858-6100
                                            *Attorney for Plaintiff Google LLC*
6  CATHERINE M.A. CARROLL (*pro hac vice*)
   catherine.carroll@wilmerhale.com         JOHN B. SGANGA (CA SBN 116211)
7  WILMER CUTLER PICKERING                  John.Sganga@knobbe.com
      HALE AND DORR LLP                     KNOBBE MARTENS OLSON & BEAR
8  1875 Pennsylvania Avenue NW                 LLP
   Washington, DC 20006                     2040 Main Street, 14th Floor
9  Telephone: (202) 663-6000                Irvine, CA 92614
   Facsimile: (202) 663-6363                Telephone: (949) 760-0404
10                                          Facsimile: (949) 760-9502
11 *Attorneys for Plaintiffs Apple Inc., Cisco
   Systems, Inc., and Intel Corporation*    *Attorney for Plaintiffs Edwards Lifesciences*
12                                          *Corporation and Edwards Lifesciences LLC*

13                                          *A complete list of parties and counsel*
14                                          *appears on the signature page per Local Rule*
                                            *3-4(a)(1)*
15

16                 **UNITED STATES DISTRICT COURT**

17              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

18                        **SAN JOSE DIVISION**

19 APPLE INC., CISCO SYSTEMS, INC.,        Case No. 20-cv-6128-EJD
   GOOGLE LLC, INTEL CORPORATION,
20 EDWARDS LIFESCIENCES CORPORATION,       **PLAINTIFFS' NOTICE OF MOTION AND**
   and EDWARDS LIFESCIENCES LLC,           **MOTION FOR SUMMARY JUDGMENT**
21
                Plaintiffs,                 Date: March 11, 2021
22
        v.                                  Time: 9:00 a.m.
23
   ANDREI IANCU, in his official capacity as Courtroom: Courtroom 4, 5th Floor
24 Under Secretary of Commerce for Intellectual
   Property and Director, United States Patent and Judge: Hon. Edward J. Davila
25 Trademark Office,

26               Defendant.

27

28

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................. 1

INTRODUCTION ............................................................................ 1

BACKGROUND ............................................................................. 3

      **A.**    Congress Intended IPR To Provide An Efficient Path For Invalidating
            Bad Patents Even When Parallel Litigation Is Pending ...................... 3

      **B.**    The *NHK* And *Fintiv* Decisions Articulated A Discretionary Standard
            For Denying IPR Petitions Based On Pending Parallel Litigation ............ 5

      **C.**    The Director Adopted *NHK-Fintiv* As A Binding Rule Governing All
            Institution Decisions Without Notice-And-Comment Rulemaking ............. 7

      **D.**    The Board Has Applied The *NHK-Fintiv* Rule To Deny IPR Petitions
            In Many Cases Where Parallel Infringement Litigation Was Pending .......... 7

LEGAL STANDARD ........................................................................ 9

ARGUMENT ............................................................................... 10

  **I.**     The *NHK-Fintiv* Rule Exceeds The Director's Authority And Violates
        The AIA ............................................................................ 10

      **A.**    The AIA Precludes The Director From Denying IPR Petitions Based
            On Parallel Infringement Litigation That Has Been Pending For Less
            Than One Year ................................................................... 10

      **B.**    The *NHK-Fintiv* Rule Thwarts The Purposes Of IPR .................... 12

      **C.**    Sections 314(a) And 316(b) Do Not Authorize The *NHK-Fintiv* Rule ........ 15

  **II.**    The NHK-Fintiv Rule Is Arbitrary And Capricious ............................ 18

  **III.**   The *NHK-Fintiv* Rule Is Invalid Because The Director Adopted It
        Without Notice And Comment ...................................................... 23

CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*United States v. Alameda Gateway Ltd.*,
213 F.3d 1161 (9th Cir. 2000) .................................................................................. 24

*Alameda Health Sys. v. Ctrs. for Medicare & Medicaid Servs.*,
287 F. Supp. 3d 896 (N.D. Cal. 2017) ........................................................................ 9

*Aqua Prods., Inc. v. Matal*,
872 F.3d 1290 (Fed. Cir. 2017) ................................................................................. 24

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
941 F.3d 1320 (Fed. Cir. 2019) ................................................................................... 4

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*,
416 U.S. 267 (1974) ................................................................................................... 25

*Briggs v. Sullivan*,
954 F.2d 534 (9th Cir. 1992) ..................................................................................... 17

*Cent. United Life Ins. Co. v. Burwell*,
827 F.3d 70 (D.C. Cir. 2016) ..................................................................................... 15

*Cisco Systems Inc. v. Ramot at Tel Aviv University Ltd.*,
Nos. 2020-2047, -2049, 2020 WL 6373016 (Fed. Cir. Oct. 30, 2020) ..................... 20

*City of Arlington v. FCC*,
569 U.S. 290 (2013) ............................................................................................ 10, 16

*City of Los Angeles v. U.S. Dep't of Commerce*,
307 F.3d 859 (9th Cir. 2002) ..................................................................................... 18

*Cuozzo Speed Techs., LLC v. Lee*,
136 S. Ct. 2131 (2016) ................................................................................... 14, 16, 17

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*,
140 S. Ct. 1891 (2020) ............................................................................................... 18

*Facebook, Inc. v. Windy City Innovations, LLC*,
973 F.3d 1321 (Fed. Cir. 2020) ........................................................................... 16, 25

*Finjan, Inc. v. Symantec Corp.*,
139 F. Supp. 3d 1032 (N.D. Cal. 2015) ....................................................................... 5

*Gill v. Dep't of Justice*,
246 F. Supp. 3d 1264 (N.D. Cal. 2017) ....................................................................... 9

*Holmberg v. Armbrecht*,
    327 U.S. 392 (1946) ............................................................................................ 11

*Horsehead Res. Dev. Co. v. Browner*,
    16 F.3d 1246 (D.C. Cir. 1994) .......................................................................... 18

*JEM Broad. Co. v. FCC*,
    22 F.3d 320 (D.C. Cir. 1994) ............................................................................ 24

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) ...................................................................................... 24

*Mada-Luna v. Fitzpatrick*,
    813 F.2d 1006 (9th Cir. 1987) .......................................................................... 24

*Martin v. Occupational Safety & Health Review Comm'n*,
    499 U.S. 144 (1991) .......................................................................................... 25

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) .......................................................................................... 16

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011) .............................................................................................. 4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...................................................................................... 18, 23

*NFC Tech. LLC v. HTC Am., Inc.*,
    No. 2:13-cv-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ......................... 5

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014) ...................................................................................... 11, 21

*Port of Seattle v. FERC*,
    499 F.3d 1016 (9th Cir. 2007) .......................................................................... 21

*SAS Inst. Inc. v. Iancu*,
    138 S. Ct. 1348 (2018) ............................................................................... *passim*

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
    137 S. Ct. 954 (2017) ........................................................................................ 11

*State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*,
    137 S. Ct. 436 (2016) ........................................................................................ 12

*Stryker Spine v. Spine Grp. of Wisc., LLC*,
    320 F. Supp. 3d 985 (E.D. Wis. 2018) .............................................................. 23

*Thryv, Inc. v. Click-To-Call Techs., LP*,
    140 S. Ct. 1367 (2020) ............................................................................. 2, 14, 23

*Tokyo Kikai Seisakusho, Ltd. v. United States,*
    529 F.3d 1352 (Fed. Cir. 2008)..................................................................16

*California v. U.S. Bureau of Land Mgmt.,*
    277 F. Supp. 3d 1106 (N.D. Cal. 2017) ....................................................10

*U.S. Telecom Ass'n v. FCC,*
    400 F.3d 29 (D.C. Cir. 2005) .....................................................................24

*Uniloc 2017 LLC v. Google LLC,*
    No. 2:18-cv-00504, 2020 WL 3064460 (E.D. Tex. June 8, 2020) ...................8, 20

*Util. Air Regulatory Grp. v. EPA,*
    573 U.S. 302 (2014).............................................................................16, 17

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.,*
    139 S. Ct. 361 (2018)...................................................................................17

### Docketed Cases

*Bell N. Research, LLC v. Coolpad Techs., Inc.,*
    No. 3:18-cv-1783 (S.D. Cal.) ......................................................................23

*VLSI Tech. LLC v. Intel Corp.,*
    No. 1:19-cv-977 (W.D. Tex.)........................................................................19

### Statutes

5 U.S.C.
    § 551 ..............................................................................................................24
    § 701 ..............................................................................................................17
    § 706 ........................................................................................................*passim*

35 U.S.C.
    § 2 ...................................................................................................1, 24, 25
    § 6..................................................................................................................4
    § 301 ............................................................................................................13
    § 311 ......................................................................................................*passim*
    § 312 ......................................................................................................5, 10
    § 314 ......................................................................................................*passim*
    § 315 ......................................................................................................*passim*
    § 316 ......................................................................................................*passim*
    § 317 ............................................................................................................14
    § 325 ...............................................................................................5, 10, 11, 16

### Other Authorities

37 C.F.R. § 42.2 .........................................................................................................5

37 C.F.R. § 42.4 ....................................................................................................5, 25

37 C.F.R. § 42.15 ......................................................................................................... 23

37 C.F.R. § 42.51 ........................................................................................................... 4

37 C.F.R. § 42.71 ......................................................................................................... 20

37 C.F.R. § 42.100 ......................................................................................................... 4

