Michael Liu Su (SBN 300590)
michael.liu.su@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
  **GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone:    (650) 849-6600
Facsimile:     (650) 849-6666

Lionel M. Lavenue (*pro hac vice to be filed*)
lionel.lavenue@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
  **GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
Telephone:    (571) 203-2750
Facsimile:     (571) 203-2777

David K. Mroz (*pro hac vice to be filed*)
david.mroz@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
  **GARRETT & DUNNER, LLP**
901 New York Avenue, N.W.
Washington, DC 20001-4413
Telephone:    (202) 408-4000
Facsimile:     (202) 408-4400

*Attorneys for Amici Curiae Monolithic Power Systems Inc., Engine Advocacy, and ACT | The App Association*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION, EDWARDS LIFESCIENCES CORPORATION, and EDWARDS LIFESCIENCES LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREI IANCU, in his official capacity as Under Secretary of Commerce for Intellectual Property and Director, United States Patent and Trademark Office,<br><br>Defendant. | Case No. 20-cv-6128-EJD<br><br>**BRIEF OF *AMICI CURIAE* MONOLITHIC POWER SYSTEMS, INC.; ENGINE ADVOCACY; AND ACT \| THE APP ASSOCIATION IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    March 11, 2021<br>Time:    9:00 AM<br>Location:    Courtroom 4, 5th Floor<br>Judge:    Hon. Edward J. Davila |

# TABLE OF CONTENTS

I. INTEREST OF AMICUS CURIAE ................................................................................ 1

II. STATEMENT OF FACTS ............................................................................................ 2

III. SUMMARY OF ARGUMENT ..................................................................................... 3

IV. ARGUMENT ................................................................................................................. 4

    A.    The *NHK-Fintiv* Rule Is Improper and Violates the IPR Statute................................. 4

        1.    Contrary to the Plain Language of the Statute, the *NHK-Fintiv* Rule Diminishes the Rights Provided by 35 U.S.C. § 315(b) ................................... 4

        2.    The PTAB Improperly Applied the Authority the IPR Statute Gave It............ 6

        3.    The *NHK-Fintiv* Rule Required Notice-and-Comment Rulemaking................ 7

        4.    The USPTO Director is not provided with *Chevron* deference. ....................... 9

        5.    The *NHK-Fintiv* Rule Undermines the Efficiency that the IPR Statute Intended to Provide ....................................................................................... 10

V. CONCLUSION............................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aqua Prods. Inc. v. Matal*,
  872 F.3d 1290 (Fed. Cir. 2017)..................................................................................6, 7, 9

*Blonder-Tongue Labs. Inc. v. Univ. Of Ill. Found.*,
  402 U.S. 313 (1971).................................................................................................................11

*Bostock v. Clayton County Georgia*,
  140 S. Ct. 1731 (2020).............................................................................................................5

*Carcieri v. Salazar*,
  555 U.S. 379 (2009).................................................................................................................4

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ.*,
  No. IPR2020-00122, Paper 13 (May 15, 2020) ...................................................................10

*Cuozzo Speed Techs., LLC v. Lee*,
  136 S. Ct. 2131 (2016).............................................................................................................11

*Facebook, Inc. v. Windy City Innovations*,
  LLC, 953 F.3d 1313 (Fed. Cir. 2020))...................................................................................7

*Harmonic Inc. v. Avid Tech, Inc.*,
  815 F.3d 1356 (Fed. Cir. 2016)..............................................................................................4

*Hawaii Helicopter Operators Ass'n v. FAA*,
  51 F.3d 212 (9th Cir. 1995) ...................................................................................................8

*Intel Corp. v. VLSI Tech. LLC*,
  IPR2020-00158, Paper 16 (PTAB May 20, 2020)................................................................11

*Intel Corp. v. VLSI Tech. LLC*,
  No. IPR2020-00106, 2020 WL 2201828 (P.T.A.B. May 5, 2020)......................................6

