MICHAEL D. GRANSTON
Deputy Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
GARY FELDON, D.C. Bar No. 987142
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C.  20044
Telephone:  (202) 598-0905
Facsimile:  (202) 616-8470
Email: gary.d.feldon@usdoj.gov

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., *et al.* | ) Case No.: 5:20-cv-06128-EJD |
| | ) |
| Plaintiffs, | ) **Defendant's Opposition to Plaintiffs' Motion** |
| | ) **for Summary Judgment** |
| v. | ) |
| | ) Hon. Edward J. Davila |
| ANDREW HIRSHFELD, | ) |
| Performing the Functions and Duties of the, | ) Hearing Set for March 11, 2021, 9:00 a.m. |
| Under Secretary of Commerce for Intellectual | ) |
| Property and Director of the United States | ) |
| Patent and Trademark Office, | ) |
| | ) |
| Defendant. | ) |

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................... 1

LEGAL STANDARD.................................................................................................... 4

ARGUMENT ................................................................................................................ 4

I.      None of Plaintiffs' Claims Are Justiciable Because Plaintiffs Lack Standing to
        Assert Their Claims and Because Adopting the Fintiv Factors Was Not an Agency
        Action that Can Be Challenged Under the APA................................................... 4

II.     Plaintiffs Are Not Entitled to Summary Judgment on Count I, Claiming that the
        Director Lacks Authority to Consider the *Fintiv* Factors in Making Institution
        Decisions, Because the Director has Broad Statutory Discretion to Deny
        Institution. ....................................................................................................... 6

        A.      The Plain Language of § 314(a) Provides Discretion for the Director to
                Deny IPR Petitions Even if They Meet the Threshold Eligibility
                Requirements for Institution. ................................................................ 6

        B.      The AIA's Timeliness Requirement for an IPR Petition to be Eligible for
                Institution Is Not in Conflict with the Director's Discretion to Deny
                Timely Filed Petitions........................................................................... 10

        C.      No Canon of Statutory Construction Supports Interpreting § 314(a)
                Contrary to Its Plain Meaning............................................................... 11

III.    Plaintiffs Are Not Entitled to Summary Judgment on Count II, Claiming that the
        *Fintiv* Factors Are Arbitrary and Capricious, Because the Factors Reasonably
        Balance the Policy Interests Involved in *Inter Partes* Review. ........................ 12

        A.      The *Fintiv* Factors Do Not Require the Board to Engage in Improper
                Speculation............................................................................................ 14

        B.      Plaintiffs' Policy Argument that the *Fintiv* Factors Cause Inefficiency Is
                Both Misguided and Inappropriate for Consideration Under the APA. .............. 16

        C.      The *Fintiv* Factors Requiring Individualized Determinations in Light of
                the USPTO's Policy Goals Does Not Render the Factors Arbitrary or
                Capricious. ............................................................................................ 17

        D.      The *Fintiv* Factors are a Reasonable Approach to Advancing the Agency's
                Policy Goals, Including Efficient Allocation of Agency Resources..................... 18

IV.     Plaintiffs Are Not Entitled to Summary Judgment on Count III, Claiming that the
        *Fintiv* Factors Could Be Adopted Only Through Notice-and-Comment
        Rulemaking, Because the *Fintiv* Factors Do Not Constitute a Substantive Rule. ............ 20

        A.      The Director's Designation of *Fintiv* and *NHK* as Precedential Decisions
                Did Not Alter the Rights of Outside Parties. ......................................... 22

B.  The Board's Consideration of the *Fintiv* Factors Does Not Establish the Legal Rights of IPR Petitioners or Patent Owners.................................. 21

   1.  The Fintiv Factors Are Only A General Statement of Policy, Not a Substantive Rule, Because They Only Guide the Board's Institution Decision. .................................................................................. 21

   2.  The Institution Decision Itself Does Not Establish Any Legal Rights, So the Factors Considered in Reaching that Decision Likewise Do Not Establish Any Legal Rights. ......................................... 23

   3.  Merely Identifying Relevant Considerations for the Board Does Not Make the Fintiv Factors a Substantive Rule. .................................... 23

CONCLUSION....................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alameda Health Sys. v. Ctrs. for Medicare & Medicaid Servs.*,
  287 F. Supp. 3d 896 (N.D. Cal. 2017) ........................................................ 4

*Alcoa Inc. v. Bonneville Power Admin.*,
  698 F.3d 774 (9th Cir. 2012) .................................................................. 13

*Am. Honda Motor Co., Inc. v. Allen*,
  600 F.3d 813 (7th Cir. 2010) .................................................................. 13

*Am. Mining Congress v. Mine Safety & Health Admin.*,
  995 F.2d 1106 (D.C. Cir. 1993) .............................................................. 25

*Arizona v. San Carlos Apache Tribe of Ariz.*,
  463 U.S. 545 (1983) ........................................................................ 15, 16

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
  575 U.S. 138 (2015) ............................................................................. 15

*BedRoc Ltd., LLC v. United States*,
  541 U.S. 176 (2004) ............................................................................... 6

*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................... 5

*BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.*,
  935 F.3d 1362 (Fed. Cir. 2019) ............................................................... 9

*Block v. Cmty. Nutrition Inst.*,
  467 U.S. 340 (1984) ............................................................................... 5

*Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ........................................................................... 9, 10

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*,
  408 F.3d 1142 (9th Cir. 2005) ............................................................... 18

*Cal. Hosp. Ass'n v. Schweiker*,
  559 F. Supp. 110 (C.D. Cal. 1982) ......................................................... 12

*California v. Wheeler*,
  467 F. Supp. 3d 864 (N.D. Cal. 2020) ..................................................... 14

*Camp v. Pitts*,
  411 U.S. 138 (1973) ............................................................................. 13

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ............................................................................. 11

Defendant's Opposition to Plaintiffs' Motion for Summary Judgment
Case No.: 5:20-cv-06128-EJD

*Clarian Health W., LLC v. Hargan,*
    878 F.3d 346 (D.C. Cir. 2017) ................................................................ 22

*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ................................................................................ 10

*Colwell v. Dep't of Health & Human Servs.,*
    558 F.3d 1112 (9th Cir. 2009) ................................................................ 22

*Cuozzo Speed Techs., LLC v. Lee,*
    136 S. Ct. 2131 (2016) ....................................................................... *passim*

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) ................................................................................ 13

*Erringer v. Thompson,*
    371 F.3d 625 (9th Cir. 2004) ................................................................ 25

*FTC v. Standard Oil Co. of Cal.,*
    449 US. 232 (1980) ................................................................................ 23

*Geo-Energy Partners-1983 Ltd. v. Salazar,*
    613 F.3d 946 (9th Cir. 2010) ........................................................ 14, 17

*Harmonic Inc. v. Avid Tech., Inc.,*
    815 F.3d 1356 (Fed. Cir. 2016) ............................................................... 9

*Hayes v. Dep't of the Navy,*
    727 F.2d 1535 (Fed. Cir. 1984) ............................................................. 14

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ...................................................................... 5, 14, 19

*Hemp Indus. Ass'n v. DEA,*
    333 F.3d 1082 (9th Cir. 2003) ........................................................ 20, 25

*Horsehead Res. Dev. Co. v. Browner,*
    16 F.3d 1246 (D.C. Cir. 1994) ............................................................... 14

*In re Cisco Sys. Inc.,*
    No. 20-148, __ F. App'x __, 2020 WL 6373016 (Fed. Cir. 2020) ............................. 5

*Indep. Acceptance Co. v. California,*
    204 F.3d 1247 (9th Cir. 2000) ............................................................... 12

*INS v. Stevic,*
    467 U.S. 407 (1984) ................................................................................ 15

*Jama v. Immigr. & Customs,*
  *Enf't*, 543 U.S. 335 (2005) ......................................................................... 7

*JEM Broad. Co. v. FCC,*
  22 F.3d 320 (D.C. Cir. 1994) ............................................................... 21, 24

*Kisor v. Wilkie,*
  139 S Ct. 2400 (2019) .................................................................................. 24

*Kumho Tire Co., Ltd. v. Carmichael,*
  526 U.S. 137 (1999) ...................................................................................... 13

*Lands Council v. Powell,*
  395 F.3d 1019 (9th Cir. 2005) ...................................................................... 13

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ............................................................................ 4, 5, 15

*Moore v. Apfel,*
  216 F.3d 864 (9th Cir. 2000) ........................................................................ 20

*Multi Time Mach., Inc. v. Amazon.com, Inc.,*
  804 F.3d 930 (9th Cir. 2015) ........................................................................ 18

*Nat'l Multi Hous. Council v. Jackson,*
  539 F. Supp. 2d 425 (D.D.C. 2008) .............................................................. 17

*Nat'l Org. of Veterans' Assocs., Inc. v. Sec'y of Veterans Affairs,*
  260 F.3d 1365 (Fed. Cir. 2001) ..................................................................... 25

*Occidental Eng'g Co. v. INS,*
  753 F.2d 766 (9th Cir. 1985) ........................................................................... 4

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
  138 S. Ct. 1365 (2018) .................................................................................... 9

*Owens v. Republic of Sudan,*
  864 F.3d 751 (D.C. Cir. 2017), *vacated on other grounds and remanded sub nom. Opati v.
  Republic of Sudan*, 140 S. Ct. 1601 (2020) ................................................. 11

*Planned Parenthood of Wis., Inc. v. Azar,*
  316 F. Supp. 3d 291 (D.D.C. 2018), *vacated as moot and remanded*, 942 F.3d 512 (D.C. Cir.
  2019) ............................................................................................................. 22

