MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

CATHERINE M.A. CARROLL (*pro hac vice*)
catherine.carroll@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Plaintiffs Apple Inc., Cisco
Systems, Inc., and Intel Corporation*

DANIEL T. SHVODIAN (CA SBN 184576)
DShvodian@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 838-4300
Facsimile: (650) 737-5461

*Attorney for Plaintiff Google LLC*

JOHN B. SGANGA (CA SBN 116211)
John.Sganga@knobbe.com
KNOBBE MARTENS OLSON & BEAR LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorney for Plaintiffs Edwards Lifesciences
Corporation and Edwards Lifesciences LLC*

*A complete list of parties and counsel appears
on the signature page per Local Rule 3-4(a)(1)*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

APPLE INC., CISCO SYSTEMS, INC.,
GOOGLE LLC, INTEL CORPORATION,
EDWARDS LIFESCIENCES
CORPORATION, and EDWARDS
LIFESCIENCES LLC,

             Plaintiffs,

    v.

ANDREI IANCU, Under Secretary of
Commerce for Intellectual Property and
Director, United States Patent and Trademark
Office,

             Defendant.

Case No. 20-cv-6128-EJD

**PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE
AMENDED COMPLAINT**

Date: March 11, 2021

Time: 9:00 a.m.

Courtroom: Courtroom 4, 5th Floor

Judge: Hon. Edward J. Davila

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

    A.    Congress Intended IPR To Provide An Efficient Means Of Invalidating Dubious Patent Claims.................................................................................2

    B.    The *NHK* And *Fintiv* Decisions Articulated A Discretionary Standard For Denying IPR Petitions Based On Pending Parallel Litigation.................................3

    C.    The Director Adopted *NHK-Fintiv* As A Binding Rule Governing All Institution Decisions Without Notice-And-Comment Rulemaking........................4

    D.    Procedural Background.................................................................................5

LEGAL STANDARD ...........................................................................................5

ARGUMENT ........................................................................................................6

I.    Plaintiffs Have Standing ..............................................................................6

II.    Plaintiffs' Claims Are Justiciable ...............................................................11

    A.    The *NHK-Fintiv* Rule Is A Final Agency Action ................................11

    B.    The AIA Does Not Preclude Review ....................................................16

    C.    Section 701(a)(2) Does Not Bar Review ..............................................20

CONCLUSION....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Abbott Laboratories v. Gardner*,
   387 U.S. 136 (1967), *abrogated on other grounds by Califano v. Sanders*,
   430 U.S. 99 (1977)......................................................................................................14, 17

*Adarand Constructors, Inc. v. Pena*,
   515 U.S. 200 (1995)........................................................................................................9

*Alaska v. Environmental Protection Agency*,
   244 F.3d 748 (9th Cir. 2001) .......................................................................................14

*American Federation of Teachers v. DeVos*,
   No. 5:20-CV-455, 2020 WL 5257561 (N.D. Cal. Sept. 3, 2020) .....................................6

*Arizona v. Shalala*,
   121 F. Supp. 2d 40 (D.D.C. 2000) ...............................................................................14

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
   941 F.3d 1320 (Fed. Cir. 2019).................................................................................3, 7

*ASSE International, Inc. v. Kerry*,
   803 F.3d 1059 (9th Cir. 2015) .................................................................................20, 21

*Bennett v. Spear*,
   520 U.S. 154 (1997)..........................................................................................11, 12, 13

*Block v. Community Nutrition Institute*,
   467 U.S. 340 (1984)......................................................................................................17

*Bradley v. T-Mobile US, Inc.*,
   No. 17-CV-07232-BLF, 2020 WL 1233924 (N.D. Cal. Mar. 13, 2020)......................8, 9

*California v. Trump*,
   407 F. Supp. 3d 869 (N.D. Cal. 2019) ..........................................................................21

*California Sea Urchin Commission v. Bean*,
   828 F.3d 1046 (9th Cir. 2016) ......................................................................................15

*Center for Auto Safety v. National Highway Traffic Safety Administration*,
   452 F.3d 798 (D.C. Cir. 2006).......................................................................................16

*Center for Policy Analysis on Trade & Health (CPATH) v. Office of U.S. Trade Representative*,
   540 F.3d 940 (9th Cir. 2008) ........................................................................................25

*Cisco Systems Inc. v. Ramot at Tel Aviv University Ltd.*,
   Nos. 2020-2047, -2049, 2020 WL 6373016 (Fed. Cir. Oct. 30, 2020)......................20, 24

*City & County of San Francisco v. U.S. Department of Transportation*,
796 F.3d 993 (9th Cir. 2015) ........................................................25

*City of Waukesha v. Environmental Protection Agency*,
320 F.3d 228 (D.C. Cir. 2003) .......................................................9

*Cuozzo Speed Technologies, LLC v. Lee*,
136 S. Ct. 2131 (2016).................................................19, 22, 23, 24

*Dalton v. Specter*,
511 U.S. 462 (1994)................................................................15, 16

*Department of Homeland Security v. Regents of University of California*,
140 S. Ct. 1891 (2020) ..............................................................18

*East Bay Sanctuary Covenant v. Trump*,
950 F.3d 1242 (9th Cir. 2020) .......................................................9

*Havasupai Tribe v. Provencio*,
906 F.3d 1155 (9th Cir. 2018) ...................................................12, 14

*Heckler v. Chaney*,
470 U.S. 821 (1985)...............................................................21, 24

*Hsaio v. Scalia*,
821 F. App'x 680 (9th Cir. 2020) .................................................8, 9

*Hyatt v. Office of Management & Budget*,
908 F.3d 1165 (9th Cir. 2018) ...................................................18, 19

*International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*,
783 F.2d 237 (D.C. Cir. 1986) ......................................................21

*J.L. v. Cissna*,
341 F. Supp. 3d 1048 (N.D. Cal. 2018) .............................................15

*Judulang v. Holder*,
565 U.S. 42 (2011).................................................................23, 25

*Lincoln v. Vigil*,
508 U.S. 182 (1993)................................................................20, 21

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990)................................................................14, 16

*Microsoft Corp. v. i4i Ltd. Partnership*,
564 U.S. 91 (2011)..................................................................3, 7

*Motor Vehicle Manufacturers Association of U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*,
    463 U.S. 29 (1983)...............................................................................................21

*National Association of Home Builders v. Norton*,
    415 F.3d 8 (D.C. Cir. 2005)..............................................................................16

*National Mining Association v. McCarthy*,
    758 F.3d 243 (D.C. Cir. 2014)..........................................................................16

*National Wildlife Federation v. Espy*,
    45 F.3d 1337 (9th Cir. 1995) ............................................................................11

*Navajo Nation v. United States Department of Interior*,
    819 F.3d 1084 (9th Cir. 2016) ..........................................................................15

*Oregon National Desert Association v. U.S. Forest Service*,
    465 F.3d 977 (9th Cir. 2006) ............................................................................11

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) ..........................................................................25

*People of California v. FCC*,
    39 F.3d 919 (9th Cir. 1994) ..............................................................................25

*Perez Perez v. Wolf*,
    943 F.3d 853 (9th Cir. 2019) ..............................................................20, 21, 22

*Pinnacle Armor, Inc. v. United States*,
    648 F.3d 708 (9th Cir. 2011) .......................................................................2, 16

*POET Biorefining, LLC v. Environmental Protection Agency*,
    970 F.3d 392 (D.C. Cir. 2020)...........................................................12, 13, 14

*Planned Parenthood of Wisconsin, Inc. v. Azar*,
    316 F. Supp. 3d 291 (D.D.C. 2018)..................................................................16

*Pregis Corp. v. Kappos*,
    700 F.3d 1348 (Fed. Cir. 2012).................................................................19, 20

*Public Utility District No. 1 of Snohomish County v. Bonneville Power Administration*,
    506 F.3d 1145 (9th Cir. 2007) ..........................................................................12

*Reno v. Catholic Social Services, Inc.*,
    509 U.S. 43 (1993)............................................................................................16

*Robertson v. Allied Solutions, LLC*,
    902 F.3d 690 (7th Cir. 2018) ..............................................................................8

*Sackett v. Environmental Protection Agency,*
    566 U.S. 120 (2012) ............................................................................18

*Saint Regis Mohawk Tribe v. Mylan Pharmaceuticals Inc.,*
    896 F.3d 1322 (Fed. Cir. 2018) .......................................................22

*San Francisco Herring Association v. U.S. Department of Interior,*
    683 F. App'x 579 (9th Cir. 2017) ...................................................16

*SAS Institute Inc. v. Iancu,*
    138 S. Ct. 1348 (2018) ...............................................................2, 19

