MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

CATHERINE M.A. CARROLL (*pro hac vice*)
catherine.carroll@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Plaintiffs Apple Inc., Cisco
Systems, Inc., and Intel Corporation*

DANIEL T. SHVODIAN (CA SBN 184576)
DShvodian@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 838-4300
Facsimile: (650) 737-5461

*Attorney for Plaintiff Google LLC*

JOHN B. SGANGA (CA SBN 116211)
John.Sganga@knobbe.com
KNOBBE MARTENS OLSON & BEAR
   LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorney for Plaintiffs Edwards Lifesciences
Corporation and Edwards Lifesciences LLC*

*A complete list of parties and counsel
appears on the signature page per Local Rule
3-4(a)(1)*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

APPLE INC., CISCO SYSTEMS, INC.,
GOOGLE LLC, INTEL CORPORATION,
EDWARDS LIFESCIENCES CORPORATION,
and EDWARDS LIFESCIENCES LLC,

Plaintiffs,

v.

ANDREI IANCU, in his official capacity as
Under Secretary of Commerce for Intellectual
Property and Director, United States Patent and
Trademark Office,

Defendant.

Case No. 20-cv-6128-EJD

**PLAINTIFFS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY
JUDGMENT**

Date: March 11, 2021

Time: 9:00 a.m.

Courtroom: Courtroom 4, 5th Floor

Judge: Hon. Edward J. Davila

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.       The *NHK-Fintiv* Rule Exceeds The Director's Authority And Violates The AIA ........................................................................................................... 2

    II.     The *NHK-Fintiv* Rule Is Arbitrary And Capricious .................................... 6

    III.    The *NHK-Fintiv* Rule Is Invalid Because The Director Adopted It Without Notice And Comment ................................................................... 11

CONCLUSION ................................................................................................................... 15

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

### **Cases**

4

*Allentown Mack Sales & Service, Inc. v. NLRB,*
  522 U.S. 359 (1998) ............................................................................................ 7, 11

5

*American Mining Congress v. Mine Safety & Health Administration,*
6
  995 F.2d 1106 (D.C. Cir. 1993) .................................................................................. 15

7

*Arizona Cattle Growers' Ass'n v. U.S. Fish & Wildlife,*
  273 F.3d 1229 (9th Cir. 2001) .................................................................................... 10
8

9

*Bair v. California State Department of Transportation,*
  867 F. Supp. 2d 1058 (N.D. Cal. 2017) ....................................................................... 9

10

*Central United Life Insurance Co. v. Burwell,*
11
  827 F.3d 70 (D.C. Cir. 2016) ....................................................................................... 4

12

*City of Los Angeles v. U.S. Department of Commerce,*
  307 F.3d 859 (9th Cir. 2002) ........................................................................................ 8
13

14

*Clarian Health West, LLC v. Hargan,*
  878 F.3d 346 (D.C. Cir. 2017) ............................................................................... 12, 13

15

*Colwell v. Department of Health & Human Services,*
16
  558 F.3d 1112 (9th Cir. 2009) ..................................................................................... 12

17

*County of Maui v. Hawaii Wildlife Fund,*
  140 S. Ct. 1462 (2020) .................................................................................................. 2
18

19

*Cuozzo Speed Technologies, LLC v. Lee,*
  136 S. Ct. 2131 (2016) ............................................................................................... 4, 5

20

*Hemp Industries Ass'n v. DEA,*
21
  333 F.3d 1082 (9th Cir. 2003) ..................................................................................... 15

22

*Holmberg v. Armbrecht,*
  327 U.S. 392 (1946) ....................................................................................................... 5

23

24

*Kisor v. Wilkie,*
  139 S. Ct. 2400 (2019) ................................................................................................. 15

25

*Moore v. Apfel,*
26
  216 F.3d 864 (9th Cir. 2000) ....................................................................................... 13

27

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Automobile Insurance Co.,*
  463 U.S. 29 (1983) ......................................................................................................... 7

28

*NFC Technology LLC v. HTC America, Inc.*,
　　No. 2:13-cv-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ......................................... 6

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
　　572 U.S. 663 (2014) ...................................................................................................... 5, 6

*Planned Parenthood of Wisconsin, Inc. v. Azar*,
　　316 F. Supp. 3d 291 (D.D.C. 2018), *vacated on other grounds*, 942 F.3d 512 (D.C.
　　Cir. 2019) ......................................................................................................................... 13

*Port of Seattle v. FERC*,
　　499 F.3d 1016 (9th Cir. 2007) ...................................................................................... 7, 10

*Professionals & Patients for Customized Care v. Shalala*,
　　56 F.3d 592 (5th Cir. 1995) ............................................................................................. 14

*Ramot at Tel Aviv University Ltd. v. Cisco Systems Inc.*,
　　No. 2:19-cv-00225-JRG, slip op. (E.D. Tex. Jan. 13, 2021), Dkt. No. 235 ............................ 9

*Sacora v. Thomas*,
　　628 F.3d 1059 (9th Cir. 2010) ............................................................................. 12, 13, 15

*San Luis & Delta-Mendota Water Authority v. Locke*,
　　776 F.3d 971 (9th Cir. 2014) .............................................................................................. 9

*SAS Institute, Inc. v. Iancu*,
　　138 S. Ct. 1348 (2018) ...................................................................................................... 4

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*,
　　137 S. Ct. 954 (2017) .................................................................................................... 5, 6

*Sierra Club v. Kenna*,
　　No. 1:12-cv-1193, 2013 WL 144251 (E.D. Cal. Jan. 11, 2013), *aff'd sub nom. Sierra
　　Club v. Bureau of Land Management*, 786 F.3d 1219 (9th Cir. 2015) .................................. 10

*St. Regis Mohawk Tribe v. Mylan Pharmaceuticals Inc.*,
　　896 F.3d 1322 (Fed. Cir. 2018) .......................................................................................... 4

