THOMAS KING-SUN FU (SBN 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 S. Figueroa Street
Los Angeles, CA 90017
Telephone:  213 629 2020
Facsimile:  213 612 2499

MARK S. DAVIES (*pro hac vice* pending)
mark.davies@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
Telephone:  202 339 8475
Facsimile:  202 339 8500

RACHEL G. SHALEV (*pro hac vice* pending)
rshalev@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Telephone:  212 506 5033
Facsimile:  212 506 5151

Attorneys for *Amici Curiae* Verizon, T-Mobile, Comcast, Twitter, Alliance for Automotive Innovation and 12 Other Leading Innovators and Organizations

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., CISCO SYSTEMS, INC., GOOGLE LLC, INTEL CORPORATION, EDWARDS LIFESCIENCES CORPORATION, and EDWARDS LIFESCIENCES LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW HIRSHFELD, performing the functions and duties of the Under Secretary of Commerce for Intellectual Property and Director, United States Patent and Trademark Office,<br><br>Defendant. | Case No.:  20-cv-6128-EJD<br><br>**BRIEF OF *AMICI CURIAE* VERIZON, T-MOBILE, COMCAST, TWITTER, ALLIANCE FOR AUTOMOTIVE INNOVATION AND 12 OTHER LEADING INNOVATORS AND ORGANIZATIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 11, 2021<br>Time: 9:00am<br>Location: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila |

# LIST OF SIGNATORIES

Alliance for Automotive Innovation

Canon, Inc.

Comcast Cable Communications, LLC

Computer and Communications Industry Association

Dell Inc.

Fresenius Kabi USA, LLC

HP Inc.

Juniper Networks, Inc.

Micron Technology, Inc.

Mylan Pharmaceuticals Inc., a Viatris company

T-Mobile USA, Inc.

Taiwan Semiconductor Manufacturing Company, Ltd.

Twitter, Inc.

US Manufacturers Association for Development and Enterprise

Verizon Services Corp.

VIZIO, Inc.

VMware, Inc.

# TABLE OF CONTENTS

|  | Page |
|---|---|
| LIST OF SIGNATORIES | i |
| TABLE OF AUTHORITIES | iii |
| INTEREST OF *AMICI CURIAE* | 1 |
| INTRODUCTION | 2 |
| ARGUMENT | 5 |
| I. The *NHK-Fintiv* Rule Contravenes Congress's Deliberate Decision To Make IPR Available To District Court Defendants Who Timely Seek It. | 5 |
| II. As *Amici*'s Experiences Demonstrate, The *NHK-Fintiv* Rule Undermines Congress's Aims Of Improving The Efficiency and Integrity Of The Patent System. | 7 |
|     A. The *NHK-Fintiv* rule undermines the efficiency of the patent system. | 7 |
|     B. The *NHK-Fintiv* rule undermines the integrity of the patent system. | 9 |
| CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Cases**

*Biodiversity Legal Found. v. Badgley*,
 309 F.3d 1166 (9th Cir. 2002) ........................................................................................... 7

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
 No. 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019) ....................................... 9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) ............................................................................................................ 7

*NFC Tech. LLC v. HTC Am., Inc.*,
 No. 2:13-cv-1058-WCB, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ......................... 5

*SAS Inst. Inc. v. Iancu*,
 138 S. Ct. 1348 (2018) ................................................................................................. 2, 7

*Thryv, Inc. v. Click-To-Call Techs., LP*,
 140 S. Ct. 1367 (2020) ........................................................................................... 2, 5, 12

**Statutes and Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 8 ........................................................................................................ 2

35 U.S.C. § 311(b) .................................................................................................................... 8

35 U.S.C. § 314(a) ............................................................................................................. 5, 11

35 U.S.C. § 314(b) .................................................................................................................... 8

35 U.S.C. § 315(a)(1) ................................................................................................................ 6

35 U.S.C. § 315(b) .................................................................................................................... 6

35 U.S.C. § 315(d) .................................................................................................................... 6

35 U.S.C. § 316(a)(5) ................................................................................................................ 8

35 U.S.C. § 316(a)(11) .............................................................................................................. 8

35 U.S.C. § 325(d) .................................................................................................................... 5

**Legislative Materials**

157 Cong. Rec. S1352 (2011) ............................................................................................. 3, 5

157 Cong. Rec. S5429 (2011) ................................................................................................. 6

H.R. Rep. No. 112-98 (2011) ........................................................................ 2, 3, 5, 6, 8, 12, 13

S. Rep. No. 110-259 (2008) ...................................................................................................10

**Administrative Decisions**

*Apple Inc. v. Fintiv, Inc.*,
  IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) .........................................................5, 7, 8

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*,
  IPR2020-00123, Paper 14 (P.T.A.B. May 15, 2020) ..............................................................6, 10

*Comcast Cable Comms., LLC v. Rovi Guides, Inc.*,
  IPR2020-00800, IPR2020-00801, IPR2020-00802, Paper 10 (P.T.A.B. Oct. 22,
  2020) ..................................................................................................................................2, 4

