1
2
3
4
5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7

SAN JOSE DIVISION

8

9  | APPLE INC., et al.,

Case No.   5:20-cv-06128-EJD

10  |                          Plaintiffs,

**ORDER GRANTING MOTION TO
DISMISS; TERMINATING MOTION
FOR SUMMARY JUDGMENT**

11  |          v.

12  | ANDREI IANCU,

Re: Dkt. Nos. 64, 65

13  |                          Defendant.

14          Under the Leahy-Smith America Invents Act ("AIA"), 35 U.S.C. § 100 *et seq.*, a party may

15  ask the U.S. Patent and Trademark Office ("the PTO") to review and potentially cancel claims in

16  an already-issued patent that the PTO finds to be unpatentable in light of prior art.  *See* 35 U.S.C.

17  §§ 102, 103.  This process, called "inter partes review" ("IPR"), is widely used to determine the

18  patentability of patent claims that are the subject of pending patent infringement litigation.

19  Plaintiffs challenge two PTO decisions that establish non-exclusive factors to aid in the PTO's

20  determination of whether to institute IPR and argue that these decisions violate the Administrative

21  Procedure Act ("APA") because they are arbitrary, capricious, and unlawful under the AIA.

22  Defendant contends that the Court cannot reach Plaintiffs' challenge, both because Plaintiffs lack

23  standing and because the issue is not justiciable.  The Court must agree with Defendant—while

24  Plaintiffs have standing to pursue their claims, the Court is bound by *Cuozzo Speed Technlogies,*

25  *LLC v. Lee*, 579 U.S. 261 (2016) and *Thryv, Inc. v. Click-To-Call Tehcnologies*, 140 S. Ct. 1367

26  (2020), which require  the Court to dismiss this action for lack of jurisdiction.

27

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# I.      BACKGROUND

## A.  The Inter Partes Review Process

The Constitution grants Congress the power "[t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." U.S. Const. art. I, § 8, cl. 8. Pursuant to this power, Congress created a patent system that grants inventors rights over the manufacture, sale, and use of their inventions. *See* 35 U.S.C. § 100 *et seq.* Inventors can secure a patent by filing an application with the PTO that includes "claims" that describe the invention. A patent examiner then reviews the patent claims, considers the prior art, and determines whether each claim meets the applicable patent law requirements. *See id.* §§ 101, 102, 103, 112. The examiner then accepts the claim or rejects it and explains why. *See id.* § 132(a).

"Sometimes, though, bad patents slip through." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018). To remedy this problem, Congress allows parties to challenge the validity of patent claims in federal court. *See* 35 U.S.C. § 282(b)(2)–(3). Congress also has created an administrative process that allows a patent challenger to ask the PTO to reconsider the validity of an earlier granted patent claim. Specifically, in 2011, Congress enacted the AIA, which modified the "inter partes reexamination" system in favor of "inter partes review." *See* H.R. Rep. No. 112–98, pt. 1, pp. 46–47 (2011) (H.R. Rep.), codified at 35 U.S.C. §§ 311–19.

The IPR regime functions like civil litigation. A party must first file "a petition to institute an inter partes review of [a] patent. 35 U.S.C. § 311(a). The petition "may request to cancel as unpatentable 1 or more claims of [the] patent" on the ground that the claims are obvious or not novel. *Id.* § 311(b). The petition must identify "each claim challenged," the grounds for the challenge, and the evidence supporting the challenge. *Id.* § 312(a)(3). After a petition is filed, the patent owner may respond with "a preliminary response to the petition" to explain "why no inter partes review should be instituted." *Id.* § 313. With the parties' submissions, the Director of the PTO ("the Director") then decides "whether to institute an inter partes review . . . pursuant to [the]

1    petition." *Id.* § 314(b).  Before instituting review, the Director must determine "that there is a

2    reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims

3    challenged in the petition."  35 U.S.C. § 314(a).

4         The Director has delegated this authority to the Patent Trial and Appeal Board ("the

5    PTAB") to exercise on his behalf.  37 C.F.R. § 42.4(a) (2017).  The PTAB-patent judges are

6    appointed by the Secretary of Commerce and must be "persons of competent legal knowledge and

7    scientific ability."  35 U.S.C. § 6(a), (c).  Once the Director institutes IPR, the case proceeds

8    before the PTAB "with many of the usual trappings of litigation."  *SAS Inst.*, 138 S. Ct. at 1354.