37 C.F.R. § 42.107 ......................................................................................................... 4

37 C.F.R. § 42.108 ........................................................................................... 5, 18, 25

157 Cong. Rec. S1041 (daily ed. Mar. 1, 2011) ....................................................... 14

157 Cong. Rec. S1326 (daily ed. Mar. 7, 2011) ....................................................... 14

157 Cong. Rec. S1352 (daily ed. Mar. 8, 2011) ......................................................... 4

157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) ...................................................... 15

Fed. R. Civ. P. 56 ............................................................................................................ 1

H.R. Rep. No. 112-98 (2011) ........................................................................................ 4

Patent Trial and Appeal Board, Standard Operating Procedure 2 (Rev. 10) (Sept. 20,
   2018) ........................................................................................................................... 7

S. 23, 112th Cong. Sec. 5(a), § 315(b) (2011) ......................................................... 15

Scott McKeown, *District Court Trial Dates Tend to Slip After PTAB Discretionary
   Denials*, Patents Post-Grant (July 24, 2020),
   https://www.patentspostgrant.com/district-court-trial-dates-tend-to-slip-after-ptab-
   discretionary-denials/ ............................................................................................... 19

Setting and Adjusting Patent Fees During Fiscal Year 2020, 85 Fed. Reg. 46,932
   (Aug. 3, 2020) .......................................................................................................... 23

**P.T.A.B. Proceedings**

*Apple Inc. v. Fintiv, Inc.*,
   No. IPR2020-00019, 2020 WL 2486683 (P.T.A.B. May 13, 2020) ................................. 8, 20

*Apple Inc. v. Fintiv, Inc.*,
   No. IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) (Am. Compl. Ex. B) .............. *passim*

*Apple Inc. v. Maxell, Ltd.*,
   No. IPR2020-00204, 2020 WL 3401274 (P.T.A.B. June 19, 2020) ...................................... 22

*Apple Inc. v. Maxell, Ltd.*,
   No. IPR2020-00203, 2020 WL 3662522 (P.T.A.B. July 6, 2020) .............................. 9, 12, 22

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*,
    No. IPR2020-00122, 2020 WL 2511246 (P.T.A.B. May 15, 2020) ............................. *passim*

*Cisco Systems, Inc. v. Ramot at Tel Aviv University Ltd.*,
    No. IPR2020-00123, 2020 WL 2511247 (P.T.A.B. May 15, 2020) ........................... 8, 9

*Dolby Laboratories, Inc. v. Intertrust Technologies Corp.*,
    No. IPR2020-00660, 2020 WL 6106620 (P.T.A.B. Oct. 15, 2020) ...................................... 22

*Edwards Lifesciences Corp. v. Evalve, Inc.*,
    No. IPR2019-01479, 2020 WL 927867 (P.T.A.B. Feb. 26, 2020) ....................................... 7

*Edwards Lifesciences Corp. v. Evalve, Inc.*,
    No. IPR2019-01546, 2020 WL 1486766 (P.T.A.B. Mar. 19, 2020) ................................... 7

*Ethicon, Inc. v. Board of Regents, University of Texas System*,
    No. IPR2019-00406, 2020 WL 3088846 (P.T.A.B. June 10, 2020) .................................... 22

*Fitbit, Inc. v. Philips North America LLC*,
    No. IPR2020-00828, 2020 WL 6470312 (P.T.A.B. Nov. 3, 2020) ...................................... 22

*Google LLC v. Uniloc 2017 LLC*,
    No. IPR2020-00115, 2020 WL 1523248 (P.T.A.B. Mar. 27, 2020) ............................. 8, 20

*Google LLC v. Uniloc 2017 LLC*,
    No. IPR2020-00441, 2020 WL 4037963 (P.T.A.B. July 17, 2020) ..................................... 22

*Intel Corp. v. VLSI Tech. LLC*,
    No. IPR2020-00582, 2020 WL 5846628 (P.T.A.B. Oct. 1, 2020) ...................................... 19

*Intel Corp. v. VLSI Tech. LLC*,
    Nos. IPR2020-00582, IPR2020-00583, 2020 WL 5900072 (P.T.A.B. Oct. 5, 2020) ........... 19

*Intel Corp. v. VLSI Technology LLC*,
    No. IPR2020-00106, 2020 WL 2201828 (P.T.A.B. May 5, 2020) ............................. 8, 19, 21

*Intel Corp. v. VLSI Technology LLC*,
    No. IPR2020-00113, 2020 WL 2544912 (P.T.A.B. May 19, 2020) ................................ 18, 19

*NHK Spring Co. v. Intri-Plex Technologies, Inc.*,
    No. IPR2018-00752, Paper 8, at 20 (P.T.A.B. Sept. 12, 2018) ................................ 6

*Philip Morris Prods., S.A. v. RAI Strategic Holdings, Inc.*,
    No. IPR-2020-00921, 2020 WL 6750120 (P.T.A.B. Nov. 16, 2020) ......................... 9, 21, 22

*Sand Revolution II, LLC v. Cont'l Intermodal Grp. – Trucking LLC*,
    No. IPR2019-01393, 2020 WL 3273334 (P.T.A.B. June 16, 2020) ................................ 13, 20

*Supercell Oy v. GREE, Inc.*,
    No. IPR2020-00513, 2020 WL 3455515 (P.T.A.B. June 24, 2020) ........................................ 9

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 11, 2021, at 9:00 a.m., in Courtroom 4, 5th Floor, before the Honorable Edward J. Davila, plaintiffs Apple Inc. ("Apple"), Cisco Systems, Inc. ("Cisco"), Google LLC ("Google"), Intel Corporation ("Intel"), and Edwards Lifesciences Corporation and Edwards Lifesciences LLC ("Edwards") will and hereby do move under Fed. R. Civ. P. 56 for summary judgment against Andrei Iancu, in his official capacity as Under Secretary of Commerce for Intellectual Property and Director, United States Patent and Trademark Office ("PTO"). Plaintiffs respectfully ask the Court to enter judgment in their favor (1) declaring the *NHK-Fintiv* rule (as defined herein) unlawful and setting it aside and (2) permanently enjoining defendant, his officers, agents, employees, assigns, and all persons acting in concert or participating with him from relying on the *NHK-Fintiv* rule or the non-statutory factors it incorporates to deny institution of inter partes review. This Motion will be based on this Notice of Motion; the Memorandum of Points and Authorities below; and such other written and oral argument as may be submitted.

# STATEMENT OF ISSUES

1. Whether the *NHK-Fintiv* rule (as defined herein) exceeds the Director's statutory authority and violates the Leahy-Smith America Invents Act ("AIA"), 35 U.S.C. §§ 311-319, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C).

2. Whether the *NHK-Fintiv* rule is arbitrary and capricious and an abuse of discretion in violation of the APA, 5 U.S.C. § 706(2)(A).

3. Whether the Director exceeded his authority and violated the AIA, 35 U.S.C. §§ 2(b)(2), 316(a), and the APA, 5 U.S.C. § 706(2)(D), by adopting the *NHK-Fintiv* rule without notice-and-comment rulemaking.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Through the *NHK-Fintiv* rule, the Director of the PTO has unlawfully constricted access to inter partes review ("IPR"), an essential administrative pathway for efficiently challenging patents. The rule forces plaintiffs and other innovators accused of infringing patents that never should have issued to incur the substantial costs, delays, and burdens of litigation that Congress created IPR to

avoid.  And it does so arbitrarily and inconsistently while promoting forum shopping by infringement plaintiffs.  The Director had no power to adopt this rule.  This Court's intervention is required to hold the Director to Congress's policy choices and to restore proper access to IPR.

IPR, a proceeding in which specialist administrative patent judges determine whether a previously issued patent's claims are actually patentable, was a centerpiece of Congress's effort to strengthen the U.S. patent system in 2011 through the AIA.  Congress recognized that innovation is inhibited when dubious patents are deployed in litigation against technology inventors and developers.  Congress found that existing procedures for challenging patents, including litigation, did not adequately guard against such abuses of the patent system.  Congress accordingly created IPR to provide an efficient administrative alternative to litigation for "weed[ing] out bad patent claims" that never should have issued.  *Thryv, Inc. v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1374 (2020).

Congress contemplated that IPR would often proceed in parallel with infringement litigation where the accused infringer seeks IPR of patent claims asserted against it in the suit.  Although parallel proceedings might duplicate some efforts, Congress concluded that any inefficiency was outweighed as long as the accused infringer seeks IPR within one year after being served with the infringement complaint—a judgment expressly stated in the AIA.  The *NHK-Fintiv* rule, however, requires the Patent Trial and Appeal Board ("Board") to consider denying an IPR petition (or "institution" of IPR, in PTO parlance) if parallel litigation involving the same patent is pending.  The Board has relied on this rule to deny many timely IPR petitions—even ones that were meritorious and otherwise met all the AIA's requirements—solely because of overlapping litigation.  The rule thus significantly reduces the availability of IPR precisely where Congress intended it to be available as an alternative to litigation.  As the Director has acknowledged, halting access to IPR "caus[es] serious harm to any party seeking to lawfully challenge patent claims via [IPR]."  Dkt. No. 50 at 19.