*Jifry v. FAA*,
  370 F.3d 1174 (D.C. Cir. 2004) ............................................................................................8

*Lake Carriers' Ass'n v. EPA*,
  652 F.3d 1 (D.C. Cir. 2011)....................................................................................................8

*Mack Trucks, Inc. v. EPA*,
  682 F.3d 87 (D.C. Cir. 2012)..................................................................................................8

*Massachusetts v. EPA*,
  549 U.S. 497 (2007).................................................................................................................7

*Precision Instrument Mfg. Co. V. Auto. Maint. Mach. Co.*,
 324 U.S. 806 (1945)...........................................................................................................11

*Sand Revolution II, LLC et al v. Continental Intermodal Grp. - Trucking LLC*,
 No. IPR2019-01393, Paper 24 (PTAB June 16, 2020).................................................10

*Thryv, Inc. v. Click-To-Call Techs. LP*,
 140 S. Ct. 1367 (2020).....................................................................................................11

*United States v. Mead Corp.*,
 533 U.S. 218 (2001)...........................................................................................................9

*Util. Solid Waste Activities Grp. v. EPA*,
 236 F.3d 749 (D.C. Cir. 2001)..........................................................................................8

*Volterra Semiconductor LLC, v. Monolithic Power Systems, Inc.*,
 1:2019-cv-02240..............................................................................................................10

**Federal Statutes**

5 U.S.C. § 553(b)......................................................................................................................7

5 U.S.C. § 553(b)(B).................................................................................................................8

5 U.S.C. § 553(c)......................................................................................................................7

5 U.S.C. § 559...........................................................................................................................8

5 U.S.C. § 706(1)......................................................................................................................9

5 U.S.C. § 706(2)(D).................................................................................................................9

35 U.S.C. § 2(b)(2)...................................................................................................................7

35 U.S.C. § 313.......................................................................................................................10

35 U.S.C. § 314(a)................................................................................................................6, 7

35 U.S.C. § 315(a).....................................................................................................................6

35 U.S.C § 315(b)............................................................................................................. *passim*

35 U.S.C. § 316(a)............................................................................................................6, 7, 9

35 U.S.C. § 316(a)(2)................................................................................................................7

35 U.S.C. § 316 (b)...................................................................................................................7

**Regulations**

37 C.F.R. § 42.71(d)(2)...........................................................................................................11

37 C.F.R. § 42.107 ................................................................................................................10

**Other Authorities**

157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) .................................................................5, 10

H.R. 1249 ...................................................................................................................................5

Hearing Before the House Judiciary Committee, 112 Congress, 72 (Apr. 14, 2011) ............5

## I. INTEREST OF AMICUS CURIAE

Monolithic Power Systems, Inc. ("MPS"), provides innovative power circuits used in a wide variety of products, including cloud computing, telecom, automotive, industrial, and consumer applications. MPS relies on a robust patent system to protect its massive investment in researching and developing its technology and bringing products with that technology to market. But given the breadth of products that use MPS's technology, MPS also relies on the patent system to revoke bad patents from other companies that never should have issued.

ACT | The App Association is a not-for-profit international grassroots advocacy and education organization representing more than 5,000 small business software application developers and information technology firms. The App Association is the only trade association focused on the needs of small business innovators, and advocates for an environment that inspires and rewards innovation while providing resources to help its members leverage their intellectual assets to raise capital, create jobs, and continue to grow.

Engine Advocacy ("Engine") is a non-profit technology policy, research, and advocacy organization that bridges the gap between policymakers and startups. Engine works with government representatives and a community of high-technology, growth-oriented startups across the nation to support the development of technology entrepreneurship. Engine conducts research, organizes events, and spearheads campaigns to educate elected officials, the entrepreneur community, and the general public on issues vital to fostering technological innovation. Part of amplifying the startup concerns includes highlighting the unique challenges small startups face when confronted with abusive, and typically opaque, patent litigation.