*Poursina v. U.S. Citizenship & Immigr. Servs.,*
  936 F.3d 868 (9th Cir. 2019) ........................................................................... 7

*Prof'ls & Patients for Customized Care v. Shalala*,
　56 F.3d 592 (5th Cir. 1995) .................................................................. 22

*Rodriguez v. United States*,
　480 U.S. 522 (1987).......................................................................... 12

*Sacora v. Thomas*,
　628 F.3d 1059 (9th Cir. 2010) ................................................... 20, 22, 23

*SAS Inst., Inc. v. Iancu*,
　138 S. Ct. 1348 (2018).......................................................... 8, 9, 11, 23

*Seneca Ins. Co. v. Strange Land, Inc.*,
　862 F.3d 835 (9th Cir. 2017) ................................................................ 15

*Shalala v. Guernsey Mem'l Hosp.*,
　514 U.S. 87 (1995)............................................................................ 24

*Sierra Club v. Bureau of Land Mgmt.*,
　786 F.3d 1219 (9th Cir. 2015) .............................................................. 15

*Sierra Club v. Kenna*, No. 1:12-CV-1193 AWI JLT,
　2013 WL 144251 (E.D. Cal. Jan. 11, 2013) ............................................ 15

*Space Data Corp. v. Alphabet Inc.*,
　No. 16-cv-03260-BLF, 2019 WL 1131420 (N.D. Cal. March 12, 2019) ................ 18

*St. Regis Mohawk Tribe v. Mylan Pharms., Inc.*,
　896 F.3d 1322 (Fed. Cir. 2018), *cert denied* 139 S. Ct. 1547 (2019) ............ 9, 10, 11

*Sullivan v. Dollar Tree Stores, Inc.*,
　623 F.3d 770 (9th Cir. 2010) ................................................................ 18

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
　100 F.3d 1443 (9th Cir. 1996) .............................................................. 13

*Tenn. Gas Pipeline Co. v. FERC*,
　969 F.2d 1141 (D.C. Cir. 1992) ............................................................ 14

*Thryv, Inc v. Click-To-Call Techs.*, LP,
　140 S. Ct. 1367 (2020)........................................................................ 5

*United States v. Alameda Gateway Ltd.*,
　213 F.3d 1161 (9th Cir. 2000) .............................................................. 20

*United States v. Green*,
　940 F.3d 1038 (9th Cir. 2019) .............................................................. 18

*United States v. Schoonover*,
   210 F.3d 387 (9th Cir. 2000) ................................................................ 15

*Vencor, Inc. v. Physicians Mut. Ins. Co.*,
   211 F.3d 1323 (D.C. Cir. 2000) ............................................................ 11

*Winter v. Natural Res. Defense Council, Inc.*,
   555 U.S. 7 (2008) ......................................................................... *passim*

**Statutes**

5 U.S.C. § 553(b)(3) .................................................................... 20, 24

5 U.S.C. § 701(a)(1) ........................................................................ 5

5 U.S.C. § 704 ............................................................................... 5

35 U.S.C. § 2(b)(2)(A) ..................................................................... 2

35 U.S.C. § 3(a)(2)(A) .................................................................. 2, 25

35 U.S.C. § 6(a) ......................................................................... 2, 25

35 U.S.C. § 304 ............................................................................. 7

35 U.S.C. § 312(a) ......................................................................... 2

35 U.S.C. § 313 ............................................................................. 7

35 U.S.C. § 314 ..................................................................... *passim*

35 U.S.C. § 315 ...................................................................... 2, 10, 23

35 U.S.C. § 316 .................................................................... 17, 19, 25

35 U.S.C. § 318 ........................................................................ 2, 23

35 U.S.C. § 319 ............................................................................. 2

35 U.S.C. § 325(d) ..................................................................... 7, 25

35 U.S.C. §§ 311-319 ...................................................................... 1

The Leahy-Smith America Invents Act ("AIA"),
   Pub. L. No. 112-29, 125 Stat. 284 (2011) ............................................... 1

**Rules**

Federal Rule of Civil Procedure 25(d) ........................................................................ 1

**Regulations**

37 C.F.R. § 42.108 ........................................................................................................ 2

**Other Authorities**

85 Fed. Reg. 46,932 (Aug. 3, 2020) ........................................................................... 19

85 Fed. Reg. 66,502 (Oct. 20, 2020) .......................................................................... 20

Civil L.R. 7-4(a)(5) ..................................................................................................... 11

H.R. Rep. No. 112-98 (2011) ...................................................................................... 19

Scott McKeown, District Court Trial Dates Tend to Slip After PTAB Discretionary Denials,
    https://www.patentspostgrant.com/district-court-trial-dates-tend-to-slip-after-ptab-
    discretionary-denials/ (July 24, 2020) .................................................................. 13

Toward a Legal Deontic Logic,
    73 Notre Dame L. Rev. 603 (1998) ......................................................................... 8

U.S. Patent & Trademark Office, Public Views on Discretionary Institution of AIA Proceedings,
    https://www.uspto.gov/patents/ptab/recent-proposals-pilots-and-final-rules (Jan. 2021) ........ 20

William Saindon, J., PTAB, New AIA Trial Statistics (June 11, 2020),
    https://www.uspto.gov/sites/default/files/documents/ptab_fy19_end_of_year_outcome_roundu
    p.pdf ....................................................................................................................... 19

## STATEMENT OF ISSUES

1. Whether Plaintiffs' claims fail because, as set forth in Defendant's Motion to Dismiss Plaintiffs' Amended Complaint, (A) Plaintiffs lack standing, (B) the Leahy-Smith America Invents Act of 2011 ("AIA") displaces Plaintiffs' cause of action under the APA, (C) the AIA commits the *inter partes* review institution decision to the Director's discretion by law, and (D) the institution decision is not a final agency action subject to APA review.

2. Whether the Leahy-Smith America Invents Act of 2011 authorizes the Director of the U.S. Patent and Trademark Office to deny eligible petitions for *inter partes* review as a matter of discretion, and, if so, whether the Director may properly consider the non-dispositive, non-exhaustive factors identified in *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020), in exercising that discretion.

3. Whether the non-dispositive, non-exhaustive factors set forth in *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020), are reasonable and comport with the Administrative Procedure Act.

4. Whether the non-dispositive, non-exhaustive factors set forth in *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020), constitute a general statement of policy or non-substantive rule that the Director of the U.S. Patent and Trademark Office could lawfully adopt without notice-and-comment rulemaking.

1        In their Amended Complaint, Plaintiffs allege that Defendant, the Director of the U.S.

2    Patent and Trademark Office ("USPTO") (the "Director"), violated the Administrative Procedure

3    Act ("APA") by designating as precedential two decisions of the Patent Trial and Appeal Board

4    ("Board").[1]  The second decision, building on the first, established a set of non-exhaustive, non-

5    dispositive factors (the "*Fintiv* factors") for the Board to consider in light of parallel district court

6    proceedings when exercising the Director's delegated discretion as to whether to institute an

7    *inter partes* review ("IPR") proceeding.  Specifically, Plaintiffs claim that the factors (1) are

8    arbitrary and capricious, (2) exceed the Director's statutory authority, and (3) could be adopted

9    only after notice-and-comment rulemaking.  ECF No. 54 ("Amended Complaint") ¶¶ 82-95.

10   Plaintiffs have now moved for summary judgment on their claims.  ECF No. 65 ("Motion").

11        Even if Plaintiffs' claims were justiciable, their arguments in support of those claims lack

12   merit.  Plaintiffs consistently ignore the Director's unreviewable statutory discretion over

13   institution decisions and base their claims on the Court improperly derogating that discretion to

14   impose its own policy judgments.  The Director's designation of these two decisions was

15   consistent with the text and purpose of the governing statute, reasonable as a matter of policy,

16   and comported with the procedural requirements of the APA.  Thus, even if the Court reaches the

17   merits of Plaintiffs' dispute, it should deny Plaintiffs' motion for summary judgment.

18                     **BACKGROUND**

19        The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284

20   (2011), establishes the framework by which the USPTO conducts *inter partes* review.[2]  35

21   U.S.C. §§ 311-319.  For an IPR petition to be eligible for the USPTO to institute an IPR under

---

[1] Andrew Hirshfeld, who is performing the functions and duties of the Under Secretary of Commerce for Intellectual Property and Director of the USPTO pursuant to 35 U.S.C. § 3, has been substituted for former USPTO Director Andrei Iancu.  *See* Fed. R. Civ. P. 25(d).

[2] Defendant presumes the Court's general familiarity with the background of this case and the relevant terminology from Defendant's Motion to Dismiss, Plaintiffs' Amended Complaint, ECF No. 64, and Opposition to US Inventor's TRO/PI Motion, ECF No. 51-1.  The background provided in this brief is intended only to highlight the most pertinent facts.  To the extent necessary, Defendant adopts by reference the background portions of the earlier briefs.

1    that framework, the petition must comply with various substantive and procedural requirements.

2    *See id.* §§ 312(a), 314(a), 315(a)-(b).  For instance, an IPR petition is procedurally defective if it

3    is filed "more than [one] year after the date on which the petitioner, real party in interest, or privy

4    of the petitioner is served with a complaint alleging infringement of the patent."  *Id.* § 315(b).  A

5    petition is substantively ineligible for IPR institution if, after consideration of any response filed

6    by the patent holder, the petition fails to "show[] that there is a reasonable likelihood that the

7    petitioner would prevail with respect to at least [one] of the claims challenged."  *Id.* § 314(a).

8    Although the Director may not grant an ineligible IPR petition, the AIA has "no mandate to

9    institute review" of petitions that satisfy the statute's baseline eligibility requirements.  *Cuozzo*

10   *Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140 (2016); *see also SAS Ins., Inc. v. Iancu*, 138 S.