*Serrato v. Clark,*
    486 F.3d 560 (9th Cir. 2007) ..........................................................21

*Settles v. U.S. Parole Commission,*
    429 F.3d 1098 (D.C. Cir. 2005) .......................................................8

*Sierra Club v. Trump,*
    929 F.3d 670 (9th Cir. 2019) ....................................................12, 13

*Sierra Club v. Trump,*
    963 F.3d 874 (9th Cir.) ...................................................................22

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) .....................................................................6

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) .........................................................................10

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ......................................................................6, 8

*Thryv, Inc. v. Click-To-Call Technologies, LP,*
    140 S. Ct. 1367 (2020) .......................................................18, 19, 24

*Tokyo Kikai Seisakusho, Ltd. v. United States,*
    529 F.3d 1352 (Fed. Cir. 2008) .......................................................22

*Tribal Village of Akutan v. Hodel,*
    869 F.2d 1185 (9th Cir. 1988) .........................................................25

*Utility Air Regulatory Group v. Environmental Protection Agency,*
    573 U.S. 302 (2014) ........................................................................22

*Warth v. Seldin,*
    422 U.S. 490 (1975) ........................................................................10

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Service,*
    139 S. Ct. 361 (2018) ........................................................20, 21, 23

*Wolfe v. Strankman,*
    392 F.3d 358 (9th Cir. 2004) ................................................................................6

**STATUTES, RULES, AND REGULATIONS**

37 C.F.R.
    § 42.4 .......................................................................................................................4
    § 42.51 .....................................................................................................................3
    § 42.100 ...................................................................................................................3
    § 42.107 ...................................................................................................................3

5 U.S.C.
    § 551 ........................................................................................................................5
    § 553 ........................................................................................................................1
    § 701 ................................................................................................................*passim*
    § 704 ..................................................................................................................11, 17
    § 706 ............................................................................................................1, 19, 20

28 U.S.C. § 1295(a)(4)(A) ..........................................................................................24

35 U.S.C.
    § 2 ..........................................................................................................................23
    § 3 ..........................................................................................................................23
    § 6 ............................................................................................................................3
    § 141 ..................................................................................................................17, 18
    § 311 ................................................................................................................*passim*
    § 312 ........................................................................................................................4
    § 314 ................................................................................................................*passim*
    § 315 ................................................................................................................*passim*
    § 316 ................................................................................................................*passim*
    § 319 ..................................................................................................................17, 18
    § 325 ........................................................................................................................4

Fed. R. Civ. P. 12 ........................................................................................................5

**P.T.A.B. PROCEEDINGS**

*Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020)...................4, 5

*Apple Inc. v. Maxell, Ltd.*,
    No. IPR2020-00407, 2020 WL 4680039 (P.T.A.B. Aug. 11, 2020) .............................5, 12

*Cisco Systems, Inc. v. Ramot at Tel Aviv University Ltd.*,
    No. IPR2020-00123, 2020 WL 2511247 (P.T.A.B. May 15, 2020)...............................5

*Edwards Lifesciences Corp. v. Evalve, Inc.*,
    No. IPR2019-01479, 2020 WL 927867 (P.T.A.B. Feb. 26, 2020) ...............................5

*Google LLC v. AGIS Software Development, LLC*,
    No. IPR2020-00872, 2020 WL 6954676 (P.T.A.B. Nov. 25, 2020) ...............................5

*Intel Corp. v. VLSI Technology LLC*,
   No. IPR2020-00106, 2020 WL 2201828 (P.T.A.B. May 5, 2020)....................................5

*NHK Spring Co. v. Intri-Plex Technologies, Inc.*, No. IPR2018-00752, Paper 8
   (P.T.A.B. Sept. 12, 2018)................................................................................4, 5

## OTHER AUTHORITIES

16 Charles Alan Wright *et al.*, Fed. Practice & Procedure (3d ed. 2017).....................16

157 Cong. Rec. S1352 (daily ed. Mar. 8, 2011) .......................................................3, 6

H.R. Rep. No. 112-98 (2011).................................................................................2, 3, 6, 7

Lex Machina, Patent Findings By Judgment Event, https://rb.gy/oxbez9.....................7

Lex Machina, PTAB Trials, https://rb.gy/sd84io.........................................................7

Patent Trial and Appeal Board, Standard Operating Procedure 2 (Rev. 10) (Sept. 20, 2018),
   https://www.uspto.gov/sites/default/files/documents/SOP2%20R10%
   20FINAL.pdf ................................................................................ *passim*

United Patents, *PTAB Discretionary Denials Up 60%+ in 2020: Fueled Entirely by 314(a)
   Denials* (Jan. 5, 2021), https://www.unifiedpatents.com/insights/2020-ptab-
   discretionary-denials-report .................................................................................8

# INTRODUCTION

In enacting the America Invents Act ("AIA"), Congress vested the Director of the Patent and Trademark Office ("Director") with substantial authority, but also imposed important limits on that authority. Specifically, Congress provided that the pendency of parallel patent infringement litigation should pose no obstacle to an accused infringer's ability to obtain inter partes review ("IPR") of any patents in suit, as long as the IPR petition is brought within a statutorily specified period. *See* 35 U.S.C. § 315(b).[1] And Congress provided that any rules the Director adopts to govern IPR must be promulgated through notice-and-comment rulemaking and consistent with the requirements of reasoned decisionmaking. *See* § 316(a)(2), (4); 5 U.S.C. §§ 553, 706. Flouting Congress's judgments and the AIA's text and structure, the Director adopted the *NHK-Fintiv* rule, which requires the Patent Trial and Appeal Board ("Board") to assess whether the pendency of parallel infringement litigation warrants the denial of timely IPR petitions. That rule exceeds the Director's authority, is arbitrary and capricious, and fails to satisfy notice-and-comment requirements.

Try as he might, the Director cannot hide the fact that this is an ordinary Administrative Procedure Act ("APA") case that falls squarely within this Court's jurisdiction. As is routine in APA actions, Plaintiffs allege that a federal agency violated and misinterpreted a statute it administers and adopted a binding rule that is substantively and procedurally invalid. In these unexceptional circumstances, the APA requires this Court to evaluate Plaintiffs' claims on the merits and ultimately to set aside the *NHK-Fintiv* rule. *See* 5 U.S.C. § 706(2). The only thing that is exceptional about this case is the Director's assertion of "unfettered" discretion to deny IPR petitions for any reason—even a reason expressly prohibited by the AIA. As Plaintiffs' separate motion for summary judgment demonstrates, the Director's unlimited view of his own authority is wrong, and, in any event, it does not preclude this suit.

First, Plaintiffs have standing to bring this action because the *NHK-Fintiv* rule has inflicted a concrete injury on them—namely, a restriction on, or loss of, the opportunity to

---

[1] Unless otherwise noted, all subsequent statutory references are to Title 35.

pursue IPR that Congress intended them to have. Second, the *NHK-Fintiv* rule is a final agency action: It is the culmination of the PTO's decisionmaking process and sets forth a framework that the Director concedes the Board must follow in its future determinations whether to institute IPR. Third, the AIA does not bar review of the *NHK-Fintiv* rule. *See* 5 U.S.C. § 701(a)(1). The APA embodies a "strong presumption that Congress intends judicial review of administrative action." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 718 (9th Cir. 2011) (quotation marks omitted). The Director cannot overcome this presumption because nothing in the AIA suggests an intent to foreclose judicial review of the substantive standards the Director adopts to govern the decision whether to institute IPR. While § 314(d) may prevent an appeal from the Director's decision whether to grant a particular IPR petition under certain circumstances, no such decision is challenged here. Finally, 5 U.S.C. § 701(a)(2) does not bar this action because the adoption and application of the rule are not limited to the Director's unreviewable discretion. Section 701(a)(2) bars review only where there is no law to apply, and here, the AIA itself provides the measure of the rule's unlawfulness.

Because this APA case falls well within the bounds of this Court's jurisdiction, the Director's motion to dismiss should be denied.

## BACKGROUND

### A. Congress Intended IPR To Provide An Efficient Means Of Invalidating Dubious Patent Claims

The U.S. patent system has long helped fuel American economic growth and innovation. The system's success depends on both providing robust protections for meritorious patents and ensuring that dubious patents cannot be exploited in litigation to inhibit innovation. IPR plays a vital role in that system by allowing any person, including a party sued for patent infringement, to ask the PTO to reconsider the patentability of a previously granted patent. *See* § 311. Congress established IPR out of a "growing sense that questionable patents [we]re too easily obtained" and "too difficult to challenge" through existing procedures. H.R. Rep. No. 112-98, at 39-40 (2011) ("House Report"); *see SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018). IPR promotes "a more efficient and streamlined patent system" by providing a "cost effective

alternativ[e] to litigation," House Report at 40, 48, that offers "the expertise of the Patent Office on questions of patentability," 157 Cong. Rec. S1352 (daily ed. Mar. 8, 2011) (Sen. Udall), while "limit[ing] unnecessary and counterproductive litigation costs," House Report at 40; *see id.* at 39-40 (discussing "focus[] on … reducing unwarranted litigation costs").