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
　　529 F.3d 1352 (Fed. Cir. 2008) .......................................................................................... 4

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*,
　　484 U.S. 365 (1988) .......................................................................................................... 2

*United States v. Picciotto*,
　　875 F.2d 345 (D.C. Cir. 1989) .......................................................................................... 15

*Utility Air Regulatory Group v. EPA*,
　　573 U.S. 302 (2014) .......................................................................................................... 4

**Docketed Cases**

*Apple Inc. v. Iancu*, No. 20-cv-6128 (N.D. Cal.) ........................................................... 2

**Statutes**

5 U.S.C.
    § 553 ...................................................................................................... 14
    § 706 ........................................................................................................ 6

35 U.S.C.
    § 6 ......................................................................................................... 10
    § 314 ................................................................................................ *passim*
    § 315 ................................................................................................ *passim*
    § 316 ................................................................................................ 11, 14
    § 325 ........................................................................................................ 3

**Other Authorities**

157 Cong. Rec. S1041 (daily ed. Mar. 1, 2011) (Sen. Kyl) ...................................... 2

H.R. Rep. No. 112-98 (2011) ............................................................................... 8

Patent Trial and Appeal Board, Standard Operating Procedure 2 (Rev. 10) (Sept. 20,
    2018) ................................................................................................................ 12

**P.T.A.B. Proceedings**

*Apple Inc. v. Fintiv, Inc.*,
    No. IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) (Am. Compl. Ex. B) ............. 7, 8, 13

*Supercell Oy v. Gree, Inc.*,
    No. PGR2020-00034, 2020 WL 6434958 (P.T.A.B. Nov. 2, 2020) ...................................... 13

1

**INTRODUCTION**

2        Whatever discretion the Director possesses to deny otherwise-eligible IPR petitions, he cannot

3   do so based on a rule that is unlawful.  Here, the *NHK-Fintiv* rule is contrary to law because the

4   America Invents Act ("AIA") prohibits the Director from denying timely IPR petitions based on

5   overlapping infringement litigation; the rule is arbitrary and capricious in violation of the

6   Administrative Procedure Act ("APA"); and the rule is procedurally invalid because it was adopted

7   without notice and comment.  Plaintiffs therefore seek an order setting aside the rule under the APA

8   and enjoining the Director from applying the rule or its factors to deny IPR petitions.

9        The Director's opposition fundamentally mischaracterizes Plaintiffs' position.  His principal

10  contention is that he is not obligated to institute IPR under § 314(a)[1] whenever a petition meets the

11  minimum eligibility criteria.  That is utterly beside the point.  Even assuming the Director has no

12  mandate to grant all eligible IPR petitions (and Plaintiffs do not argue otherwise), he may not deny

13  them on unlawful grounds.  Surely the Director does not contend that § 314(a) would allow him to

14  deny all IPR petitions filed by women-owned businesses or to make institution decisions based on a

15  coin flip.  The issue here is the same:  whether denying IPR petitions based on overlap with parallel

16  litigation, as provided for in the *NHK-Fintiv* rule, is unlawful.

17       As to that dispositive issue of the rule's unlawfulness, the Director barely addresses Plaintiffs'

18  arguments.  As to Plaintiffs' statutory argument, which rests on § 315(b) and related provisions of the

19  AIA that indicate Congress intended IPR and litigation to proceed together, the Director ignores most

20  of those provisions and focuses instead on § 314(a).  As to Plaintiffs' arbitrary-and-capricious claim,

21  the Director makes little attempt to defend the rule's rationality and instead asks the Court simply to

22  disregard its obvious and inherent irrationality.  And as to Plaintiffs' procedural claim, the Director

23  rests on an inaccurate depiction of the rule as mere internal guidance lacking effect on IPR petitioners

24  given his supposedly unfettered discretion.  But the Director cannot prevail by ignoring inconvenient

25  arguments, statutory provisions, and legal principles.  Because the *NHK-Fintiv* rule exceeds the

26  Director's authority, is arbitrary and capricious, and was adopted without notice-and-comment

27

28  [1] Unless otherwise noted, all statutory references are to Title 35.

1    rulemaking, the Court should grant Plaintiffs summary judgment and set aside the rule.[2]

2                                        **ARGUMENT**

3    **I.    THE *NHK-FINTIV* RULE EXCEEDS THE DIRECTOR'S AUTHORITY AND VIOLATES THE AIA**

4            "Statutory [interpretation] is a holistic endeavor," *United Sav. Ass'n of Tex. v. Timbers of*

5    *Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988), that must consider "the statute's language,

6    structure, and purposes," *Cty. of Maui v. Haw. Wildlife Fund*, 140 S. Ct. 1462, 1476 (2020).  As

7    Plaintiffs have explained (MSJ 10-15), each consideration forecloses the *NHK-Fintiv* rule, and the

8    rule should therefore be set aside.  Notably, the Director's views on that central question warrant no

9    deference.  Although the Director asserts that he is "entitled to judgment" if his "legal determinations

10   were reasonable," MSJ Opp. 4, that would be true only if *Chevron* deference applied—and as the

11   Director conceded at oral argument on the Proposed Intervenors' motions, it does not.  Tr. of Oral

12   Argument at 42:19-22, 90:8-15, *Apple Inc. v. Iancu*, No. 20-cv-6128 (N.D. Cal. Jan. 14, 2021).

13   *Chevron* does not apply because the Director did not promulgate the *NHK-Fintiv* rule through an

14   exercise of his delegated lawmaking authority (which is limited to notice-and-comment rulemaking),

15   the AIA leaves no ambiguity for the Director to fill, and the *NHK-Fintiv* rule embodies an

16   unreasonable interpretation of the AIA.  *See* MSJ 16 n.4.