*Fitbit, Inc. v. Philips N. Am. LLC*,
  IPR2020-00828, Paper 13 (P.T.A.B. Nov. 3, 2020) ....................................................................4

*Mylan Labs. Ltd. v. Janssen Pharm. NV*,
  IPR2020-00440, Paper 17 (P.T.A.B. Sept. 16, 2020) ..............................................................2, 4

*NHK Spring Co., Ltd. v. Intri-Plex Techs., Inc.*,
  IPR2018-00752, Paper 8 (P.T.A.B. Sept. 12, 2018) ................................................................5, 8

*Philip Morris Prods. v. RAI Strategic Holdings*,
  IPR2020-00921, Paper 9 (P.T.A.B. Nov. 16, 2020) ..................................................................11

*Samsung Elecs. Am., Inc. v. Uniloc 2017 LLC*,
  IPR2019-01218, Paper 7 (P.T.A.B. Jan. 7, 2020) ......................................................................10

*Sotera Wireless, Inc. v. Masimo Corp.*,
  IPR2020-01019, Paper 12 (P.T.A.B. Dec. 1, 2020) ..................................................................11

*Verizon Bus. Network Servs. LLC v. Huawei Techs. Co. Ltd.*,
  IPR2020-01290, Paper 14 (P.T.A.B. Jan. 25, 2021) ..............................................2, 8, 9, 10, 11

*VIZIO, Inc. v. Polaris PowerLED Techs., LLC*,
  IPR2020-00043, Paper 30 (P.T.A.B. May 4, 2020) ....................................................................2

**Other Authorities**

37 C.F.R. § 42.51 .............................................................................................................................8

*2019 Year In Review*, Docket Navigator, https://tinyurl.com/y6rmnldw .........................................9

*2020 Patent Dispute Report: Year in Review*, Unified Patents (Jan. 1, 2021),
  https://tinyurl.com/y5yd33xb .................................................................................................9

*2020 Top 50 US Patent Assignees*, IFI CLAIMS Patent Services,
  https://tinyurl.com/7atnueqv (last visited Feb. 4, 2021) ........................................................1

*A Guide to Patent Litigation in Federal Court*, Fish & Richardson (2019),
   https://tinyurl.com/y658goqf ..................................................................................12

Am. Intell. Prop. Law Ass'n, 2019 Report of the Economic Survey,
   https://tinyurl.com/2p57g7c9 (last visited Feb. 4, 2021) ......................................8

Dan Bagatell, *Fed. Cir. Patent Decisions In 2019: An Empirical Review*, Law360
   (Jan. 9, 2020), https://tinyurl.com/yk942z86 ........................................................5

David Ruschke & William V. Saindon, *Chat with the Chief: An Analysis of
   Multiple Petitions in AIA Trials*, USTPO (Oct. 24, 2017),
   https://tinyurl.com/y7h9gzzb ..................................................................................3

HTIA, *Comments of The High Tech Investors Alliance in Response to Request for
   Comments*, USPTO (Dec. 6, 2020), https://tinyurl.com/yx8tn7lc ........................10

*Intri-Plex Techs. v. NHK Int'l Corp.*,
   3:17-cv-01097, ECF 175 (N.D. Cal. Feb. 22, 2019) ..............................................8

ITC, *Section 337 Statistics: Average Length of Investigations*,
   https://tinyurl.com/m23usct0 (last visited Feb. 4, 2021) .....................................10

*Janssen Pharm., Inc. v. Teva Pharm. USA, Inc.*,
   No. 18-cv-00734, ECF No. 151 (D.N.J. Oct. 30, 2020) .........................................4

Jonas Anderson & Paul R. Gugliuzza, *Federal Judge Seeks Patent Cases*, Temple
   University Beasley School of Law Legal Studies Research Paper No. 2020-25
   (Sept. 18, 2020), https://tinyurl.com/y2tqbb8d ....................................................10

Josh Landau, *Inter Partes Review: Five Years, Over $2 Billion Saved*, Patent
   Progress (Sept. 14, 2017), https://tinyurl.com/y64yrjhq .......................................8

*Litigation Analytics*, Unified Patents, https://tinyurl.com/yygdo67y ............................9, 10

*PTAB Discretionary Denials Up 60%+ in 2020: Fueled Entirely by 314(a)
   Denials*, Unified Patents (Jan. 5, 2021), https://tinyurl.com/39s3fhjp ..................3

*Q3 2020 Patent Dispute Report*, Unified Patents (Sept. 30, 2020),
   https://tinyurl.com/y4e2nqo7 ................................................................................12

Sasha Moss et al., *Inter Partes Review as a Means to Improve Patent Quality*, 46
   R Street Shorts (Sept. 2017), https://tinyurl.com/yya2n86u ..............................3, 8

*September 2020 IPR Intelligence Report*, Patexia (Sept. 2020) ........................................1