9    For example, the parties conduct discovery, issue briefing, and appear before the PTAB for an oral

10   hearing.  35 U.S.C. § 316(a)(5), (6), (8), (10), (13).  The parties also may settle the action and end

11   IPR.  *Id.* § 317.  If, however, IPR is instituted and the action is not settled, the PTAB must "issue a

12   final written decision with respect to the patentability of any patent claim challenged by the

13   petitioner."  *Id.* § 318(a).

14        35 U.S.C. §§ 315 and 316(a)(11) establish time limits for the institution and completion of

15   IPR.  For instance, IPR may not be instituted if the "petition requesting the proceeding is filed

16   more than 1 year after the date on which the petitioner, real party in interest, or privy of the

17   petitioner is served with a complaint alleging infringement of the patent."  35 U.S.C. § 315(b).  As

18   a result, the "life-span" of an IPR from the filing of a petition to a final written decision is

19   typically only 18 months.  *See* 35 U.S.C. § 316(a)(11); C.F.R. § 42.107(b); Amended Complaint

20   for Declaratory and Injunctive Relief ("Compl."), Dkt. No. 54.

21        Finally, while the AIA authorizes judicial review of a "final written decision" canceling a

22   patent claim, it does not allow for review of the Director's initial decision whether to institute IPR.

23   *Compare* 35 U.S.C. § 319 (allowing a party dissatisfied with the PTAB's final written decision to

24   appeal the decision), *with id.* § 314(d) ("The determination by the Director whether to institute

25   inter partes review under this section shall be final and appealable.").

26

27

28

United States District Court
Northern District of California

1

**B. The *NHK/Fintiv* Decisions**

2        By default, the PTAB's decisions in IPR proceedings have no precedential force in future

3 cases.  Patent Trial and Appeal Board, Standard Operating Procedure 2 (Rev. 10) ("SOP-2"), at 3,

4 8–9 (Sept. 20, 2018).  However, the PTO has established a procedure for designating select PTAB

5 decisions as "precedential."  SOP-2 at 1–2, 8–12.  Specifically, the Director decides whether to

6 designate a Board decision as precedential.  SOP-2 at 11.  This procedure does not allow for

7 public notice of or public comment on the PTAB's decision to designate an IPR decision as

8 precedential.  SOP-2 at 8–11.  Decisions designated as precedential are "binding" on the PTAB

9 "in subsequent matters involving similar factors or issues."  SOP-2 at 11.

10        Two recent, precedential PTAB decisions are at issue: *NHK Spring Co., Ltd. v. Intri-Plex*

11 *Techs., Inc.*, No. IPR2018-00752, 2018 WL 4373643 (P.T.A.B. Sept. 12, 2018) ("*NHK*") and

12 *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B Mar. 20, 2020)

13 ("*Fintiv*").

14        In *NHK*, the PTAB exercised its discretion under both 35 U.S.C. §§ 314(a) and 325(d)(6)

15 to deny institution of IPR, in part due to a parallel district court trial that was scheduled six months

16 away.  After Intri-Plex Technologies, Inc. sued NHK International and its parent company, NHK

17 Spring, for infringement of U.S. Patent No. 6,183,841 in the Northern District of California, NHK

18 Spring petitioned for IPR.  *Intri-Plex Techs., Inc. v. NHK Int'l Corp*., No. 3-17-cv-1097 (N.D. Cal.

19 2017).  The PTAB denied institution because of the parallel district court proceedings.  .  The

20 PTAB found that "the advance state of the district court proceeding[s] . . . weigh[ed] in favor of

21 denying [IPR] under § 314(a)" because the petitioner asserted the arguments in both its petition for

22 IPR and before the district court proceeding.  *Id.*

23        In *Fintiv*, the PTAB clarified how it would consider parallel litigation when deciding

24 whether to institute IPR.  2020 WL 2126495.  There, Apple sought IPR of patent claims that had

25 been asserted against the company in an infringement suit in federal court.  Apple filed the petition

26 less than ten months after the parallel infringement suit began.  Building on *NHK*, the PTAB

27

28

United States District Court
Northern District of California

stated that in the interests of "system efficiency, fairness, and patent quality," it would "weigh" six factors under 35 U.S.C. § 314(a) when deciding whether to institute IPR.  *Id.* at *3 (hereinafter "the *NHK-Fintiv* rule").  Those factors are:

1. Whether the district court granted a stay or evidence exists that a stay may be granted if IPR proceedings are instituted;

2. The proximity of the court's trial date to the PTAB's projected statutory deadline for a final written decision;

3. The investment by the parties and district court in the parallel proceeding;

4. The overlap between the issues raised in the petition and the parallel proceeding;

5. Whether the IPR petitioner and the defendant in the parallel proceeding are the same party; and

6. Other circumstances that impact the Board's exercise of discretion, including the merits of the challenge to patentability.