The *NHK-Fintiv* rule is invalid and should be set aside.  First, it violates the AIA, whose text, structure, and purpose show that Congress intended IPR to be available despite parallel infringement litigation so long as the IPR petition is filed within one year after the petitioner was served with the infringement complaint.  Although the AIA explicitly grants the Director discretion to deny timely IPR petitions on certain grounds—including the pendency of related *administrative* proceedings—

none of those provisions relates to the pendency of a parallel *lawsuit*. To the contrary, the AIA explicitly allows—even encourages—accused infringers to petition for IPR anytime within one year after being served with an infringement complaint involving the same patent claims and to raise in IPR the same issues raised in defense of the infringement suit. Yet the *NHK-Fintiv* rule overrides that judgment, defeating the purpose of IPR as a streamlined and specialized mechanism for clearing away invalid patents without the cost, burden, and delay of litigation.

Moreover, the *NHK-Fintiv* rule is arbitrary and capricious. It requires the Board to speculate about the course of litigation, leading to irrational decisions as the Board relies on provisional trial dates that are often later rescheduled. The rule also incentivizes conduct by IPR petitioners and infringement plaintiffs that reduces efficiency—contrary to the agency's professed goal. And the rule's malleable factors invite inconsistent application and yield inconsistent outcomes. The agency has offered no reasoned basis to justify the rule in the face of these consequences.

Finally, even if the *NHK-Fintiv* rule were substantively valid, the rule is procedurally invalid. Both the AIA and the APA require the Director to use notice-and-comment rulemaking when adopting rules, but the Director adopted the *NHK-Fintiv* rule through an internal PTO process for designating Board decisions as "precedential"—*i.e.*, "binding" in all future IPR cases—that afforded no public notice or opportunity for public input.

Given the purely legal issues, no discovery is necessary to confirm the rule's unlawfulness. And given the stakes for plaintiffs and the patent system, expeditious summary judgment is needed to ensure that the rule can no longer contravene congressional intent by restricting access to IPR. The Court should declare the *NHK-Fintiv* rule unlawful and set it aside, and permanently enjoin the Director, and through him the Board, from applying the rule or its non-statutory factors to deny IPR.

**BACKGROUND**

A.    **Congress Intended IPR To Provide An Efficient Path For Invalidating Bad Patents Even When Parallel Litigation Is Pending**

The U.S. patent system has long fueled American economic growth and innovation. The system's success depends on both providing robust protections for meritorious patents and ensuring that dubious patents cannot be exploited in litigation to inhibit innovation. IPR plays a vital role in

that system by allowing any person, including an accused patent infringer, to ask the PTO to reconsider the patentability of a previously granted patent.  *See* 35 U.S.C. § 311.[1]

Congress established IPR out of a "growing sense that questionable patents [we]re too easily obtained" and "too difficult to challenge" through existing procedures.  H.R. Rep. No. 112-98, at 39-40 (2011) ("House Report"); *see SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018).  IPR promotes "a more efficient and streamlined patent system" by providing a "cost effective alternativ[e] to litigation," House Report 40, 48, that offers "the expertise of the Patent Office on questions of patentability," 157 Cong. Rec. S1352 (daily ed. Mar. 8, 2011) (Sen. Udall), while "limit[ing] unnecessary and counterproductive litigation costs," House Report at 40; *see id.* at 39-40 (discussing "focus[] on … reducing unwarranted litigation costs").

For example, whereas patent-validity issues in infringement suits are decided by lay jurors, IPRs are decided by administrative patent judges with "technical expertise and experience," who "contribute to the public confidence by providing more consistent and higher quality final written decisions" on patentability.  *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1336 (Fed. Cir. 2019); *see* § 6(a) ("administrative patent judges shall be persons of competent legal knowledge and scientific ability").  Unlike a general verdict, the Board's final written decision facilitates more informed appellate review.  IPR is also more streamlined than litigation:  An IPR petitioner may challenge a patent "only" on limited grounds, § 311(b); discovery is limited, § 316(a)(5); 37 C.F.R. § 42.51; and strict deadlines generally result in resolution of IPR within 18 months after a petition is filed, §§ 314(b), 316(a)(11); 37 C.F.R. §§ 42.100, 42.107.  And in IPR, questionable patent claims can be canceled if the petitioner proves unpatentability by a preponderance of the evidence, § 316(e), whereas in litigation questionable patents survive unless the defendant proves invalidity by clear and convincing evidence, *see Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

Congress expected that IPR would often proceed in parallel with litigation in which the same patent is at issue—particularly where an infringement defendant challenges the asserted patent through IPR.  Indeed, IPR was "designed in large measure to simplify proceedings before the courts

---

[1] Unless otherwise noted, all subsequent statutory references are to Title 35.

and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at \*4 (E.D. Tex. Mar. 11, 2015) (Bryson, J., sitting by designation). Several provisions of the AIA reflect that expectation. Most significantly, an infringement defendant may obtain IPR with regard to the patent claims asserted in the lawsuit so long as the IPR petition is filed within "1 year after the date on which the petitioner … is served with a complaint alleging infringement of the patent," § 315(b). And although the AIA bars IPR if the petitioner previously "filed a civil action challenging the validity of a [patent] claim," that bar does not apply where the petitioner challenged the patent through a counterclaim in an infringement suit. § 315(a)(1), (3). No other statutory provision permits the PTO to deny an IPR petition based on a pending lawsuit.

### B. The *NHK* And *Fintiv* Decisions Articulated A Discretionary Standard For Denying IPR Petitions Based On Pending Parallel Litigation

The AIA defines several conditions that must be met for the Director to grant an IPR petition, including filing deadlines and content requirements, *e.g.*, §§ 311(c)(1)-(2), 312(a)(1)-(5), 315(a)(1)-(2) & 315(b), and prohibits the Director from instituting IPR "unless" he finds "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition," § 314(a). The statute also specifies grounds on which the Director may decide not to institute IPR even if the preconditions are met. For example, the Director may "take into account whether, and reject the petition … because, the same or substantially the same prior art or arguments previously were presented to the [Patent] Office." § 325(d). The Director has delegated to the Board the authority to institute IPR. 37 C.F.R. § 42.4(a); *see id.* §§ 42.2, 42.108.

For several years after the AIA took effect, the Board applied these statutory criteria, and others adopted through duly promulgated regulations, to grant or deny IPR petitions regardless of related litigation. When administrative proceedings coincided with parallel litigation, courts often stayed the litigation to "'effectuate[] the intent of the AIA by allowing the agency with expertise to have the first crack at cancelling any claims that should not have issued in the patents-in-suit before costly litigation continues.'" *Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d 1032, 1038 (N.D. Cal. 2015); *see id.* at 1035 (recognizing "'liberal policy'" in favor of stays pending PTO proceedings).

Beginning in 2018, however, the Board articulated a new standard, not reflected in the AIA or any regulation, under which the Board may decline to institute IPR based on litigation over the validity of the same patent claims—even if the petition was timely under § 315(b). In *NHK Spring Co. v. Intri-Plex Technologies, Inc.*, the Board declared that "the advanced state of … district court proceeding[s]" "weighs in favor of denying [IPR] under § 314(a)." No. IPR2018-00752, Paper 8, at 20 (P.T.A.B. Sept. 12, 2018) (Am. Compl. Ex. A). There, the IPR petition challenged a patent that was also the subject of an infringement suit involving "the same prior art and arguments." *Id.* The suit was "nearing its final stages," with trial "set to begin" about six months before IPR would end. *Id.* The Board denied institution, concluding that IPR "would not be consistent with 'an objective of the AIA ... to provide an effective and efficient alternative to district court litigation.'" *Id.*

In *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) (Am. Compl. Ex. B), the Board elaborated on how it would consider parallel litigation. There, Apple sought IPR of patent claims that had been asserted against it in an infringement suit. Apple filed the petition less than ten months after the suit began, well within § 315(b)'s deadline. Building on *NHK*, the Board said it would "weigh" six "factors" under § 314(a) in deciding whether to institute IPR when parallel litigation is pending "as part of a balanced assessment of all relevant circumstances of the case, including the merits," to promote "system efficiency, fairness, and patent quality." *Fintiv*, Paper 11 at 5 (quotation marks omitted). Those "factors," none of which is in the AIA, are:

1. whether the court granted a stay or evidence exists that one may be granted if [an IPR] proceeding is instituted;

2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;

3. investment in the parallel proceeding by the court and the parties;

4. overlap between issues raised in the petition and in the parallel proceeding;

5. whether the [IPR] petitioner and the defendant in the parallel proceeding are the same party; and

6. other circumstances that impact the Board's exercise of discretion, including the merits [of the challenge to patentability].

*Id.* at 5-6. The *Fintiv* decision did not purport to "instruct [the Board] how to weigh the factors." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. IPR2020-00122, 2020 WL 2511246, at *5

(P.T.A.B. May 15, 2020) (Crumbley, A.P.J., dissenting).

**C.      The Director Adopted *NHK-Fintiv* As A Binding Rule Governing All Institution Decisions Without Notice-And-Comment Rulemaking**

"[B]y default," the Board's decisions have no precedential force in later proceedings.  Patent Trial and Appeal Board, Standard Operating Procedure 2 (Rev. 10) ("SOP-2"), at 3, 8-9 (Sept. 20, 2018).[2]  However, the PTO has adopted operating procedures that permit the Director to designate some Board decisions as "precedential."  SOP-2 at 1-2, 8-12.  Decisions designated as "precedential" are "binding" on the Board "in subsequent matters involving similar facts or issues."  *Id.* at 11.