The disposition of the case will have lasting impacts on amici curiae's proprietary and legal interests, and on the interests of others in the industry because it makes it harder to invalidate bad patents covering prior-art designs through the IPR process. This, in turn, allows nuisance patent holders to slow amici curiae's innovative progress by causing unnecessary litigations over patents that never should have issued in the first place—which is what the IPR statute was intended to protect against.

Here, MPS is similarly situated to the plaintiffs in this case because it has pending IPRs that may fall victim to the Patent Trials and Appeals Board's ("PTAB") *NHK-Fintiv* Rule. Such a ruling would not only be unfair and prejudicial to MPS—it would contradict the IPR statute. Under the IPR statute, MPS has one year from the date the district court complaint was served to file its IPR petitions, and MPS timely filed those petitions within that window. Through the *NHK-Fintiv* Rule, however, the PTAB created a stricter deadline than the IPR statute provides and gave itself the unchecked authority to deny institution based solely on those stricter timing rules (and without ever addressing the merits of the petition). Even worse, some of the timing delays that the PTAB relies on to deny institution *are caused by the PTAB itself* (e.g., months-long delays in performing the perfunctory task of according a filing date to an IPR petition). In MPS's IPR petition, the PTAB artificially created a delay of more than a month, and that extra month gave the PTAB a potential basis to deny MPS's petitions under the *NHK-Fintiv* Rule. This rule must be overturned—it enlarges the PTAB's power in denying institution beyond with the IPR statute allows and it ultimately allows bad patents which stand in the way of innovation to escape review by the PTAB, contrary to Congress's intent.

## II. STATEMENT OF FACTS

MPS's recent experience illustrates the potential harm to the patent system that can result from the *NHK-Fintiv* Rule. Volterra Semiconductor LLC sued MPS in the District of Delaware in December 2019. After analyzing the asserted patents and relevant prior art, MPS filed five IPR petitions less than nine months later (on July 28, 2020). Volterra's counsel (Fish & Richardson) filed mandatory notice and power-of-attorney documents on August 14, 2020.

Despite MPS's filing of all five IPR petitions in July 2020, and despite Fish & Richardson making its mandatory filings roughly two weeks later, the PTAB delayed in according MPS's petitions a filing date until September 09, 2020. This pushed back the IPR schedule (including the due date for the PTAB's Final Written Decision) by 43 days through no fault of MPS's. Knowing this PTAB delay could implicate the *NHK-Fintiv* Rule, MPS raised the issue at a Scheduling Conference with the District Court of Delaware on September 10, 2020, and requested a trial date that would be after the expected Final Written Decision date for the IPRs. The district court judge

refused to consider the request and set an artificial trial date in February of 2022, despite admitting on the record that there was already another trial scheduled for that date.

Without further recourse at the district court, MPS contacted the PTAB on September 16, 2020, and requested that it condense the schedule for the Patent Owner's Preliminary Response from December 09, 2020 to November 12, 2020, which would have been 90 days from the date Volterra's counsel first made a formal appearance in the IPR proceedings, and 107 days from when the IPRs were filed. The PTAB denied MPS's request as premature in a three-sentence email that contained no substantive analysis. MPS submits this amicus brief in hopes that this Court will issue an order in favor of the plaintiffs that also has the effect of preventing injustices against MPS caused by the *NHK-Fintiv* Rule.

### III. SUMMARY OF ARGUMENT

Declining to overturn the *NHK-Fintiv* Rule will allow the PTAB to continue discretionarily denying IPR petitions based on nothing other than a capricious trial date scheduled in a district court litigation. That is, if the due date for a Final Written Decision is set for after the district court trial date, the PTAB can deny institution for that reason alone under the *NHK-Fintiv* Rule. Even more egregiously, under this Rule, the delay that pushes the Final Written Decision date beyond the trial date *can be caused by the PTAB* (by failing to timely accord the IPR petitions a filing date). Here, if the PTAB timely accorded MPS's five IPR petitions filing dates—instead of delaying for over a month—those petitions would not be barred under *NHK-Fintiv*. Instead, the PTAB's delay, which was caused through no fault of MPS's, may singlehandedly be the basis for denying institution. This would be a manifest injustice, and this Court has the ability to prevent it by overturning the *NHK-Fintiv* Rule.