11   1348, 1351 (2018).  Rather, the "decision to deny a petition is a matter committed to the

12   [Director's] discretion."  *Cuozzo Speed Techs.*, 136 S. Ct. at 2140.  Indeed, Congress went so far

13   as to make "[t]he determination by the Director whether to institute an inter partes review . . .

14   final and nonappealable."  35 U.S.C. § 314(d).  By contrast, a final written decision with respect

15   to patentability by the Board following an IPR trial—*i.e.*, the Board's patentability

16   determination—is appealable to the Federal Circuit.  *Id.* §§ 318(a), 319.

17          The Director has delegated his discretionary authority to make institution decisions to the

18   Board, which he oversees and of which he is a member.  35 U.S.C. § 6(a); 37 C.F.R. § 42.108.

19   One of the ways the Director oversees the Board is through designating individual Board panel

20   decisions as precedential; this ensures "fair and efficient Board proceedings" and "establish[es]

21   consistency across decision makers."  Standard Operating Procedure 2 ("SOP 2") (Rev. 10), at 2

22   (attached as Exhibit A).[3]  "A precedential decision is binding Board authority in subsequent

23   matters involving similar facts or issues."  *Id.* at 11.  Notably for this case, the Director has

---

[3]  The Director issued SOP 2 in 2018, to establish a new procedure by which he can exercise his authority to "govern the conduct of [USPTO] proceedings" and to "provid[e] policy direction and management supervision" to the USPTO.  *See* 35 U.S.C. §§ 2(b)(2)(A), 3(a)(2)(A), 6(a).

1    designated as precedential *NHK Spring Co., Ltd. v. Intri-Plex Techs., Inc.*, No. IPR2018-00752

2    (Paper 8) (P.T.A.B. Sept. 12, 2018) and *Apple Inc.* v. *Fintiv, Inc.*, IPR2020-00019, (Paper 11)

3    (P.T.A.B. Mar. 20, 2020).[4]

4           Both cases concern how parallel district court proceedings addressing the validity of the

5    same patent should be taken into account when the Board exercises the Director's discretion

6    under 35 U.S.C. § 314(a) to institute IPR proceedings.  In *NHK*, the Board noted that efficiency

7    weighed in favor of denying review when a "district court proceeding will analyze the same

8    issues and will be resolved before any trial on the [IPR p]etition concludes."  Paper 8 at 19-20.

9    In *Fintiv*, the Board expanded on *NHK*, explaining that "an early trial date" is one "non-

10   dispositive factor[] considered for institution under 35 U.S.C. § 314(a)" and "should be weighed

11   as part of a 'balanced assessment of all relevant circumstances of the case, including the

12   merits.'"  Paper 11 at 5 (quoting the Consolidated Trial Practice Guide (Nov. 2019) at 58).

13          The Board in *Fintiv* also identified additional factors previous Board panels had

14   considered "relat[ing] to whether efficiency, fairness, and the merits support the exercise of

15   authority to deny institution in view of an earlier trial date in the parallel proceedings."  *Id.* at 6.

16   The *Fintiv* factors are:

17          (1) whether a stay exists or is likely to be granted if a proceeding is instituted;

18          (2) proximity of the court's trial date to the Board's projected statutory deadline;

19          (3)  investment in the parallel proceeding by the court and parties;

20          (4)  overlap between issues raised in the petition and in the parallel proceeding;

21          (5) whether the petitioner and the defendant in the parallel proceeding are the same
22          party; and

23          (6) other circumstances that impact the Board's exercise of discretion, including
24          the merits.

---

[4] As Defendant has done in previous briefs, Defendant refers to the analysis collectively established by *NHK* and *Fintiv* as the "*Fintiv* factors," except when referring specifically to the cases themselves.

Defendant's Opposition to Plaintiffs' Motion for Summary Judgment
Case No.: 5:20-cv-06128-EJD

1    *Id.*  Although the Board must consider the *Fintiv* factors when there is a parallel district court

2    proceeding, the factors themselves do not preordain a particular outcome with respect to the

3    institution decision.  *Id.* at 5.

4                                                    **LEGAL STANDARD**

5              Because of the limited judicial review permitted by the APA, the traditional summary

6    judgment standard does not apply to motions for summary judgment in APA cases.  *Alameda*

7    *Health Sys. v. Ctrs. for Medicare & Medicaid Servs.*, 287 F. Supp. 3d 896, 910–11 (N.D. Cal.

8    2017).  Instead, courts assess whether the agency's factual and legal determinations were

9    reasonable.  *See Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985).  So long as that

10   is the case, the agency is entitled to judgment in its favor.  *See id.*

11                                                    **ARGUMENT**

12             Plaintiffs are not entitled to summary judgment on any of the three counts in their

13   Amended Complaint.  In addition to being non-justiciable, their claims are logically and legally

14   defective as well as reliant on policy arguments and unsupported factual assertions that are

15   improper under the APA.

16   **I.      None of Plaintiffs' Claims Are Justiciable Because Plaintiffs Lack Standing to**
17   **         Assert Their Claims and Because Adopting the Fintiv Factors Was Not an Agency**
18   **         Action that Can Be Challenged Under the APA.**

19             As set forth more fully in Defendant's Motion to Dismiss Plaintiffs' Amended

20   Complaint—which Defendants incorporate here by reference—Plaintiffs are not entitled to

21   summary judgment because they lack Article III standing and, regardless, their claims are not

22   justiciable under the APA.

23             The AIA does not confer any right to IPR proceedings, so Plaintiffs lack any legal

24   entitlement that could be violated by the Director denying a petition after considering allegedly

25   improper factors, and thus lack a cognizable injury.  *See Lujan v. Defenders of Wildlife*, 504 U.S.

26   555, 559-560 (1992).  Further, as discussed in detail below, the Director's broad discretion over

27   the decision whether to institute IPR proceedings means that, even setting aside the *Fintiv* factors

1    would not preclude the Director from taking into account the same considerations.  *See* § II,

2    *infra*; *see also Cuozzo Speed Techs.*, 136 S. Ct. at 2140.  Indeed, even before the Director

3    designated *NHK* and *Fintiv* as precedential, the Board considered parallel district court

4    proceedings when exercising discretion under § 314(a).  *See NHK Spring Co.*, Paper 8 at 19-20.

5    Moreover, Plaintiffs can only speculate that an alternative analysis to the *Fintiv* factors would be

6    more favorable to them.  Thus, Plaintiffs also cannot establish that this court could redress their

7    alleged injury.  *See Lujan*, 504 U.S. at 561.

8         Plaintiffs also lack valid claims under the APA.  APA review is unavailable when a

9    statute precludes judicial review or a decision is committed to agency discretion by law, both of

10   which are true with respect to the USPTO's decision to institute an IPR.  5 U.S.C. § 701(a)(1),

11   (a)(2).  When "congressional intent to preclude judicial review is 'fairly discernable' in the detail

12   of the legislative scheme," the APA does not provide a cause of action.  *Block v. Cmty. Nutrition*

13   *Inst.*, 467 U.S. 340, 351 (1984).  Additionally, the factors the Director takes into account in

14   making the IPR institution decision fall within § 314(d)'s preclusion of judicial review because

15   they are "closely tied to the application and interpretation of statutes related to the Patent

16   Office's decision to initiate inter partes review." *Thryv, Inc v. Click-To-Call Techs.*, LP, 140 S.

17   Ct. 1367, 1373 (2020) (quoting *Cuozzo Speed Techs.*, 136 S. Ct. at 2141); *In re Cisco Sys. Inc.,*

18   No. 20-148, __ F. App'x __, 2020 WL 6373016, at *2 (Fed. Cir. 2020) (stating that the

19   plaintiffs' "challenges, both procedural and substantive, rank as questions closely tied to the

20   application and interpretation of statutes relating to the Patent Office's decision whether to

21   institute review").  Even absent an explicit statutory exclusion, Congress's intent to foreclose

22   judicial review of the Director's institution analysis would be clear from the absence of any

23   judicially enforceable standards in § 314(a) curtailing the Director's discretion over the

24   institution decision.  *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

25        Finally, the APA does not allow for review of non-final agency actions, *i.e.*, actions

26   without direct legal effects on outside parties.  5 U.S.C. § 704; *see Bennett v. Spear*, 520 U.S.

154, 177-78 (1997).  An institution decision—whether granting or denying an IPR petition—

lacks direct legal effect because it only determines whether the Board will begin the full review

process of deciding patentability.  It does not make a final determination regarding any patent

claim.  *Compare* 35 U.S.C. § 314(a) *with id.* § 318(a).

Either Plaintiffs' lack of standing or lack of a justiciable claim would be sufficient to

deny them any entitlement to summary judgment and to entitle Defendant to dismissal of the

Amended Complaint.  However, pursuant to the Court's December 2, 2020 order, ECF No. 70,

and without prejudice to his standing and justiciability arguments, Defendant addresses below

the merits of the three counts Plaintiffs assert in their Amended Complaint.

**II.**     **Plaintiffs Are Not Entitled to Summary Judgment on Count I, Claiming that the Director Lacks Authority to Consider the *Fintiv* Factors in Making Institution Decisions, Because the Director has Broad Statutory Discretion to Deny Institution.**

Plaintiffs' Amended Complaint claims that the Director's adoption of the *Fintiv* factors

exceeded his statutory authority in adopting the *Fintiv* factors because the AIA leaves "no room

for the Director to . . . deny a timely IPR petition based on parallel infringement litigation."  Am.