For example, whereas patent-validity issues in infringement suits are decided by lay jurors, IPRs are decided by administrative patent judges with "technical expertise and experience," who "contribute to the public confidence by providing more consistent and higher quality final written decisions" on patentability. *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1336 (Fed. Cir. 2019); *see* § 6(a) ("administrative patent judges shall be persons of competent legal knowledge and scientific ability"). Unlike a general verdict, the Board's final written decision facilitates more informed appellate review. IPR is also more streamlined than litigation: An IPR petitioner may challenge a patent "only" on limited grounds, § 311(b); discovery is limited, § 316(a)(5); 37 C.F.R. § 42.51; and strict deadlines generally result in resolution of IPR within 18 months after a petition is filed, §§ 314(b), 316(a)(11); 37 C.F.R. §§ 42.100, 42.107. And in IPR, questionable patent claims can be canceled if the petitioner proves unpatentability by a preponderance of the evidence, § 316(e), whereas in litigation questionable patents survive unless the defendant proves invalidity by clear and convincing evidence, *see Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

Congress expected that IPR would often proceed in parallel with litigation in which the same patent is at issue—particularly where an infringement defendant challenges the asserted patent through IPR. Under the AIA, an infringement defendant may obtain IPR with regard to the patent claims asserted in the lawsuit so long as the IPR petition is filed within "1 year after the date on which the petitioner … is served with a complaint alleging infringement of the patent," § 315(b). And although the AIA bars IPR if the petitioner previously "filed a civil action challenging the validity of a [patent] claim," that bar does not apply where the petitioner challenged the patent through a counterclaim in an infringement suit. § 315(a)(1), (3). No statutory provision permits the PTO to deny an IPR petition based on a pending lawsuit.

### B. The *NHK* And *Fintiv* Decisions Articulated A Discretionary Standard For Denying IPR Petitions Based On Pending Parallel Litigation

The AIA imposes limitations on the Director's authority to decide whether to institute IPR. The statute defines conditions that must be met for the Director to grant an IPR petition, including filing deadlines and content requirements, *e.g.*, §§ 311(c)(1)-(2), 312(a)(1)-(5), 315(a)(1)-(2) & 315(b), and it prohibits the Director from instituting IPR "unless" he finds "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition," § 314(a). It also specifies grounds on which the Director may decide not to institute IPR even if the preconditions are met. For example, the Director may "take into account whether, and reject the petition … because, the same or substantially the same prior art or arguments previously were presented to the [Patent] Office." § 325(d). The Director has delegated to the Board the authority to institute IPR. 37 C.F.R. § 42.4(a); *see id.* §§ 42.2, 42.108.

In 2018, the Board articulated a new standard under which the Board may decline to institute IPR in light of pending infringement litigation—even if the IPR petition was timely under § 315(b). In *NHK Spring Co. v. Intri-Plex Technologies, Inc.*, the Board declared that "the advanced state of … district court proceeding[s]" is an "additional factor that weighs in favor of denying [IPR] under § 314(a)." No. IPR2018-00752, Paper 8, at 20 (P.T.A.B. Sept. 12, 2018). Because the IPR petition and the pending litigation involved "the same prior art and arguments" and trial was "set to begin" about six months before IPR would end, the Board concluded that IPR "would not be consistent with" the AIA's efficiency objectives and denied institution. *Id.*

The Board elaborated on *NHK* in *Apple Inc. v. Fintiv, Inc.*, explaining that it would "weigh" six "non-dispositive factors"—none of which appears in the AIA—in deciding whether to deny an IPR petition in light of overlapping litigation. No. IPR2020-00019, Paper 11, at 5 (P.T.A.B. Mar. 20, 2020).

### C. The Director Adopted *NHK-Fintiv* As A Binding Rule Governing All Institution Decisions Without Notice-And-Comment Rulemaking

"[B]y default," Board decisions have no precedential force in later proceedings. Patent Trial and Appeal Board, Standard Operating Procedure 2 (Rev. 10) ("SOP-2"), at 3, 8-9 (Sept. 20, 2018).[2] However, the PTO has adopted operating procedures under which the Director may

---

[2] https://www.uspto.gov/sites/default/files/documents/SOP2%20R10%20FINAL.pdf.

designate some Board decisions as "precedential" and therefore "binding" on the Board "in subsequent matters involving similar facts or issues." SOP-2 at 11. Precedential designation renders a decision a "rule"—*i.e.*, "an agency statement of general or particular applicability and future effect." 5 U.S.C. § 551(4). The Director has designated *NHK*, Paper 8 at 1, and *Fintiv*, Paper 11 at 1, precedential, thereby adopting these decisions as a final rule the Board must apply in future IPR institution decisions with regard to petitions challenging patents that are also the subject of pending infringement litigation. SOP-2 at 11.

The Board has applied the *NHK-Fintiv* rule to deny numerous IPR petitions, including many filed by Plaintiffs. The Board frequently relies on the *NHK-Fintiv* rule as the sole reason to deny institution. *See, e.g.*, *Google LLC v. AGIS Software Dev., LLC*, No. IPR2020-00872, 2020 WL 6954676 (P.T.A.B. Nov. 25, 2020); *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00407, 2020 WL 4680039 (P.T.A.B. Aug. 11, 2020); *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. IPR2020-00123, 2020 WL 2511247 (P.T.A.B. May 15, 2020); *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00106, 2020 WL 2201828 (P.T.A.B. May 5, 2020); *Edwards Lifesciences Corp. v. Evalve, Inc.*, No. IPR2019-01479, 2020 WL 927867 (P.T.A.B. Feb. 26, 2020).

### D.     Procedural Background

Plaintiffs assert three claims challenging the lawfulness of the *NHK-Fintiv* rule under the AIA and the APA. Dkt. 65 (Pls.' Mot. for Summ. J. ("Mot.")) at 10-25. First, the *NHK-Fintiv* rule exceeds the Director's authority and violates the AIA because that statute prohibits the Director from denying IPR petitions based on the pendency of infringement litigation involving the same patent claims. Second, the rule is arbitrary and capricious in violation of the APA because its factors are speculative and malleable, leading to disparate outcomes on similar facts, and also create incentives that undermine the rule's supposed efficiency goals and enable infringement plaintiffs to block IPR through strategic forum-shopping. Finally, the *NHK-Fintiv* rule violates the APA and AIA because the Director adopted it without notice and comment rulemaking. Plaintiffs' motion for summary judgment on those claims is pending. Dkt. 65.

### LEGAL STANDARD

Under Rule 12(b)(1), a defendant may challenge jurisdiction "'facially' by arguing the

complaint 'on its face' lacks jurisdiction or 'factually' by presenting extrinsic evidence" demonstrating a lack of jurisdiction on the facts. *Am. Fed'n of Teachers v. DeVos*, No. 5:20-CV-455, 2020 WL 5257561, at *5 (N.D. Cal. Sept. 3, 2020) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)). Here, the Director asserts a facial challenge to this Court's jurisdiction and the justiciability of Plaintiffs' claims. Thus, the Court must "assume [Plaintiffs'] allegations to be true and draw all reasonable inferences in [their] favor." *Wolfe*, 392 F.3d at 362.

## ARGUMENT

The Director's arguments for dismissal lack merit. Plaintiffs have standing because the *NHK-Fintiv* rule has unlawfully restricted or removed, and will continue to restrict or remove, their opportunity to obtain IPR. In addition, Plaintiffs' challenges are justiciable: the rule is a final agency action; the AIA does not preclude review of any of Plaintiffs' claims; and the adoption and application of the rule are not committed to the Director's unreviewable discretion.

## I.    Plaintiffs Have Standing

To establish standing, Plaintiffs must show that they have "(1) suffered an injury in fact, (2) that is traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). Because Plaintiffs seek prospective relief, they must show that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotation marks omitted).

A.    Plaintiffs satisfy each of the three standing requirements. Plaintiffs have alleged an injury in fact that is traceable to a rule and that will be redressed by a favorable ruling in this suit: a substantial risk that their IPR petitions will be denied under the *NHK-Fintiv* rule and the attendant loss of their opportunity to obtain the benefits of IPR.