17           A.      As Plaintiffs have explained, the AIA prohibits the Director from denying timely IPR

18   petitions based on overlap with pending parallel infringement litigation.  Congress anticipated that

19   IPR would often prove most useful when the petitioner has been accused of infringing a patent that

20   should not have issued, and Congress thus expected that IPR and litigation would often proceed in

21   parallel.  To "coordinate" IPR with litigation, 157 Cong. Rec. S1041 (daily ed. Mar. 1, 2011) (Sen.

22   Kyl), Congress enacted § 315(b), which requires IPR petitioners to file within "1 year after the date

23   on which the petitioner … is served with a complaint alleging infringement of the patent"—thereby

24   _____

25   [2] Repeating the arguments in his motion to dismiss, the Director asserts that Plaintiffs lack standing

26   and that their claims are not justiciable under the APA.  MSJ Opp. 4-6; MTD 8-17.  That argument

27   fails for the reasons Plaintiffs explained in opposing dismissal (MTD Opp. 6-25), which Plaintiffs

28   incorporate by reference.

1  permitting IPR when the petition is filed within that period.

2  　　The AIA's structure confirms the point.  Multiple provisions explicitly authorize the Director

3  to deny IPR in situations involving other types of parallel proceedings, such as a co-pending

4  administrative proceeding.  § 315(d); *see also* § 325(d).  If Congress intended to empower the

5  Director to deny IPR based on parallel infringement *litigation*, it knew how to say so explicitly.

6  Indeed, these provisions would be unnecessary if the Director actually possessed the authority, as the

7  Director argues here, to deny IPR for any reason.  *See* MSJ 11-12.  Moreover, the AIA establishes

8  specific rules governing the interaction between IPR and parallel suits.  *See* § 315(a)(1)-(3).  These

9  provisions show that Congress expected that IPR would often proceed alongside litigation and

10  dictated when and how that should occur.

11  　　That structure reflects Congress's central purpose in establishing IPR—to provide an efficient

12  and specialized alternative pathway for resolving patentability challenges that an infringement

13  defendant otherwise could have brought only in litigation.  *See* MSJ 12.  But the *NHK-Fintiv* rule

14  thwarts that purpose by restricting IPR in precisely the situation where Congress intended it to be

15  available and encouraging fragmentation of patentability arguments between IPR and litigation.  *See*

16  MSJ 12-13.  And by effectively reducing § 315(b)'s one-year deadline (MSJ 14-15), the Director has

17  overturned the carefully calibrated balance that Congress struck between the interests of accused

18  infringers and patent owners, substituting his own "judgment call."  MTD 14.

19  　　Simply put, contrary to the Director's assertions (MSJ Opp. 3), Congress has already decided

20  "how parallel district court proceedings … should be taken into account," concluding that a timely

21  IPR petition should not be denied because of parallel litigation.  *See* MSJ 10-11.

22  　　B.　　The Director's main response rebuts a theory that Plaintiffs have never advanced.  The

23  Director depicts Plaintiffs as arguing that § 314(a) requires him to grant all timely IPR petitions.  *See*

24  MSJ Opp. 9 (asserting that Plaintiffs "interpret[] … § 314(a) to deprive the Director of discretion to

25  deny IPR petitions that meet the minimum requirements for review"); *id.* at 8 (asserting that Plaintiffs

26  contend that the "Director <u>must</u> grant the IPR petition" if the "petition is otherwise eligible for

27  institution").  Having constructed this straw man, the Director devotes several pages to knocking it

28  down by arguing that § 314(a) "imposes no obligation to institute" IPR and "does not constrain the

Director's discretion to deny review." MSJ Opp. 8; *see id.* at 7 & n.5 (citing § 314(a)'s "permissive language" and the "absence of … limits in § 314(a)); *id.* at 9 (citing § 314(d); *id.* at 8-9 (citing, *inter alia, Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016); *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018); *St. Regis Mohawk Tribe v. Mylan Pharm. Inc.*, 896 F.3d 1322 (Fed. Cir. 2018)).

That is not Plaintiffs' argument. Plaintiffs argue not that the Director must grant all timely IPR petitions, but that he cannot deny IPR petitions based on the *NHK-Fintiv* rule because that rule is unlawful. Section 314(a) does not address that point and does not give the Director unfettered authority to deny institution of IPR for reasons that violate other provisions of the AIA or other laws. As Plaintiffs have explained, "[w]hatever discretion the Director might have under § 314(a) cannot be exercised in a manner that contravenes the statute's text, structure, and purpose." MSJ 16; *see id.* at 15 (section 314(a) "does not confer unbounded discretion to deny IPR petitions based on factors that contradict the statute"). Even where an agency has discretion, it does not "enjoy" the "luxury" of "[d]isagreeing with Congress's expressly codified policy choices." *Cent. United Life Ins. Co. v. Burwell*, 827 F.3d 70, 73 (D.C. Cir. 2016); *see also Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 321 (2014); *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1361 (Fed. Cir. 2008) ("An agency cannot, for example, exercise its inherent authority in a manner that is contrary to a statute."). Thus, even assuming that § 314(a) provides "'no mandate to institute review,'" MSJ Opp. 8 (quoting *Cuozzo*, 136 S. Ct. at 2140), that does not mean the Director's discretion is unlimited.

No authority cited by the Director supports his contrary view. Even if one read § 314(a)'s prohibitory words—"[t]he Director may not … unless"—as if they were "permissive," MSJ Opp. 7, that provision nowhere suggests that the Director may deny IPR petitions even on grounds that the AIA or other laws proscribe.[3] Similarly, § 314(d)—which generally makes institution decisions non-appealable—nowhere gives the Director unlimited discretion to deny IPR petitions even for unlawful

---

[3] The Federal Circuit's statement in *St. Regis* that § 314(a) confers discretion, cited by the Director, *see* MSJ Opp. 9, does not hold that the Director's discretion is unlimited. That case considered a tribal-sovereign-immunity challenge to an *instituted* IPR and had no occasion to consider unlawful grounds for *denial* of institution. *See* 896 F.3d at 1324, 1329.