# INTEREST OF *AMICI CURIAE*

*Amici* are (or as organizations, represent) the world's top innovators and market leaders: Alliance for Automotive Innovation (AAI),[1] Canon, Comcast Cable Communications, Computer and Communications Industry Association (CCIA), Dell, Fresenius Kabi USA, HP, Juniper Networks, Micron Technology, Mylan Pharmaceuticals, T-Mobile USA, Taiwan Semiconductor Manufacturing Company (TSMC), Twitter, US Manufacturers Association for Development and Enterprise (US-MADE), Verizon, VIZIO, and VMware. *Amici* include some of the most successful companies in telecommunications (Verizon, Comcast Cable Communications, and T-Mobile), electronics (Canon and VIZIO), life science and healthcare (Fresenius Kabi USA and Mylan), computing (CCIA, Dell, HP, Juniper, Micron, TSMC, and VMware), social media (Twitter), manufacturing (AAI and US-MADE), and other critical sectors. *See supra* i (providing full list of *amici*). As prolific patentees themselves,[2] *amici* companies are deeply invested in a healthy patent system that promotes and protects technological investment and development while preserving access to market alternatives and lawful competition. In short, they—and the American economy as a whole—rely on a well-functioning patent system that safeguards quality and averts abuse.

Inter partes review (IPR) is a vital part of that system. It efficiently and expertly weeds out the bad patents that stand behind abusive litigation and in the way of real innovation and fair competition. *Amici*—a group that includes some of the most experienced IPR petitioners—rely on IPR to do just that. Collectively, they have filed more than 800 IPR petitions and rank among the most active company petitioners. *See September 2020 IPR Intelligence Report*, Patexia (Sept. 2020) (ranking, for example, Comcast, Dell, HP, Juniper, Micron, Mylan, and TSMC among the top 30 most active company petitioners).

---

[1] Formed in 2020 through the combination of the Association of Global Automakers and the Alliance of Automobile Manufacturers, the Alliance for Automotive Innovation represents 37 automobile manufacturers and value chain partners, including General Motors and Volkswagen Group of America.

[2] *See, e.g.*, *2020 Top 50 US Patent Assignees*, IFI CLAIMS Patent Services, https://tinyurl.com/7atnueqv (last visited Feb. 4, 2021) (noting that *amici* Canon, TSMC, and Micron rank (respectively) third, sixth, and nineteenth in a list of organizations that received the most patent grants from the USPTO in 2020).

The *NHK-Fintiv* rule, however, hobbles IPR in direct contravention of Congress's goals of affording a cost-effective and expert alternative to litigation to improve patent quality. *Amici* know this firsthand. Some *amici* are defendants in infringement suits and sought out IPR, only to have their meritorious petitions challenged, and too frequently denied, on account of the *NHK-Fintiv* rule. *See, e.g.*, *Verizon Bus. Network Servs. LLC v. Huawei Techs. Co. Ltd.*, IPR2020-01290, Paper 14 at 17-18 (P.T.A.B. Jan. 25, 2021) (denying institution on *NHK-Fintiv* grounds; one of several similar denials); *Comcast Cable Comms., LLC v. Rovi Guides, Inc.*, IPR2020-00800, IPR2020-00801, IPR2020-00802, Paper 10 at 13, 16-17 (P.T.A.B. Oct. 22, 2020) (denying on *NHK-Fintiv* grounds even after noting that some patent claims were likely invalid); *VIZIO, Inc. v. Polaris PowerLED Techs., LLC*, IPR2020-00043, Paper 30 at 12 (P.T.A.B. May 4, 2020) (initially denying institution on *NHK-Fintiv* grounds); *Mylan Labs. Ltd. v. Janssen Pharm. NV*, IPR2020-00440, Paper 17 at 13-23 (P.T.A.B. Sept. 16, 2020) (denying institution on *NHK-Fintiv* grounds based primarily on district court litigation involving unrelated defendant). Other *amici* have been discouraged by the *NHK-Fintiv* rule from petitioning for IPR in the first place. But all *amici* depend on a robust IPR regime to ensure patent quality. By cutting off access to IPR, the *NHK-Fintiv* rule not only hurts *amici*, but also hurts the patent system as a whole, undermining its efficiency and integrity—the exact opposite of what Congress intended when it created IPR.

## INTRODUCTION

The Constitution assigns to Congress the task of providing a patent system that "promote[s] the Progress of Science and useful Arts." U.S. Const. art. I, § 8, cl. 8. In service of that mission, Congress set out in the America Invents Act (AIA) to solve a serious problem: There was "a growing sense that questionable patents are too easily obtained and are too difficult to challenge." H.R. Rep. No. 112-98, pt. 1, at 39 (2011) (House Report). That is, there were too many "bad patents" out there, and the costs of challenging them were too high. *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018). Patent Assertion Entities (PAEs) were a particular concern—especially the many sophisticated PAEs that take advantage of patent prosecution strategies to create thickets of patents they can exploit through litigation.