### C.  Plaintiffs' Lawsuit

Plaintiffs allege that the PTAB has applied *NHK-Fintiv* rule to unlawfully deny numerous IPR petitions, including petitions filed by Plaintiffs.  Compl. ¶ 54.  Plaintiffs filed this action to challenge the Director's authority to reject petitions for IPR using the *NHK-Fintiv* rule.  Compl. ¶¶ 65–71.  Plaintiffs assert three claims, each arising under the Administrative Procedure Act ("APA").  First, Plaintiffs argue that pursuant to 5 U.S.C. § 706(2)(C), this Court must "hold unlawful and set aside" the Director's use of the *NHK-Fintiv* rule because the Director exceeded his statutory authority in adopting it.  Compl. ¶¶ 82–86 (Count I).  Second, Plaintiffs argue that pursuant to 5 U.S.C. § 706(2)(A), this Court must "hold unlawful and set aside" the *NHK-Fintiv* rule because it is is arbitrary, capricious, and violates the AIA.  Compl. ¶¶ 87–91 (Count II).  Finally, Plaintiffs argue that pursuant to 5 U.S.C. § 706(2)(D), this Court must "hold unlawful and set aside" the *NHK-Fintiv* rule because it is a final, binding rule that was issued without notice and comment.  Compl. ¶¶ 92–95 (Count III).

Case No.: 5:20-cv-06128-EJD
ORDER GRANTING MOTION TO DISMISS; TERMINATING MOTION FOR SUMMARY JUDGMENT

5

1    Defendant has moved to dismiss the Amended Complaint under Federal Rule of Civil

2    Procedure 12(b)(1) on the grounds that Plaintiffs lack standing or, in the alternative, that Plaintiffs

3    claims are not justiciable under the APA.  Plaintiffs have moved for summary judgment.  The

4    Court only reaches Defendant's motion to dismiss.

5    **II.       LEGAL STANDARD**

6    Federal Rule of Civil Procedure 12(b)(1) requires dismissal when the plaintiff fails to meet

7    his or her burden of establishing subject-matter jurisdiction.  *St. Clair v. City of Chico*, 880 F.2d

8    199, 201 (9th Cir. 1989).  Dismissal on this basis is appropriate when a plaintiff fails to establish

9    standing, *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009), *abrogated on other*

10   *grounds by Bonds v. United States*, 564 U.S. 211 (2011), or brings a non-cognizable claim under

11   the APA, *Fairbanks North Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586, 591 (9th

12   Cir. 2008).

13   A defendant may either challenge jurisdiction "facially" by arguing the complaint "on its

14   face" lacks jurisdiction or "factually" by presenting extrinsic evidence that demonstrates the lack

15   of jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v.*

16   *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the

17   allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.

18   By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

19   themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at

20   1039.

21   **III.      DISCUSSION**

22   **A.  Article III Standing**

23   To satisfy Article III's standing requirements, "a plaintiff must show (1) it has suffered an

24   'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

25   hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

26   likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

27

28

United States District Court
Northern District of California

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  As

the party invoking federal jurisdiction, the plaintiff bears the burden of establishing that all three

requirements are met.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "At the pleading

stage, general factual allegations of injury resulting from the defendant's conduct may suffice."

*Id*.  Because Plaintiffs seek prospective relief, they must show that "the threatened injury is

'certainly impending,' or there is a 'substantial risk' that the harm will occur."  *Susan B. Anthony*

*List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

414 n.5 (2013)).

### 1.  Injury-in-Fact

To demonstrate an "injury in fact," a plaintiff must allege that it has sustained "an invasion

of a legal protected interest" that is "concrete and particularized" and "actual or imminent."

*Lujan*, 504 U.S. at 560 (citations omitted).  When, as in this case, a suit challenges the legality of

government action or inaction, the nature and extent of facts that must be averred at the pleading

stage to establish standing depends upon whether the plaintiff is "himself an object of the action

(or foregone action) at issue."  *Id.* at 561.  If he is, "there is ordinarily little question that the action

or inaction has caused him injury, and that a judgment preventing or requiring the action will

redress it."  *Id.* 561–62.