Other than allowing members of the public to nominate Board decisions for precedential designation, SOP-2 at 9, the PTO's designation procedure does not allow any opportunity for public comment.  *Id.* at 8-11.  Instead, a committee of PTO judges makes a recommendation, *id.* at 10, based on the issue's importance and whether precedential status would "resolve conflicts between Board decisions and … promote certainty and consistency among Board decisions," *id.* at 3-4, 9.  The Director then decides whether to designate the decision as precedential.  *Id.* at 11.  The Director may also designate a Board decision precedential "at any time, in his or her sole discretion."  *Id.* at 11 n.4.

Following this process, the Director designated *NHK* as precedential on May 7, 2019.  *NHK*, Paper 8 at 1.  And he designated *Fintiv* as precedential on May 5, 2020.  *Fintiv*, Paper 11 at 1.  By designating the decisions as precedential, the Director adopted them as a final rule (the "*NHK-Fintiv* rule") that binds the Board and governs all future IPR institution decisions.  SOP-2 at 11.

**D.      The Board Has Applied The *NHK-Fintiv* Rule To Deny IPR Petitions In Many Cases Where Parallel Infringement Litigation Was Pending**

The Board has applied the *NHK-Fintiv* rule to deny numerous IPR petitions.  Even before *Fintiv*, the Board repeatedly relied on *NHK* to deny institution in light of parallel litigation.  For instance, in *Edwards Lifesciences Corp. v. Evalve, Inc.*, Nos. IPR2019-01479, 2020 WL 927867 (P.T.A.B. Feb. 26, 2020) and IPR2019-01546, 2020 WL 1486766 (P.T.A.B. Mar. 19, 2020), the Board denied two IPR petitions Edwards had filed approximately six months after being served with

---

[2] https://www.uspto.gov/sites/default/files/documents/SOP2%20R10%20FINAL.pdf.

an infringement complaint.  The district court had set the trial date to occur before a final written

decision would issue in IPR, and the Board speculated that the court intended to preserve that date.

Two weeks after the Board's denial, the district court vacated the trial date and eventually reset it for

three months later before vacating it once again.  Am. Compl. ¶ 56.

Similarly, in *Google LLC v. Uniloc 2017 LLC*, No. IPR2020-00115, 2020 WL 1523248

(P.T.A.B. Mar. 27, 2020), Google timely filed an IPR petition less than nine months after being

served with a related infringement complaint, but the Board denied institution under *NHK* based on

the scheduled trial date.  *Id.* at *1, 4.  Soon after Google's request for rehearing was denied, the

district court action was ordered to be transferred, and the trial date was vacated.  *Uniloc 2017 LLC v.*

*Google LLC*, No. 2:18-cv-00504, 2020 WL 3064460, at *6 (E.D. Tex. June 8, 2020).

On the day *Fintiv* was designated precedential, the Board applied the *NHK-Fintiv* rule to deny

Intel's IPR petition in *Intel Corp. v. VLSI Technology LLC*, No. IPR2020-00106, 2020 WL 2201828

(P.T.A.B. May 5, 2020).  Although the petition was timely, the Board concluded that the "advanced

stage" of related district court litigation, the overlap in the issues, and the timing of trial—which was

then set for seven months before IPR would have ended but was subsequently postponed—meant that

IPR would have been "an inefficient use of Board, party, and judicial resources."  *Id.* at *6.

In *Fintiv* itself, the Board applied the newly precedential rule to deny Apple's IPR petition,

explaining: "trial is scheduled to begin two months before we would reach a final decision … , the

District Court has expended effort resolving substantive issues in the case, the identical claims are

challenged based on the same prior art in both the Petition and in the District Court, and the

defendant in District Court and the Petitioner here are the same party."  *Apple Inc. v. Fintiv, Inc.*, No.

IPR2020-00019, 2020 WL 2486683, at *3, *7 (P.T.A.B. May 13, 2020).  Trial was later rescheduled

for after the deadline the Board would have had for issuing a final written decision in IPR.

The Board subsequently applied the *NHK-Fintiv* rule to deny IPR petitions filed five months

after service of the infringement complaint in *Cisco Systems, Inc. v. Ramot at Tel Aviv University*

*Ltd.*, 2020 WL 2511246; *id.*, No. IPR2020-00123, 2020 WL 2511247 (P.T.A.B. May 15, 2020).

Based on the trial date, overlap in issues, and the absence of a stay in the district court, the Board

assumed IPR would "duplicate effort" in the litigation, 2020 WL 2511246, at *4—even though the

court had denied a stay "without prejudice" in light of its "established practice" to grant stays only *after* the Board institutes IPR, *id.* at *3; *see* 2020 WL 2511247, at *5.  Trial was later rescheduled.

Since then, the Board has repeatedly acknowledged its obligation to apply the *NHK-Fintiv* rule and has done so in resolving numerous IPR petitions.  *See, e.g.*, *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00203, 2020 WL 3662522, at *7 (P.T.A.B. July 6, 2020); *Supercell Oy v. GREE, Inc.*, No. IPR2020-00513, 2020 WL 3455515, at *7 (P.T.A.B. June 24, 2020).  In many cases, the Board has denied IPR petitions based solely on parallel litigation.  *See* Am. Compl. ¶ 61.  In other cases, the Board has granted IPR—but in doing so, has reached inconsistent and irrational results.  *See infra* pp. 21-23.  Most recently, the Board denied an IPR petition filed *less than one month* after the district court complaint, notwithstanding that the Board found the petition's merits "particularly strong." *Philip Morris Prods., S.A. v. RAI Strategic Holdings, Inc.*, No. IPR-2020-00921, 2020 WL 6750120, at *12 (P.T.A.B. Nov. 16, 2020).  As a result, plaintiffs and other infringement defendants have been denied the efficient and specialized alternative to litigation that Congress intended IPR to provide.

## LEGAL STANDARD

Under the APA, a "reviewing court shall … hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).  Moreover, even substantively valid action "shall" be "h[eld] unlawful and set aside" if it was taken "without observance of procedure required by law."  *Id.* § 706(2)(D).  In an APA action, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Gill v. Dep't of Justice*, 246 F. Supp. 3d 1264, 1267-1268 (N.D. Cal. 2017), *aff'd*, 913 F.3d 1179 (9th Cir. 2019).  Because the court in an APA suit is "limited to reviewing the administrative record, there can be no genuine issue of material fact" for trial.  *Alameda Health Sys. v. Ctrs. for Medicare & Medicaid Servs.*, 287 F. Supp. 3d 896, 910 (N.D. Cal. 2017).[3]

---

[3] There are no adjudicative facts to be found, and this motion can be resolved based on *NHK* (Paper

[Footnote continued on next page]

**ARGUMENT**

I.     THE *NHK-FINTIV* RULE EXCEEDS THE DIRECTOR'S AUTHORITY AND VIOLATES THE AIA

"[B]oth [an agency's] power to act and how [it is] to act [are] authoritatively prescribed by

Congress."  *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).  Here, if an IPR petition is timely

under § 315(b), nothing in the AIA authorizes the Director (or the Board as his delegate) to deny it

based on overlap with a pending infringement suit.  By permitting the Board to do so, the *NHK-Fintiv*

rule contravenes the AIA, and the Director thus exceeded his statutory authority in adopting it.

A.     **The AIA Precludes The Director From Denying IPR Petitions Based On Parallel Infringement Litigation That Has Been Pending For Less Than One Year**

The AIA's text and structure make clear that Congress prohibited the Director from denying

IPR petitions based on overlap with pending infringement litigation as long as the petition is filed

within one year after service of the complaint.

The AIA sets forth detailed rules governing the determination whether to initiate IPR.  These

provisions define both mandatory conditions that must be met for IPR to be initiated and permissive

factors the Director may rely on to decline IPR even where the prerequisites are met.  *See, e.g.*,

§ 312(a)(1)-(5) (procedural requirements); § 311(c)(1) (barring IPR if petition was filed less than nine

months after patent was granted); § 314(a) (Director "may not" institute IPR "unless" he finds "a

reasonable likelihood that the petitioner would prevail"); § 325(d) (Director may deny IPR if "the

same or substantially the same prior art or arguments previously were presented" to the PTO).

Of particular relevance, the AIA prohibits IPR if the petition "is filed more than 1 year after

_____

8) and *Fintiv* (Paper 11), which were attached to the complaint.  Am. Compl. Exs. A, B.  Plaintiffs

have therefore not included a statement of undisputed material facts and believe a certified

administrative record is unnecessary.  *See, e.g.*, *California v. U.S. Bureau of Land Mgmt.*, 277 F.

Supp. 3d 1106, 1116 (N.D. Cal. 2017) (granting summary judgment in APA action without

administrative record where motion was "limited to legal issues that do not depend on the

administrative record, aside from the few key documents the parties cited in their motions, which the

Defendants do not dispute are subject to judicial notice").

1   the date on which the petitioner … is served with a complaint alleging infringement of the patent."