The unprecedented power that the PTAB gave itself through the *NHK-Fintiv* Rule contradicts 35 U.S.C § 315(b), which gives an IPR petitioner one year to file its petition after being served with a complaint. Congress expressly set the one-year deadline to give petitioners appropriate time to consider the scope of the case and the prior art before filing an IPR. The *NHK-Fintiv* Rule erroneously replaces this predictable, one-year statutory deadline with a deadline that shifts depending on when a district court judge sets a trial date. Further undermining the *NHK-Fintiv* Rule

BRIEF OF AMICI CURIAE IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
CASE NO. 20-CV-6128-EJD

is that trial dates are often artificial placeholders that get pushed back. A right plainly provided by a federal statute cannot be revoked by an administrative body and replaced with a lesser right predicated on a speculative trial date set by a federal judge.

The *NHK-Fintiv* Rule further conflicts with the purpose of IPR, which is an important tool for promoting patent quality and preventing nuisance patent holders from using bad patents to slow amici curiae, startups, and small business innovators. If the PTAB is allowed to continue to apply this arbitrary rule and refuses to consider patent invalidity based on speculative trial dates, more bad patents will be shielded from scrutiny without justification.

## IV. ARGUMENT

### A. The *NHK-Fintiv* Rule Is Improper and Violates the IPR Statute

Although "the PTO is permitted, but never compelled, to institute an IPR proceeding," the *NHK-Fintiv* Rule is a substantive rule that alters the rights and interests of IPR petitioners by permitting the Board to deny institution of IPR based on parallel district court litigation. *See Harmonic Inc. v. Avid Tech, Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016). The PTAB's application of that rule has dramatically reduced the availability of IPR when there is a parallel district court action. The rule also results in favoritism for IPR petitions filed when there is no co-pending litigation, or when patents are being litigated in slow courts. This result not only undermines the intent of IPR—it contradicts the plain language of 35 U.S.C. § 315(b).

#### 1. Contrary to the Plain Language of the Statute, the *NHK-Fintiv* Rule Diminishes the Rights Provided by 35 U.S.C. § 315(b)

If "the statutory text is plain and unambiguous," a court must apply the statute according to its terms. *See, e.g., Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). 35 U.S.C. § 315(b) plainly provides a one-year grace period, stating: "an inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." The one-year grace period was expressly and heavily contemplated by the statute's legislative history. Congress set the one-year deadline to give parties involved in litigation time to consider the scope of the case before filing an IPR. 35 U.S.C. § 315(b). Senator Kyl explained that the final one-

year deadline was preferred over the original deadline proposed the Senate bill of 6-months because "it is important that the section 315(b) deadline afford defendants a reasonable opportunity to identify and understand the patent claims that are relevant to the litigation." 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (Sen. Kyl). This is because "companies . . . have noted that they are often sued by defendants asserting multiple patents with large numbers of vague claims, making it difficult to determine in the first few months of the litigation which claims will be relevant and how those claims are alleged to read on the defendant's products." *Id*. Furthermore, during the voting of the amendment, Congress noted that the deadline of IPRs is a "delicate balance" and that a "core change to the deadline may turn the inter partes program into a tool for litigation rather than a meaningful and less expensive alternative to litigation." Markup of H.R. 1249, The American Invents Act: Hearing Before the House Judiciary Committee, 112 Congress, 72 (Apr. 14, 2011).