Compl. ¶¶ 82-86.  The Plaintiffs' novel reading of the AIA is contrary to the plain language of

the statute.  *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("Thus, our inquiry

begins with the statutory text, and ends there as well if the text is unambiguous.").  The

institution provision of the AIA uses permissive terms, without any mandate to institute review,

and includes no restrictions on the considerations the Director may take into account when

deciding to grant or deny IPR petitions.  35 U.S.C. § 314(a); *see Cuozzo Speed Techs.*, 136 S. Ct.

at 2140.  The Director therefore could not have exceeded his statutory authority in adopting the

*Fintiv* factors.

**A.**     The Plain Language of § 314(a) Provides Discretion for the Director to Deny IPR Petitions Even if They Meet the Threshold Eligibility Requirements for Institution.

The Director's discretion to deny IPR petitions that meet the AIA's threshold eligibility

requirements is evident from the plain language of § 314(a).  That statute provides that "[t]he

Director may not authorize an inter partes review to be instituted unless the Director determines

1   that the petition . . . and any response . . . shows that there is a reasonable likelihood that the

2   petitioner would prevail with respect to at least [one] of the claims challenged in the petition."

3   35 U.S.C. § 314(a).  Congress's choice to use permissive language indicates that the Director has

4   discretion in the institution decision.  Indeed, when statutes use permissive language, "rather than

5   'must' or 'shall,'" courts read them with the "presumption of discretion."  *Poursina v. U.S.*

6   *Citizenship & Immigr. Servs.*, 936 F.3d 868, 871 (9th Cir. 2019); *see Jama v. Immigr. & Customs*

7   *Enf't*, 543 U.S. 335, 346 (2005).  Congress certainly knows how to write mandatory language

8   governing the Director's adjudicatory functions.  For example, 35 U.S.C. § 304 provides that

9   "the Director . . . <u>will</u>" order reexamination of a patent whenever he "finds that a substantial new

10  question of patentability affecting any claim of a patent is raised."  (emphasis added).  If

11  Congress had intended that § 314(a) impose a non-discretionary duty on the Director, it would

12  have used mandatory language (*e.g.*, "The Director <u>shall</u> authorize an inter partes review . . .

13  when . . . .").[5]  Indeed, the institution statute governing a predecessor to IPR called "*inter partes*

14  reexamination" provided that "if . . . the Director finds . . . a reasonable likelihood that the

15  requestor would prevail with respect to . . . [one] of the claims challenged . . . the determination

16  <u>shall</u> include an order for inter partes reexamination."  35 U.S.C. § 313 (2012) (emphasis added)

17  (superseded).  This contrast makes plain that Congress used permissive language to reflect its

18  intent to make institution discretionary.

19       Plaintiffs' alternate reading of the institution statute is based on a logical fallacy.

20  Plaintiffs assert that the phrase "may not . . . unless" in § 314(a) does not provide the Director

21  any discretion but instead permits the Director only "to make a discretionary judgment whether

---

[5]  Likewise, when Congress wants to specify the factors that the Director should take into account when making the institution decision, it knows how to do that as well.  *See* 35 U.S.C. § 325(d) (identifying "whether . . . the same or substantially the same prior art or arguments previously were presented to the Office" as relevant considerations for discretionary denial based on an overlapping IPR petition).  The absence of any such limits in § 314(a) thus confirms the Director's discretion to consider any relevant factor in deciding whether to deny institution.

1 an IPR petition presents a 'reasonable likelihood' of success."  Mot. at 16.  The "modal scope

2 fallacy" exists when "a degree of unwarranted necessity is placed in the conclusion."[6]  The

3 following syllogism is an example of this kind of erroneous reasoning:

4      (1) An airline passenger <u>may not</u> board his flight unless he has a plane ticket; and
5
6      (2) John has a plane ticket; therefore:
7
8      (3) John <u>must</u> board his flight.

9 It is completely consistent with premises (1) and (2) for John to have a ticket but <u>choose</u> not to

10 board his flight.  Plaintiffs make the same error in reasoning.  Plaintiffs analyze § 314(a) as

11 follows:

12      (1) "The Director <u>may not</u>" institute an otherwise eligible IPR petition "unless . . . there
13            is a reasonable likelihood that the petitioner would prevail" on at least one claim; and

14      (2) A specific IPR petition is otherwise eligible for institution and shows a reasonable
15            likelihood of success on one claim; therefore:

16      (3) The Director <u>must</u> grant the IPR petition.

17 35 U.S.C. § 314(a) (emphasis added); *see* Mot. at 15-18.  Just as John retains the discretion not

18 to board his flight, the Director retains the discretion not to institute an eligible IPR petition.

19 Section 314(a) imposes no obligation to institute *inter partes* review, so it does not constrain the

20 Director's discretion to deny review.  Thus, Plaintiffs' arguments premised on an alternate,

21 unsupported reading of the law lack any merit.

22      Indeed, courts have uniformly rejected Plaintiffs' reading of § 314(a).  The Supreme

23 Court characterized that section of the AIA as containing "no mandate to institute review,"

24 *Cuozzo Speed Techs.*, 136 S. Ct. at 2140, and acknowledged the "fact that § 314(a) doesn't

25 *require* [the Director] to institute an inter partes review even after he finds the 'reasonable

---

[6] "Modal scope fallacy," en.wikipedia.org/wiki/Modal_scope_fallacy (last viewed 12/27, 2020); *see also* Howard Pospesel, Toward a Legal Deontic Logic, 73 Notre Dame L. Rev. 603, 604-611 (1998).  Plaintiffs' particular use of the modal scope fallacy also resembles the fallacy of affirming the consequent.  From the valid premise, (1) if an IPR petition is ineligible, the Director will not institute IPR proceedings, Plaintiffs wrongly conclude that, (2) if an IPR petition is not ineligible, the Director will institute IPR proceedings.

1    likelihood' threshold met," *SAS Inst., Inc. v. Iancu*, 138 S. Ct. at 1351; *see also id.* at 1361

2    (Breyer, J., dissenting) ("Even if there is one potentially meritorious challenge[,] . . . the Director

3    still has discretion to deny a petition.").  *See Cuozzo Speed Techs.*, 136 S. Ct. at 2140 ("And the

4    agency's decision to deny a petition is a matter committed to the Patent Office's discretion.");

5    *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1371 (2018)

6    (same).  The Federal Circuit has likewise repeatedly made clear that "the Director has complete

7    discretion to decide not to institute review."  *St. Regis Mohawk Tribe v. Mylan Pharms., Inc.*,

8    896 F.3d 1322, 1327 (Fed. Cir. 2018), *cert denied* 139 S. Ct. 1547 (2019); *see BioDelivery Scis.*

9    *Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 935 F.3d 1362, 1365 (Fed. Cir. 2019); *Harmonic Inc.*

10   *v. Avid Tech., Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016).  Plaintiffs cite no authority supporting

11   their counter-textual reading of the AIA.  The Court should therefore apply § 314(a) according to

12   its plain meaning—just as every other court to consider the issue has done—and reject Plaintiffs'

13   reading of the statute.

14       Congress's decision to deny judicial review of institution decisions further confirms that

15   Congress intended to confer broad discretion over institution.  Section 314(d) commits to the

16   Director's discretion "whether to institute an inter partes review."  *See Cuozzo Speed Techs.*, 136

17   S. Ct. at 2140.  Plaintiffs' interpretation of § 314(a) to deprive the Director of discretion to deny

18   IPR petitions that meet the minimum requirements for review would therefore run afoul not only

19   of the plain language of that statute, but of the established meaning of § 314(d) as well.  Such a

20   conflict is contrary to courts' obligation to interpret statutes consistently when they form parts of

21   a unified statutory scheme. *See FDA Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133

22   (2000) (harmonious-reading canon).  Although it is unnecessary to go beyond the plain language

23   of § 314(a), reading that provision in context only reaffirms the conclusion that Congress said

24   what it meant and meant what it said.

B.  <u>The AIA's Timeliness Requirement for an IPR Petition to be Eligible for Institution</u>
     <u>Is Not in Conflict with the Director's Discretion to Deny Timely Filed Petitions.</u>

Plaintiffs also contend that adopting the *Fintiv* factors exceeded the Director's statutory authority because the factors purportedly conflict with 35 U.S.C. § 315(b), requiring defendants in infringement proceedings to file IPR petitions within one year of being served with the complaint.  Mot. at 10-12.  However, there is no inconsistency between setting an upper limit to the time period during which an IPR petition must be filed to be eligible for review and giving the Director's discretion to deny eligible petitions that are filed within that limit.  Plaintiffs' only argument to the contrary is to analogize between the timeliness requirement of § 315(b) and statutes of limitations in federal laws.  Mot. at 11.  Relying on that analogy, Plaintiffs cite cases standing for the proposition that Article III courts may not invoke the equitable doctrine of laches to decline consideration of claims filed within a statute of limitations set by Congress.  *Id.* This analogy is unsound because it wrongly presumes that the Director has the same obligation to address the merits of patentability grounds raised in IPR petitions as courts have to consider federal question claims.