The IPR process affords patent challengers like Plaintiffs many valuable benefits as a forum for deciding patentability relative to district court litigation. Congress fashioned IPR to be a "cost effective alternativ[e] to litigation," House Report at 40, 48, that takes advantage of "the expertise of the Patent Office on questions of patentability," 157 Cong. Rec. S1352 (daily ed. Mar. 8, 2011) (Sen. Udall), while "limit[ing] unnecessary and counterproductive litigation

costs," House Report at 40; *see id.* at 39-40. In particular, institution of IPR provides patent challengers various important benefits regardless of whether they ultimately prevail in a final written decision, including: access to the "technical expertise and experience" that administrative patent judges bring to deciding patentability disputes, *Arthrex*, 941 F.3d at 1336; a final written decision on patentability from the Board, rather than a general jury verdict, which facilitates more informed appellate review; more streamlined procedures compared to litigation, *see, e.g.*, §§ 311(b), 314(b), 316(a)(5), 316(a)(11); and a lower standard of proof for canceling questionable patent claims (preponderance of the evidence), § 316(e); *cf. Microsoft Corp.*, 564 U.S. at 95 (clear-and-convincing standard of proof governs challenges to patentability in litigation). For those contesting a patent's validity, these advantages translate into lower costs and a greater likelihood of success compared to litigation. Indeed, since the start of IPR, the Board has invalidated all or some challenged patent claims in 44% of final written decisions,[3] while during the same period only 23% of infringement cases that reached final judgment resulted in a finding of patent invalidity.[4] Congress established IPR to provide precisely these benefits, recognizing that "questionable patents [we]re too easily obtained" and "too difficult to challenge" through existing procedures. House Report at 39-40.

The *NHK-Fintiv* rule, however, imposes an unlawful obstacle to IPR and creates a substantial risk that any given IPR petition will be denied, and Plaintiffs will thereby be deprived of IPR's benefits. As explained further in Plaintiffs' motion for summary judgment, Mot. 10-25, the *NHK-Fintiv* rule empowers the Board to deny IPR petitions based on pending infringement litigation concerning the same patents—a rule that violates the AIA, is arbitrary and capricious, and is procedurally invalid. And as the Director concedes, the rule is "binding" on the Board "in subsequent matters involving similar facts or issues," SOP-2 at 11, and therefore the Board

---

[3] Lex Machina, PTAB Trials Which Reached Institution Decisions (Petitions Filed Between 2012-09-16 and 2021-01-15), https://rb.gy/sd84io (last visited Jan. 21, 2021).

[4] Lex Machina, Patent Findings By Judgment Event (Cases Filed Between 2012-09-16 and 2021-01-19), https://rb.gy/oxbez9 (last visited Jan. 21, 2021).

"must consider [it] in future institution decisions involving parallel district court proceedings," Dkt. 64 at 6 (Def.'s Mot. to Dismiss ("Mem.")). The Board has already applied the rule to deny numerous IPR petitions brought by Plaintiffs in which Plaintiffs had made substantial investments. *See* Am. Compl. ¶¶ 54-61. In fact, the number of institution denials made under § 314(a) doubled between 2019 and 2020.[5] Plaintiffs currently have pending IPR petitions challenging patents that have been asserted against them in pending infringement litigation, and anticipate filing more such petitions in the future. *See* Am. Compl. ¶¶ 52-62. Therefore, there is, at the very least, a "substantial risk," *Susan B. Anthony List*, 573 U.S. at 158, that future IPR petitions filed by Plaintiffs will be denied under the unlawful *NHK-Fintiv* rule.

That the Board's mandatory application of the unlawful *NHK-Fintiv* rule will deny Plaintiffs the opportunity to participate in and thereby reap the benefits of IPR in the future is sufficient for standing. "It is well-established that the denial of an opportunity to obtain a benefit is itself an injury in fact." *Bradley v. T-Mobile US, Inc.*, No. 17-CV-07232-BLF, 2020 WL 1233924, at *8 (N.D. Cal. Mar. 13, 2020); *see also Robertson v. Allied Sols., LLC*, 902 F.3d 690, 697 (7th Cir. 2018) ("Article III's strictures are met … when a plaintiff complains that she was deprived of a *chance* to obtain a benefit." (emphasis added)). Thus, in *Settles v. U.S. Parole Commission*, 429 F.3d 1098 (D.C. Cir. 2005), the court determined that the plaintiff had standing to challenge a regulation that denied him representation at his parole hearing because the regulation "impos[ed] [a] barrier" that "made it more difficult for him to achieve the benefit of a parole." *Id.* at 1102-1103. Moreover, the loss of an opportunity to participate in and obtain the benefits of an administrative process constitutes an injury in fact. For example, in *Hsaio v. Scalia*, 821 F. App'x 680, 683 (9th Cir. 2020), the Ninth Circuit held that the Department of Labor's denial of the plaintiff's application for permanent employment certification was an injury in fact because the denial caused him to "los[e] a significant opportunity to proceed in the

---

[5] *See* United Patents, *PTAB Discretionary Denials Up 60%+ in 2020: Fueled Entirely by 314(a) Denials* (Jan. 5, 2021), https://www.unifiedpatents.com/insights/2020-ptab-discretionary-denials-report.

three-step immigration process" for obtaining a permanent resident visa.  *Id.*

Plaintiffs' injury in fact would be redressed by a favorable ruling from this Court.  The Amended Complaint asks the Court to declare the *NHK-Fintiv* rule and its factors unlawful, set aside the rule and its factors under the APA, permanently enjoin their application, and grant "such other and further relief as the Court deems appropriate."  Am. Compl., Prayer for Relief. If the Court granted that relief, the Board could no longer apply the rule or the unlawful factors it incorporates to deny Plaintiffs' IPR petitions.  Thus, by "remov[ing] … [a] barrier" to institution and "increas[ing] [Plaintiffs'] chances of obtaining the benefit" of IPR, an order granting the relief sought would redress Plaintiffs' injury.  *Bradley*, 2020 WL 1233924, at *9.  Plaintiffs need not allege that their petitions will certainly be instituted, let alone that the Board's final written decision will ultimately find in their favor to show redressability.  *See id.* ("the aggrieved party need not allege that he would have obtained the benefit but for the barrier in order to establish standing" (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995)).  That a favorable decision here would remove *NHK-Fintiv* as a barrier to IPR is sufficient.

B.    The Director disputes the presence of a redressable injury in fact (but not its traceability).  His arguments are meritless.  With respect to injury in fact, the Director argues that Plaintiffs have no right to IPR and thus are not injured when their IPR petitions are denied under the rule because he has "unreviewable discretion over IPR institution decisions" and may deny IPR for whatever reason he likes, including the *NHK-Fintiv* rule and its factors.  Mem. 9.  This argument impermissibly assumes that the Director will prevail on the merits.  And in considering Plaintiffs' standing, the Court "must … assume that on the merits the plaintiffs would be successful" on those claims.  *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003); *see also East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1267-1268 (9th Cir. 2020) ("Article III standing requirements [must not] collaps[e] into the merits of a plaintiff's claim; … plaintiff can have standing despite losing on the merits").  Here, the very question at the heart of Plaintiffs' claims is whether the Director has discretion to deny institution based on the *NHK-Fintiv* factors.  As the Supreme Court has observed, "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."  *Warth v. Seldin*, 422 U.S. 490,

500 (1975).  Otherwise, virtually any motion to dismiss for failure to state a claim would be duplicative of a motion to dismiss for lack of jurisdiction, and every unmeritorious claim would be dismissed for lack of standing—an obviously incorrect result.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'").  The Director's efforts to merge the standing and merits inquiries should be rejected.

The Director suggests that Plaintiffs lack an injury because the *NHK-Fintiv* factors are "non-dispositive" and thus do not "dictate the outcome of IPR institution decisions."  Mem. 15, 16; *see also id.* at 9 (citing Mem., Part II.C).  But, as noted, the Board is *required* to apply the rule.  *Supra* p. 5.  And although no single factor in the rule is necessarily dispositive in every case, the rule overall has proven dispositive—as evidenced by the Board's well-documented practice of denying institution based on its application of the rule, including with regard to Plaintiffs' petitions.  *Supra* p. 5.  Moreover, the Director's assertion that Plaintiffs lack injury because they have no "right to review of an IPR petition" and cannot directly appeal an IPR denial (Mem. 9) misses the point:  The *NHK-Fintiv* rule is a barrier to institution that restricts or removes Plaintiffs' opportunity to obtain the benefits of IPR, regardless of whether they may appeal any particular non-institution decision.  Finally, the Director's argument that Plaintiffs are not injured by an IPR denial because they may still challenge patent validity in court (Mem. 9, 16-17) fails because, as explained above, Plaintiffs' lost opportunity to obtain the benefits of the IPR procedure is an injury in fact, regardless of the outcome of any given IPR.