1  reasons.  To the contrary, the Supreme Court has made clear that § 314(d) does not "enable the

2  agency to act outside its statutory limits."  *Cuozzo*, 136 U.S. at 2141.  There is no authority for the

3  Director's astonishing suggestion that he may "consider any relevant factor in deciding whether to

4  deny institution"—including factors expressly proscribed by the AIA or (apparently) even the

5  Constitution.  As Plaintiffs have explained, the *NHK-Fintiv* rule violates the AIA and thus cannot be

6  a basis to deny IPR petitions—just as a petitioner's gender or a coin flip could not be.

7        With regard to the lawfulness of the *NHK-Fintiv* rule, the Director has little to say.  He

8  completely ignores all but one of the several provisions of the AIA that Plaintiffs rely on to show that

9  Congress intended IPR and litigation to proceed on terms Congress itself dictated and that the

10 Director therefore may not deny timely IPR petitions because of overlap with parallel infringement

11 litigation.  *See* MSJ 10-12.   As to the one provision he does address, § 315(b), his arguments fail.

12 Section 315(b) provides that IPR cannot proceed if the petition is filed more than one year after

13 service of an infringement complaint, making clear that IPR may proceed if the petition is filed

14 within that period.  The Director baldly denies any "inconsistency" between Congress's decision to

15 legislate a limitations period and its purported decision to "giv[e] the Director[] discretion to deny

16 eligible petitions that are filed within that limit."  MSJ Opp. 10.  This argument, however, simply

17 assumes the answer to the ultimate question:  whether the Director has "discretion to deny" timely

18 petitions because of pending overlapping infringement litigation.  Section 315(b) shows he does not.

19        The AIA's structure and related provisions (which the Director ignores) supports that reading

20 of § 315(b) (*see* MSJ 14-15), as does the general principle that where Congress has enshrined its

21 "judgment on … timeliness" in a statute, courts and agencies "are not at liberty to jettison [that]

22 judgment."  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014); *see SCA Hygiene*

23 *Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 963 (2017) ("If Congress

24 explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the

25 matter." (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946)).  Like all statutory limitations

26 periods, § 315(b) thus "leaves 'little place' for … further limit[s] [on] the timeliness" of IPR

27 petitions.  *Petrella*, 572 U.S. at 685.

28        The Director responds that *Petrella* and *SCA Hygiene* are inapposite because unlike the

1    Director, who has no "obligation … to institute review of timely (and otherwise adequate) IPR

2    petitions," courts "must consider the merits of federal question claims whenever the claims meet the

3    minimum requirements for adjudication."  MSJ Opp. 10.  But federal courts' obligation to consider

4    the merits of claims within their jurisdiction had no bearing on the reasoning of *Petrella* and *SCA*

5    *Hygiene*; indeed, the cases do not mention that duty.  Moreover, as noted, Plaintiffs do not ask this

6    Court to order institution of all "timely (and otherwise adequate) IPR petitions"; they simply seek to

7    enforce Congress's judgment as to whether and how IPR and litigation may proceed and that a timely

8    IPR petition should not be denied based on parallel litigation.  The Director remains free to deny IPR

9    for other reasons, so long as they fall within the scope of his delegated authority and do not violate

10   the law.

11         Regarding statutory purpose, the Director falls back again to the supposed "plain meaning" of

12   § 314(a).  But again, it is irrelevant whether § 314(a) "includes no restrictions on the considerations

13   the Director may take into account when deciding [whether] to grant or deny IPR petitions."  MSJ

14   Opp. 6.  The relevant restrictions appear in § 315(b) and elsewhere in the AIA's text and structure.

15   And as Plaintiffs have shown—and the Director nowhere disputes—the *NHK-Fintiv* rule contravenes

16   the statute's purposes.  MSJ Opp. 11-15.  The rule subverts the core purpose of IPR, which was

17   "designed in large measure to simplify proceedings before the courts and to give the courts the

18   benefit of the expert agency's full and focused consideration of the effect of prior art *on patents being*

19   *asserted in litigation*."  *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at

20   *4 (E.D. Tex. Mar. 11, 2015) (Bryson, J., sitting by designation) (emphasis added).  And it disregards

21   Congress's judgment by overriding the carefully calibrated one-year period, which Congress

22   established to balance petitioners' need for time to evaluate claims against the potential harms of

23   delay.  MSJ 14-15.  No words in § 314(a) sanction that result, and the Director has no other response.

24   The Court should hold the *NHK-Fintiv* rule unlawful as contrary to the AIA, set it aside, and prohibit

25   the Director and the Board from relying on it to deny IPR petitions.  *See* 5 U.S.C. § 706(2).

26   **II.     THE *NHK-FINTIV* RULE IS ARBITRARY AND CAPRICIOUS**

27         The *NHK-Fintiv* rule should also be set aside as arbitrary and capricious.  *See* 5 U.S.C.

28   § 706(2)(A).  The rule is inherently irrational, is not supported by the agency's reasoning at the time

1    it was adopted, and fails to consider key aspects of the problem it purports to address.

2        A.    In adopting the *NHK-Fintiv* rule, the Director was required under the APA to

3    "examine the relevant data and articulate a satisfactory explanation for [his] action including a

4    rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n of*

5    *U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation marks omitted).  Thus,

6    his action "must be logical and rational," and courts "enforce this principle with regularity when they

7    set aside agency regulations which … are not supported by the reasons that the agencies adduce."

8    *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998).  As Plaintiffs' motion for

9    summary judgment explains, the *NHK-Fintiv* rule fails under this standard for several reasons.

10       *First*, the rule requires the Board to speculate about the likely course of litigation—

11   particularly about trial dates.  But trial dates are frequently and unforeseeably rescheduled.  The rule

12   thus inevitably produces irrational outcomes and unpredictable disparities between similar IPR

13   petitions, which in turn undermines the efficiency of the patent system as a whole and unfairly

14   deprives petitioners of IPR based solely on the existence of parallel litigation.  *See* MSJ 18-20.