Congress's solution was IPR—"a more efficient and streamlined" approach than district court litigation (and then-existing administrative avenues) to test patent validity, which "w[ould] improve patent quality and limit unnecessary and counterproductive litigation costs."  House Report at 40; see *Thryv, Inc. v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1374 (2020) ("By providing for inter partes review, Congress, concerned about overpatenting and its diminishment of competition, sought to weed out bad patent claims efficiently.").  Moreover, because IPR allows "questions of patentability" to be decided by an administrative agency with "expertise" on that subject, it is more likely than a lay jury in district court litigation to arrive at the right result.  157 Cong. Rec. S1352 (2011) (Sen. Udall).  With IPR as an option, companies facing nuisance infringement suits would no longer feel forced to settle due to the high costs of district court litigation; they could instead turn to the Patent Trial and Appeal Board (PTAB) to quickly, affordably, and reliably cancel patents that the Patent Office never should have issued.

For years, that is how it worked, with most instituted petitions—85%—involving a co-pending district court case.[3]  And it worked well:  Parties took advantage of this new, more efficient procedure to bring bad patents to the Patent Office's attention, and the Patent Office fulfilled its job in clearing out those obstacles to innovation.  For instance, *amicus* Comcast—a frequent target of PAEs—has had 75 IPR petitions instituted and succeeded in invalidating patents 87% of the time.  That tracks the overall statistics:  According to one report, 84% of patents that have been fully reviewed by the PTAB have been found to be invalid.[4]  And so in the words of one commentator, IPR has marked "a significant improvement over district court litigation and previous [Patent Office] procedures" and has "clearly demonstrate[d] its success thus far as a means to increase patent quality."[5]

---

[3] David Ruschke & William V. Saindon, *Chat with the Chief: An Analysis of Multiple Petitions in AIA Trials*, USPTO (Oct. 24, 2017), https://tinyurl.com/y7h9gzzb (reporting that "85% of IPRs in Fiscal Year 2017 have a co-pending district court case").

[4] Josh Malone, *Assessing PTAB Invalidity Rates*, U.S. Inventor (Oct. 22, 2020), https://tinyurl.com/q27xe6vn.

[5] *See* Sasha Moss et al., *Inter Partes Review as a Means to Improve Patent Quality*, 46 R Street Shorts 1, 4 (Sept. 2017), https://tinyurl.com/yya2n86u.

But the Patent Office's recently adopted *NHK-Fintiv* rule threatens to upend all that by cutting off access to IPR precisely because petitioners are facing parallel infringement actions. The rule has already taken root: In 2020, the PTAB reported a record increase in discretionary denials (up 60%), with the "vast majority" (62%) attributable to the *NHK-Fintiv* rule and the separate parallel petition rule.[6]

Worse, the PTAB is applying the rule more aggressively than ever. It has been denying institution where, among the related proceedings, there are cases that do not even involve the petitioner. As a recent example from *amicus* Mylan demonstrates, the PTAB denied institution based primarily on litigation involving Mylan's competitor, essentially binding Mylan to a party with whom it is not in privity and over whom it has no control. *See Mylan Labs.*, Paper 17 at 13-14, 16-17, 19 (placing particular emphasis on the fact that competitor's trial was scheduled to begin within 10 days of the September 2020 institution deadline);[7] *Fitbit, Inc. v. Philips N. Am. LLC*, IPR2020-00828, Paper 13 at 10-12, 15-16 (P.T.A.B. Nov. 3, 2020) (similar). And as *amicus* Fitbit explains, the PTAB has extended the *NHK-Fintiv* rule to related investigations in the International Trade Commission (ITC). *See* ECF 81. For instance, the PTAB denied institution in *amicus* Comcast's case even though the overlap in the proceedings was minimal, the ITC's patent validity determinations are not binding on the PTAB or district court, the parallel district court case was stayed pending the ITC proceeding, and the Commission had agreed to review the administrative law judge's preliminary invalidity finding. *See Comcast*, Paper 10.

Congress wanted none of that. As Plaintiffs have persuasively explained, the *NHK-Fintiv* rule contravenes Congress's deliberate decision in the AIA to allow IPR to proceed notwithstanding parallel proceedings. *See* ECF 65 at 10-18 (Pls.' Mot. for Summ. J). It is also arbitrary and capricious under the Administrative Procedure Act (APA). *See id.* at 18-23. This brief bolsters Plaintiffs' arguments on both those points, demonstrating that the *NHK-Fintiv* rule

---

[6] *PTAB Discretionary Denials Up 60%+ in 2020: Fueled Entirely by 314(a) Denials*, Unified Patents (Jan. 5, 2021), https://tinyurl.com/39s3fhjp.