Defendant argues that Plaintiffs cannot establish an injury-in-fact because under the AIA

they have no protected right to IPR.  *See* Motion to Dismiss Plaintiffs' Complaint ("MTD") at 9,

Dkt. No. 64.  In the Defendant's view, because the Director possesses unreviewable discretion

over the initiation decision, Plaintiffs cannot allege that they are harmed by the *NHK-Fintiv* rule.

But Plaintiffs do not argue that they are harmed by the *denial* of IPR.  Instead, Plaintiffs identify

harms that result from the Director's allegedly unlawful use of the *NHK-Fintiv* rule.  Specifically,

Plaintiffs allege that (1) because the AIA prescribes the factors that the Director can consider

during the initiation decision process and allows for IPR during parallel litigation, the *NHK-Fintiv*

rule violates the APA as it requires the PTAB to consider factors outside the considerations

Case No.: 5:20-cv-06128-EJD
ORDER GRANTING MOTION TO DISMISS; TERMINATING MOTION FOR SUMMARY
JUDGMENT

7

1    prescribed in the AIA; (2) the use of the *NHK-Fintiv* rule imposes an unlawful obstacle to IPR

2    because it increases the risk that an IPR petition (including ones submitted by Plaintiffs) will be

3    denied; (3) which deprives Plaintiffs of the benefits of IPR.  *See* Compl. ¶¶ 80–95.  Thus, contrary

4    to Defendant's position, Plaintiffs' alleged injury is not that they were denied IPR, but that the

5    Director is using unlawful considerations that increase the risk of denial, thereby depriving them

6    of the *benefits* of IPR.  *See* Compl. ¶¶ 31–32, 54–61 (naming benefits of IPR).

7          Plaintiffs have established that the *NHK-Fintiv* rule have harmed or present a "substantial

8    risk" of harming them.  This is a sufficient injury-in-fact.  *See Susan B. Anthony*, 573 U.S. at 158;

9    *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 665 (9th Cir. 2021) ("An injury-in-

10   fact is 'an invasion of a legally protected interest,' but this means an interest that is only concrete

11   and particularized and actual or imminent—*not* an interest protected by statute.  This distinction

12   prevents Article III standing requirements from collapsing into the merits of a plaintiff's

13   claim . . . .").  Indeed, as courts have previously found, the denial of an opportunity to obtain a

14   benefit is itself an injury-in-fact.  *See, e.g.*, *Abboud v. I.N.S.*, 140 F.3d 843, 847 (9th Cir. 1998)

15   (holding that a "lost opportunity represents a concrete injury"), *superseded by statute as stated in*

16   *Hsiao v. Scalia*, 821 F. App'x 680, 683–84 (9th Cir. 2020); *Settles v .U.S. Parole Comm'n*, 429

17   F.3d 1098, 1101–03 (D.C. Cir. 2005) (holding that the plaintiff had standing to challenge a

18   regulation that made it more difficult for him to gain the benefit of parole); *Robertson v. Allied*

19   *Sols., LLC*, 902 F.3d 690, 697 (7th Cir. 2018) ("Article III's strictures are met not only when a

20   plaintiff complains of being deprived of some benefit, but also when a plaintiff complains that she

21   was deprived of a chance to obtain a benefit.").

22                    **2.   Causation**

23          There must be a causal connection between the injury and the conduct complained of—

24   "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and

25   not . . . th[e] result [of] the independent action of some third party not before the court."  *Lujan*,

26   504 U.S. at 560 (alterations in original) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S.

1   26, 41–42 (1976)).

2   Plaintiffs have met the causation requirement.  Their Amended Complaint demonstrates

3   that the *NHK-Fintiv* rule (the conduct complained of) diminishes their opportunity to experience

4   the benefits of IPR (the injury asserted).  Compl. ¶¶ 52–62.

5   **3.  Redressability**

6   It must be "likely," as opposed to merely "speculative," that the injury will be "redressed

7   by a favorable decision."  *Lujan*, 504 U.S. at 561.  Plaintiffs ask the Court to enjoin the Director

8   from applying the *NHK-Fintiv* rule.  *See* Compl. at 20.  If Plaintiffs prevail, this Court could

9   enjoin the use of the *NHK-Fintiv* rule, which would redress the Plaintiffs' injuries.  *See Nat'l*

10  *Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995).  Plaintiffs have thus established

11  redressability and have met their obligation to establish standing.

12  **B.  Justiciability**

13  Before reaching the question of whether the use of the *NHK-Fintiv* rule violates the APA,

14  this Court must first ensure that this issue is reviewable considering the Supreme Court's analysis

15  of 35 U.S.C. § 314(d) in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016).  Under

16  35 U.S.C. 314(d), "[t]he determination by the Director whether to institute an inter partes review

17  under this section shall be final and nonappealable."