2   § 315(b).  This provision indicates that a timely IPR petition should not be denied because of parallel

3   litigation.  Congress specifically recognized that IPR might overlap with an infringement action and

4   concluded that IPR can and should be available so long as the petition is filed within the one-year

5   period.  Statutorily defined time limits inherently "take[] account of delay," and therefore

6   "unreasonable, prejudicial delay" and other "case-specific circumstances"—like the *NHK-Fintiv*

7   factors—"cannot be invoked to preclude adjudication of a claim … brought within the [statutory]

8   window."  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667, 677-680, 685 (2014); *see also*

9   *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 959-960 (2017)

10  ("applying laches within a limitations period specified by Congress would give judges a 'legislation-

11  overriding' role that is beyond the Judiciary's power"); *Holmberg v. Armbrecht*, 327 U.S. 392, 395

12  (1946) ("If Congress explicitly puts a limit upon the time for enforcing a right which it created, there

13  is an end of the matter.").  "Where a statute's language carries a plain meaning," an agency's duty "is

14  to follow its commands as written, not to supplant those commands with others it may prefer."  *SAS*

15  *Inst.*, 138 S. Ct. at 1355.  Here, Congress's command is clear:  The Director may not deny an IPR

16  petition based solely on parallel litigation; as long as the petition is timely, IPR remains available.

17      The AIA's structure confirms this conclusion.  Various provisions in the AIA specify how the

18  Director may or must handle situations in which there are parallel proceedings.  These provisions

19  show that Congress carefully considered how to promote both efficiency and the purposes of IPR in

20  the face of parallel proceedings and intended for IPR to be available even when parallel infringement

21  litigation is pending.  For example, the AIA explicitly gives the Director discretion to decide whether

22  to institute IPR when there was a prior related *administrative* proceeding:  "[T]he Director may take

23  into account whether, and reject the petition … because, the same or substantially the same prior art

24  or arguments previously were presented to the [Patent] Office."  § 325(d).  And if another matter

25  involving the same patent is currently pending before the PTO during the pendency of IPR, "the

26  Director may determine the manner" in which IPR may proceed, "including providing for stay,

27  transfer, consolidation, or termination of any such matter or proceeding."  § 315(d).  But no

28  comparable provision grants the Director discretion over whether to proceed with IPR when there is a

parallel *lawsuit*. To the contrary, the AIA establishes specific rules governing parallel suits: The AIA prohibits institution of IPR if the petitioner has previously filed suit challenging the patent. § 315(a)(1). But if the IPR petitioner files such a lawsuit *after* petitioning for IPR, the AIA allows IPR and automatically stays the litigation. § 315(a)(2). And if an IPR petitioner has asserted a "counterclaim challenging the validity of a claim of a patent" in response to an infringement claim, the counterclaim does not trigger § 315(a)(1)'s bar on parallel civil actions. § 315(a)(3).

Congress thus contemplated that IPR and related litigation would proceed together and "knew how to draft the kind of statutory language that [the Director] seeks to read into" the AIA. *State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 137 S. Ct. 436, 443-444 (2016). "[H]ad Congress intended to" grant the Director the discretion he has asserted in the *NHK-Fintiv* rule, Congress thus "would have said so." *Id.*; *see also SAS Inst.*, 138 S. Ct. at 1356. Moreover, it would have made little sense for Congress to specifically direct how IPR and overlapping proceedings should be managed "if, in truth, the Director enjoyed the discretion" to deny IPR petitions based on parallel litigation. *SAS Inst.*, 138 S. Ct. at 1356. Rather, these provisions already account for administrative efficiency to the extent Congress deemed appropriate—including by specifically authorizing IPR where the petition is timely under § 315(b). The Director may not substitute his judgment for Congress's by denying a timely IPR petition in light of a parallel infringement action.

## B. The *NHK-Fintiv* Rule Thwarts The Purposes Of IPR

The *NHK-Fintiv* rule also defeats the purposes of IPR, and Congress therefore could not have intended the Director to adopt it. Under the rule, substantive overlap between the issues raised in litigation and in a prospective IPR weighs against institution, and in practice, the Board has emphasized this factor in several decisions denying institution. *See, e.g.*, *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00203, 2020 WL 3662522, at *7 (P.T.A.B. July 6, 2020). But the central purpose of IPR is to provide a more efficient and specialized additional pathway for resolving the same issues that the challenger could otherwise have brought only in litigation. *Supra* pp. 3-5. By treating overlap as a reason to deny institution of IPR, the *NHK-Fintiv* rule contravenes that purpose.

To enable IPR to serve as a cost-effective alternative to litigation over invalid patents, *see supra* pp. 3-5, the AIA encourages IPR petitioners to assert potentially meritorious challenges in the

1    IPR petition, thereby inviting overlap between the IPR and the litigation in which the petitioner

2    would assert those same challenges as defenses against (or counterclaims on) an infringement claim.

3    In particular, by conditioning the availability of IPR upon showing a "reasonable likelihood that the

4    petitioner would prevail with respect to at least 1 of the claims challenged in the petition," § 314(a),

5    the AIA encourages the petitioner to include in the petition its strongest grounds for challenging a

6    patent claim—which of course can also be among the petitioner's strongest defenses to infringement

7    liability in litigation.  At the same time, the AIA discourages splintering issues between IPR and

8    litigation.  For example, if an IPR petition has "result[ed] in a final written decision," the AIA bars

9    the petitioner from asserting in litigation any ground for invalidity "that the petitioner raised or

10   reasonably could have raised during that inter partes review."  § 315(e)(2).  Similarly, the AIA

11   requires the Director to institute IPR for all patent claims challenged in an IPR petition or none at all.

12   *SAS Inst.*, 138 S. Ct. at 1354-1358.  And the AIA precludes patent owners from "offer[ing] differing

13   interpretations of prior art in different proceedings," House Report at 46, by permitting any statement

14   made in an infringement suit by the patent owner to be cited in an IPR, § 301(a), (d).

15          Congress thus intended IPR as a mechanism for comprehensively resolving patentability

16   issues that might otherwise arise in litigation.  Yet the *NHK-Fintiv* rule encourages fragmentation of

17   issues between IPR and litigation.  To avoid denial of institution under the *NHK-Fintiv* rule, an IPR

18   petitioner must minimize overlap between the petition and pending litigation.  Indeed, the Board has

19   encouraged IPR petitioners to stipulate that they would "not pursue [in litigation] any ground raised

20   or that could have been reasonably raised in an IPR."  *Sand Revolution II, LLC v. Cont'l Intermodal*

21   *Grp. – Trucking LLC*, No. IPR2019-01393, 2020 WL 3273334, at *5 n.5 (P.T.A.B. June 16, 2020).

22   That splintering of issues directly contradicts the AIA's purpose.

23          The rule also yields absurd results Congress could not have intended.  If an infringement

24   defendant holds back an issue from its litigation defense to avoid overlap with IPR, the defendant will

25   likely be deemed to have forfeited that defense in the litigation—indeed, that appears to be exactly

26   what the Board believes petitioners should do.  *Sand Revolution II*, 2020 WL 3273334, at *5 n.5

27   (stating that petitioner should have "expressly waived in the district court any overlapping

28   patentability/invalidity defenses").  A defendant should not have to pay that price for the mere

possibility of persuading the Board to institute IPR. Yet if the defendant instead holds back an issue from its IPR petition, it will forgo invalidation of the patent in IPR on that ground and weaken the petition's likelihood of success—reducing the chances of securing IPR at all. *See* § 314(a); *Fintiv*, Paper 11 at 14-16. Congress could not have intended such a self-defeating conception of IPR.

Similarly, the *NHK-Fintiv* rule undercuts the considered policy judgment underlying § 315(b)'s one-year period. Congress was aware that administrative proceedings and litigation concerning the same patent could proceed in parallel—a "possibility [that] has long been present in our patent system." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2146 (2016). Before the establishment of IPR, parties could challenge issued patents pursuant to a "similar procedure, known as 'inter partes reexamination.'" *Id.* at 2137 (emphasis omitted); *see* § 311 *et seq.* (2006). The former statute took a strict approach to overlapping proceedings, prohibiting the agency from maintaining an inter partes reexamination after "a final decision" in litigation that the petitioner "ha[d] not sustained its burden of proving the invalidity" of the patent. § 317(b) (2006).

When Congress replaced inter partes reexamination with IPR in the AIA, *see Cuozzo*, 136 S. Ct. at 2137, it eliminated that provision. Rather than precluding or cutting off parallel proceedings, Congress chose to address the potential for "burdensome overlap between [IPR] and patent infringement litigation" in a different way: by setting a one-year deadline for the accused infringer to petition for IPR. *Thryv*, 140 S. Ct. at 1374-1375; *see* § 315(b). As the AIA's co-sponsor explained, the AIA "coordinate[s]" IPR with litigation by "setting a time limit for seeking [IPR] if the petitioner … is sued for infringement of the patent." 157 Cong. Rec. S1041 (daily ed. Mar. 1, 2011) (Sen. Kyl).

The one-year period carefully balanced petitioners' need for time to evaluate claims against the potential harm of excessive delay. If petitioners were allowed too much time to seek review, they could wait until the litigation had nearly ended before seeking IPR, using IPR "for purposes of harassment or delay," 157 Cong. Rec. S1326 (daily ed. Mar. 7, 2011) (Sen. Sessions); *see* 157 Cong. Rec. S1041 (daily ed. Mar. 1, 2011) (Sen. Kyl). Such tactics would undermine IPR as a "quick and cost effective alternative[] to litigation," House Report at 48, and might unfairly burden patent owners "who ha[d] already endured long challenges in court," *Thryv*, 140 S. Ct. at 1379 (Gorsuch, J., dissenting); *see also* 157 Cong. Rec. S1326 (daily ed. Mar. 7, 2011) (Sen. Sessions) (citing the "time

1  limit[] on starting an [IPR] when litigation is pending" as one of "many protections that were long

2  sought by inventors and patent owners").  On the other hand, Congress recognized infringement

3  defendants' need for "a reasonable opportunity to identify and understand the patent claims that are

4  relevant to the litigation" before having to file an IPR petition.  157 Cong. Rec. S5429 (daily ed. Sept.