The *NHK-Fintiv* Rule eviscerates the one-year safe harbor provision in 35 U.S.C. § 315(b), leaving IPR petitioners with fewer rights than the statute provides on its face. Rules that reduce or eliminate rights provided by Congress have been overturned by the Supreme Court. For example, in *Bostock v. Clayton County Georgia*, 140 S. Ct. 1731 (2020), Title VII was at issue, and specifically the provision stating that employees could not be discriminated against based on race, color, religion, sex, or national origin. *Id.*, at 1737. The Eleventh Circuit restricted the "sex" category to *gender* and precluded it from covering *sexual orientation*. *Id.* at 1738. The Supreme Court overturned the Eleventh Circuit, however, because the "sex" category covered both gender and sexual orientation, which meant the Eleventh Circuit's interpretation gave employees fewer rights than the statute permitted. *Id.* at 1741 (holding that "it is impossible to discriminate against a person for being homosexual . . . without discriminating against that individual based on sex.").

In similar fashion, the *NHK-Fintiv* Rule reduces the rights that the plain meaning of 35 U.S.C. § 315(b) provides—i.e., it results in situations where IPR petitions are denied *purely for timing reasons* even when they were filed within the one-year grace period. Even worse, the mechanism the *NHK-Fintiv* Rule uses to revoke the rights provided by 35 U.S.C. § 315(b) is highly arbitrary, since the amount of time cut out of the one-year grace period depends on speculative district court trial dates often set years in the future. Moreover, this injustice is proliferating. Because

the *NHK* and *Fintiv* decisions were designated precedential, the Board has applied the *NHK-Fintiv* Rule to deny IPR petitions on numerous occasions, even when the petitions were filed well before the one-year statutory deadline. *See* D.I. 1 at ¶ 58 (listing cases).

In many of these cases, the trial date that the Board applied in its *NHK-Fintiv* analysis was rescheduled for a later date. *See, e.g. Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00106, 2020 WL 2201828 (P.T.A.B. May 5, 2020). In 2016, by the most conservative count, just 5 petitions were denied under the Board's § 314(a) authority; in 2017, it was 15; by 2018, it was 45; and in 2019, it was 75. It is set to be more than double that in 2020. *See* https://www.unifiedpatents.com/insights/2020/5/13/ptab-procedural-denial-and-the-rise-of-314. This trend is particularly troublesome where an analysis of discretionary denials of IPR petitions shows that the initial trial date that was relied upon for the denial was rescheduled to a later date *in 100% of the trials in Delaware and 70% of the trials in the U.S. District Court for the Western District of Texas*, the two busiest patent venues. *See* District Court Trial Dates Tend to Slip After PTAB Discretionary Denials, Scott McKeown (July 24, 2020) https://www.patentspostgrant.com/district-court-trial-dates-tend-to-slip-after-ptab-discretionary-denials.

### 2. The PTAB Improperly Applied the Authority the IPR Statute Gave It

Congress granted the USPTO the ability to make regulations as they relate to USPTO proceedings. 35 U.S.C. §§ 315, 316(a). But these regulations cannot render other provisions in the IPR statute meaningless. *See Aqua Prods. Inc. v. Matal*, 872 F.3d 1290, 1303 (Fed. Cir. 2017) (en banc) ("When a statute expressly grants an agency rulemaking authority and does not 'unambiguously direct[]' the agency to adopt a particular rule, the agency may '**enact rules that are reasonable in light of the text, nature, and purpose of the statute.**'") (emphasis added) (citations omitted).

Nothing in the IPR statute states or even remotely suggests that the institution of an IPR should be based on a scheduled trial date in a co-pending infringement litigation. 35 U.S.C. § 315(a) expressly establishes the relationship between IPRs and district court. For example, Section 315(a)(1) states that "*inter partes* review may not be instituted if, before the date on which the petition for such a review is filed, the petitioner or real party in interest filed a civil action

challenging the validity of a claim of the patent." Section 315(a)(2) requires an automatic stay of the of the civil court action if that action is filed after a petition for IPR is filed. And § 315(a)(3) states that a counterclaim challenging the validity of a claim of the patent does not constitute a civil action for purposes of this subsection. No other relationships between IPRs and district court actions are provided in the IPR statute. Indeed, the IPR statute has an *express provision* giving petitioners a one-year grace period to file a petition that begins when a district court complaint is served. 35 U.S.C. § 315(b). And, while the USPTO can make regulations, those regulations cannot take the right provided in § 315(b) away. *Aqua Prods.*, 872 F.3d at 1303.