Unlike the Director, Article III courts have a "virtually unflagging obligation" to exercise their exclusive jurisdiction.  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  As a result, courts must consider the merits of federal question claims whenever the claims meet the minimum requirements for adjudication (*e.g.*, timeliness).  For Plaintiffs' analogy between timely federal claims and timely IPR petitions to be valid, the AIA would have to impose a virtually unflagging obligation on the Director to institute review of timely (and otherwise adequate) IPR petitions.[7]  As the Supreme Court and the Federal Circuit

---

[7]  Plaintiffs analogizing IPR proceedings to court proceedings is particularly questionable, given that "IPR is neither clearly a judicial proceeding instituted by a private party nor clearly an enforcement action brought by the federal government."  *St. Regis Mohawk Tribe*, 896 F.3d at 1326.  If any comparison between IPR proceedings and judicial proceedings were appropriate, the apt one would be to compare the former to circumstances where federal courts exercise discretionary jurisdiction.  For example, courts decide whether to exercise supplemental jurisdiction over state law claims when no federal claims remain in a case.  In that circumstance,

1   have already held, the AIA imposes no such obligation.  *See SAS Inst.*, 138 S. Ct. at 1356;

2   *Cuozzo Speed Techs.*, 136 S. Ct. at 2140; *St. Regis Mohawk Tribe*, 896 F.3d at 1327.[8]

3       C.   <u>No Canon of Statutory Construction Supports Interpreting § 314(a) Contrary to Its</u>
4           <u>Plain Meaning.</u>

5       Plaintiffs contend that the Court should not interpret § 314(a) according to its plain

6   meaning because affording the Director discretion to consider parallel litigation purportedly

7   "defeats the purposes of IPR," and "yields absurd results Congress could not have intended."

8   Mot. at 12-13.  Plaintiffs' position is devoid of merit.

9       No canon of statutory construction permits courts to disregard the plain language of one

10  statutory provision based on a belief that a counter-textual interpretation would be better at

11  advancing the goals of the statutory scheme as a whole.  A statute "may well be intended to carry

12  out certain [goals,] . . . but this purpose is reflected in the [statute] as a whole, not in each

13  individual provision viewed in isolation."  *Owens v. Republic of Sudan*, 864 F.3d 751, 776 (D.C.

14  Cir. 2017), *vacated on other grounds and remanded sub nom. Opati v. Republic of Sudan*, 140 S.

15  Ct. 1601 (2020).  "Invocation of the 'plain purpose' of legislation at the expense of the terms of

16  the statute itself takes no account of the processes of [legislative] compromise and, in the end,

17  prevents the effectuation of congressional intent."  *Vencor, Inc. v. Physicians Mut. Ins. Co.*, 211

18  F.3d 1323, 1325-26 (D.C. Cir. 2000) (internal citation omitted).  "Deciding what competing

19  values will or will not be sacrificed to the achievement of a particular objective is the very

---

courts consider "judicial economy, convenience, fairness and comity," the same types of considerations that underlie the *Fintiv* factors.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Similarly, the Supreme Court can deny review of a petition for a writ of certiorari, even when the eligibility requirements for review are met.

[8] In arguing that the Director exceeded his authority under § 314(a), Plaintiffs proclaim that, because "Congress determined that IPR can proceed even when there is parallel infringement litigation," the *Fintiv* factors are somehow contrary to "the balance Congress struck" in the AIA. *Id.* at 16.  This proclamation fails because it contains no explanation why the *Fintiv* factors are contrary to any provision of the AIA.  *See* Civil L.R. 7-4(a)(5).  At best, Plaintiffs have referenced their arguments that the *Fintiv* factors are somehow arbitrary and capricious, *see* Mot. at 18-23, which fail for the reasons set forth in the portion of this opposition responding to those arguments, *see* § III, *infra*.

1    essence of legislative choice—and it frustrates rather than effectuates legislative intent

2    simplistically to assume that whatever furthers the statute's primary objective must be the law."

3    *Rodriguez v. United States*, 480 U.S. 522, 526 (1987) (per curiam).

4         Plaintiffs' argument that the plain language of § 314(a) would lead to absurd results is

5    also meritless.  They argue that, because "Congress could not have intended" the Director to

6    consider the *Fintiv* factors when making institution decisions, § 314(a) must be interpreted

7    contrary to its plain meaning.  Mot. at 13-14.  Plaintiffs reason that: (1) the *Fintiv* factors are a

8    bad policy adopted under § 314(a); (2) Congress could not have intended the Director to adopt

9    bad policies; and therefore (3) Congress could not have intended § 314(a) to give the Director

10   discretion over institution decisions.  *See* Mot. at 13-14.  Plaintiffs' conclusion does not follow.

11   Even if plaintiffs were correct that the *Fintiv* factors in particular are at odds with the AIA's

12   objectives, that would not demonstrate that Congress intended to deny the Director discretion

13   over institution decisions generally, contrary to § 314(a)'s text.

14   **III.    Plaintiffs Are Not Entitled to Summary Judgment on Count II, Claiming that the**
15   ***Fintiv* Factors Are Arbitrary and Capricious, Because the Factors Reasonably**
16   **Balance the Policy Interests Involved in *Inter Partes* Review.**

17        Plaintiffs claim that the *Fintiv* factors are arbitrary and capricious and make four

18   arguments in support of this claim.  Am. Compl. ¶¶ 87-91.  The standard of review for such a

19   claim is "highly deferential, presuming the agency action to be valid and affirming the agency

20   action if a reasonable basis exists for its decision."  *Indep. Acceptance Co. v. California*, 204

21   F.3d 1247, 1251 (9th Cir. 2000) (quoting *Cal. Hosp. Ass'n v. Schweiker*, 559 F. Supp. 110, 116

22   (C.D. Cal. 1982)).  Plaintiffs come nowhere close to meeting this standard because their

23   arguments lack legal merit and rely on factual allegations and policy arguments that are improper

24   for consideration under the APA.  Defendant addresses these issues before turning to the

25   specifics of Plaintiffs' arguments.

26        Absent an applicable exception, the APA limits reviewing courts to examining the

27   "record in existence at the time of the decision" and prohibits examination of evidence

1    introduced "initially in the reviewing court." *Sw. Ctr. for Biological Diversity v. U.S. Forest*

2    *Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996); *see also Lands Council v. Powell*, 395 F.3d 1019,

3    1029-30 (9th Cir. 2005).  The APA strongly disfavors courts considering either *post hoc*

4    evidence or information outside the administrative record.  *See Camp v. Pitts*, 411 U.S. 138, 142

5    (1973); *Alcoa Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 790-91 (9th Cir. 2012).  Plaintiffs,

6    however, rely on various forms of evidence generated <u>after</u> the adoption of the *Fintiv* factors to

7    argue that the agency's decision was improper.  Specifically, Plaintiffs cite to a blog post they

8    term a "study" and various applications of the *Fintiv* factors that they believe resulted in

9    inefficiency.[9]  *See* Mot. at 18-20, 22 n.6.  This *post hoc* evidence was not before the Director

10   when he adopted the *Fintiv* factors, so it is not an appropriate ground upon which to base

11   Plaintiffs' claim.

12       Moreover, Plaintiffs' policy-based arguments are similarly inappropriate for the Court's

13   consideration.  The APA does not empower courts to review the merits of agency actions that

14   necessitate "a complicated balancing of a number of factors which are peculiarly within [the

15   agency's] expertise," including the prioritization of agency resources, likelihood of success in

---

[9]  The "study" to which Plaintiffs cite is in actuality a one-page blog post.  Scott McKeown, District Court Trial Dates Tend to Slip After PTAB Discretionary Denials, https://www.patentspostgrant.com/district-court-trial-dates-tend-to-slip-after-ptab-discretionary-denials/ (July 24, 2020).  As the post itself concedes, it was not based on a comprehensive study of institution decisions, but rather based on "a small data set" from two districts.  *Id.*  Thus, not only is the blog post-hoc evidence inappropriate for consideration under the APA, but it would not be admissible regardless because it is not based on sufficient reliable data.  *See Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 818 (7th Cir. 2010) (per curiam) (insufficient sample sizes render studies unreliable and inadmissible); *see also Daubert v. Merrell Dow Pharms.*; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993).  Indeed, the post-hoc nature of evidence here is particularly problematic because at least some of the trial dates analyzed in the study "slipped" upon joint motion of the parties after the Board denied institution.  *See, e.g.*, *Cont'l Intermodal Group-Trucking LLC v. Sand Revolution LLC*, No. 7:18-cv-00147, ECF Nos. 94, 95, 100, 101 (W.D. Tex.).  Plaintiffs ask the Court to infer that *ex post* granting of a joint request to move a trial date—a routine motion that courts frequently grant—demonstrates the unreasonableness of *ex ante* reliance on the trial date.  A much more reasonable inference, were the role of the Court here to make such inferences, would be that the parties reevaluated their positions with respect to trial timing and agreed on an alternate schedule in light of the forthcoming district court decision resolving the issues between the parties.

1   fulfilling the agency's statutory mandate, and compatibility with "the agency's overall policies."

2   *Heckler*, 470 U.S. at 831; *see also Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir.

3   1984).  In other words, Plaintiffs' assertions that agency policies "serve[] poorly to carry out the

4   objectives of [a statute] . . . do not provide a sufficient basis for a court to substitute its judgment

5   for the policy choices of the [a]gency."  *California v. Wheeler*, 467 F. Supp. 3d 864, 874 (N.D.

6   Cal. 2020); *see also Geo-Energy Partners-1983 Ltd. v. Salazar*, 613 F.3d 946, 955 (9th Cir.

7   2010).  Therefore, review of Plaintiffs' claims is not available under the APA.

8        Nevertheless, even if the Court were to review Defendant's decision-making, the *Fintiv*

9   factors are not arbitrary and capricious.