With respect to redressability, the Director argues that "success on Plaintiffs' claims would not remedy [their] … injuries" because the Director "has the unfettered discretion to consider all factors he deems relevant" in making the institution decision and thus would be able to continue applying the *NHK-Fintiv* factors even if this Court set the rule aside.  Mem. 9.  This argument again incorrectly assumes that the Director will prevail on the merits.  But it also rests on a fundamental mischaracterization of the relief that Plaintiffs seek.  The Director asserts that

neither "de-designation" of the *NHK* and *Fintiv* decisions as precedential (Mem. 9-10) nor a new rulemaking would remedy Plaintiffs' injury (Mem. 10).  But Plaintiffs do not seek de-designation or a rulemaking.  Instead, Plaintiffs ask the Court to hold unlawful and set aside the *NHK-Fintiv* rule and enjoin the Director from applying the factors it incorporates because the rule violates the AIA, it is arbitrary and capricious, and it was adopted without notice-and-comment rulemaking.  If Plaintiffs prevail, the Board will be not merely free to disregard the *NHK-Fintiv* factors but *barred* from considering them, fully redressing Plaintiffs' injuries.[6]

## II.      Plaintiffs' Claims Are Justiciable

This case is justiciable:  The *NHK-Fintiv* rule is a final agency action; nothing in the AIA bars review; and the Director's adoption of the rule is not committed to his discretion.

### A.      The *NHK-Fintiv* Rule Is A Final Agency Action

The Director's contention that the *NHK-Fintiv* rule is not final agency action—and thus not subject to APA review, 5 U.S.C. § 704—is incorrect.  A final agency action is one (1) that "mark[s] the consummation of the agency's decisionmaking process" and (2) "by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997) (quotation marks omitted).  "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."  *Or. Nat'l Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (quotation marks omitted).  Courts consider "both the practical and legal effects of the agency action," defining the finality requirement "in a pragmatic and flexible manner."  *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1163 (9th Cir. 2018) (citation and

---

[6] The Director's argument that permanent injunctions are not available under the APA (Mem. 9 n.8) contradicts standard practice in APA cases.  *See Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995) (holding that district court could grant injunctive relief in APA case).  The Court may enjoin the Director (and through him the Board) from implementing the *NHK-Fintiv* rule and the factors it embodies, and to issue the other relief Plaintiffs seek.  In doing so, the Court would remove a barrier to institution and fully redress Plaintiffs' injuries.

quotation marks omitted), *cert. denied*, 139 S. Ct. 2621 (2019). The *NHK-Fintiv* rule satisfies both elements of the *Bennett* test because it sets forth a standard that the Board is required to apply in making institution decisions and whose application results in denials of IPR petitions. These "practical and legal effects" are the hallmarks of final agency action.

1. The first *Bennett* prong is satisfied because the *NHK-Fintiv* rule is neither "tentative [nor] interlocutory," and "mark[s] the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 178. The Director does not seriously contend otherwise. Nor could he: As noted above, the Director—the highest agency official—decided to adopt the rule by designating *NHK* and *Fintiv* as precedential. The D.C. Circuit's decision in *POET Biorefining, LLC v. EPA*, is instructive: There, the court determined that the guidance at issue satisfied the first *Bennett* prong because it "consistently speaks in the [agency's] voice" and was issued by an Assistant Administrator who was the agency head's "principal advisor" on the issue at hand. 970 F.3d 392, 404 (D.C. Cir. 2020). Here, although the *NHK* and *Fintiv* decisions were issued by the Board, the Director adopted their standard as a rule by designating them as precedential. The issuance of the rule, therefore, was not a ruling by a "subordinate official, or tentative." *Id.*; *see* SOP-2 at 11. Further, the Board dutifully applies the rule to decide whether to grant IPR petitions and has acknowledged its lack of authority to refrain from applying it because the Director "has made [these decisions] precedential." *See, e.g.*, *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00407, 2020 WL 4680039, at *6 (P.T.A.B. Aug. 11, 2020). The Board's implementation of the rule is "further proof that [the PTO] ha[s] reached a final decision." *Pub. Util. Dist. No. 1 of Snohomish Cty. v. Bonneville Power Admin.*, 506 F.3d 1145, 1152 (9th Cir. 2007) (agency's implementation of its decision showed the first *Bennett* prong was met).

The *NHK-Fintiv* rule also satisfies the second *Bennett* prong. The rule is "one by which rights or obligations have been determined, or from which legal consequences will flow," *Bennett*, 520 U.S. at 178, because it "imposes obligations on the agency" to consider certain factors in making its institution decisions. *Sierra Club v. Trump*, 929 F.3d 670, 698 n.23 (9th Cir. 2019). The challenged rule meets this test because it governs the Board's decisions on IPR petitions by setting out factors that the Director concedes the Board "must consider," Mem. 6, in

making institution decisions. *Supra* p. 5. Courts regularly find the second *Bennett* prong satisfied by a rule that constrains agency decisionmaking regarding private actors. Thus in *Bennett* itself, the Supreme Court concluded that the Biological Opinion at issue was a final agency action because it permitted the Bureau of Reclamation to "take" endangered or threatened species only under certain specified conditions and thus "alter[ed] the legal regime to which the action agency [the Bureau] is subject." 520 U.S. at 169-170. Similarly, in *Sierra Club*, the Ninth Circuit held that defendants' decision to redirect funds that Congress had appropriated to the Department of Defense for Army personnel needs toward building a barrier along the southern border was a final agency action because it affected the Department's "right to use particular funds" for a particular purpose. 929 F.3d at 698 n.23. And in *POET Biorefining*, the D.C. Circuit held that the challenged guidance "carries legal consequences because it withdraws some of the discretion … afforded" the agency in evaluating applications for regulatory approval. 970 F.3d at 405.

Moreover, the *NHK-Fintiv* rule obligates IPR petitioners to make a particular showing to the agency—*i.e.*, that the *NHK-Fintiv* factors do not weigh against denial of institution when the petition involves patent claims that are the subject of pending infringement litigation. "[O]bligations have been determined" by agency action, and the second *Bennett* prong has been met, *Bennett*, 520 U.S. at 178, where the agency requires a party to make a particular showing under a regulatory scheme. Thus, in *POET Biorefining*, the court determined that the challenged guidance met the second *Bennett* prong because it "impose[d] obligations" on regulated parties to "demonstrate to [the agency] the reliability of their methods" for measuring the contents of their fuel as a condition of obtaining regulatory approval of the fuel. 970 F.3d at 405.

Finally, the "practical and legal effects" of the *NHK-Fintiv* rule for IPR petitioners are dramatic. As explained, the Board must apply the rule, and that has resulted and will result in the denial of IPR petitions filed by Plaintiffs and others, depriving them of the benefits Congress intended the IPR process to afford patent challengers. *See supra* pp. 2-5.

2. The Director's contrary arguments fail. First, he contends that the *NHK-Fintiv* rule lacks any "legal consequences" for IPR petitioners because it "leaves intact both the patent

claims and the petitioner's right to challenge those claims in federal court." Mem. 16. That is irrelevant; as just explained, the rule has binding effect on the Board and serious legal and practical consequences for IPR petitioners apart from whether the IPR petitioner ultimately prevails in the IPR proceeding or district court.

Next, the Director's argument that the *NHK-Fintiv* rule is simply an unreviewable "internal agency polic[y]" (Mem. 16; *see also id.* at 15) is untenable given the rule's undeniably binding force and the fact that it is dispositive of IPR petitions. Moreover, the Director's decision to promulgate the rule through a precedential designation rather than through notice-and-comment rulemaking (as he was required to do) does not change the binding nature of the rule or its impact on the parties. "[I]t is well established that … guidance issued without formal notice and comment rulemaking can qualify as final agency action." *Arizona v. Shalala*, 121 F. Supp. 2d 40, 48 (D.D.C. 2000); *see also Havasupai Tribe*, 906 F.3d at 1163 (finality turns on "practical effects of an agency's decision …, regardless of how it is labeled" (quotation marks omitted)); *POET Biorefining*, 970 F.3d at 404-406 (agency "Guidance" issued without notice and comment was reviewable final action). The Director cannot insulate the rule from judicial review by choosing to disregard notice-and-comment requirements.

The Director's argument that the *NHK-Fintiv* rule is not final "until there is some concrete action applying [the rule] to the claimant's situation," Mem. 15 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)) (alteration in original), also fails. As alleged clearly and extensively in the Amended Complaint, the Board has already applied the rule many times to deny IPR petitions filed by Plaintiffs. *Supra* p. 8. In any event, the rule would be final reviewable action even if it had *never* been applied. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149-151 (1967) ("finality" is interpreted "in a pragmatic way" such that even regulations "characterized as a statement only of [the agency's] intentions" may be final for purposes of pre-enforcement challenge) (collecting cases), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *Alaska v. EPA*, 244 F.3d 748, 750 (9th Cir. 2001) (order stating EPA's view that plaintiff's proposed conduct would be unlawful was final agency action even though EPA had taken no enforcement action).