15       *Second*, the rule creates perverse incentives.  In particular, the rule encourages accused patent

16   infringers to rush to file IPR petitions before the issues have crystallized in the district court,

17   undermining the quality of petitions presented to the Board and the carefully calibrated one-year

18   period that Congress provided for accused patent infringers to file petitions under § 315(b).  *See* MSJ

19   20-21.  The rule also incentivizes patent owners to shop for a forum that will grant them an early

20   (albeit notional) trial date to leverage against institution, further undermining Congress's goal of

21   providing IPR as a real alternative to litigation.  *See id.* at 21.

22       *Third*, the *NHK-Fintiv* factors are so vague and malleable that they inevitably "treat similar

23   situations differently without reasoned explanation"—a hallmark of arbitrary and capricious agency

24   action.  MSJ 21-22 (quoting *Port of Seattle v. FERC*, 499 F.3d 1016, 1034 (9th Cir. 2007)).

25       *Finally*, in adopting the rule, the Director failed to consider and address these many

26   uncertainties, inefficiencies, and perverse incentives.  *See* MSJ 22-23.  The Board purported to justify

27   the *NHK-Fintiv* rule on the ground that it will promote "system efficiency, fairness, and patent

28   quality."  *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, Paper 11 at 5 (P.T.A.B. Mar. 20, 2020) (Am.

1    Compl. Ex. B).  But nowhere in *NHK* or *Fintiv* did the Board address the uncertainty inherent in

2    basing institution decisions on the expected course of litigation and, particularly, on trial dates that

3    are frequently rescheduled.  *See, e.g.*, *Fintiv*, Paper 11, at 9.  This inherent uncertainty has led to

4    unpredictable disparities between similar IPR petitions—problems that are an entirely foreseeable

5    outcome of basing institution decisions on speculation about the course of litigation but that are

6    glaringly absent from the Board's explanation for adopting the *NHK-Fintiv* factors.  An agency action

7    is arbitrary and capricious under the APA when it "failed to consider a crucial aspect of the issue

8    before it, [or] offered an explanation that … is so implausible that it could not be ascribed to a

9    difference in view or the product of agency expertise."  *City of Los Angeles v. U.S. Dep't of*

10   *Commerce*, 307 F.3d 859, 874 (9th Cir. 2002) (quotation marks omitted).

11          In short, the *NHK-Fintiv* rule cuts off access to IPR—a procedure that Congress intended to

12   be available to promote "a more efficient and streamlined patent system" and to "limit unnecessary

13   … litigation costs," H.R. Rep. No. 112-98, at 40 (2011)—while thwarting the Director's ostensible

14   goals of efficiency, fairness, and patent quality.  Such irrationality is the definition of arbitrary and

15   capricious agency action.  Contrary to the Director's assertion, Plaintiffs do not ask the Court to

16   "substitute its judgment for the policy choices of the agency," MSJ Opp. 14, but rather to engage in

17   the "searching and careful" review of an agency's decisionmaking process that courts routinely

18   undertake.  *City of Los Angeles*, 307 F.3d at 874.  Here, that review requires the rule to be set aside.

19          B.     The Director's opposition does not seriously attempt to defend the rationality of the

20   *NHK-Fintiv* rule or to justify the deficiencies in the agency's decisionmaking.  He does not deny that

21   the rule requires the Board to make decisions based on speculation and has resulted in inefficient

22   outcomes and inexplicable disparities between similar cases.  Instead, he excuses those features of the

23   rule as a policy choice and asks the Court to disregard the rule's evident irrationality.

24          To begin, the Director wrongly asserts that the Court may not consider Board decisions

25   applying the *NHK-Fintiv* rule because they are "*post hoc* evidence [that] was not before the Director

26   when he adopted the *Fintiv* factors."  MSJ Opp. 13.  But these decisions are not "evidence" in the

27   sense of data the agency failed to consider in conducting its analysis; they are applications of the

28   challenged rule that illustrate and confirm the rule's inherent irrationalities—irrationalities the

Director failed to adequately consider in promulgating the rule.  For example, it is self-evident that a rule that turns in part on predictions of stays and trial dates will in many cases result in IPR being irretrievably denied only for trial to later be postponed or the litigation stayed.  In one recent case, for instance, the district court stayed a pending infringement suit against Cisco—long after the Board denied Cisco's IPR petitions on the erroneous assumption that the litigation would outpace any IPR—even after "discovery [was] complete, pretrial briefing submitted, and jury selection impending" because of a "high probability that the asserted claims w[ould] change in scope" due to an ongoing ex parte reexamination proceeding.  *Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys. Inc.*, No. 2:19-cv-00225-JRG, slip op. at 4-5 (E.D. Tex. Jan. 13, 2021), Dkt. No. 235.   Moreover, even as to traditional extra-record "evidence," courts may consider such evidence where, as here, it aids in "determin[ing] whether the agency has considered all relevant factors and has explained its decision." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992-993 (9th Cir. 2014) ("a district court [may] consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis"); *see also Bair v. Cal. State Dep't of Transp.*, 867 F. Supp. 2d 1058, 1068 (N.D. Cal. 2017) (considering declarations "relevant to determine whether [the agency] considered all relevant factors in its final" environmental assessment for highway project).  If the Director had promulgated the *NHK-Fintiv* rule through notice-and-comment rulemaking as he was required to do, *see infra* pp. 11-15, stakeholders undoubtedly would have raised these irrationalities and inefficiencies to the Director in that process.  The Director cannot evade these considerations—or judicial review of the reasonableness of his decisionmaking—by forgoing notice-and-comment rulemaking and then blocking the Court's consideration of his failure to consider all relevant factors or produce a reasonable justification for the *NHK-Fintiv* rule.