[7] Trial in the competitor's litigation did not actually begin until several weeks later in mid-October 2020, with closing arguments yet to be scheduled in 2021. *See Janssen Pharm., Inc. v. Teva Pharm. USA, Inc.*, No. 18-cv-00734, ECF No. 151 (D.N.J. Oct. 30, 2020); *id.* ECF No. 192 (Jan. 22, 2021).

is undermining Congress's aim of providing a more efficient alternative to litigation to improve the integrity of the patent system and highlighting its unintended and irrational results.[8] In short, Congress deliberately chose to open IPR to defendants in district court actions who timely sought review, but the *NHK-Fintiv* rule effectively locks them out. In doing so, the *NHK-Fintiv* rule raises the costs of challenging poor-quality patents where Congress meant to lower them, encourages gamesmanship and abusive litigation, and ultimately "leav[es] bad patents enforceable"—all in direct contradiction to Congress's "objective[s]" in enacting the AIA. *Thryv*, 140 S. Ct. at 1374.

## ARGUMENT

**I.  The *NHK-Fintiv* Rule Contravenes Congress's Deliberate Decision To Make IPR Available To District Court Defendants Who Timely Seek It.**

Pursuant to the precedential decisions in *NHK Spring Co., Ltd. v. Intri-Plex Techs., Inc.*, IPR2018-00752, Paper 8 (P.T.A.B. Sept. 12, 2018) (*NHK*), and *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020) (*Fintiv*), the Director of the U.S. Patent and Trademark Office, acting through the PTAB, now denies meritorious petitions just because petitioners are defendants in district court infringement actions. (If the petitions were not meritorious, they would be denied instead for lack of "a reasonable likelihood that the petitioner w[ill] prevail." 35 U.S.C. § 314(a).) But Congress knew—and codified its view—that IPR is more important, not less, when there is co-pending litigation. Indeed, IPR was "designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058-WCB, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015); *see supra* 2-3. In other words, Congress created IPR to be a "more efficient," "quick and cost effective alternative[]" to litigation for improving patent quality, House Report at 40, 48, and one that allows the parties to avail themselves of "the expertise of the Patent Office on questions of patentability," 157 Cong. Rec. S1352 (2011) (Sen. Udall); *see also*

---

[8] *Amici* also agree with Plaintiffs that the Director violated the AIA and APA by adopting the *NHK-Fintiv* rule via a precedential designation process instead of notice-and-comment rulemaking, but they focus their attention here on the first two issues.

ECF 65 at 4 (Pls.' Mot. for Summ. J.) (noting that IPR is decided by administrative patent judges with "technical expertise and experience" in high-quality written decisions).[9]

Numerous provisions of the AIA confirm that Congress intended for IPR to remain available to defendants facing parallel infringement actions. *See* ECF 65 at 10-12. Most tellingly, Congress set forth several factors the Director must and may consider when deciding whether to grant institution. *E.g.*, 35 U.S.C. § 314(a) (must consider reasonable likelihood of success on merits); *id.* § 325(d) (may consider that similar arguments were previously presented to the Patent Office). But Congress chose *not* to include the pendency of a parallel infringement action among those factors. *Compare id.* § 315(d) (authorizing the Director to alter or terminate IPR if a related matter is pending before the Patent Office); *id.* § 315(a)(1) (barring institution where the petitioner had previously challenged a patent's validity in a declaratory action). Instead, Congress granted defendants in such actions a year to file an IPR petition. *See id.* § 315(b); House Report at 58 (Congress rejected an amendment that would have "tie[d] the commencement of an inter partes proceeding to a claims-construction order following a 'Markman' hearing"). That safe harbor "afford[s] defendants a reasonable opportunity to identify and understand the patent claims that are relevant to the litigation." 157 Cong. Rec. S5429 (2011) (Sen. Kyl).

The *NHK-Fintiv* rule, however, replaces that bright-line rule *permitting* IPR despite parallel infringement actions with a speculative, malleable standard that *blocks* IPR because of parallel infringement actions. As Plaintiffs have explained, that runs contrary to the statute's text, structure, and purpose, and leads to arbitrary results. *See* ECF 65 at 10-23. The Director misses the point in stressing that the statute never requires the Director to institute review. ECF 91 at 6-9 (Def.'s Opp. to Mot. Summ. J.). The question is not whether, at the end of the day, the Director must institute IPR. The question is whether the Director may consider a particular factor—the status of co-pending litigation—when deciding whether to institute a timely and meritorious petition. The AIA answers, "no." Administrative Patent Judge (and PTAB member) Crumbley

---

[9] As an additional measure of IPR's quality, the Federal Circuit affirms PTAB decisions at a higher rate (80%) than district court decisions (73%). Dan Bagatell, *Fed. Cir. Patent Decisions In 2019: An Empirical Review*, Law360 (Jan. 9, 2020), https://tinyurl.com/yk942z86.

was therefore right to call out the *NHK-Fintiv* rule as "contrary to [Congress's] goal of providing district court litigants an alternative venue to resolve questions of patentability." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*, IPR2020-00123, Paper 14 at 11 (P.T.A.B. May 15, 2020) (dissenting); *id.* (The rule "tip[s] the scales against a petitioner merely for being a defendant in the district court," without any "basis … either in the text of the statute or in the intent of Congress in passing it.").