18  In *Cuozzo*, the Supreme Court analyzed this "no appeal" provision in the context of a

19  challenge to the Director's decision to institute IPR of two claims.  136 S. Ct. at 2138.  There, the

20  Director agreed to reexamine three claims, even though the petition for IPR only expressly

21  challenged one of the claims.  *Id.*  As in this case, Cuozzo argued that the Directors acted outside

22  his legal authority and violated the APA by instituting IPR with respect to the two unchallenged

23  claims because 35 U.S.C. § 312(a)(3) requires the petition for IPR to identify "in writing and with

24  particularity, each claim challenged."  In finding the Director's institution decision unreviewable,

25  the Court determined that § 314(d) applies where the grounds for challenging the Director's

26  institution decision "consist of questions that are closely tied to the application and interpretation

27

28  Case No.: 5:20-cv-06128-EJD
    ORDER GRANTING MOTION TO DISMISS; TERMINATING MOTION FOR SUMMARY
    JUDGMENT

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1  of statutes related to [the Director's] decision to initiate inter partes review." *Cuozzo*, 136 S. Ct. at

2  2141.  However, the Court emphasized that its holding did not decide "the precise effect of

3  § 314(d) on appeals that implicate constitutional questions, that depend on other less closely

4  related statutes, or that present other questions of interpretation that reach, in terms of scope and

5  impact, well beyond [§ 314(d)]." *Id.*  The Court explained that institution decisions that implicate

6  due process concerns or jurisdictional violations are not "categorically precluded" from judicial

7  review under § 314(d).  *Id.* at 2141–42.

8       More recently, in *Thryv, Inc. v. Click-to-Call Technologies, LP*, 140 S. Ct. 1367, 1373

9  (2020), the Supreme Court held that the Director's application of 35 U.S.C. § 315(b)'s time bar is

10  "final and nonappealable" under 35 U.S.C. § 314(d).  Relying on *Cuozzo*, the Court determined

11  that the Director's application of the time bar is "closely related to its decision whether to institute

12  inter partes review and is therefore rendered nonappealable by § 314(d)." *Thryv*, 140 S. Ct. at

13  1370.  The Court explained that § 315(b)'s "time limitation is integral to, indeed a condition on,

14  institution" and concluded that "[a] challenge to a petition's timeliness under § 315(b) thus raises

15  an 'ordinary dispute about the application of' an institution-related statute." *Id.* at 1373 (quoting

16  *Cuozzo*, 136 S. Ct. at 2139).

17       Much like *Thryv*, the *NHK-Fintiv* rule establishes factors that are "closely related to [the

18  Director's decision] whether to institute inter partes review." *Thryv*, 140 S. Ct. at 1370.

19  Plaintiffs' challenge does not fit within the categories of non-precluded review.  *See Cuozzo*, S. Ct.

20  at 2141–42 (stating that constitutional challenges or jurisdictional violations are not "categorically

21  precluded").  Thus, in view of *Cuozzo* and *Thryv*, this Court cannot deduce a principled reason

22  why preclusion of judicial review under § 314(d) would not extend to the Director's determination

23  that parallel litigation is a factor in denying IPR.  *See Saint Regis Mohawk Tribe v. Mylan Pharms.*

24  *Inc.*, 896 F.3d 1322, 1327 (Fed. Cir. 2018) ("If the Director decides not to institute [IPR], *for*

25  *whatever reason*, there is no review.") (emphasis added)).  To inquire into the lawfulness of the

26  *NHK-Fintiv* rule, the Court would have to analyze "questions that are closely tied to the

27

28  Case No.: 5:20-cv-06128-EJD
    ORDER GRANTING MOTION TO DISMISS; TERMINATING MOTION FOR SUMMARY
    JUDGMENT

application and interpretation of statutes related to the [Director's] decision to initiate inter partes review." *Cuozzo*, 136 S. Ct. at 2141–42. *Cuozzo* forbids this and so the Court must conclude that Plaintiffs' challenge to the *NHK-Fintiv* rule is barred by § 314(d).

## IV. CONCLUSION

The Court **GRANTS** Defendant's motion to dismiss for lack of subject-matter jurisdiction. The Court **TERMINATES** Plaintiffs' motion for summary judgment. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 10, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-06128-EJD
ORDER GRANTING MOTION TO DISMISS; TERMINATING MOTION FOR SUMMARY JUDGMENT

11