5  8, 2011) (Sen. Kyl).  Otherwise, accused infringers would have to choose either to forgo IPR despite

6  meritorious arguments or to file overbroad or underdeveloped IPR petitions before the issues in

7  litigation had crystallized.  Congress thus rejected a proposed requirement that IPR petitions be filed

8  within just six months of an infringement suit's start, opting instead for the longer one-year period to

9  ensure sufficient time for infringement defendants to evaluate patent claims before seeking IPR.  *Id.*;

10  *see* S. 23, 112th Cong. Sec. 5(a), § 315(b) (2011) (engrossed bill setting six-month limit).

11      The Director, however, rejected Congress's balance, instead asserting that instituting IPR

12  when there is parallel litigation might be "unfair" to the patent owner.  *Fintiv*, Paper 11 at 11.  That

13  judgment was not the agency's to make.  "Disagreeing with Congress's expressly codified policy

14  choices isn't a luxury administrative agencies enjoy."  *Cent. United Life Ins. Co. v. Burwell*, 827 F.3d

15  70, 73 (D.C. Cir. 2016).  Congress weighed the interests of patent owners and accused infringers and

16  determined that a one-year deadline struck the proper balance.  The *NHK-Fintiv* rule disregards that

17  decision, overrides the carefully calibrated one-year period, and defeats the point of IPR.

18      **C.      Sections 314(a) And 316(b) Do Not Authorize The *NHK- Fintiv* Rule**

19      In *NHK* and *Fintiv*, the Board relied primarily on § 314(a) for the purported authority to deny

20  institution based on overlap with parallel infringement litigation.  *See NHK*, Paper 8 at 20; *Fintiv*,

21  Paper 11 at 2-3, 5.  Section 314(a) states that the Director "may not" institute IPR "unless" the

22  Director finds that "there is a reasonable likelihood that the petitioner would prevail" on at least one

23  claim.  That provision does not confer unbounded discretion to deny IPR petitions based on factors

24  that contradict the statute.  Although the statutory term "may," standing alone, sometimes connotes

25  broad permission or discretion, as used in § 314(a) it clearly does not.  The "may not … unless"

26  formulation in § 314(a) instead defines one condition that must be satisfied for institution; it implies

27

28

nothing about non-statutory conditions for denying IPR petitions.[4]

Citing § 314(a), the Supreme Court has observed that the "decision to deny a petition is a matter committed to the Patent Office's discretion." *Cuozzo*, 136 S. Ct. at 2140; *see also SAS Inst.*, 138 S. Ct. at 1356. But that observation simply reflects that some provisions of the AIA explicitly give the Director specifically defined discretion relating to institution of IPR. Most notably, § 314(a) itself calls on the Director to make a discretionary judgment whether an IPR petition presents a "reasonable likelihood" of success. And the Director "may take into account" whether the same issues in an IPR petition were previously presented to the PTO in another proceeding. § 325(d). Those provisions do not confer the unbounded discretion that the *NHK-Fintiv* rule purports to invoke, and *Cuozzo* did not hold otherwise. The Court had no occasion in *Cuozzo* to delimit the Director's discretion to deny institution because that case involved an instituted proceeding. 136 S. Ct. at 2138-2139. There is accordingly no reason to read *Cuozzo* to have endorsed a general discretionary denial power untethered to specific statutory authorities and limitations.

Whatever discretion the Director might have under § 314(a) cannot be exercised in a manner that contravenes the statute's text, structure, and purpose. *See Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 321 (2014); *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1361 (Fed. Cir. 2008). Even where a statute confers discretion, agencies must operate within the statute's bounds.

---

[4] The Court owes no deference to the Director's interpretation of the AIA. Deference is appropriate only if an agency interpretation was "promulgated in the exercise of" authority that "Congress delegated … to the agency generally to make rules carrying the force of law." *United States v. Mead Corp.*, 533 U.S. 218, 226-227 (2001); *see Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1349-1350 (Fed. Cir. 2020) (additional views of Prost, C.J., Plager & O'Malley, JJ.). Here, the *NHK-Fintiv* rule was not duly promulgated through notice-and-comment rulemaking. *Infra* pp. 23-25. In any event, "after applying traditional tools of interpretation," there is "no uncertainty" about the AIA's meaning for the agency to fill. *SAS Inst.*, 138 S. Ct. at 1358. And even if there were, the Director's interpretation would be outside "the bounds of reasonable interpretation." *City of Arlington*, 569 U.S. at 296.

Here, as explained, Congress determined that IPR can proceed even when there is parallel infringement litigation. The Director may not like the balance Congress struck, but he "may not rewrite clear statutory terms to suit [his] own sense of how the statute should operate." *Util. Air*, 573 U.S. at 328; *see also, e.g.*, *SAS Inst.*, 138 S. Ct. at 1355 ("the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer").[5]

The Board also cited § 316(b), *see Fintiv*, Paper 11 at 6, which provides that "[i]n prescribing *regulations* under this section, the Director shall consider the effect of any such *regulation* on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter." § 316(b) (emphasis added). Section 316(b) does not support the *NHK-Fintiv* rule because that rule was not adopted by "regulation." Section 316(b) does not provide free-floating authority for the Director to adopt standards for declining to institute IPR whenever he perceives a concern for efficiency or any of the other values recited in § 316(b); it merely instructs the Director to consider those values when "prescribing regulations under this section," which did not occur here.

Moreover, the relevant regulations "prescrib[ed] … under" § 316 are regulations "setting forth the standards for the showing of sufficient grounds to institute a review under section 314(a),"

---

[5] Under the APA, a court may not provide relief on substantive grounds where the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). But the Supreme Court has read § 701(a)(2) "quite narrowly" to apply only in "'rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018). That stringent test is not met here because the AIA provides a clear standard to apply: The *NHK-Fintiv* rule contradicts the AIA's text, structure, and purpose. *Briggs v. Sullivan*, 954 F.2d 534, 537-538 (9th Cir. 1992) ("Because we have statutory standards, case law, and legislative intent indicating Congress's desires," decision whether to investigate was not committed to agency discretion by law.). *Cuozzo*'s passing citation to § 701(a)(2) did not consider that test and referred only to reviewability of specific institution decisions. *See* 136 S. Ct. at 2140.

1 § 316(a)(2), which addresses whether "there is a reasonable likelihood that the petitioner would

2 prevail"—a subject already covered by separate PTO regulations, *see* 37 C.F.R. § 42.108(c). Even if

3 § 316(a)(2) supported other bases for denying IPR petitions, the Director could not invoke that

4 authority to adopt grounds for denying IPR petitions that contradict or undermine the AIA's text,

5 structure, and purpose, as the *NHK-Fintiv* rule's factors do.

6 **II.      THE NHK-FINTIV RULE IS ARBITRARY AND CAPRICIOUS**

7        The *NHK-Fintiv* rule should also be set aside as arbitrary and capricious. *See* 5 U.S.C.

8 § 706(2)(A). In adopting the rule, the agency was required to "examine the relevant data and

9 articulate a satisfactory explanation for its action including a rational connection between the facts

10 found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*

11 *Co.*, 463 U.S. 29, 43 (1983) (quotation marks omitted). Agency action is arbitrary and capricious "if

12 the agency relied on irrelevant factors, failed to consider a crucial aspect of the issue before it, offered

13 an explanation that runs counter to the evidence, or is so implausible that it could not be ascribed to a

14 difference in view or the product of agency expertise." *City of Los Angeles v. U.S. Dep't of*

15 *Commerce*, 307 F.3d 859, 874 (9th Cir. 2002) (quotation marks omitted); *see Dep't of Homeland Sec.*

16 *v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1905, 1912 (2020). The *NHK-Fintiv* rule fails this test.

17 Its factors are speculative and malleable, leading to disparate outcomes on similar facts. They also

18 create incentives that undermine the rule's supposed efficiency goals and enable infringement

19 plaintiffs to block IPR through strategic forum-shopping.

20        a.      The *NHK-Fintiv* factors require the Board to speculate about the likely course of

21 litigation, which produces irrational outcomes and unpredictable disparities between similar IPR

22 petitions. *See Horsehead Res. Dev. Co. v. Browner*, 16 F.3d 1246, 1269 (D.C. Cir. 1994) ("agency

23 actions based upon speculation are arbitrary and capricious").