### 3. The *NHK-Fintiv* Rule Required Notice-and-Comment Rulemaking

The AIA states that the "Director *shall prescribe regulations*" "setting forth the standards for the showing of sufficient grounds to institute a review under section 314(a)." 35 U.S.C. § 316(a)(2) (emphasis added). The AIA also expressly requires that the Director "shall consider the effect of any such regulation on the economy, the integrity of the patent system, [and] the efficient administration of the Office." 35 U.S.C. 316(b) (emphasis added). The word "shall" mandates promulgation of regulations. When Congress gives an agency a mandate to issue rules on a topic, the agency lacks the authority to set standards through adjudication. *Massachusetts v. EPA*, 549 U.S. 497, 528 (2007).

Because the *NHK-Fintiv* Rule governs whether to institute a review, it alters the rights and interests of IPR petitioners, which means the Director was required by both the APA and the AIA to act through notice-and comment rulemaking. *See* 5 U.S.C. § 553(b), (c); 35 U.S.C. §§ 2(b)(2), 316(a). The Director, however, adopted the *NHK-Fintiv* Rule without notice-and-comment rulemaking, instead propounding it as a binding rule by designating the *NHK* and *Fintiv* PTAB decisions as precedential through a unilateral, internal process that involved no opportunity for public comment. The Federal Circuit has held that "precedential" designations are not regulations. *Facebook, Inc. v. Windy City Innovations*, LLC, 953 F.3d 1313, 1339-43 (Fed. Cir. 2020) (reinstated on rehearing in relevant part, 2020 WL 5267975, Sept. 4, 2020). The Director does not engage in "rulemaking" when taking the shortcut of designating PTAB institution decisions "precedential." *Id.* at 1340 ("[T]here is no indication in the statute that Congress . . . intended [the Director] to engage in any rulemaking other than through the mechanism of prescribing regulations.").

The APA exempts agencies from this notice-and-comment process when "good cause" dictates that the process would be either "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B). The burden is on the agency to demonstrate good cause, and courts have interpreted the exception narrowly. *See, e.g.*, *Lake Carriers' Ass'n v. EPA*, 652 F.3d 1, 6 (D.C. Cir. 2011) (exception "must be narrowly construed and only reluctantly countenanced"). "Impracticability" is limited to emergency situations that will result in substantial injury absent immediate action. *See Jifry v. FAA*, 370 F.3d 1174, 1179-1180 (D.C. Cir. 2004) (good cause shown where rule necessary to combat the "threat of further terrorist acts involving aircraft in the aftermath of September 11, 2001"); *Hawaii Helicopter Operators Ass'n v. FAA*, 51 F.3d 212, 214-15 (9th Cir. 1995). "Unnecessary" circumstances arise only where the rule effects a minor change or when providing notice and comment could not conceivably produce a different result. *See Lake Carriers'*, 652 F.3d at 10 (declining to remand for notice and comment where it would be "futile" and "serve[] no purpose"); *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 94 (D.C. Cir. 2012) (notice and comment is unnecessary where the rule "is a routine determination, insignificant in nature and impact, and inconsequential to the industry and to the public"). A rule is "contrary to the public interest" in the unusual circumstance where "the interest of the public would be defeated by any requirement of advance notice," such as when "announcement of a proposed rule would enable the sort of financial manipulation the rule sought to prevent." *Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749, 755 (D.C. Cir. 2001). None of these "good cause" scenarios apply to the *NHK-Fintiv* Rule.