10       A.   The *Fintiv* Factors Do Not Require the Board to Engage in Improper Speculation.

11       Plaintiffs first contend that the *Fintiv* factors are arbitrary and capricious because they

12   "require the Board to speculate about the likely course of litigation."  Mot. at 18 (citing

13   *Horsehead Res. Dev. Co. v. Browner*, 16 F.3d 1246, 1269 (D.C. Cir. 1994)).  Plaintiffs then

14   recount the procedural histories of a handful of "typical case[s]" in which Plaintiffs believe the

15   Board's application of the *Fintiv* factors caused inefficient outcomes.  *Id.* at 18-20.  Notably,

16   each such "typical case" involved the denial of an IPR petition filed by a Plaintiff.  *See id.*

17   Plaintiffs' contention fails because it misunderstands the APA.

18       Nothing in the APA prohibits the agency from adopting a policy that requires agency

19   decision-makers to make judgments about the likelihood of future events.  The case upon which

20   Plaintiffs rely stands for the unremarkable proposition that an agency should not rely on

21   ungrounded speculation to justify the adoption of a new policy.  *See Horsehead Res. Dev. Co.*,

22   16 F.3d at 1269 (environmental standard held invalid under APA when agency relied on

23   speculation about technological capabilities instead of "undertak[ing] an examination of the

24   relevant data and reasoned analysis").[10]  Plaintiffs do not cite any authority for the proposition

---

[10]  Moreover, there is nothing *per se* improper about an agency engaging in reasonable speculation to justify the adoption of a policy.  *See Tenn. Gas Pipeline Co. v. FERC*, 969 F.2d

1    that an agency acts improperly by adopting an analysis that includes speculation.  Indeed,

2    administrative and judicial tribunals regularly consider the likelihood of future events when they

3    make decisions.[11]  Of particular note, when determining whether exceptional circumstances exist

4    to decline concurrent federal jurisdiction, the Supreme Court has instructed federal courts to

5    anticipate (1) whether concurrent "state court proceedings will resolve all issues before the

6    federal court" and (2) whether state issues are likely to predominate a federal case.  *Seneca Ins.*

7    *Co. v. Strange Land, Inc.*, 862 F.3d 835, 841-42 (9th Cir. 2017) (discussing the *Colorado River*

8    doctrine); *see also Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 567 (1983)

9    (declining jurisdiction when "concurrent federal proceedings are likely to be duplicative and

10   wasteful").  Thus, far from being arbitrary or capricious, courts recognize that tribunals must

11   make these kinds of assessments.

12          As an additional matter, Plaintiffs' complaints about the outcomes of their own IPR

13   petitions are not a basis to hold the *Fintiv* factors arbitrary or capricious.  Cherry-picked

14   institution decisions do not necessarily reflect the USPTO's general application of the *Fintiv*

15   factors, despite Plaintiffs' unsupported assertion that the cases they cite are "typical."  Mot. at

16   18-19.  And the inevitable fact that events will sometimes not bear out an agency's predictions

17   does not mean that, the agency must disregard the likelihood of future events.  Moreover, an

---

1141, 1145 (D.C. Cir. 1992) (agencies may justify policies based on "a degree of speculation," although the administrative record "must indicate the basis for [the agency's] prediction"); *Sierra Club v. Kenna*, No. 1:12-CV-1193 AWI JLT, 2013 WL 144251, at *13 (E.D. Cal. Jan. 11, 2013) (absent "legal limits to the speculative discretion of a federal agency," courts must give weight to agencies' "assessment, including any speculation they must make, [so long as it] is within the scope of their presumed expertise"), *aff'd sub nom. Sierra Club v. Bureau of Land Mgmt.*, 786 F.3d 1219 (9th Cir. 2015).

[11]  *See, e.g.*, *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015) (likelihood of confusion test for copyright and trademark); *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (likelihood of success for preliminary injunction); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (likelihood injury will be redressed by favorable decision); *INS v. Stevic*, 467 U.S. 407, 429 (1984) (agency determination on likelihood of persecution if not granted refugee status); *United States v. Schoonover*, 210 F.3d 387, 387 (9th Cir. 2000) (unreported table decision) (agency policy to consider likely time criminal defendant will serve before release when deciding concurrent sentencing).

1   allegedly inefficient <u>application</u> of the *Fintiv* factors does not demonstrate that the factors

2   themselves will generally lead to inefficient outcomes.  Plaintiffs cannot identify anything about

3   the *Fintiv* factors themselves that necessitated the Board's judgments in the specific cases they

4   cite.  Indeed, that would be impossible because the *Fintiv* factors are on their face non-

5   exhaustive and non-dispositive, preserving the Board's discretion to make individualized

6   judgments as to each IPR petition filed.  Rather, the *Fintiv* factors provided reasonable

7   considerations for the Board to consider when making individualized judgments in exercising the

8   Director's statutory discretion.

9          B.   <u>Plaintiffs' Policy Argument that the *Fintiv* Factors Cause Inefficiency Is Both</u>
10              <u>Misguided and Inappropriate for Consideration Under the APA.</u>

11         Plaintiffs next contend that the *Fintiv* factors are arbitrary and capricious because they

12  "undermine efficiency—the PTO's ostensible goal in adopting [them]—and Congress's purpose

13  in providing for IPR." [12]  Mot. at 20-21.  Plaintiffs complain that the *Fintiv* factors make it hard

14  for them to know when an IPR petition is most likely to be granted and that patent holders might

15  engage in litigation gamesmanship to decrease the likelihood that the factors would favor

16  institution.[13]  *Id.*  In making this contention, Plaintiffs are again improperly second-guessing

17  agency policy judgments.

18         Contrary to Plaintiffs' claim, efficiency is not the only goal of the AIA or the *Fintiv*

19  factors.  Congress instructed the Director to regulate the IPR process taking into account "the

20  effect[s] . . . on the economy, the integrity of the patent system, the efficient administration of the

---

[12]  Plaintiffs include in this argument their claim that § 315(b)'s timeliness requirement is in supposed tension with the *Fintiv* factors.  Mot. at 21.  However, as explained above, there is nothing inconsistent between the AIA imposing a threshold eligibility requirement on petitioners and the AIA granting the Director the discretion to deny eligible petitions.  *See* § II.B, *supra.*

[13]  As a practical matter, if a petitioner or patent holder acted in bad faith to manipulate the institution decision, the Board would consider that fact under the catch-all *Fintiv* factor and decline to reward bad behavior in the interest of "system efficiency [and] fairness."  *Fintiv*, Paper 11, at 5; *see also id.* at 11-12 (stating that the parties should explain the reasons for the timing of the petition; *NHK*, Paper 8 at 19 (considering whether a petitioner's delay gave it "any tactical advantage, or opportunity for tactical advantage").

Defendant's Opposition to Plaintiffs' Motion for Summary Judgment
Case No.: 5:20-cv-06128-EJD

1    Office, and the ability of the Office to timely complete [IPR] proceedings."  35 U.S.C.

2    § 316(b).[14]  Likewise, the *Fintiv* factors "balance considerations such as system efficiency,

3    fairness, and patent quality."  *Fintiv*, Paper 11 at 5.  Although making individualized

4    determinations based on the facts of an individual petition may make it harder for IPR petitioners

5    to maximize their chances of institution, it is the agency's prerogative—not Plaintiffs' and not

6    the Court's—to determine whether the benefits of the *Fintiv* factors outweigh that supposed

7    harm.  *See Geo-Energy Partners-1983 Ltd.*, 613 F.3d at 955.

8        C.  The *Fintiv* Factors Requiring Individualized Determinations in Light of the USPTO's
9            Policy Goals Does Not Render the Factors Arbitrary or Capricious.

10    Plaintiffs' third contention is that the *Fintiv* "factors are . . . so vague and malleable that

11    they yield inconsistent outcomes."  Mot. at 21.  Plaintiffs then choose various IPR institution

12    decisions that were decided differently, despite Plaintiffs' judgment that the facts involved were

13    functionally equivalent.  *Id.* at 21-22.  Initially, this argument is in serious tension with Plaintiffs'

14    claim elsewhere that the *Fintiv* factors are an outcome-determinative, substantive rule that leaves

15    no discretion to the Board.  *Id.* at 24; Am. Compl. ¶ 80.  Further, there is nothing arbitrary or

16    capricious about employing a fact-dependent, multi-factor analysis that "takes a holistic view of

17    whether efficiency and integrity of the system are best served by denying or instituting review."

18    *Fintiv*, IPR2020-00019 at 6.  Agency guidance providing "a *flexible* and *fact-dependent* standard

19    . . . gives the agency the opportunity to show 'flexibility' . . . not what the plaintiffs call

20    'vagueness.'"[15]  *Nat'l Multi Hous. Council v. Jackson*, 539 F. Supp. 2d 425, 428 (D.D.C. 2008)

---

[14]  The Director did not invoke his regulatory authority under § 316 to adopt the *Fintiv* factors.
*See* SOP 2 at 2.  Defendant cites to the statute only to demonstrate that Congress clearly did not
intend the Director to maximize efficiency—which Plaintiffs assume means maximizing the
institution of IPR proceedings—at the expense of all other considerations.  *See* 35 U.S.C.
§ 316(b).

[15]  From a policymaking perspective, individualized assessments allow continued refinement of
the analysis used, just as *Fintiv* built on *NHK*.  Indeed, the USPTO continues to develop the
*Fintiv* analysis in subsequent decisions, just as courts build on past cases.  *See, e.g.*, *Sotera
Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 (Dec. 1, 2020) (relevance of
stipulation not to pursue district court litigation on grounds available through IPR); *Snap, Inc. v.*

---

1   (internal quotation marks omitted) (holding that a facial challenge to agency policy guidance was

2   unripe because "a guidance document . . . neither creat[es] rights nor obligations for private

3   parties nor binding the agency's enforcement authority").  Far from being improper, such

4   analyses are commonplace for both administrative and judicial tribunals.[16]  Absent any legal

5   support for their assertion that flexible, fact-dependent analyses are inherently arbitrary and

6   capricious, Plaintiffs' position devolves to identifying a handful of instances in which they

7   disagree with the Board's application of the *Fintiv* factors.  Once more, Plaintiffs' arguments

8   depend on substituting their policy judgments for the agency's, which the APA does not permit.