The Director further argues that a "decision to initiate inter partes review is 'preliminary' not 'final,' under the APA." Mem. 16. But Plaintiffs do not challenge any particular institution decisions here and therefore the finality of such decisions is irrelevant. Instead, Plaintiffs challenge the *NHK-Fintiv* rule, which guides (and, in practice, determines) those institution decisions generally. The issuance of binding general agency policies—as distinct from decisions *applying* those policies—is a final reviewable action as a matter of course under the APA. In *Navajo Nation v. United States Department of Interior*, 819 F.3d 1084 (9th Cir. 2016), for example, the Ninth Circuit held that a general legal determination by the National Park Service—that federal law applied to certain Native American remains and archaeological items and thus required an inventory process to determine the disposition of the items—was final agency action, even though the inventory was not completed. *Id.* at 1089. This was because the "underlying dispute concerned not whether specific items belonged to the plaintiffs, but whether the Park Service was correct in applying federal law at all." *J.L. v. Cissna*, 341 F. Supp. 3d 1048, 1067 (N.D. Cal. 2018) (discussing *Navajo Nation*, 819 F.3d at 1092). And in *J.L. v. Cissna*, the agency's "adoption of a dubious legal theory to justify" denying petitions for Special Immigrant Juvenile status was final agency action, even though the agency had not yet ruled on the plaintiffs' petitions seeking that status. 341 F. Supp. 3d at 1066-1067. The court reasoned that the plaintiffs' suit was "not directly concerned with USCIS's specific denials of their SIJ petitions" but instead challenged the general rule governing those decisions. *Id.* at 1066; *see also id.* at 1068 ("Plaintiffs are not challenging USCIS's application of their new policy…. Plaintiffs are challenging the policy itself."); *Cal. Sea Urchin Comm'n v. Bean*, 828 F.3d 1046, 1049 (9th Cir. 2016) (rule setting program termination criteria "was clearly a final agency action" separate and apart from any specific termination decision).

The cases on which the Director primarily relies are easily distinguished. Many concern internal agency recommendations that did not bind any final decisionmaker. Mem. 16. For example, in *Dalton v. Specter*, the Supreme Court held that an agency report making a "tentative recommendation" to the President regarding naval base closures was not final agency action where the President was not bound to follow that recommendation. 511 U.S. 462, 469 (1994).

1    *Planned Parenthood of Wisconsin, Inc. v. Azar* challenged criteria for scoring Title X

2    applications that the court found was "a mere tool" for the agency to "create an award

3    recommendation for the final decisionmaker." 316 F. Supp. 3d 291, 307 (D.D.C. 2018), *vacated*

4    *& remanded*, 942 F.3d 512 (D.C. Cir. 2019). And in *National Mining Association v. McCarthy*,

5    the court emphasized that the challenged guidance was "not legally or practically binding on the

6    [agency's] determinations." 758 F.3d 243, 252-253 (D.C. Cir. 2014).[7] In contrast, the *NHK-*

7    *Fintiv* rule is not advisory but binding on the Board. SOP-2 at 11. The other cases cited by the

8    Director—*Lujan* and *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57-61 (1993)—are

9    inapposite because they concern the distinct issue of when a court may exercise its discretion to

10   deny review of unripe claims, not whether a court lacked jurisdiction and thus could not hear the

11   case because the agency action was not final. *See S.F. Herring Ass'n v. U.S. Dep't of Interior*,

12   683 F. App'x 579, 581 (9th Cir. 2017) ("ripeness and finality are 'distinct concepts'" (quoting 16

13   Charles Alan Wright *et al*., Fed. Practice & Procedure § 3942 (3d ed. 2017)).

14         The *NHK-Fintiv* rule marks the endpoint of the agency's decisionmaking process and

15   determines rights and obligations of the Board and IPR petitioners. It is thus a final agency

16   action reviewable by this Court.

17        **B.**      **The AIA Does Not Preclude Review**

18         The AIA does not bar review of the substantive rules the Director adopts to govern

19   institution decisions. The APA's "strong presumption" of judicial review is "overcome only in

20   two narrow circumstances": where "Congress expressly bars review by statute," *Pinnacle Armor,*

21   *Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011); *see* 5 U.S.C. § 701(a)(1), or where the

22

---

23   [7] *See also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 809 (D.C.

24   Cir. 2006) ("there is nothing in the record to indicate that officials … are bound to apply the

25   [challenged] guidelines in any enforcement action"), *cited in* Mem. 15; *Nat'l Ass'n of Home*

26   *Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) (survey protocol was "recommended" and

27   "nothing in the record … support[ed] … claim that the Protocols could affect the outcome of an

28   enforcement proceeding"), *cited in* Mem. 17.

"agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2). Because Congress intended the APA's "'generous review provisions'" to cover "a broad spectrum of administrative actions," "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Labs.*, 387 U.S. at 140-141. For the reasons discussed in this section and the next, neither exception applies here.

To determine "[w]hether and to what extent a particular statute precludes judicial review," courts consider "its express language," "the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345, 349 (1984). Here, there is no evidence that Congress "intend[ed] to strip the judiciary of all authority" to review substantive rules governing institution decisions. *Id.* at 346. To the contrary, the AIA confirms that such rules, including *NHK-Fintiv*, are reviewable. In particular, if the Director wishes to prescribe "standards for the showing of sufficient grounds to institute" IPR, § 316(a)(2), or "establishing and governing" IPR, § 316(a)(4), the AIA requires him to proceed by notice-and-comment rulemaking, as does the APA, *see* Mot. 23-25, which would culminate in a final regulation undoubtedly subject to APA review, *see* 5 U.S.C. § 704. Congress thus intended for rules like *NHK-Fintiv* to be reviewable, and the Director should not be permitted to circumvent that intent by flouting the AIA's and the APA's notice-and-comment requirements.

The centerpiece of the Director's argument is that the AIA "prohibit[s] parties from bringing collateral APA challenges to the [IPR] process." Mem. 11. But the provisions on which he relies—§§ 141(c), 319, and 314(d)—do no such thing, instead addressing appeals from institution decisions on specific IPR petitions. These provisions do not bear on reviewability in this case, which does not involve a Board decision resolving a specific IPR petition or an appeal therefrom. Rather, Plaintiffs challenge a general rule as substantively and procedurally invalid under the AIA and the APA. Sections 141(c), 319, and 314(d) are therefore irrelevant.

In particular, §§ 141(c) and 319 authorize "dissatisfied" "part[ies]" to appeal the Board's final written decisions. Although the *NHK-Fintiv* rule has resulted (and will continue to result) in the denial of Plaintiffs' IPR petitions, which establishes their standing, *see supra* pp. 6-9,

Plaintiffs do not bring this action as "dissatisfied" "part[ies]" to IPR because they do not seek to overturn any particular decision on a specific IPR petition. The Director nonetheless urges the Court to infer that §§ 141(c)'s and 319's provisions addressing review of one type of challenge preclude all other challenges. *See* Mem. 11. The Supreme Court has rejected such reasoning, explaining that "if the express provision of judicial review in one section of a long and complicated statute were alone enough to overcome the APA's presumption of reviewability for all final agency action, it would not be much of a presumption at all." *Sackett v. EPA*, 566 U.S. 120, 129 (2012) (provision allowing judicial review of EPA penalty assessments does not implicitly foreclose review of compliance orders).

Section 314(d) is likewise immaterial. The provision makes the "determination by the Director whether to institute an inter partes review … final and nonappealable." § 314(d); *see also Thryv, Inc. v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1373 (2020) (section 314(d) "generally" prohibits parties from "contend[ing] on appeal" that agency erred in deciding whether to grant or deny discrete IPR petitions). As noted, however, Plaintiffs' Amended Complaint does not seek review of a specific institution decision on a particular IPR petition. Perhaps recognizing that § 314(d), on its own terms, does not apply here, the Director asserts that its prohibition on judicial review of one type of dispute implicitly forecloses review of others. *See* Mem. 11. The Supreme Court has rejected such reasoning as "implausible." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020). Where, as here, a statute's "targeted language is not aimed at" the "sort of case" at hand, it "does not present a jurisdictional bar." *Id.* Consequently, Plaintiffs do not seek "an end-run around § 314(d)," Mem. 11; that provision simply does not apply. This case is on all fours with *Hyatt v. Office of Management & Budget*, 908 F.3d 1165 (9th Cir. 2018). There, the plaintiff brought an APA action seeking review of a decision by the Office of Management and Budget ("OMB"), but the district court dismissed, holding that the Paperwork Reduction Act ("PRA") precluded review. *Id.* at 1170. The Ninth Circuit reversed. Emphasizing the APA's "strong presumption" of judicial review, the court held that the PRA's bar must be interpreted "narrow[ly]" to preclude review of only the exact type of OMB determination specified in that provision—which was not

the type of decision sought to be reviewed. *Id.* at 1170-1172. "Any other [OMB] decision," the court concluded, "remains subject to judicial review." *Id.* at 1171.