The Director's other arguments essentially concede the irrationality of the rule but contend that the agency was empowered to adopt it anyway.  That is not the case.  For example, instead of rebutting Plaintiffs' argument that the *NHK-Fintiv* rule requires the agency to engage in speculation about litigation benchmarks that are often a moving target, the Director asserts that the agency is permitted to "adopt[] an analysis that includes speculation."  MSJ Opp. 15.  But as one of the Director's own cases points out, to be permissible under the APA, the speculation must be "'within

1   the scope of [the agency's] presumed expertise.'"  MSJ Opp. 15 n.10 (quoting *Sierra Club v. Kenna*,

2   No. 1:12-cv-1193, 2013 WL 144251, at *13 (E.D. Cal. Jan. 11, 2013), *aff'd sub nom. Sierra Club v.*

3   *Bureau of Land Mgmt.*, 786 F.3d 1219 (9th Cir. 2015)).  There is no reason to believe that the

4   Director or the administrative patent judges—who are selected for their knowledge of patent law and

5   scientific expertise, *see* 35 U.S.C. § 6(a)—have any expertise in predicting the course of litigation in

6   federal district courts.  No one can reliably know early in a case whether notional trial dates will

7   stick; most often, they do not.  This is fundamentally different from the Director's example, in which

8   federal courts consider whether "state court proceedings will resolve all issues before the federal

9   court" in deciding whether to decline concurrent federal jurisdiction, MSJ Opp. 15—a typical judicial

10  analysis driven by principles of comity that are not applicable here.

11          Similarly, the Director acknowledges the inconsistent outcomes the rule has precipitated but

12  excuses them as the unfortunate consequence of a "holistic," "flexible" inquiry.  But such

13  inconsistency is not a virtue—"[t]reat[ing] similar situations differently without reasoned

14  explanation" is a hallmark of arbitrary and capricious agency action.  *Port of Seattle*, 499 F.3d at

15  1034 (quotation marks omitted).  The Director suggests that nothing in the rule "necessitate[s]" those

16  inconsistent outcomes, MSJ Opp. 16, but that is precisely the point:  The *NHK-Fintiv* factors are so

17  vague, malleable, and lacking in guidance that their application is entirely unpredictable.  *See* MSJ

18  18-22.  Far from arguing that *any* "flexible, fact-dependent analys[is]" is "inherently arbitrary and

19  capricious," as the Director suggests, MSJ Opp. 17-18, Plaintiffs' point is that the rule's factors—as

20  illustrated by the Board's decisions—are so "vague … [that they] leav[e] no method by which the

21  [IPR petitioner] or the … agency can gauge their performance" under its factors, rendering them

22  arbitrary and capricious.  *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1233,

23  1250 (9th Cir. 2001) (terms and conditions in Incidental Take Statement were "so vague as to

24  preclude compliance" by action agencies or permit applicants and thus were arbitrary and capricious).

25  That the Board must make "individualized judgments" in deciding whether to institute (MSJ Opp. 16)

26  does not mean the Director may adopt a rule that is incapable of consistent application.[4]

27  _____

28  [4] There is no "tension" between Plaintiffs' claim that the *NHK-Fintiv* rule "yield[s] inconsistent
[Footnote continued on next page]

Finally, the Director argues that the *NHK-Fintiv* rule promotes efficiency within the PTO because "adjudicating petitions when … 'the district court proceeding will analyze the same issues and will be resolved before any trial on the Petition concludes is undeniably wasteful.'"  MSJ Opp. 19.  This rationale, however, directly contravenes Congress's judgment that IPR should be available to patent challengers defending against infringement litigation so long as they petitioned for IPR within one year of being served in the litigation.  *See* § 315(b); *see also supra* pp. 2-3.  Moreover, as Plaintiffs have explained, the rule does not actually promote efficiency in the patent system since it incentivizes both premature IPR petitions and forum shopping that results in denials of petitions due to early trial dates that often prove illusory, thereby foreclosing IPR in cases where IPR would in fact be the more efficient forum for resolution of patent validity.  And, contrary to the Director's contentions (MSJ Opp. 19-20), the Board's consideration of already-expended resources is indeed irrational.  IPR's procedures are more streamlined than litigation, *see* MSJ 4, and an analysis that focuses retrospectively on resources expended in litigation fails to account for the full range of efficiencies that the IPR procedure offers in comparison.  *See* MSJ 23.

The Director responds that the AIA authorizes him to consider goals other than efficiency. MSJ Opp. 16.  But the provision on which he relies recites factors the Director may consider when promulgating regulations, which he failed to do here.  *See* § 316(b).  In any event, the *NHK-Fintiv* rule fails to reasonably advance system efficiency, fairness, *or* patent quality, and thus is not even remotely supported by the reasons given by the Director at the time the rule was promulgated.  *See Allentown Mack*, 522 U.S. at 374 (rule must be "supported by the reasons that the agencies adduce").

## III.   THE *NHK-FINTIV* RULE IS INVALID BECAUSE THE DIRECTOR ADOPTED IT WITHOUT NOTICE AND COMMENT

Finally, the *NHK-Fintiv* rule should also be set aside as procedurally invalid.  It is a "rule"

---

outcomes" and their argument that the rule is a final, substantive rule subject to notice-and-comment requirements.  MSJ Opp. 17.  *NHK-Fintiv* is a substantive rule because it adopts a binding policy and specifies factors the Board must apply to decide whether to grant IPR petitions, and the rule is often dispositive.  *See* MSJ 23-25; *infra* pp. 11-15.  This analysis is unaffected by the fact that the Board's application of that substantive rule results in disparate outcomes in similar cases.