II. **As *Amici*'s Experiences Demonstrate, The *NHK-Fintiv* Rule Undermines Congress's Aims Of Improving The Efficiency And Integrity Of The Patent System.**

The Director accuses Plaintiffs of elevating purpose over plain language in challenging the *NHK-Fintiv* rule. ECF 91 at 11-12. But it is the Director and the PTAB who have done that. They have ignored Congress's judgment, set forth in the statute, that IPR be available to district court defendants who timely petition, based on their own view that the *NHK-Fintiv* rule advances the "efficiency and integrity of the system." *Fintiv*, Paper 11 at 6. In fact, the *NHK-Fintiv* rule does just the opposite, in contravention of Congress's goal of providing an efficient way to root out bad patents and improve the integrity of the patent system as a whole. *See* ECF 91 at 16-17 (acknowledging improving efficiency, fairness, integrity, and patent quality as Congress's goals in creating IPR). Because the rule "frustrate[s] the policy Congress sought to implement" and marks such a "clear error of judgment," it also cannot withstand review under the APA. *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).[10]

A. **The *NHK-Fintiv* rule undermines the efficiency of the patent system.**

To start, the *NHK-Fintiv* does not enhance "the efficiency … of the system," as the

---

[10] The Director says the Court must ignore "policy arguments" as to why the *NHK-Fintiv* rule is arbitrary and capricious under the APA because this material "was not before the Director when he adopted the *Fintiv* factors." ECF 91 at 12-13. But the reason these arguments weren't before the Director was because the rule was adopted via the non-public precedential designation process. Had the Director instead proceeded via notice-and-comment rulemaking, as required, the rule's obvious flaws would have been fully aired in advance. The Director cannot use one unlawful act—eschewing his procedural obligations—to excuse another—adopting a substantively invalid and arbitrary rule.

Director claims. *Fintiv*, Paper 11 at 6. Congress already decided that opening doors to IPR, not closing them, improves system efficiency. *Supra* § I. The Director is powerless to second-guess Congress's judgment. *See SAS Institute*, 138 S. Ct. at 1358 ("It is Congress's job to enact policy and it is this Court's job to follow the policy Congress has prescribed.").

In any event, Congress was right: IPR *is* a more efficient means of getting rid of bad patents. *See supra* 3 (invalidity statistics). As a quicker and cheaper way to resolve patent validity disputes, IPR "limit[s] unnecessary and counterproductive litigation costs." House Report at 40. Unlike litigation, which typically takes over two years to complete, the PTAB must render its decision within 12 months of institution.[11] That speed is a function of IPR's streamlined procedures, which (among other things) limit the grounds of invalidity and the extent of discovery. *See* 35 U.S.C. §§ 311(b), 316(a)(5); 37 C.F.R. § 42.51.

The quicker and simpler IPR is, unsurprisingly, also less expensive than litigation: For instance, the median cost of an IPR in the electrical or computer sector is $450,000, compared to the $4.5 million it takes to resolve a comparable case in litigation.[12] All told, IPR saved petitioners and patent owners approximately $2.31 billion in deadweight loss during its first five years.[13] These cost-savings are especially critical to smaller, less-established players who rely on IPR to fight off meritless, though expensive, infringement suits.

The notion that the *NHK-Fintiv* rule nevertheless improves efficiency is based on the flawed assumption that district courts, because they have scheduled early trial dates, will resolve parallel validity disputes more quickly than the PTAB will. *Fintiv*, Paper 11 at 9. But in fact, trial dates are frequently postponed. *See* ECF 65 at 19-20. The PTAB ignores reality when it refuses to acknowledge this fact—going so far as saying that "circumstances," including the COVID-19 crisis and a trial judge's history of delaying trials because of it, "do not give rise to any uncertainty regarding the district court's schedule." *Verizon*, Paper 14 at 11. Even under

---

[11] Moss, *supra* note 5; *see* 35 U.S.C. §§ 314(b), 316(a)(11) (agency must make institution decision within three months and reach final written decision within one year of institution).

[12] Am. Intell. Prop. Law Ass'n, 2019 Report of the Economic Survey 51-52, https://tinyurl.com/2p57g7c9 (last visited Feb. 4, 2021).

[13] Josh Landau, *Inter Partes Review: Five Years, Over $2 Billion Saved*, Patent Progress (Sept. 14, 2017), https://tinyurl.com/y64yrjhq.

normal circumstances, postponements are common: The trial date in *NHK* itself was pushed back by six months.[14]  That the foundational case has this feature belies the Director's claim that Plaintiffs are "[c]herry-pick[ing]" "[a]typical" "applications" of the rule to highlight its flaws. ECF 91 at 15-16.  When the PTAB denies institution under the *NHK-Fintiv* role, only for the trial date to be pushed near or past the deadline for a final written decision, any supposed efficiency gains from denying IPR disappear.  The *NHK-Fintiv* rule therefore rests on just the sort of "ungrounded speculation" the Director acknowledges is impermissible.  *Id.* at 14.