24        Under the rule, the Board must guess whether a stay "may be granted" if IPR is instituted.

25 *Fintiv*, Paper 11 at 6. Additionally, the Board must guess when trial will begin. Even when a trial

26 has already been scheduled, denying IPR based on that schedule assumes the trial will not be

27 rescheduled—an assumption that frequently proves incorrect. A typical case is *Intel Corp. v. VLSI*

28 *Technology LLC*, in which Intel sought IPR of a patent asserted against it in an infringement suit in

the Western District of Texas. No. IPR2020-00113, 2020 WL 2544912, at *1 (P.T.A.B. May 19, 2020). That suit had been consolidated with two others for pre-trial purposes, and all three trials were set for October 5, 2020, a date that would precede the Board's final written decision. *Id.* at *4. The Board acknowledged that the three trials could not actually proceed simultaneously and thus that "at least two of the trials will not occur on" the scheduled date. *Id.* Nonetheless, the Board concluded that the trial date weighed against institution and denied the IPR petition, speculating that trial might still occur before the end of IPR, *id.*—notwithstanding that the potential trial date had already been postponed to November 16, 2020, *see* Second Amended Agreed Scheduling Order, *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-977, ECF No. 161 (W.D. Tex. May 15, 2020). Subsequently, the Board denied institution with regard to the patent claims challenged in the third of the three consolidated *VLSI* cases even though by that point there was no "firm trial date" for the third case; instead, the Board speculated that "there is no indication that trial will occur *after* October 2021," which would have been the Board's deadline for a final written decision. *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00582, 2020 WL 5846628, at *3 (P.T.A.B. Oct. 1, 2020) (emphasis added); *see also id.*, No. IPR2020-00583, 2020 WL 5900072, at *3 (P.T.A.B. Oct. 5, 2020) (same); Third Amended Agreed Scheduling Order, *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-977, ECF No. 280 (W.D. Tex. Oct. 13, 2020) (addressing trial date). Following the Board's decision, the district court formally vacated the trial date for the third case. Third Amended Agreed Scheduling Order, *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-977, ECF No. 280 (W.D. Tex. Oct. 13, 2020). Meanwhile, the district court rescheduled the trial date for the first trial to January 11, 2021. Order Resetting Jury Selection and Trial, *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-977, ECF No. 320 (W.D. Tex. Oct. 28, 2020).

Worse, it is common for the rescheduling to happen *after* the Board has already denied an IPR petition based on its speculation about when the trial would occur. One study found 70% of trials in the Western District of Texas and *all* trials in Delaware—the two busiest patent venues—were postponed *after* the Board denied IPR in reliance on earlier trial dates.[6] If the IPR petitioner is lucky,

---

[6] McKeown, *District Court Trial Dates Tend To Slip After PTAB Discretionary Denials*, Patents

[Footnote continued on next page]

such a postponement will occur soon enough after an institution denial that the petitioner can seek rehearing before the 30-day deadline expires. *See* 37 C.F.R. § 42.71(d)(2); *see, e.g.*, *Sand Revolution II*, 2020 WL 3273334, at *4 (on rehearing, reversing previous denial of institution in light of postponed trial date). Most petitioners, however, will not be so lucky, in which case the *NHK-Fintiv* rule will have irrevocably deprived the petitioner of any avenue for speedy patent review—neither a quick trial nor an IPR—and Congress's goal in enacting the AIA will have been defeated. For example, in *Fintiv*, trial had not yet been scheduled when Apple filed its IPR petition; a trial date was later set but then rescheduled amid briefing on the IPR petition. *See Fintiv*, 2020 WL 2486683, at *5. Despite this moving target, the Board determined that a trial date only two months before the Board's deadline to issue a final written decision disfavored institution of IPR, noting that "[w]e have no reason to believe that the jointly agreed-upon trial date, which already has been postponed by several months … will be postponed again." *Id.* But five months after the Board denied the petition, the district court rescheduled the trial again, this time until *after* the deadline the Board would have had for issuing a final written decision had it instituted IPR. Similarly, in *Uniloc 2017*, the Board denied Google's IPR petition based on a trial date that was subsequently vacated after the time for seeking rehearing of the denial had expired. *See* 2020 WL 3064460, at *6. And thus far, the Federal Circuit has dismissed every appeal of a *Fintiv*-based non-institution decision, leaving no avenue for judicial review. *See, e.g.*, *Cisco Systems Inc. v. Ramot at Tel Aviv University Ltd.*, Nos. 2020-2047, -2049, 2020 WL 6373016 (Fed. Cir. Oct. 30, 2020) (nonprecedential).

b. The *NHK-Fintiv* rule also creates perverse incentives that undermine efficiency—the PTO's ostensible goal in adopting the rule—and Congress's purpose in providing for IPR. The *NHK-Fintiv* rule pressures infringement defendants to race to file their IPR petitions quickly after being served in an infringement suit. If a petitioner waits too long to seek IPR, trial might have been scheduled by the time the Board considers the IPR petition, and if the proposed trial date falls before the deadline for a final written decision, the Board will likely deny the petition under the *NHK-Fintiv*

―――――――――――――

Post-Grant (July 24, 2020), https://www.patentspostgrant.com/district-court-trial-dates-tend-to-slip-after-ptab-discretionary-denials/.

rule's second factor. *Fintiv*, Paper 11 at 11. This pressure not only undermines § 315(b)'s carefully calibrated one-year period, but also leads defendants to file their IPR petitions before the issues in litigation have crystallized. Such petitions are often overinclusive because the petitioner lacked a reasonable opportunity to assess the asserted patent claims and focus the petition. Incentivizing premature IPR petitions thus causes the Board and parties to expend resources unnecessarily, contravening the Director's purported efficiency goals. *See Ramot*, 2020 WL 2511246, at *10 (Crumbley, A.P.J., dissenting); *Petrella*, 572 U.S. at 682-683 ("If the rule were … 'sue soon, or forever hold your peace,' copyright owners would have to mount a federal case fast …. [The] limitations period … avoids such litigation profusion [and] allows a copyright owner to defer suit until she can estimate whether litigation is worth the candle.").[7]

The *NHK-Fintiv* rule also incentivizes infringement plaintiffs to exploit the vagaries of trial dates to foreclose IPR. Some jurisdictions tend to quickly set early trial dates that later change. For example, as noted, the Western District of Texas set three trials for the same day in the *VLSI* cases—a practical impossibility yet a common practice in some courts. *See supra* pp. 18-19. The plaintiffs' bar is not ignorant of these jurisdictions' tendencies to quickly set trial dates in infringement suits that turn out to be unrealistic. The *NHK-Fintiv* rule invites those plaintiffs to shop for such a forum to obtain an early (albeit notional) trial date, which they can then cite to persuade the Board to deny institution of IPR under the *NHK-Fintiv* rule. At best, the rule thus allows infringement plaintiffs to increase pressure on defendants to file premature IPR petitions, and at worst it allows infringement plaintiffs to block IPR entirely, defeating Congress's intent and disserving the patent system.

c.      The *NHK-Fintiv* factors are also so vague and malleable that they yield inconsistent outcomes. "[T]reat[ing] similar situations differently without reasoned explanation" is a hallmark of arbitrary and capricious agency action. *Port of Seattle v. FERC*, 499 F.3d 1016, 1034 (9th Cir. 2007) (quotation marks omitted).

_____

[7] Nor is early filing always effective in securing institution, as the petitioner in *Philip Morris*, 2020 WL 6750120, learned when the Board denied institution even though the petitioner had filed its petition less than one month after being served in the parallel litigation. *See supra* p. 9.

In applying the rule, the Board often treats like circumstances differently. For example, in *Ethicon, Inc. v. Board of Regents, University of Texas System*, where trial had been continued indefinitely, the Board said that the lack of a trial date weighed "strongly in favor of discretionary denial." No. IPR2019-00406, 2020 WL 3088846, at *4 (P.T.A.B. June 10, 2020). Yet in *Google LLC v. Uniloc 2017 LLC*, the Board took the opposite position: "The fact that no trial date has been set weighs significantly against exercising our discretion to deny institution of the proceeding." No. IPR2020-00441, 2020 WL 4037963, at *14 (P.T.A.B. July 17, 2020). Similarly, in *Fitbit, Inc. v. Philips North America LLC*, No. IPR2020-00828, 2020 WL 6470312, at *4 (P.T.A.B. Nov. 3, 2020), the Board treated the impendency of trial in related litigation as favoring denial of the IPR petition even though the IPR petitioner was *not* a party to the related case; but in *Dolby Laboratories, Inc. v. Intertrust Technologies Corp.*, that circumstance cut the other way, as the Board instituted IPR despite an imminent related trial date in part because the IPR petitioner was not a party to the related case, No. IPR2020-00660, 2020 WL 6106620, at *5 (P.T.A.B. Oct. 15, 2020).

The Board has even reached inconsistent decisions where the overall array of factors appeared to be the same. For example, in *Philip Morris Products, S.A. v. RAI Strategic Holdings, Inc.*, the Board *denied* the IPR petition because the expected trial date—which had not actually been scheduled—would precede the final written decision by eight or nine months, even though the petitioner filed its petition less than *one month* after the complaint was filed, the district court had not issued any substantive orders in the case, the petitioner stipulated not to pursue any overlapping issues in the lawsuit if IPR was instituted, and the Board found a "strong showing" on the merits. No. IPR2020-00921, 2020 WL 6750120 (P.T.A.B. Nov. 16, 2020). This (patently unreasonable) decision contradicts the Board's earlier decision *granting* the IPR petition in *Apple Inc. v. Maxell, Ltd.*, where the expected trial date would precede the final written decision by nine months, the petitioner promptly filed its petition, the petitioner stipulated it would not pursue overlapping issues in the lawsuit, the Board found a strong showing on the merits, and there had been substantial progress in the lawsuit. No. IPR2020-00204, 2020 WL 3401274, at *6 (P.T.A.B. June 19, 2020).

d.     In the face of these arbitrary features and consequences of the rule, the Director has failed to "articulate … a rational connection between the facts found and the choice made" or offer

any reasoned basis for the *NHK-Fintiv* rule. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quotation marks omitted). In particular, the Board failed entirely to address the uncertainties, inefficiencies, and perverse incentives associated with the rule. *See Fintiv*, Paper 11 at 9; *NHK*, Paper 8 at 19-20.