Next, if there is no good cause, agencies can only bypass the notice and comment requirement "when a subsequent statute plainly expresses a congressional intent to depart from normal APA procedures." *Lake Carriers' Ass'n*, 652 F.3d at 6 (citation and internal quotation marks omitted); *see also* 5 U.S.C. § 559 (a "[s]ubsequent statute may not be held to supersede or modify this subchapter . . . except to the extent it does so expressly"). No such statute exists here.

Congress drafted the AIA such that the Director is forbidden from sidestepping notice-and-comment rulemaking. The Director has attempted to bypass this rule by requesting comment for the *Fintiv* Rule on October, 20, 2020. Even if the PTO were to adopt its current policy through rulemaking (which it has not), such a regulation would still be in conflict with the statute. The

Administrative Procedure Act provides this Court the power to remedy the PTAB's oversight in crafting the *NHK-Fintiv* Rule by compelling agency action "unlawfully withheld" (5 U.S.C. § 706(1)), and by setting aside agency action "without observance of procedure required by law" (5 U.S.C. § 706(2)(D)). This Court should do so here.

### 4. The USPTO Director is not provided with *Chevron* deference.

The Director does not get *Chevron* deference for rules made through precedential opinions that contradict statutory provisions. *Chevron* deference only applies to an agency's implementation of a particular statutory provision when "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27, (2001). The Supreme Court has stated that "a very good indicator of delegation meriting *Chevron* treatment [is] express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." *Id.* at 229.

The express delegation of rulemaking authority is for the Director to promulgate regulations governing the conduct of IPRs. *See* 35 U.S.C. § 316(a). "[W]hen Congress expressly delegates to the Director the ability to adopt legal standards and procedures *by prescribing regulations*, the Director can only obtain *Chevron* deference if it adopts such standards and procedures *by prescribing regulations*." *See, e.g.*, *Aqua Prods.*, 872 F.3d at 1334 (Moore, J., concurring); *see id.* ("The Board may adopt a legal standard through a precedential decision in an individual case, but that legal standard will not receive *Chevron* deference when Congress only authorized the agency to prescribe regulations."). There is no indication in the IPR statute allowing the Director to engage in rulemaking through precedential PTAB opinions. *See Mead*, 533 U.S. at 231-32 (declining to give *Chevron* deference when, "[o]n the face of the statute . . . the terms of the congressional delegation give no indication that Congress meant to delegate authority to . . . issue . . . rulings with the force of law"). Thus, the Court should give no deference to the precedential PTAB decisions that created the *NHK-Fintiv* Rule.

### 5. The *NHK-Fintiv* Rule Undermines the Efficiency that the IPR Statute Intended to Provide

The *NHK-Fintiv* Rule allows district courts *to influence whether the IPR petition gets granted*, which severely undermines Congress's intent to have IPRs be an efficient and meaningful substitute to district court litigation. 157 Cong. Rec. S5409 (daily ed. Sept. 8, 2011) (Sen. Schumer). Under the *NHK-Fintiv* Rule, a district court can submarine an IPR petition by setting its trial date before the Final Written Decision's due date, which is a known date set in stone by the IPR statute roughly a year and a half in advance. MPS's own case in the District of Delaware provides one example of how this can happen. In *Volterra Semiconductor LLC, v. Monolithic Power Systems, Inc.*, No. 1:19-cv-02240, MPS notified the court about the *NHK-Fintiv* Rule and asked it to push the trial date so that the MPS's IPRs could be free from restraint by that rule. *See* Statement of Facts, *supra* p. 3-4. But the district court declined, even though it had another trial scheduled for the same date MPS's trial was set to begin. *Id.* Based on this decision, *NHK-Fintiv* Rule remains in play for MPS's petitions, and the USPTO may deny institution based purely on the district court's decision to keep the speculative trial date where it was.