9        D.  The *Fintiv* Factors are a Reasonable Approach to Advancing the Agency's Policy
10           Goals, Including Efficient Allocation of Agency Resources.

11       Plaintiffs' final argument for the adoption of the *Fintiv* factors being arbitrary and

12   capricious is that the USPTO purportedly failed to explain adequately how the *Fintiv* factors

13   advance their stated goals.  Mot. at 22-23.  The only actual analysis Plaintiffs provide under this

14   point is that parties having simultaneously to litigate the same issues of patent validity in parallel

15   proceedings is not inefficient because (1) IPR petitioners' fees should cover the costs of the IPR

16   proceedings, making the USPTO's "costs . . . irrelevant," and (2) it is irrational for the Board to

17   consider the resources already devoted to district court litigation when deciding institution.  *Id.* at

---

*SRK Tech. LLC*, IPR2020-00820, Paper 15 (Oct. 21, 2020) (relevance of district court stay for duration of IPR proceedings).

[16]  *See, e.g.*, *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2015) (holistic analysis of non-exhaustive, multi-factor test for trademark confusion); *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 783 n.7 (9th Cir. 2010) (analysis for successorship is "holistic" and involves multiple "factors [that] are not entirely independent [because] . . . certain facts are relevant to more than one factor"); *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (enumerating factors for courts to apply "in the context of a holistic reasonableness analysis" to determine if attorney-client privilege has been waived); *see also e.g.*, *United States v. Green*, 940 F.3d 1038, 1043 (9th Cir. 2019) (sentencing courts make a "holistic and individualized determination as to the appropriate sentence under" Sentencing Guidelines); *Space Data Corp. v. Alphabet Inc.*, No. 16-cv-03260-BLF, 2019 WL 1131420 at *1 (N.D. Cal. March 12, 2019) (considering factors similar to the *Fintiv* factors—*e.g.*, investment made in proceeding, whether stay will simplify issues in question, and equitable considerations—whether to grant a stay of patent litigation pending IPR).

23.  Again, these arguments are little more than policy disputes that cannot adequately support an APA claim.  *See Heckler*, 470 U.S. at 190.  Moreover, Plaintiffs' policy preferences do not demonstrate the absence of "a rational connection" between the USPTO's goals and the factors.

Even assuming that IPR fees cover all the USPTO's associated monetary costs, as Plaintiffs assert,[17] that does not account for the Board's limited time and personnel to conduct *inter partes* review.  In fiscal year 2019, the USPTO received more than 1,600 IPR petitions.[18] By law, the Board must grant or deny each petition within three months and reach a final written decision following trial within one year of institution, absent an applicable exception.  *See* 35 U.S.C. §§ 314(b), 316(a)(11).  To make efficient institution decisions, the Board must therefore have the ability to make individual determinations based on all available facts.  Devoting personnel and time to adjudicating petitions when, for example, "the district court proceeding will analyze the same issues and will be resolved before any trial on the Petition concludes" is undeniably wasteful.  *NHK*, Paper 8 at 19-20.  The *Fintiv* factors thereby ensure that *inter partes* review truly remains a "quick and cost effective alternative[] to litigation," not just a second forum for defendants in infringement cases to seek to challenge the validity of patents already being considered by a court.  H.R. Rep. No. 112-98, pt. 1, at 48 (2011); *see Fintiv*, Paper 11 at 16.  This type of determination about the optimal allocation of agency resources is exactly the type of policy determination that the APA entrusts to agencies, not private litigants or the courts.

Plaintiffs' assertion that the USPTO's policy judgment improperly relies on litigants' and courts' sunk costs is a red herring.  Under *Fintiv*, the Board considers the resources already

---

[17]  Plaintiffs' citation to the Federal Register notice announcing the USPTO's increase in fees does not establish as an undisputed material fact that each case is cost-neutral for the USPTO. Mot. at 23.  Rather, the USPTO adjusted various fees with the intent to generate "a sufficient amount of <u>aggregate</u> revenue" for agency operations. 85 Fed. Reg. 46,932, 46,932, 46,945-946 (Aug. 3, 2020) (emphasis added).  The USPTO's costs in any given case may or may not be covered by the fees set, reinforcing the agency's need to decide whether institution is efficient based on the facts of individual cases.

[18]  William Saindon, J., PTAB, New AIA Trial Statistics (June 11, 2020), https://www.uspto.gov/sites/default/files/documents/ptab_fy19_end_of_year_outcome_roundup. pdf.

1    invested in judicial proceedings to assess how advanced the case is and, thus, the likelihood that

2    the court will stay the case to allow for *inter partes* review.  *Fintiv*, Paper 11 at 9-12.  It would be

3    inefficient for the Board—not to mention the parties—to invest the resources needed to conduct

4    *inter partes* review if a district court is going to reach the merits first.  Thus, contrary to

5    Plaintiffs' assertion, the Board's considering already-expended resources is not irrational.

6    Rather, it is a reasonable way for the Board to assess whether it is efficient to commit additional

7    resources to conducting IPR proceedings.

8    **IV.    Plaintiffs Are Not Entitled to Summary Judgment on Count III, Claiming that the**
9    ***Fintiv* Factors Could Be Adopted Only Through Notice-and-Comment Rulemaking,**
10    **Because the *Fintiv* Factors Do Not Constitute a Substantive Rule.**

11    In their Amended Complaint, Plaintiffs claim that the Director adopted the *Fintiv* factors

12    without observing proper procedures because he did not adopt them through notice-and-

13    comment rulemaking.[19]  Am. Compl. ¶¶ 92-95; *see also* Mot. at 23-25.  The APA requires

14    notice-and-comment rulemaking for "substantive" rules, but not for other types of rules and

15    policies.[20]  5 U.S.C. § 553(b)(3); *see Sacora v. Thomas*, 628 F.3d 1059, 1069 (9th Cir. 2010).  To

16    be substantive, a rule must "create rights, impose obligations, or effect a change in existing law

17    pursuant to authority delegated by Congress."  *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1087

18    (9th Cir. 2003).  The rights created or obligations imposed must those of outside parties, not

19    merely changes in the internal functioning of the agency.  *See United States v. Alameda Gateway*

20    *Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000); *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000).

---

[19]  Although the Director is not required to do so, he has nonetheless solicited public feedback
with regard to the *Fintiv* factors.  *See* Request for Comments on Discretion to Institute Trials
Before the Patent Trial and Appeal Board, 85 Fed. Reg. 66,502 (Oct. 20, 2020).  The wide range
of views offered in response demonstrates that, contrary to Plaintiffs' assertions that instituting
IPR proceedings is always the best policy choice, there are conflicting policy interests that must
be balanced.  U.S. Patent & Trademark Office, Public Views on Discretionary Institution of AIA
Proceedings, https://www.uspto.gov/patents/ptab/recent-proposals-pilots-and-final-rules (Jan.
2021).  Such balancing is uniquely the province of the USPTO, not Plaintiffs and not the Court.

[20] Substantive rules may also be referred to as "legislative" rules.  The two terms are equivalent,
so Defendant uses "substantive" exclusively to avoid confusion.

1    Plaintiffs contend that the *Fintiv* factors are a substantive rule because "designating *NHK*

2    and *Fintiv* 'precedential,' . . . establish[ed] a rule" and the "rule is legislative—not procedural—

3    because the rule 'alter[s] the right or interest of parties' by defining circumstances under which

4    IPR may be denied." Mot. at 24 (quoting *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir.

5    1994)). This contention fails because neither the adoption of the *Fintiv* factors nor the Board's

6    consideration of them determines the rights of IPR petitioners or patent holders.

7        A.  <u>The Director's Designation of *Fintiv* and *NHK* as Precedential Decisions Did Not</u>
8            <u>Alter the Rights of Outside Parties.</u>

9        Plaintiffs cannot succeed on their notice-and-comment claim by relying on the fact that

10   the *Fintiv* factors are "binding" because they bind only the Board, an entity within the agency.

11   *See* SOP 2 at 2, 11. Standard Operating Procedure 2—the policy directive describing the process

12   by which the Director may designate a Board decision as precedential—makes clear that it "sets

13   forth <u>internal</u> norms for the administration of the [Board]. It does not create any legally-

14   enforceable rights." *Id.* at 2 (emphasis added); *see also id.* (issuing SOP 2 under the Director's

15   authority to provide direction and management for the USPTO and govern proceedings in the

16   USPTO; *see also id.* at 11 (contrasting precedential decision with informative decisions, which

17   are "not binding authority on the Board"). Designating a decision as precedential merely

18   requires the Board to follow that decision "in subsequent matters involving similar facts or

19   issues." *Id.* at 11. As such, any impact on the rights of IPR petitioners or the rights of patent

20   owners would have to arise from the Board's consideration of the *Fintiv* factors in individual

21   cases, not the adoption of the factors themselves.

22       B.  <u>The Board's Consideration of the *Fintiv* Factors Does Not Establish the Legal Rights</u>
23           <u>of IPR Petitioners or Patent Owners.</u>

24       Plaintiffs cannot rely on the Board's consideration of the *Fintiv* factors to succeed on

25   their notice-and-comment claim because the factors do not dictate the outcomes of institution

26   decisions and because institution decisions do not establish legal rights.