Moreover, even where a party does challenge a specific institution decision, the Supreme Court has made clear that, notwithstanding § 314(d), "judicial review remains available consistent with the Administrative Procedure Act," *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018), in three circumstances: (1) where the party asserts that "the Patent Office has … exceed[ed] its statutory bounds," *id.*; (2) where the party contends that the decision was "arbitrary [and] capricious," *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2142 (2016) (quoting 5 U.S.C. § 706(2)); or (3) where "the grounds for attacking the decision" raise questions that are not "closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review," *Cuozzo*, 136 S. Ct. at 2141-2142; *see Thryv*, 140 S. Ct. at 1373. Those are precisely the type of arguments Plaintiffs make here. First, Plaintiffs contend that the *NHK-Fintiv* rule exceeds the Director's substantive authority under the AIA. Second, Plaintiffs contend that the *NHK-Fintiv* rule is arbitrary and capricious, in violation of the APA—a statute that is not "related" at all to institution under the AIA. Third, Plaintiffs argue that the *NHK-Fintiv* rule exceeded the Director's authority under both the AIA and the APA— again a statute unrelated to institution—by adopting it without notice-and-comment rulemaking. If § 314(d) does not bar judicial review of such claims under the APA even when raised on direct challenge to a specific institution decision, then *a fortiori* it does not bar them here.

Finally, the Director relies on *Pregis Corp. v. Kappos*, 700 F.3d 1348 (Fed. Cir. 2012), *see* Mem. 11-12, but that case, to the extent relevant, supports Plaintiffs. *Pregis* held that the Patent Act precludes APA review of the PTO's decision to issue a patent because the "Patent Act … presents several mechanisms by which third parties may challenge the PTO's decision to issue a patent." 700 F.3d at 1358. The court contrasted that statutory scheme with "cases in which preclusion of a suit under the APA would leave an agency action entirely free from judicial review." *Id.* at 1358-1359. Here, the AIA contemplates that the rules adopted by the Director to govern institution and IPR will be regulations subject to judicial review. *See supra* p. 17; § 316(a)(2), (4). If this Court concludes that Plaintiffs' claims are not justiciable here, there

might "be *no* forum to adjudicate [plaintiffs'] statutory … challenge[]" to the *NHK-Fintiv* rule, *Pregis*, 700 F.3d at 1358; *see Cisco Sys. Inc. v. Ramot at Tel Aviv Univ. Ltd.*, Nos. 2020-2047, - 2049, 2020 WL 6373016, at *2 (Fed. Cir. Oct. 30, 2020) (unpublished) (concluding § 314(d) barred appeal from denial of IPR petition based on application of *NHK-Fintiv* rule, and describing *this* action as an "alternative legal channel[] to raise [Cisco's] substantive and procedural arguments concerning" validity of *NHK-Fintiv* rule). "[I]t is implausible to think [Congress] intended" such a result. *Pregis*, 700 F.3d at 1358.

## C. Section 701(a)(2) Does Not Bar Review

1.      Finally, the Director's argument that the *NHK-Fintiv* rule is committed to his unreviewable discretion under 5 U.S.C. § 701(a)(2) fails. Contrary to the Director's premise, Mem. 12, § 701(a)(2) is not implicated merely because an agency action entails some discretion. Section 701(a)(2) "has never been thought to put all exercises of discretion beyond judicial review," *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1071 (9th Cir. 2015)—after all, the APA specifically permits courts to review agency action for "abuse of discretion," 5 U.S.C. § 706(2)(A). As a result, the mere fact that a statute might confer some discretion "does not make agency action unreviewable." *Perez Perez v. Wolf*, 943 F.3d 853, 862 (9th Cir. 2019). Rather, § 701(a)(2) bars review only in the "rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). "Only where there is truly 'no law to apply' have [courts] found an absence of meaningful standards of review." *Perez Perez*, 943 F.3d at 861. Under that standard, courts "routinely treat" even "discretion-laden standards" as providing law to apply in an APA challenge. *Id.* at 862 (collecting cases "demonstrat[ing] how rarely there is no 'meaningful standard'" to apply).

Because the AIA supplies the "law to apply," this ordinary APA case comes nowhere close to meeting that test. Plaintiffs' first claim, that the *NHK-Fintiv* rule violates the AIA, presents an ordinary question of statutory interpretation that turns on § 315(b) and other AIA provisions addressing the relationship between IPR and parallel infringement litigation. *See*

Mot. 10-18. Those provisions supply the standard against which this Court must measure the validity of the rule, and "[a]pplying [statutory] standards to determine" the validity of agency action "is a familiar judicial exercise." *California v. Trump*, 407 F. Supp. 3d 869, 888 (N.D. Cal. 2019), *aff'd*, 977 F.3d 853 (9th Cir. 2020). It is, in one court's words, "ludicrous" for an agency "to suggest that there is 'no law to apply' in reviewing whether [it] has reasonably interpreted" a governing statute. *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 783 F.2d 237, 246 (D.C. Cir. 1986).

Plaintiffs' second claim, that the *NHK-Fintiv* rule is arbitrary and capricious, similarly requires the Court to review the rule under the familiar requirements of reasoned decision-making—*e.g.*, whether the agency overlooked relevant considerations, acted on the basis of speculation, or failed to articulate a rational explanation. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983); *see also ASSE Int'l*, 803 F.3d at 1071.

Plaintiffs' third claim, that the Director violated the AIA and the APA by adopting the *NHK-Fintiv* rule without notice-and-comment rulemaking, is not even subject to § 701(a)(2) at all. "An agency's obligation to comply with the APA's notice and comment provisions is an administrative requirement that must be fulfilled, notwithstanding whether [the] agency's action is susceptible to judicial review." *Serrato v. Clark*, 486 F.3d 560, 569 (9th Cir. 2007). Thus, in *Lincoln*, the Supreme Court concluded that the plaintiff's substantive challenge to the defendant agency's termination of a health services program was unreviewable under § 701(a)(2), 508 U.S. at 190-195, but considered on the merits whether the agency had violated the APA's notice-and-comment requirements, *id.* at 195-199. In any event, even if § 701(a)(2) applied, the notice-and-comment requirements of the AIA and APA would supply the requisite legal standard.

This case thus comes nowhere near the "rare circumstances," *Weyerhaeuser*, 139 S. Ct. at 370, where there is "truly 'no law to apply,'" *Perez Perez*, 943 F.3d at 861. Section 701(a)(2) simply does not "set agencies free to disregard legislative direction in the statutory scheme that the agency administers." *Heckler v. Chaney*, 470 U.S. 821, 833 (1985).

2.     The Director rests on the contention that there is no meaningful standard by which to judge his exercise of discretion whether to grant an IPR petition under § 314(a) and that

institution decisions entail a balancing of priorities within the PTO's expertise.  But those arguments are misplaced because, as noted, this action does not ask the Court to review any institution decision; Plaintiffs challenge a rule governing institution decisions generally.  As a result, it is immaterial whether the AIA specifies "which otherwise sufficient petitions merit administrative review," Mem. 12, and the Director's arguments regarding his discretion over institution—including his reliance on § 314(a), *Cuozzo*, and *Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*, 896 F.3d 1322 (Fed. Cir. 2018), *see* Mem. 12-13—are beside the point.

The Director responds that his (supposedly) unreviewable discretion over individual IPR petitions also renders unreviewable any "collateral" challenge to the rules he adopts to govern institution determinations.  Mem. 10.  But the Director offers no authority for that assertion.  And there is nothing "illogical," Mem. 13, or even unusual, in Congress's decision to vest an agency with discretion while simultaneously restricting the agency's exercise of that discretion and permitting those restrictions to be enforceable in court should the agency exceed them.  Agencies must always exercise their discretion within statutory bounds, and "courts are normally available to reestablish th[ose] limits" when an agency exceeds them.  *Sierra Club v. Trump*, 963 F.3d 874, 891 (9th Cir.), *cert. granted*, No. 20-138, 2020 WL 6121565 (U.S. Oct. 19, 2020); *see Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 326 (2014); *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1361 (Fed. Cir. 2008) ("An agency cannot, for example, exercise its inherent authority in a manner that is contrary to a statute.").  Accordingly, even if a determination is discretionary, it "may still be rooted in a set of requirements or standards" that are subject to judicial review.  *Perez Perez*, 943 F.3d at 863.