because the Director's designation of the Board's decisions in *NHK* and *Fintiv* as precedential made the standards expressed in those decisions binding in all future cases. Both the AIA and the APA require the Director to adopt such rules only through notice-and-comment rulemaking, but here the designation process did not afford the public notice and an opportunity for comment. *See* MSJ 23-25. In response, the Director concedes that the *NHK-Fintiv* rule was adopted without notice-and-comment rulemaking, but contends that such rulemaking was unnecessary because *NHK* and *Fintiv* do not establish a "substantive rule." The Director is incorrect.[5]

    A.    The Director first contends that the *NHK-Fintiv* rule "bind[s] only the Board" and is merely an "'*internal* norm[]'" that "'does not create any legally enforceable rights.'" MSJ Opp. 21 (quoting Patent Trial and Appeal Board, Standard Operating Procedure 2 (Rev. 10) ("SOP-2")). The first point is irrelevant and the second inaccurate. As the Director's own authorities show, an agency directive need not regulate private actors or create legal rights to qualify as a substantive rule; a directive that "limits" an agency's "discretion" or establishes a "binding norm" on the agency qualifies as a substantive rule. *Sacora v. Thomas*, 628 F.3d 1059, 1069 (9th Cir. 2010) (quotation marks omitted); *see also Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 357 (D.C. Cir. 2017) (whether directive is substantive rule depends on whether it "has binding effects on private parties *or on the agency*" (emphasis added)). Moreover, the statement in SOP-2 that the Director cites regarding internal norms that do not create legally enforceable rights expressly refers to the status of "[t]his SOP," i.e., to the agency's procedures governing "the publication of Board decisions" and the "procedure for designating [such] decisions … as precedential," SOP-2 at 1—*not* the status of the precedential opinions issued pursuant to those procedures. In any event, the Court "need not accept an agency's characterization at face value," *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1125 (9th Cir. 2009) (quotation marks omitted), and should not here because the *NHK-Fintiv* rule plainly does more than govern the Board's internal functioning. As elaborated below, it defines a standard that the Board must apply when deciding whether to grant a private party's IPR petition.

---

[5] That the Director "solicited public feedback" regarding the *Fintiv* factors (MSJ Opp. 20 n.19) long after designating *NHK* and *Fintiv* precedential does not satisfy the notice-and-comment requirement.

1    *See, e.g.*, *Supercell Oy v. Gree, Inc.*, No. PGR2020-00034, 2020 WL 6434958, at *5 (P.T.A.B. Nov.

2    2, 2020) ("*NHK Spring* and the *Fintiv* Order are precedential decisions that are binding in Board

3    proceedings"); *cf. Moore v. Apfel*, 216 F.3d 864, 868-869 (9th Cir. 2000) (agency directive was

4    "internal" where it "merely provide[d] … staff with internal procedures for assigning cases to ALJs

5    after a remand"), *cited in* MSJ Opp. 20.

6         B.     Next, the Director contends that the *NHK-Fintiv* rule is "a general statement of

7    policy," or "guidance," because its "factors … are 'non-dispositive,'" and the Board may consider

8    "[o]ther facts and circumstances" as part of a "holistic" analysis.  MSJ Opp. 22-23 (quotation marks

9    omitted).  This argument fails because the standard announced in *NHK* and *Fintiv* purports to

10   "establish[] a *binding norm*" and to "narrowly limit[]" the Director's claimed "discretion."  *Sacora*,

11   628 F.3d at 1069.  *NHK* and *Fintiv* declare the agency's policy of denying IPR petitions where the

12   Board believes conducting IPR would be "inefficient" in light of parallel infringement litigation.

13   *Fintiv*, Paper 11 at 2.  That is a policy that (because of *NHK*'s and *Fintiv*'s designation as

14   precedential) the Board is *not* "free … not to follow … in an individual case."  *Sacora*, 628 F.3d at

15   1069 (quotation marks omitted).  Further, the *NHK-Fintiv* rule severely limits the Board's

16   decisionmaking by specifying factors the Board "*must* consider" in deciding whether to deny an IPR

17   petition that meets all the statutory requirements.  MTD 6 (emphasis added).  Although no single

18   factor in the rule is necessarily dispositive in every case, the rule overall has proven dispositive, as

19   shown by its repeated use to deny IPR petitions.  *See* MSJ 7-9.

20        The cases cited by the Director are not to the contrary.  In *Planned Parenthood of Wisconsin,*

21   *Inc. v. Azar*, the court concluded that a statement of scoring criteria for evaluating grant applications

22   was not a substantive rule because the scoring system was "a mere tool" for developing a

23   "recommendation for the final decisionmaker."  316 F. Supp. 3d 291, 307 (D.D.C. 2018), *vacated on*

24   *other grounds*, 942 F.3d 512 (D.C. Cir. 2019).  In contrast, *NHK* and *Fintiv* announced a new policy

25   that governs agency *decisions*, not mere recommendations to higher agency officials.  In *Clarian*

26   *Health West*, the court determined that an agency's manual setting forth criteria for determining

27   whether to commence a "reconciliation" process was not a substantive rule because the agency

28   remained "free to determine that reconciliation is or is not appropriate regardless of whether the

1    criteria in the instructions are met."  878 F.3d at 358.  Similarly, in *Professionals & Patients for*

2    *Customized Care v. Shalala*, the court held that an agency statement establishing "factors" for

3    initiating an enforcement action was not a substantive rule because the agency "retain[ed] discretion

4    whether to bring an enforcement action" "even if the factors are present."  56 F.3d 592, 597-598 (5th

5    Cir. 1995).  The Board, however, has no discretion to disregard the *NHK-Fintiv* rule and no evident

6    authority to grant an IPR petition if the *NHK-Fintiv* factors disfavor institution or if it believes

7    conducting IPR would be inefficient in light of a parallel infringement litigation.

8            C.       Finally, the Director offers variations on a theme—that he has discretion whether to

9    institute—to argue that the *NHK-Fintiv* rule does not affect legal rights or interests.  *See* MSJ Opp.

10   23-24.  The Director's points lack merit.