If there is a risk of "inefficiency and duplication of efforts," *Verizon*, Paper 14 at 8, the appropriate response is not to shut off access to IPR altogether but to stay district court proceedings upon IPR institution.  That is what Congress expected would happen.  *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 3943058, at *3-4 (D. Del. Aug. 21, 2019) ("Congress intended for district courts to be liberal in granting stays.").  And it is what usually happens.[15]  When the district court stays litigation pending an instituted IPR, the parties can avail themselves of the quicker and cheaper administrative process to narrow the issues for the district court or even obviate the need for litigation altogether, just as Congress intended.

**B.     The *NHK-Fintiv* rule undermines the integrity of the patent system.**

The *NHK-Fintiv* rule further frustrates Congress's goal of improving the integrity of the patent system.  It encourages gamesmanship and nuisance suits, and ultimately leaves bad patents in place.

The most obvious problem with the *NHK-Fintiv* rule is that it exacerbates the serious problem of forum shopping.  Because the rule makes institution less likely the sooner a trial date is scheduled, it creates a powerful incentive for plaintiffs (who will generally wish to avoid IPR) to seek out the fora with the speediest dockets.  Indeed, the data reveals that patent infringement

---

[14] *Compare NHK*, Paper 8 at 20 (stating that trial date was set to begin on March 25, 2019), *with Intri-Plex Techs. v. NHK Int'l Corp.*, 3:17-cv-01097, ECF 175 (N.D. Cal. Feb. 22, 2019) (moving the start of trial to September 9, 2019).

[15] *See 2019 Year In Review*, Docket Navigator 22, https://tinyurl.com/y6rmnldw (71% of stay requests granted in full).

plaintiffs—especially PAEs that make their money off litigation—are doing exactly that. The Waco Division of the Western District of Texas, for instance, which is known for moving its cases along quickly, has seen a 2728% increase in patent cases in the last two years,[16] and was host to 31.8% of all litigation brought by PAEs in 2020.[17] The Eastern District of Texas, another "rocket docket," has also seen a disproportionately high share of patent cases.[18] (The ITC likewise hears cases on an expedited schedule.[19]) And, because of the *NHK-Fintiv* rule, that forum shopping is being rewarded, in the form of IPR denials: An industry association recently calculated that the Western and Eastern Districts of Texas account for nearly 80% of denials under the *NHK-Fintiv* rule.[20] *See also, e.g.*, *Samsung Elecs. Am., Inc. v. Uniloc 2017 LLC*, IPR2019-01218, Paper 7 (P.T.A.B. Jan. 7, 2020) (denying IPR where trial in E.D. Tex. was set for 19 months after the complaint was filed).

So long as the *NHK-Fintiv* rule remains in place, that trend will continue to accelerate. Indeed, as a recent example from *amicus* Verizon illustrates, the *NHK-Fintiv* rule makes it possible for a plaintiff's choice of forum to forestall IPR altogether. In that case, Huawei chose to file an infringement suit in a jurisdiction with such a quick trial schedule that even if Verizon petitioned for IPR the day it was served, the Patent Office would still be unable to complete the IPR before the scheduled trial date. *Verizon*, Paper 14 at 16. The PTAB has acknowledged this problem, but still stubbornly stays the course. *See id*.

These tactics—the natural and predictable result of the incentives created by the *NHK-*

---

[16] This is based on statistics from Docket Navigator showing that 28 cases were filed in 2018 compared to 792 in 2020.

[17] *Litigation Analytics*, Unified Patents, https://tinyurl.com/yygdo67y (last visited Feb. 4, 2021); *2020 Patent Dispute Report: Year in Review*, Unified Patents (Jan. 1, 2021), https://tinyurl.com/y5yd33xb (83% of patent cases in the Western District of Texas were brought by PAEs).

[18] *Litigation Analytics*, *supra* (showing the district is the third most popular venue for PAEs); *see also* Jonas Anderson & Paul R. Gugliuzza, *Federal Judge Seeks Patent Cases*, Temple University Beasley School of Law Legal Studies Research Paper No. 2020-25 at 18-23 (Sept. 18, 2020), https://tinyurl.com/y2tqbb8d.

[19] ITC, *Section 337 Statistics: Average Length of Investigations*, https://tinyurl.com/m23usct0 (last visited Feb. 4, 2021).

[20] HTIA, *Comments of The High Tech Investors Alliance in Response to Request for Comments* 5, USPTO (Dec. 6, 2020), https://tinyurl.com/yx8tn7lc.

*Fintiv* rule—feed the "perception that justice in patent cases can be 'gamed,'" an outcome that "does not serve the interest of justice, or the patent system as a whole." S. Rep. No. 110-259, at 53 (2008) (Sen. Specter). And there is no good way to counteract that gamesmanship. Well-resourced defendants could try to forgo the statutorily guaranteed one-year petitioning period and seek IPR as soon as they are served with infringement complaints, "hazard[ing] a guess as to the claims that will be asserted by the Patent Owner." *Cisco*, Paper 14 at 12 (Crumbley, APJ., dissenting). (Less-established players may not have the knowledge or means to take this tack.) But, as demonstrated above, that's far from a guarantee of success. And filing IPR petitions that are all but assured to be denied comes with significant cost: Petitioners would be giving their opponents a sneak-peak at their legal strategy for the infringement suit and getting nothing in return. For that reason, some *amici* have held back on petitioning for IPR at all while the *NHK-Fintiv* rule reigns.