The Board attempted to justify the rule as a way to avoid "duplicative costs" by denying IPR when courts and parties have invested substantially in litigation. *Fintiv*, Paper 11 at 9-10. As an initial matter, that rationale ignores that IPR fees are designed to cover the Board's costs. *See* 85 Fed. Reg. 46,932, 46,932, 46,945-46,946 (Aug. 3, 2020) (revising fees to "provide the Office with a sufficient amount of aggregate revenue to recover the aggregate cost of patent operations in future years"); 37 C.F.R. § 42.15(a)(2). The Board's own costs are therefore irrelevant.

In any event, the Board's cost analysis makes no sense. Any inefficiency that might result from overlap between litigation and IPR is far better addressed by stays of litigation, requests for which courts generally "oblige[]." *Thryv*, 140 S. Ct. at 1379 (Gorsuch, J., dissenting); *see, e.g.*, *Bell N. Research, LLC v. Coolpad Techs., Inc.*, No. 3:18-cv-1783, ECF No. 148 (S.D. Cal. Feb. 18, 2020) (staying litigation after Board instituted IPR). Moreover, by focusing on the investment already made in the litigation, the Board's explanation rests on the logical fallacy of sunk costs: "the equivalent of throwing good money after bad, both for the court and for the parties." *Stryker Spine v. Spine Grp. of Wisc., LLC*, 320 F. Supp. 3d 985, 991 (E.D. Wis. 2018) (cautioning against "the 'sunk cost fallacy'—'a greater tendency to continue an endeavor once an investment in money, effort, or time has been made'"). To the extent that promoting efficiency is relevant to institution decisions at all, the analysis should instead compare the *future* investment needed to complete the lawsuit to the *future* investment needed to conduct IPR—a comparison that will usually favor IPR.

### III. THE *NHK-FINTIV* RULE IS INVALID BECAUSE THE DIRECTOR ADOPTED IT WITHOUT NOTICE AND COMMENT

Independent of its substantive invalidity, the *NHK-Fintiv* rule should be set aside because it was adopted "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Even if the Director had authority to adopt the *NHK-Fintiv* rule, he could do so only by following the procedures for notice-and-comment rulemaking. Adopting a binding rule through the PTO's process for designating Board decisions as precedential was unlawful.

Under both the APA and the AIA, the Director may adopt substantive rules only by promulgating regulations through notice-and-comment rulemaking. The APA "mandates that an agency use notice-and-comment procedures before issuing legislative rules." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019) (citing 5 U.S.C. § 553(b), (c)). The AIA likewise permits the Director to adopt rules only by prescribing "regulations," §§ 2(b)(2), 316(a)—*i.e.*, "rules" issued "pursuant to the notice-and-comment requirements of [the] APA," *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 38, 40 (D.C. Cir. 2005); *see also* § 2(b)(2)(B) (requiring use of APA's notice-and-comment procedures).

Those requirements apply here because *NHK-Fintiv* establishes a substantive, or "legislative," rule, not merely a general statement of policy or procedure. The *NHK-Fintiv* rule is "an agency statement of general or particular applicability and future effect." 5 U.S.C. § 551(4) (defining "rule"). Unlike a general statement of policy, the *NHK-Fintiv* rule leaves the Board no "discretion to follow, or not to follow" it in a particular case. *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1987). Rather, by designating *NHK* and *Fintiv* "precedential," the Director made those decisions' standards "binding" on the Board "in subsequent matters involving similar facts or issues," SOP-2 at 11, thereby establishing a rule, *see Mada-Luna*, 813 F.2d at 1013. Further, the *NHK-Fintiv* rule is legislative—not procedural—because the rule "alter[s] the rights or interests of parties" by defining circumstances under which IPR may be denied. *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994); *see United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000). Indeed, *Fintiv* relied on § 316's considerations for rulemaking, despite the Director's failure to act through rulemaking. *Fintiv*, Paper 11 at 6.

Adopting the *NHK-Fintiv* rule through the "precedential" designation process violated the AIA's and APA's notice-and-comment requirements. The designation of *NHK* and *Fintiv* as precedential was entirely internal, involving (at most) only the recommendations of entities within the PTO. *Supra* p. 7. There was no opportunity for public comment and no consideration by the Director of any public input. *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1331-1332 (Fed. Cir. 2017) (Moore, J., concurring) ("precedential Board decisions are not subject to notice and comment"). Had interested parties been permitted to comment, they could have identified the rule's many defects, and the Director would have had to alter the rule to address those defects or else provide a reasoned

24

explanation for refusing to do so.  Instead, the Director acted unilaterally and without warning.

The rule cannot be defended as one adopted through adjudication because it was not adopted as binding through adjudication.  That occurred only through the Director's decision to designate *NHK* and *Fintiv* as precedential, without input from the parties to any adjudication.  Moreover, adjudication can be a "permissible mode of law-making and policymaking" "only" where agencies are "unitary"—*i.e.*, where "rulemaking, enforcement, and adjudicative powers are combined in a single administrative authority." *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151, 154 (1991).  Where Congress has "split" rulemaking and adjudicative powers between "two *different* administrative authorities" within an agency, courts "cannot infer that Congress expected the [adjudicative body] to use *its* adjudicatory power to play a policymaking role." *Id.*; *cf. NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 294 (1974) (agency could adopt rules through adjudication because it "had both adjudicative and rule-making powers").

The PTO is a split agency that lacks authority to adopt rules through adjudication.  Congress "divided the delegation of rulemaking and adjudicatory powers between the Director and the Board." *Facebook*, 973 F.3d at 1351 (additional views of Prost, C.J., Plager & O'Malley, JJ.).  To the Board, Congress delegated only power to conduct IPRs.  § 316(c).  That "is not a delegation of authority to issue adjudicative decisions interpreting" the AIA, let alone to issue regulations.  *Id.* at 1350.  In contrast, Congress gave the Director power to make rules by issuing regulations, *see* §§ 2, 316(a), but no adjudicative power.  *Facebook*, 973 F.3d at 1349-1350.  And even if Congress had authorized the Director to make rules by adjudication, he has not delegated that power to the Board.  37 C.F.R. §§ 42.4(a), 42.108 (delegating power to institute IPR, but not to make rules).

The Director thus failed to "observ[e] [the] procedure required by law" in adopting the *NHK-Fintiv* rule, and it must be set aside.  5 U.S.C. § 706(2)(D).

## CONCLUSION

For the foregoing reasons, the Court should grant plaintiffs' Motion for Summary Judgment, declare the *NHK-Fintiv* rule unlawful, set it aside under the APA, and enjoin the Director (and the Board as his delegate) from relying on the rule or its non-statutory factors to deny institution of IPR.

Dated: November 23, 2020

Respectfully submitted,

By: */s/ Mark D. Selwyn*

MARK D. SELWYN (CA SBN 244180)

mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING

  HALE AND DORR LLP
2600 El Camino Real, Suite 400

Palo Alto, California 94306
Telephone: (650) 858-6000

Facsimile: (650) 858-6100

CATHERINE M.A. CARROLL (*pro hac vice*)

DAVID M. LEHN (*pro hac vice*)
REBECCA LEE (*pro hac vice*)

catherine.carroll@wilmerhale.com
david.lehn@wilmerhale.com

rebecca.lee@wilmerhale.com
WILMER CUTLER PICKERING

  HALE AND DORR LLP
1875 Pennsylvania Avenue NW

Washington, DC 20006
Telephone: (202) 663-6000

Facsimile: (202) 663-6363

ALYSON ZUREICK (*pro hac vice*)

alyson.zureick@wilmerhale.com
WILMER CUTLER PICKERING

  HALE AND DORR LLP
7 World Trade Center

250 Greenwich Street

New York, NY 10007
Telephone: (212) 230-8800

Facsimile: (212) 230-8888

*Attorneys for Plaintiffs Apple Inc., Cisco*

*Systems, Inc., and Intel Corporation*

DANIEL T. SHVODIAN (CA SBN 184576)

DShvodian@perkinscoie.com
PERKINS COIE LLP

3150 Porter Drive
Palo Alto, CA 94304

Telephone: (650) 838-4300
Facsimile: (650) 737-5461

THERESA NGUYEN (CA SBN 284581)

RNguyen@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-6068
Facsimile: (206) 359-9000

ANDREW T. DUFRESNE (*pro hac vice*)
ADufresne@perkinscoie.com
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
Telephone: (608) 663-7492
Facsimile: (608) 663-7499

*Attorneys for Plaintiff Google LLC*

JOHN B. SGANGA (CA SBN 116211)
CHRISTY G. LEA (CA SBN 212060)
John.Sganga@knobbe.com
Christy.Lea@knobbe.com
KNOBBE MARTENS OLSON & BEAR LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff Edwards Lifesciences
Corporation and Edwards Lifesciences LLC*

## ATTORNEY ATTESTATION

I, Mark D. Selwyn, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories.

By: /s/ *Mark D. Selwyn*
Mark D. Selwyn

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

By: /s/ *Mark D. Selwyn*
Mark D. Selwyn