Put differently, MPS may be precluded from IPR solely because the district court declined to defer to the USPTO and kept a speculative, double-tracked trial date on the books. This is particularly unjust where, as here, the USPTO effectively extended the due date of the Final Written Decision by delaying in according the petitions a filing date. This delay is permitted under the USPTO rules, which makes the *NHK-Fintiv* Rule even more unjust. *See* 35 U.S.C. § 313; 37 C.F.R. § 42.107.

Although *Fintiv* allows submission of evidence showing that the trial date has or will likely change, the PTAB routinely refuses to give such evidence weight. *See, e.g.*, *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ.*, No. IPR2020-00122, Paper 13 at 11 (May 15, 2020) ("[W]e decline to speculate how the district court would rule on another stay request."); *Sand Revolution II, LLC et al v. Continental Intermodal Grp. - Trucking LLC*, No. IPR2019-01393, Paper 24 at 7 (PTAB June 16, 2020) ("In the absence of specific evidence, we will not attempt to predict how the district court in the related district court litigation will proceed because the court may determine whether or not to stay any individual case, including the related one, based on a variety of circumstances and facts

beyond our control and to which the Board is not privy."). For example, in *Intel Corp. v. VLSI Tech. LLC*, the district court trial was scheduled to complete seven months before the PTAB's projected statutory deadline for issuing a Final Written Decision. IPR2020-00158, Paper 16 (PTAB May 20, 2020). The PTAB recognized an "uncertainty about what effect the coronavirus disease 2019 ("COVID-19") pandemic will have with respect to the trial date" and that the district court had suspended trials through June 30, 2020. *Id.* at 9. However, because of the "substantial gap" between the trial date and the projected PTAB deadline, the PTAB was not persuaded that COVID-19 would cause enough delay to the trial date to justify instituting review, and the second *Fintiv* factor weighed in favor of denial. *Id*. Additionally, any scheduling change for the trial date occurring 30 days after the Institution decision will not matter under the *NHK-Fintiv* Rule, since that is the deadline for filing a motion for reconsideration after an Institution Decision denying institution, and because decisions to not institute are not appealable. *See* 37 C.F.R. § 42.71(d)(2); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2141 (2016) .

Finally, the *NHK-Fintiv* Rule is not just limiting access to IPR for MPS and other innovators, but it is undermining Congress's goals and the public's paramount interest "in seeing that patent monopolies . . . are kept within their legitimate scope." *Blonder-Tongue Labs. Inc. v. Univ. Of Ill. Found.*, 402 U.S. 313, 343 (1971) (quoting *Precision Instrument Mfg. Co. V. Auto. Maint. Mach. Co.*, 324 U.S. 806, 816 (1945)). Bad patents are routinely asserted by nuisance patent holders in abusive litigation which forces amici curiae, startups, and small business innovators to waste time and money defending against meritless claims. The IPR statute was intended to protect against this exact problem, providing a more affordable alternative to "weed out bad patent claims efficiently." *Thryv, Inc. v. Click-To-Call Techs. LP*, 140 S. Ct. 1367, 1374 (2020). The *NHK-Fintiv* Rule thwarts that goal by throwing up improper barriers to IPR petitioners.

## V. CONCLUSION

The *NHK-Fintiv* Rule is wrong. It erroneously diminishes the rights provided by the one-year grace period in 35 U.S.C § 315(b). The PTO snuck the rule out the back door without notice-and-comment rulemaking. Nor is the *NHK-Fintiv* Rule entitled to *Chevron* deference. And the rule leaves the door open for district courts to submarine IPR petitions simply by setting speculative trial dates

in the early stages of a case. This Court should overturn the *NHK-Fintiv* Rule and restore the application of the IPR statute to what Congress intended.

Dated: December 3, 2020

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP

By: /s/ Michael Liu Su
Michael Liu Su
*Attorneys for Amici Curiae Monolithic Power Systems Inc., Engine Advocacy, and ACT | The App Association*