27       1.  *The Fintiv Factors Are Only A General Statement of Policy, Not a Substantive Rule,*
28           *Because They Only Guide the Board's Institution Decision.*

1    "The critical factor to determine whether a directive announcing a new policy constitutes

2    a [substantive] rule or a general statement of policy is the extent to which the challenged

3    directive leaves the agency, or its implementing official, free to exercise discretion to follow, or

4    not to follow, the announced policy in an individual case." *Sacora*, 628 F.3d at 1069 (quoting

5    *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009) (internal

6    alterations omitted)).  A substantive rule "effectively replaces agency discretion" by "narrowly

7    limit[ing] administrative discretion or establishes a *binding norm* that so fills out the statutory

8    scheme that upon application one need only determine whether a given case is within the rule's

9    criterion." *Id.* (quoting *Colwell*, 558 F.3d at 1124) (emphasis in original) (alterations omitted).

10   In contrast, a general statement of policy "merely provides *guidance* to agency officials in

11   exercising their discretionary power while preserving their flexibility and their opportunity to

12   make individualized determinations." *Id.* (quoting *Colwell*, 558 F.3d at 1124) (alterations

13   omitted).

14       Although "[t]he distinguishing line between legislative rules and general statements of

15   policy has long been 'fuzzy,' . . . it is clear that" the *Fintiv* factors are only "a policy statement

16   [because] . . . they have no binding legal effect." *Clarian Health W., LLC v. Hargan*, 878 F.3d

17   346, 357 (D.C. Cir. 2017).  Policies that are "not outcome determinative" (*i.e.*, non-dispositive

18   rules) cannot have force of law and therefore cannot be substantive rules.  *Planned Parenthood*

19   *of Wis., Inc. v. Azar*, 316 F. Supp. 3d 291, 300, 302-05, 307 (D.D.C. 2018) (binding criteria for

20   formulating grant recommendations not final agency action because recommendation itself not

21   final agency action), *vacated as moot and remanded*, 942 F.3d 512 (D.C. Cir. 2019); *see Clarian*

22   *Health W.*, 878 F.3d at 358 (criteria governing discretionary decision not a legislative rule);

23   *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 594–96 (5th Cir. 1995) (non-

24   exhaustive list of factors to consider when deciding whether to institute enforcement action not a

25   legislative rule).  As the Board explained in *Fintiv*, the factors announced in that case are "non-

26   dispositive," and the Board may consider any "[o]ther facts and circumstances" it deems

1 relevant. *Fintiv*, Paper 11 at 5. Further, the Board applies the *Fintiv* factors with "a holistic view

2 of whether [the] efficiency and integrity of the system are best served by denying or instituting

3 review," and explicitly permits consideration of unenumerated factors. *Fintiv*, Paper 11 at 6.

4 This kind of flexibility and opportunity for the Board to make individual institution decisions

5 demonstrates that the *Fintiv* factors amount to only a general statement of policy, not a

6 substantive rule. *See Sacora*, 628 F.3d at 1069.

7        *2.   The Institution Decision Itself Does Not Establish Any Legal Rights, So the Factors*
8              *Considered in Reaching that Decision Likewise Do Not Establish Any Legal Rights.*

9        Neither IPR petitioners' nor patent holders' rights are determined by the institution

10 decision. *See* Defs.' Mot. Dismiss Pls.' Am. Compl., ECF No. 51-1, at 16-17 (incorporated by

11 reference). Patent owners have no right to avoid participating in adjudicatory proceedings, *FTC*

12 *v. Standard Oil Co. of Cal.*, 449 US. 232, 244 (1980), and IPR petitioners have no right to IPR

13 review, *SAS Inst.*, 138 S. Ct. at 1351; *Cuozzo Speed Techs.*, 136 S. Ct. at 2140 ("no mandate to

14 institute review"). The Board can only alter a patent owner's patent claims or estop an IPR

15 petitioner in future proceedings by issuing a final written decision. *See* 35 U.S.C. §§ 315(e),

16 318(b). Declining to initiate an *inter partes* review leaves the patent owner in possession of

17 unaltered patent claims and leaves the IPR petitioner free to challenge those claims in district

18 court. In other words, both parties are left just as they were before the petition was filed.

19 Because denying institution of *inter partes* review does not impact any legal rights, a policy

20 affecting the institution decision likewise does not impact legal rights. The *Fintiv* factors

21 therefore cannot be a substantive rule requiring notice-and-comment rulemaking, even if they did

22 determine the Board's institution decision.

23        *3.   Merely Identifying Relevant Considerations for the Board Does Not Make the <u>Fintiv</u>*
24              *Factors a Substantive Rule.*

25        Plaintiffs contend that the *Fintiv* factors are a substantive rule requiring notice-and-

26 comment rulemaking because "designating *NHK* and *Fintiv* 'precedential,' . . . establish[ed] a

27 rule" and the "rule is legislative—not procedural—because the rule 'alter[s] the rights or

1   interests of parties' by defining circumstances under which IPR may be denied." Mot. at 24

2   (quoting *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) (alteration in original).

3   This contention fails for three reasons in addition those explained above.

4       First, Plaintiffs' contention relies on a false premise. The AIA defines the circumstances

5   under which IPR may be denied, not *NHK* or *Fintiv*. The AIA establishes the threshold

6   requirements for an IPR petition to be eligible for institution and confers on the Director

7   unreviewable discretion nonetheless to deny institution. The Director providing guidance to the

8   Board in its exercise of his delegated discretion neither expands nor limits that discretion.

9   Indeed, *Fintiv* explicitly provides that the enumerated factors are both non-exclusive and non-

10   dispositive. *Fintiv*, Paper 11 at 5.

11       Second, merely "defining circumstances under which IPR may be denied" does not alter

12   rights or legal interests of parties before the agency, so cannot be a substantive rule. Mot. at 24.

13   Otherwise, interpretative rules—*i.e.*, those that explain an agency's "construction of the statutes

14   and rules which it administers," *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995), and

15   "advise the public of how the agency understands, and is likely to apply its binding statutes,"

16   *Kisor v. Wilkie*, 139 S Ct. 2400, 2420 (2019) (internal quotation marks and citation omitted)—

17   would require notice-and-comment rulemaking. The APA specifically exempts such rules from

18   the notice-and-comment requirements, 5 U.S.C. § 553(b)(3)(A). Thus, Plaintiffs' assertion, even

19   if were true, could not establish that the *Fintiv* factors have the legal impact necessary to be a

20   substantive rule.

21       Third, Plaintiffs have failed to show that the *Fintiv* factors meet any of the three

22   circumstances in which a rule will have the force of law and therefore be substantive. These

23   circumstances are:

24       (1) when, in the absence of the rule, there would not be an adequate legislative basis for
25           enforcement action;

26       (2) when the agency has explicitly invoked its general legislative authority; or

1    (3) when the rule effectively amends a prior [substantive] rule.

2    *Hemp Indus. Ass'n*, 333 F.3d at 1087 (quoting *Am. Mining Congress v. Mine Safety & Health*

3    *Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993)); *see also Nat'l Org. of Veterans' Assocs., Inc. v.*

4    *Sec'y of Veterans Affairs*, 260 F.3d 1365, 1375-77 (Fed. Cir. 2001) (accord between Federal

5    Circuit decision and substantive rulemaking case law in Ninth, Second, Seventh, and D.C.

6    Circuits).

7            None of these three circumstances applies here.  The first circumstance is met only when

8    a statute would have no effect without an agency policy to give it content.  *See Erringer v.*

9    *Thompson*, 371 F.3d 625, 630 (9th Cir. 2004); *Am. Mining Congress*, 995 F.2d at 1109.  This

10   circumstance does not apply here because the AIA does not require agency rules governing the

11   discretionary factors to empower the Director to exercise discretion over the institution of IPR

12   proceedings.  *See generally* 35 U.S.C. §§ 314(a), 316(a), 325(d).  To the contrary, the AIA took

13   effect more than <u>six years</u> before the Director adopted the *Fintiv* factors, and the Board exercised

14   the Director's statutory discretion to deny institution throughout that time.  The second

15   circumstance does not apply because the Director did not adopt the *Fintiv* factors pursuant to his

16   regulatory authority under § 316(b).  Instead, the Director invoked his statutory authority to

17   "provid[e] policy direction and management supervision for the" USPTO and his "authority to

18   govern the conduct of proceedings" there.  SOP 2 at 2 (quoting 35 U.S.C. §§ 3(a)(2)(A), 6(a)).

19   The third circumstance does not apply because there has never been a legislative rule governing

20   the exercise of the Board's discretion under § 314(a), so the *Fintiv* factors could not have

21   amended a prior substantive rule.  None of these three circumstances apply, so the *Fintiv* factors

22   cannot be a substantive rule.

23                                   **CONCLUSION**

24           For the foregoing reasons, the Court should deny Plaintiffs' Motion.

25

DATED:  January 21, 2021                    Respectfully submitted,

                                            Michael D. Granston
                                            Deputy Assistant Attorney General

                                            LESLEY FARBY
                                            Assistant Branch Director

                                            __/s/ Gary Feldon_____
                                            GARY D. FELDON D.C. Bar #987142
                                            Trial Attorney, Federal Programs Branch
                                            Civil Division, U.S. Department of Justice
                                            1100 L Street, NW
                                            Washington, D.C. 20044
                                            Telephone:  (202) 598-0904
                                            E-mail:  gary.d.feldon@usdoj.gov
                                            *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2021, I electronically filed the foregoing document

with the Clerk of the Court, using the CM/ECF system, which will send notification of such

filing to the counsel of record in this matter who are registered on the CM/ECF system.


Executed on January 21, 2021, in Washington, D.C.


 */s/ Gary Feldon*
GARY D. FELDON