The Director's contrary view would lead to unacceptable results and does not square with the AIA.  For example, if the Director's view were correct, he could adopt—and no court could review—a rule automatically barring IPR in any case where the petitioner has been served with an infringement complaint; a rule providing that all IPR petitions filed by women-owned businesses will be denied; or a rule specifying that IPR petitions will be decided based on a coin flip or denied across the board without individualized consideration.  Nothing in the AIA suggests such rules would be free from judicial scrutiny.  *See Judulang v. Holder*, 565 U.S. 42,

55 (2011) (if agency proposed to decide eligibility for discretionary immigration relief "by flipping a coin … we would reverse the policy in an instant"). Far from it, Congress channeled substantive rules governing IPR determinations through the notice-and-comment rulemaking process, *see* § 316(a)(2), which—as the Director conceded at oral argument on the proposed intervenor's motion for preliminary injunction—would undoubtedly be subject to review. The Director's invalid effort to promulgate the *NHK-Fintiv* rule without observing that procedure does not insulate the rule from this Court's review.

The Director is thus simply wrong to assert that he has unconstrained and unreviewable discretion to deny IPR petitions based on "any considerations [the Director] deems relevant." Mem. 8. As the Supreme Court has recognized, the PTO may not "act outside its statutory limits." *Cuozzo*, 136 S. Ct. at 2141. Rather, the AIA imposes numerous conditions on the Director's authority to institute review. These include the provision on which the Director principally relies, § 314(a), which prohibits institution "unless" the petition has a "reasonable likelihood of success." *See also, e.g.*, § 311(c)(1) (no institution if petition is filed within "9 months after the grant of [the] patent"). As relevant here, § 315(b) and other provisions preclude the Director from denying IPR based on the pendency of parallel infringement litigation. *See supra* p. 3; *see also* Mot. 10-12. The Director disputes Plaintiffs' interpretation of those provisions, but this Court hardly lacks a "meaningful standard" by which to resolve that dispute. *Weyerhaeuser*, 139 S. Ct. at 370.

Nor do other provisions of the AIA insulate the Director's adoption of the *NHK-Fintiv* rule from review. The Director invokes his authority to "provid[e] policy direction and management supervision" for the PTO, § 3(a)(2)(A), and to "govern the conduct of proceedings" within the agency, § 2(b)(2)(A). Mem. 13. But the fact that an agency has authority to adopt policy guidance or rules does not mean that the rules the agency promulgates pursuant to that authority are immune from judicial review or that the agency may disregard statutory commands. And the Director's reliance on § 2(b)(2)(A) is especially inapt because that section authorizes the Director to "establish regulations," which he did not do in adopting the *NHK-Fintiv* rule.

Section 314(d), which generally makes institution decisions final and unappealable,

likewise has no bearing here. That provision serves not to immunize ultra vires exercises of discretion from judicial review, but to protect final written decisions in completed IPRs from "be[ing] unwound" based on "some minor statutory technicality"—a concern not implicated here. *Cuozzo*, 136 S. Ct. at 2139-2140; *see Thryv*, 140 S. Ct. at 1376 ("Congress entrusted the institution decision to the agency … to avoid the significant costs, already recounted, of nullifying a thoroughgoing determination about a patent's validity."). The decisions cited by the Director in which the Federal Circuit has dismissed appeals of institution decisions under § 314(d) are thus irrelevant. Mem. 13-14 (citing *Cisco Sys. Inc. v. Ramot at Tel Aviv Univ. Ltd.*, Nos. 2020-2047, -2049, 2020 WL 6373016 (Fed. Cir. Oct. 30, 2020) (unpublished)). Those decisions did not involve the reviewability of agency rules under § 701(a)(2), but addressed a completely different question—whether the Federal Circuit had appellate jurisdiction under 28 U.S.C. § 1295(a)(4)(A) to hear appeals of particular institution decisions, *id.* at *2—that is subject to a completely different test.

Citing *Heckler*, the Director suggests that "the decision not to institute IPR proceedings" constitutes unreviewable "agency *inaction*," akin to a decision not to prosecute. Mem. 14 (emphasis added). But again, the action challenged in this case is not a decision not to institute an IPR, but the *NHK-Fintiv* rule, and the Director's adoption of that rule through designation of precedential opinions is certainly not "inaction." As the Director concedes, the rule "must [be] consider[ed]" by the Board in cases involving parallel litigation. Mem. 6. And even if the *NHK-Fintiv* rule could somehow be characterized as a non-enforcement decision, *Heckler* confirmed that "Congress may limit an agency's exercise of enforcement power" by "circumscribing an agency's power to discriminate among issues or cases it will pursue," 470 U.S. at 832-833, which is exactly what § 315(b) accomplishes here. The provision reflects Congress's policy judgment that parallel infringement litigation should not pose any obstacle to IPR, provided that the petition was filed within one year of the start of the litigation. Section 701(a)(2) does not permit the agency to "disregard [this] legislative direction" merely by pleading discretion. *Id.*

Finally, the Director notes that institution decisions involve balancing factors based on agency expertise. Mem. 14. But this is not a basis to find that § 701(a)(2) precludes review.

*Ctr. for Policy Analysis on Trade & Health (CPATH) v. Office of U.S. Trade Representative*, 540 F.3d 940, 946 (9th Cir. 2008); *see also City & Cty. of S.F. v. U.S. Dep't of Transp.*, 796 F.3d 993, 1001 (9th Cir. 2015); *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1085 (9th Cir. 2009).  APA review routinely calls on courts to consider agency decisions about how to balance competing priorities and to set them aside if the agency's decision was arbitrary and capricious, an abuse of discretion, or contrary to law.  *See, e.g.*, *Judulang*, 565 U.S. at 53 ("Agencies … have expertise and experience in administering their statutes that no court can properly ignore.  But courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking."); *People of Cal. v. FCC*, 39 F.3d 919, 931 (9th Cir. 1994) (reviewing whether agency adequately "balanced the competing interests of competitive equity, customer privacy, and the need for efficiency"); *Tribal Vill. of Akutan v. Hodel*, 869 F.2d 1185, 1190 (9th Cir. 1988) (reviewing whether agency "adequately balanced the nation's interest in developing oil and gas supplies against its policy of protecting the environment").  To accept that any agency action involving trade-offs and expertise is immune from review would eviscerate the APA.  Even agency "judgment call[s]" are subject to review for compliance with the law's substantive and procedural requirements, Mem. 14, and here, Congress has already made the "judgment call" that the Director seeks to arrogate to himself.  *See* § 315(b).  The Director may believe that some other policy, like the *NHK-Fintiv* rule, might better "promote efficiency and [the] principled resolution of IPR petitions," Mem. 14, but he may not override Congress's policy choice or the law it enacted—and this Court can and should enforce those limits.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to dismiss.

DATED: January 21, 2021

Respectfully submitted,

By: */s/ Mark D. Selwyn*

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
     HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California  94306
Telephone: (650) 858-6000

Facsimile: (650) 858-6100

CATHERINE M.A. CARROLL (*pro hac vice*)
DAVID M. LEHN (*pro hac vice*)
REBECCA LEE (*pro hac vice*)
catherine.carroll@wilmerhale.com
david.lehn@wilmerhale.com
rebecca.lee@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

ALYSON ZUREICK (*pro hac vice*)
alyson.zureick@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Attorneys for Plaintiffs Apple Inc., Cisco Systems, Inc., and Intel Corporation*

DANIEL T. SHVODIAN (CA SBN 184576)
DShvodian@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 838-4300
Facsimile: (650) 737-5461

THERESA NGUYEN (CA SBN 284581)
RNguyen@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-6068
Facsimile: (206) 359-9000

ANDREW T. DUFRESNE (*pro hac vice*)
ADufresne@perkinscoie.com

PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
Telephone: (608) 663-7492
Facsimile: (608) 663-7499

*Attorneys for Plaintiff Google LLC*

JOHN B. SGANGA (CA SBN 116211)
CHRISTY G. LEA (CA SBN 212060)
John.Sganga@knobbe.com
Christy.Lea@knobbe.com
KNOBBE MARTENS OLSON & BEAR
LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiffs Edwards
Lifesciences Corporation and Edwards
Lifesciences LLC*

## ATTORNEY ATTESTATION

I, Mark D. Selwyn, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories.


By: /s/ *Mark D. Selwyn*
Mark D. Selwyn


## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2021, I electronically filed the above document with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel.


By: /s/ *Mark D. Selwyn*
Mark D. Selwyn