11           First, the Director asserts that "IPR petitioners have no right to IPR review."  MSJ Opp. 23.

12   As discussed above, Plaintiffs do not contend that the Board *must* grant an IPR petition that satisfies

13   the statutory preconditions for IPR, and whether it must do so is irrelevant to the *NHK-Fintiv* rule's

14   status as a substantive "rule."  What matters is that the *NHK-Fintiv* rule substantially constricts the

15   circumstances in which the Board may grant an IPR petition, thereby depriving Plaintiffs and others

16   of the opportunity to obtain important benefits that Congress intended IPR to provide (regardless of

17   whether petitioners remain free to challenge patents in litigation).  *See* MSJ 4-5; MTD Opp. 6-9, 13-

18   14.  Moreover, whatever discretion the Director may have under § 314 to deny institution does not

19   allow him to ignore applicable rulemaking requirements.  *See* § 316 (authorizing the Director to

20   prescribe "regulations" governing AIA proceedings); 5 U.S.C. § 553(b), (c); MSJ 24.

21           Second, the Director asserts that "[t]he AIA," not the *NHK-Fintiv* rule, "defines the

22   circumstances under which IPR may be denied."  MSJ Opp. 24.  But as the Director describes them,

23   those "circumstances" are nothing more than the AIA's specific preconditions for institution and the

24   Director's supposedly unfettered "discretion."  *Id.*  As explained, the AIA does not afford the

25   Director the discretion to deny IPR petitions based on the *NHK-Fintiv* factors at all.  But even if it

26   did, as also explained, the *NHK-Fintiv* rule severely limits whatever discretion the Director has by

27   imposing a binding policy against institution where the Board believes conducting IPR would be

28   "inefficient" in light of the status of parallel infringement litigation, and by establishing "factors" that

1    the Board *must* consider to make that determination—factors that, though individually not

2    dispositive, have collectively caused the Board to deny numerous IPR petitions already.  The Director

3    counters that "defining circumstances under which IPR may be denied does not alter rights or legal

4    interests of parties before the agency," because otherwise the distinction between "interpretive rules"

5    and substantive rules would be meaningless.  MSJ Opp. 24 (quotation marks omitted).  That is an odd

6    response given that the Director does not contend that *NHK-Fintiv* expresses an interpretive rule.  *See*

7    *Sacora*, 628 F.3d at 1069-1070 (explaining differences between substantive rules, interpretive rules,

8    and general statements of policy).  In any event, it fails because "interpretive rules are meant only to

9    advise the public of how the agency understands, and is likely to apply, its binding statutes and

10   legislative rules." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019) (quotation marks omitted).  Here,

11   there is no statute or regulation that the *NHK-Fintiv* rule purports to construe for the public's benefit.

12        Third, the Director asserts that three circumstances in which a rule has "the force of law" are

13   absent.  MSJ Opp. 24-25.  But those non-exclusive circumstances distinguish substantive rules from

14   *interpretive rules*, not from mere guidance.  *See Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1087-

15   1088 (9th Cir. 2003) (quoting *Am. Min. Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1108-

16   1111 (D.C. Cir. 1993)).  What separates substantive rules from guidance is whether the directive has

17   "binding effect," *Am. Min.*, 995 F.2d at 1111, and as explained, the *NHK-Fintiv* rule does.  In any

18   event, the first circumstance identified by the Director—"in the absence of the rule, there would not

19   be an adequate legislative basis for enforcement action," MSJ Opp. 24-25—is in fact present.  In

20   *United States v. Picciotto*, the court held that a directive establishing additional "conditions" for

21   granting a permit was a substantive rule, not an interpretive rule of a regulation allowing permits to

22   be granted subject to "additional reasonable conditions."  875 F.2d 345, 347-348 (D.C. Cir. 1989).

23   Similarly, even if the AIA granted the Director the broad discretion he claims, the *NHK-Fintiv* rule

24   could not plausibly be characterized as an interpretation of that statutory grant.

25                                    **CONCLUSION**

26        For the foregoing reasons, and those in Plaintiffs' opening brief, the Court should grant

27   Plaintiffs' Motion for Summary Judgment, declare the *NHK-Fintiv* rule unlawful, set it aside, and

28   enjoin the PTO from relying on the rule or its non-statutory factors to deny institution of IPR.

Dated: February 4, 2021

Respectfully submitted,

By: */s/ Mark D. Selwyn*

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

CATHERINE M.A. CARROLL (*pro hac vice*)
DAVID M. LEHN (*pro hac vice*)
REBECCA LEE (*pro hac vice*)
catherine.carroll@wilmerhale.com
david.lehn@wilmerhale.com
rebecca.lee@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

ALYSON ZUREICK (*pro hac vice*)
alyson.zureick@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Attorneys for Plaintiffs Apple Inc., Cisco
Systems, Inc., and Intel Corporation*

DANIEL T. SHVODIAN (CA SBN 184576)
DShvodian@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 838-4300
Facsimile: (650) 737-5461

THERESA NGUYEN (CA SBN 284581)
RNguyen@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-6068
Facsimile: (206) 359-9000

ANDREW T. DUFRESNE (*pro hac vice*)
ADufresne@perkinscoie.com
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
Telephone: (608) 663-7492
Facsimile: (608) 663-7499

*Attorneys for Plaintiff Google LLC*

JOHN B. SGANGA (CA SBN 116211)
CHRISTY G. LEA (CA SBN 212060)
John.Sganga@knobbe.com
Christy.Lea@knobbe.com
KNOBBE MARTENS OLSON & BEAR LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff Edwards Lifesciences
Corporation and Edwards Lifesciences LLC*

## ATTORNEY ATTESTATION

I, Mark D. Selwyn, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories.

By: /s/ *Mark D. Selwyn*
Mark D. Selwyn

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2021, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

By: /s/ *Mark D. Selwyn*
Mark D. Selwyn