But even where pushing forward with a rushed petition isn't wholly futile, the costs to petitioners and the PTAB of that strategy are substantial. Petitioners who haven't had sufficient time to vet their cases may file shotgun-style petitions instead of carefully crafted rifle shots with their best arguments in their best form. And the PTAB will have to devote additional resources to resolving these bloated, premature petitions. The time crunch could also cause petitioners with strong claims of invalidity to end up with weak petitions, subject to denial on the merits under 35 U.S.C. § 314(a).

The problems with the *NHK-Fintiv* rule do not stop with forum shopping, as *amici*'s experience reveals. Even after a forum is selected, the *NHK-Fintiv* rule will induce plaintiffs to try to accelerate the trial schedule to preempt IPR, only to pump the brakes once they succeed. Petitioners might try to forestall the *NHK-Fintiv* rule by dropping from the litigation any issues that overlap with the IPR. *See Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 at 18-19 (P.T.A.B. Dec. 1, 2020) (designated precedential Dec. 17, 2020). But that deprives them of the opportunity, afforded by Congress, to dispute validity in both fora. And as *amici* can attest, like the other maneuvers designed to get around the *NHK-Fintiv* rule, this one may not work, either. *See, e.g.*, *Verizon*, Paper 14 at 14-15, 17-18 (denying institution notwithstanding

stipulation to drop main overlapping issues); *Philip Morris Prods. v. RAI Strategic Holdings*, IPR2020-00921, Paper 9 at 19, 28-29 (P.T.A.B. Nov. 16, 2020) (similar). Petitioners' other efforts to avert the *NHK-Fintiv* rule have been foiled by gameplaying by the other side. For instance, when petitioners try to reduce the overlap between the proceedings by challenging in IPR claims that are not at issue in the co-pending litigation, patent owners have responded by voluntarily cancelling those claims, thereby increasing the overlap.

The rise of *NHK-Fintiv* discretionary denials undermines the integrity of the patent system in still another fundamental way: As the *NHK-Fintiv* rule lowers the likelihood of obtaining IPR, it increases the value of nuisance suits. Some *amici* companies, as leading high-tech innovators, frequently face frivolous infringement complaints. Indeed, 87.6% of recent patent disputes involving high tech were filed by PAEs.[21] IPR has proved an invaluable tool to invalidate the poor-quality patents often behind these suits. With the availability of IPR in doubt, companies will be forced to redirect resources to fighting or, more realistically, settling these nuisance suits. Settling may be the right business move, but it leaves questionable patents still standing, ready to be reasserted over and over again. The risk is real, for fewer than 10% of patent infringement suits are litigated to final judgment.[22] Smaller or newer entrants to the market are especially vulnerable to the extortive efforts of PAEs, as they lack the resources to battle to the bitter end of litigation.

By rewarding and retrenching the abusive tactics of PAEs and blunting the best tool for invalidating dubious patents, the *NHK-Fintiv* rule ultimately undermines the most basic aim of IPR: to "improve patent quality." House Report at 40. Congress was driven to create IPR because it knew that "overpatenting" results in the "diminishment of competition." *Thryv*, 140 S. Ct. at 1374. The *NHK-Fintiv* rule takes away a vital check on that overpatenting and the abusive litigation it prompts. This is of particular concern to the *amici* companies, which hold vast patent portfolios, but it is a problem for everyone: Poor-quality patents and litigation abuse diminish

---

[21] *Q3 2020 Patent Dispute Report*, Unified Patents (Sept. 30, 2020), https://tinyurl.com/y4e2nqo7.

[22] *A Guide to Patent Litigation in Federal Court*, Fish & Richardson (2019), https://tinyurl.com/y658goqf.

investor confidence in patent rights, crowd out real innovation, and ultimately threaten the United States' "competitive edge in the global economy." House Report at 40.  And it does all that without any countervailing benefit, proving to be fundamentally arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, and those in Plaintiffs' briefs, the Court should grant Plaintiffs' motion for summary judgment, declare the *NHK-Fintiv* rule to be unlawful, and set it aside.

DATED: February 4, 2021

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ *Thomas King-Sun Fu*

THOMAS KING-SUN FU (SBN 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 S. Figueroa Street
Los Angeles, CA 90017
Telephone:    213 629 2020
Facsimile:    213 612 2499

MARK S. DAVIES (*pro hac vice* pending)
mark.davies@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
Telephone:    202 339 8475
Facsimile:    202 339 8500

RACHEL G. SHALEV (*pro hac vice* pending)
rshalev@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Telephone:    212 506 5033
Facsimile:    212 506 5151

Attorneys for *Amici Curiae* Verizon, T-Mobile, Comcast, Twitter, Alliance for Automotive Innovation and 12 Other Leading Innovators and Organizations