1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8   APPLE INC., CISCO SYSTEMS, INC.,
    GOOGLE LLC, INTEL CORPORATION,
9   EDWARDS LIFESCIENCES
    CORPORATION, and EDWARDS
10  LIFESCIENCES LLC,

11              Plaintiffs,

12          v.

13  KATHERINE K. VIDAL, in her official
    capacity as Under Secretary of Commerce
14  for Intellectual Property and Director,
    United States Patent and Trademark Office,
15
                Defendant.
16

Case No.   20-cv-06128-EJD

**ORDER DENYING PLAINTIFFS'
RENEWED MOTION FOR SUMMARY
JUDGMENT; GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Re: ECF Nos. 153, 157

17          Plaintiffs Apple Inc., Cisco Systems, Inc., Google LLC, Intel Corp., Edwards Lifesciences

18  Corp., and Edwards Lifesciences LLC (together "Plaintiffs") brought this action against the

19  Director of the United States Patent and Trademark Office ("PTO") alleging three violations of the

20  Administrative Procedure Act ( "APA"), 5 U.S.C. § 701 *et seq.*, based on the Director's adoption

21  of a rule (the "*NHK-Fintiv* rule" or "*NHK-Fintiv* standard") concerning the PTO's consideration of

22  petitions to institute *inter partes* review ("IPR").  *See* Am. Compl., ECF No. 54.  Following the

23  Court's dismissal of the Amended Complaint for lack of jurisdiction as to all three APA claims,

24  the Federal Circuit affirmed as to two claims and reversed and remanded as to the third.  Now

25  pending before the Court are cross-motions for summary judgment on the remaining claim, which

26  challenges the *NHK-Fintiv* standard on the ground that it should have been—but was not—

27  implemented through notice-and-comment rulemaking.  *See* Pls.' Renewed Mot. Summ. J. ("Pls.'

28  Case No.: 20-cv-06128-EJD
    ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.

United States District Court
Northern District of California

1    MSJ"), ECF No. 153; Def.'s Mot. Summ. J. & Opp'n to Pl.'s MSJ ("Def.'s Opp'n/MSJ"), ECF

2    No. 157.

3        Based on the parties' written and oral arguments, the Court finds that the *NHK-Fintiv*

4    standard was not a substantive rule requiring notice-and-comment rulemaking.

5    **I.    BACKGROUND**

6        The Court has previously set forth the background for the IPR process, as well as the

7    decisions that gave rise to the *NHK-Fintiv* standard, in its order granting the Director's motion to

8    dismiss the Amended Complaint.  *See* Order Granting Mot. Dismiss ("MTD Order"), ECF No.

9    133.  Accordingly, the Court here summarizes only the relevant facts for the remaining claim

10   regarding the *NHK-Fintiv* standard's procedural soundness under the APA.

11       **A.    PTO Organization and Actions**

12       The powers and duties of the PTO are vested in an individual given the title "Under

13   Secretary of Commerce for Intellectual Property and Director of the United States Patent and

14   Trademark Office" (the "Director").  *See* 35 U.S.C. § 3(a)(1).  One of the PTO's organizational

15   offices is the Patent Trial and Appeal Board ("PTAB" or the "Board").  *See* 35 U.S.C. § 6(a).  The

16   Board's membership consists of "[t]he Director, the Deputy Director, the Commissioner for

17   Patents, the Commissioner for Trademarks, and the administrative patent judges."  *Id.*

18       The Board's duties include conducting IPRs, which are heard by at least three members of

19   the Board.  *See* 35 U.S.C. § 6(c).

20       **1.    Standard Operating Procedure 2 ("SOP-2")**

21       By default, decisions issued by the Patent Trial and Appeal Board ("PTAB" or the

22   "Board") in IPR proceedings are "routine" decisions that do not carry any binding authority.

23   Patent Trial and Appeal Board, Standard Operating Procedure 2 (Rev. 11) ("SOP-2"), at 2 (July

24   24, 2023), https://www.uspto.gov/sites/default/files/documents/20230724_ptab_sop2_rev11_.pdf.[1]

25   _____

26   [1] Although the Court here cites to SOP-2, Revision 11, it notes that Revision 10 was the operative
     version of the document when the Director designated the *NHK* and *Fintiv* decisions as
27   precedential.  *See* Def.'s Opp'n/MSJ 3–4 n.2.  Revision 11 made no substantive change to the
     aspects of the precedential designation process relevant to this case.  *See id.*

28   Case No.: 20-cv-06128-EJD
     ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.

United States District Court
Northern District of California

However, the Director possesses the discretion to designate any decision or part of a decision as "precedential" or "informative."  SOP-2, at 6 n.5; *see also United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1980 (2021) ("The Director also promulgates regulations governing inter partes review . . . and designates past PTAB decisions as 'precedential' for future panels.").  "A precedential decision is binding Board authority in subsequent matters involving similar facts or issues."  SOP-2, at 7.  By contrast, the Director may also designate certain decisions as "informative," meaning that they "set forth Board norms that should be followed in most cases, absent justification, although an informative decision is not binding authority on the Board."  *Id.*

### 2.  The *NHK-Fintiv* Standard

At issue in this case are two Board decisions that discretionarily denied instituting IPR petitions:  *NHK Spring Co. v. Intri-Plex Technologies, Inc.*, IPR2018-00752, 2018 WL 4373643 (P.T.A.B. Sept. 12, 2018) (designated precedential on May 7, 2019), and *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) (designated precedential on May 5, 2020).  In both cases, the Board evaluated the argument that it should discretionarily deny IPR institution because a pending district court infringement action involving the same patents was set for trial earlier than the anticipated conclusion of IPR proceedings.  *See NHK*, 2018 WL 4373643, at *7 (denying IPR institution due to agreement with patent owner's argument that "the district court proceeding will analyze the same issues and will be resolved before any trial on the Petition concludes") (citation omitted); *Fintiv*, 2020 WL 2126495, at *2 ("When the patent owner raises an argument for discretionary denial under *NHK* due to an earlier trial date, the Board's decisions have balanced the following [six] factors.") (footnote omitted).

The *Fintiv* decision, which expanded on *NHK*, noted that "an early trial date"—as with "other non-dispositive factors considered for [IPR] institution under 35 U.S.C. § 314(a)"—should be "weighed as part of a 'balanced assessment of all relevant circumstances of the case, including the merits.'"  *Fintiv*, 2020 WL 2126475, at *2 (quoting Consolidated Trial Practice Guide November 2019 ("TPG"), available at https://www.uspto.gov/TrialPracticeGuideConsolidated). The *Fintiv* Board noted that prior Board decisions had evaluated patent owners' arguments for

Case No.: 20-cv-06128-EJD
ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.

United States District Court
Northern District of California

discretionary denials under *NHK* based on a "[p]arellel, co-pending proceeding" by evaluating (1) whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted; (2) proximity of the court's trial date to the Board's projected statutory deadline for a final written decision; (3) investment in the parallel proceeding by the court and the parties; (4) overlap between issues raised in the petition and in the parallel proceeding; (5) whether the petitioner and the defendant in the parallel proceeding are the same party; and (6) other circumstances that impact the Board's exercise of discretion, including the merits.  *Id.*

The Board then proceeded to discuss how prior opinions had treated each of these factors—all of which related to the impact of a parallel proceeding, *see id.* at *2–6—before noting that other facts and circumstances separate from the parallel proceedings could impact the Board's decision regarding institution.  *See id.* at *7 ("For example, factors unrelated to parallel proceedings that bear on discretion to deny institution include the filing of serial petitions, parallel petitions challenging the same patent, and considerations implicated by 35 U.S.C. § 325(d)." [nn. 34–36]) (citing *Valve Corp. v. Elec. Scripting Prods., Inc.*, IPR2019-00064, Paper 10 (PTAB May 1, 2019) (precedential); *Valve Corp. v. Elec. Scripting Prods.*, Inc., IPR2018-00752, Paper 8 (PTAB Sept. 12, 2018); *Gen. Plastic Indus. Co. v. Canon Kabushiki Kaisha*, IPR2016-01357, Paper 19 (PTAB Sept. 6, 2017) (precedential as to § II.B.4.i); TPG 59–61; *Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH*, IPR2019-01469, Paper 6 (PTAB Feb. 13, 2020) (discussing two-part framework for applying discretion to deny institution under 35 U.S.C. § 325(d))).  The *Fintiv* Board accordingly concluded by requesting that the parties submit supplemental briefing addressing the various factors discussed by the Board.  *See id.* at *7.

The Director designated *NHK* a precedential decision on May 7, 2019, and likewise designated *Fintiv* as precedential on May 5, 2020.  As such, "[t]he decisions, designated as precedential, constitute instructions from the Director regarding how the Board is to exercise the Director's institution discretion."  *Apple Inc. v. Vidal*, 63 F.4th 1, 8 (Fed. Cir. 2023).

### 3.   June 2022 Interim Procedure for Discretionary Denials

On June 21, 2022, after requesting comments on IPR institution decisions and receiving

Case No.: 20-cv-06128-EJD
ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.
4

United States District Court
Northern District of California

822 comments, the Director issued a memorandum (the "June 2022 Memo") indicating that "several clarifications need[ed] to be made to the PTAB's current application of *Fintiv*."  Mem., Interim Proc. for Discretionary Denials in AIA Post-Grant Proceedings with Parallel Dist. Ct. Litig. ("June 2022 Mem."), at 2 (June 21, 2022).  The June 2022 Memo was issued under the Director's "authority to issue binding agency guidance to govern the PTAB's implementation of various statutory provisions."  *Id.* at 3.

The June 2022 Memo clarified three circumstances where the PTAB will *not* deny institution of an IPR under *Fintiv*: (1) when a petition presents "compelling evidence of unpatentability"; (2) when a request for denial is based on a parallel ITC proceeding instead of a district court proceeding; or (3) where a petitioner stipulates not to pursue in a parallel district court proceeding "the same grounds as in the [IPR] petition or any grounds that could have reasonably been raised in the petition."  June 2022 Mem. 9.  Additionally, when the Board is assessing the second *Fintiv* factor (*i.e.*, comparing the district court's trial date with the Board's projected deadline for a final written IPR decision), the PTAB will consider the district's median time-to-trial.  *Id.*  The June 2022 Memo lastly reiterated that "even if the PTAB does not deny institution under *Fintiv*, it retains the right to deny institution for other reasons under 35 U.S.C. §§ 314(a), 324(a), and 325(d)."  *Id.*

### 4.    Potential for Future Rulemaking

The June 2022 Memo noted that the PTO was "planning to soon explore potential rulemaking on proposed approaches through an Advanced Notice of Proposed Rulemaking," June 2022 Mem. 2, and stated that the office "expect[ed] to replace this interim guidance with rules after it has completed formal rulemaking," *id.* at 9.  On April 21, 2023, the PTO published an Advance Notice of Proposed Rulemaking in the Federal Register.  *See* Changes Under Consideration to Discretionary Institution Practices, Petition Word-Court Limits, and Settlement Practices for America Invents Act Trial Proceedings Before the Patent Trial and Appeal Board ("Apr. 2023 ANPRM"), 88 Fed. Reg. 24,503 (Apr. 21, 2023).  Among various potential changes, the PTO is "proposing rules to install *Apple v. Fintiv* and related guidance, with additional

United States District Court
Northern District of California

proposed reforms," where there is "a pending district court action in which a trial adjudicating the patentability of challenged claims has not already concluded at the time of an IPR institution decision." 88 Fed. Reg. at 24,505.  It is not clear whether the "additional proposed reforms" would substantially reduce the Board's discretion in applying the *Fintiv* factors.  *See id.*

### B.   Procedural History

On August 31, 2020, Apple and three other companies filed this action, challenging the *NHK-Fintiv* standard on three grounds under the APA.  *See* Compl., ECF No. 1.  Plaintiffs filed an amended complaint on November 9, 2020.  *See* FAC.  On November 10, 2021, this Court granted the government's motion to dismiss, finding that Plaintiffs had standing to sue but that their challenges were not reviewable under 35 U.S.C. § 314(d).  *See* MTD Order.  The Federal Circuit affirmed in part, reversed in part with respect to the reviewability of one claim, and remanded the matter to this Court "for consideration of this one challenge on the merits," referring to Plaintiffs' "challenge to the Director's instructions as having improperly been issued without notice-and-comment rulemaking."  *Apple*, 63 F.4th at 18.  The circuit court emphasized the distinction between holding a notice-and-comment rule making claim reviewable under the APA and making a decision on the merits as to whether such rule making was required.  *See id.* at 15 (discussing Supreme Court decision, *Lincoln v. Vigil*, 508 U.S. 182 (1993), Court did not question APA claim's reviewability, but rather "decided, on the merits, that § 553 did not require notice-and-comment rulemaking for the agency decision at issue").  Additionally, in affirming this Court's finding that Plaintiffs had plausibly alleged an injury-in-fact for the purposes of standing, the Federal Circuit noted that Plaintiffs sufficiently alleged that the *NHK-Fintiv* standard would continue causing harm "harm in the form of denial of the benefits of IPRs linked to the concrete interest possessed by an infringement defendant."  *Id.* at 17.

Following remand, the parties proposed a briefing schedule for their anticipated cross-motions for summary judgment.  *See* ECF No 145.  Pursuant to the Court's scheduling order, Plaintiffs filed their motion for summary judgment on August 17, 2023, *see* Pls.' MSJ; the Director filed her opposition and cross-motion for summary judgment on September 14, 2023, *see*

Case No.: 20-cv-06128-EJD
ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.

Def.'s Opp'n/MSJ; Plaintiffs filed their reply in support of their summary judgment motion and opposition to the Director's motion, *see* Pls.' Reply/Opp'n, ECF No. 158; and the Director filed her reply brief, *see* Def.'s Reply, ECF No. 159.  The Court heard oral argument on the two summary judgment motions on December 7, 2023.  *See* ECF No. 160.

## II.      LEGAL STANDARDS

### A.      Governing Law

Federal Circuit law governs the analysis of any issue that is unique to patent law or that presents a substantial question of patent law; any other issue is governed by Ninth Circuit law. *See Alarm.com Inc. v. Hirshfeld*, 26 F.4th 1348, 1354 (Fed. Cir. 2022) ("[A]n issue that presents a substantial question of patent law . . . is governed by our own law, rather than regional circuit law.") (citing *Odyssey Logistics & Tech. Corp. v. Iancu*, 959 F.3d 1104, 1108 (Fed. Cir. 2020)); *Odyssey Logistics*, 959 F.3d at 1108 ("We review procedural rules following 'the rule of the regional circuit, unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit.'"); *see also, e.g.*, *Injen Tech. Co., Ltd. v. Advanced Engine Mgmt., Inc.*, 270 F. Supp. 2d 1189, 1192 (S.D. Cal. 2003) (In cases concerning the patent laws, the district court applies the law of the Federal Circuit to patent issues and the law of the circuit in which it sits ('the regional circuit') to nonpatent issues. . . . Thus, as a general rule, procedural issues are governed by the law of the regional circuit.") (internal citations omitted).

"APA claims against the PTO 'raise a substantial question of patent law,'" and substantive legal issues raised in such actions are therefore governed by Federal Circuit law.  *Odyssey Logistics*, 959 F.3d at 1108 (internal alternations omitted) (quoting *Exela Pharma Scis., LLC v. Lee*, 781 F.3d 1349, 1352 (Fed. Cir. 2015)); *see also, e.g.*, *Helfgott & Karas, P.C. v. Dickinson*, 209 F.3d 1328, 1334 (Fed. Cir. 2000) (noting that although "[t]he APA is clearly not a patent law," Federal Circuit law governed in APA action brought against PTO because plaintiff's APA claims involved alleged loss of patent-related rights).

### B.      Summary Judgment

In a district court action challenging an administrative agency's decision under the APA,

"[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is . . . consistent with the APA standard of review." *Gill v. Dep't of Just.*, 246 F. Supp. 3d 1264, 1268 (N.D. Cal. 2017) (citation omitted), *aff'd*, 913 F.3d 1179 (9th Cir. 2019).[2] That is, although the parties and the Court characterize the pending motions as seeking summary judgment, the motions are not brought pursuant to Federal Rule of Civil Procedure 56, and the question before the Court is not whether the movant has shown that there is no genuine dispute as to any material fact. *See id.* at 1267–68; *see also, e.g.*, *Klamuth Siskiyou Wildlands Ctr. v. Gerritsma*, 962 F. Supp. 2d 1230, 1233 (D. Or. 2013) ("'Summary judgment' is simply a convenient label to trigger this court's review of the agency action."), *aff'd*, 638 F. App'x 648 (9th Cir. 2016). "In other words, the district court acts like an appellate court, and the entire case is a question of law." *Gill*, 246 F. Supp. 3d at 1268 (internal quotation marks omitted).

### C. APA Review

Under the APA, a "reviewing court shall … hold unlawful and set aside agency action" taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Agency actions can be divided into two broad categories: rule making and adjudication. *See, e.g.*, *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994) (citing 5 U.S.C. §§ 551(4)–(7)). The parties agree that only rule making is relevant here. *See* Pls.' MSJ 14 n.12 (stating *NHK-Fintiv* standard is not adjudication under the APA); *see generally* Def.'s Opp'n/MSJ (no argument that adjudication framework applies to *NHK-Fintiv* standard).

The APA defines "rule" as:

> the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing,

---

[2] The procedural mechanism of summary judgment in challenging an agency action under the APA does not raise a substantial question of patent law, and is accordingly discussed with reference to Ninth Circuit law.

United States District Court
Northern District of California

5 U.S.C. § 551(4), and "rule making" as the "agency process for formulating, amending, or repealing a rule," *id.* § 551(5).  In general, when an agency engages in rule making, the APA requires that the agency conduct a notice-and-comment process involving the agency's publication of notice of the proposed rulemaking, the opportunity for interested persons to comment on the proposal, and the agency's response to significant comments.  *See* 5 U.S.C. §§ 553(b)–(d). However, the APA expressly excludes three categories of rulemaking from the notice-and-comment requirement:  (1) interpretative rules; (2) general statements of policy; and (3) rules of agency organization, procedure, or practice.  *Id.* § 553(b)(4)(A).[3]  Courts have formulated this distinction to hold that "[t]he notice-and-comment requirements apply . . . only to so-called 'legislative' or 'substantive' rules."  *Lincoln v. Vigil*, 508 U.S. 182, 195 (1993) (citations omitted); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 301 (1979) ("The central distinction among agency regulations found in the APA is that between 'substantive rules' on the one hand and 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice' on the other.") (quoting 5 U.S.C. §§ 553(b), (d)).

A rule is "substantive," and therefore subject to the APA's notice-and-comment requirements, if it "effect[s] a change in existing law or policy or . . . affect[s] individual rights and obligations."  *Paralyzed Veterans of Am. v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998) (citation omitted); *see also Yesler Terrace*, 37 F.3d at 449 ("Substantive rules . . . create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress.") (citation omitted).  A "general statement of policy," which is not subject to notice-and-comment rule making, is a statement "issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power."  *Lincoln*, 508 U.S. at 197 (quoting *Chrysler*, 441 U.S. at 302 n.31).

## III.    DISCUSSION

As noted above, the only remaining claim before the Court is Plaintiffs' challenge to the

---

[3] The only exception at issue here is for "general statements of policy."  *See generally* Def.'s Opp'n/MSJ.

United States District Court
Northern District of California

1   *NHK-Fintiv* standard as having improperly been issued in violation of the APA due to the lack of

2   notice-and-comment rule making.  It is undisputed that the *NHK-Fintiv* standard did not undergo

3   the regular notice-and-comment rule making.  The contested issue is thus whether the Director

4   was in fact required to invoke the rule making process to implement the *NHK-Fintiv* standard.

5   Plaintiffs argue that notice-and-comment rule making was required because the adoption of the

6   *NHK-Fintiv* standard was a substantive rule that the Board is bound to follow and that affects

7   private interests.  *See* Pls.' MSJ 14–20.  The Director argues that notice-and-comment was not

8   required because the *NHK-Fintiv* standard is a general statement of policy that does not affect the

9   rights of private interests and does not replace the Board's discretion.  *See* Def.'s Opp'n/MSJ 9–

10  18.

11          In considering these arguments, the Court first distills the specific agency action at issue

12  before turning to the question of whether that action was the implementation of a substantive rule

13  or the issuance of a general statement of policy.

14          **A.      The Nature of the Challenged Action**

15          Plaintiffs' challenge to the *NHK-Fintiv* standard is based on the Director's designation of

16  the *NHK* and *Fintiv* decisions as "precedential" under SOP-2.  *See* Pls.' MSJ 7–8; Am. Compl. ¶¶

17  49–53, 92–95.  Plaintiffs have not challenged SOP-2 itself, or more generally the Director's

18  authority to designate a decision as precedential.  *See generally* Am. Compl.; *see also* Dec. 7,

19  2023 Hr'g Tr. ("Tr.") 40:11–13.[4]  Rather, Plaintiffs argue that the specific designations of *NHK*

20  and *Fintiv* have had the effect of creating a substantive rule, which should have been—but was

21

22  _____

23  [4] The Court notes that the Director's authority to designate a decision as precedential is well
    established.  *See, e.g.*, *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1353 (Fed.

24  Cir. 2020) (discussing process under SOP 2 for designating PTAB decision as precedential and
    noting that *Chevron* deference is not afforded to such decisions).  It is also worth noting that other

25  agencies have similar mechanisms through which they may designate a decision as precedential.
    *See, e.g.*, *ITServe Alliance, Inc. v. U.S. Dep't of Homeland Sec.*, 71 F.4th 1028, 1032 (D.C. Cir.

26  2023) (Department of Homeland Security designated precedential decision by United States
    Citizenship and Immigration Services regarding visa eligibility); *Splane v. West*, 216 F.3d 1058,

27  1065 (Fed. Cir. 2000) ("Written legal opinions [of the General Counsel] designated as precedent
    opinions [] shall be considered by Department of Veterans Affairs to be subject to the provisions
    of 5 U.S.C. 552(a)(1).") (quoting 38 C.F.R. § 14.507(b)).

28  Case No.: 20-cv-06128-EJD
    ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.

not—subject to notice-and-comment rule making.  Accordingly, it is necessary to understand what is required by *NHK* and *Fintiv* before evaluating whether that requirement is properly categorized as a substantive rule or a general statement of policy.

### 1.     When Does the *NHK-Fintiv* Standard Apply?

As a threshold matter, the *NHK-Fintiv* standard applies to the circumstance where the Board is considering a petition to institute IPR, and the patent owner, in opposing the petition, argues that the Board should apply its discretion under 35 U.S.C. § 314(a) to deny institution due to the advanced state of a parallel district court litigation.  *See NHK*, 2018 WL 4373643, at *7 (finding, after patent owner argued that IPR would be inefficient where parallel district court proceeding addressing same issues was set for trial five months before IPR would conclude, that "advanced state of the district court proceeding is an additional factor that weighs in favor of denying" IPR); *Fintiv*, 2020 WL 2126495, at *1–2 (aggregating factors that Boards considered where patent owners argued for denial of IPR due to earlier trial date in parallel district court proceeding); *see also Apple Inc. v. Fintiv, Inc.*("*Fintiv II*"), IPR2020-00019, 2020 WL 2486683, at *3 (P.T.A.B. May 13, 2020) (not precedential) ("The recent Precedential Order in this case sets forth factors that balance considerations of system efficiency, fairness, and patent quality when a patent owner raises an argument for discretionary denial due to the advanced state of a parallel proceeding.") (citing *Fintiv*, 2020 WL 2126495, at *2).

### 2.     What Must a Board Do When the *NHK-Fintiv* Standard Applies?

To answer this question, the Court reviews the actual language of *Fintiv*, which expounded on the holding in *NHK* that an early trial date in a parallel proceeding could be a basis for denial of IPR institution.  Broadly, the existence of an early trial date in a parallel district court proceeding is a "non-dispositive factor[] considered for institution under 35 U.S.C. § 314(a)" that "should be weighed as part of a 'balanced assessment of all relevant circumstances of the case, including the merits.'"  *Fintiv*, 2020 WL 2126495, at *2 (quoting TPG 58).  *Fintiv* identified six "factors related to a parallel, co-pending proceeding," *id.*, that Board decisions had balanced following *NHK*, and noted that the "factors relate to whether efficiency, fairness, and the merits support the exercise of

authority to deny institution in view of an earlier trial date in the parallel proceeding," *id.* at *3.  In discussing the six identified factors, *Fintiv* noted potential facts that prior Boards had found to weigh for or against—and weakly or strongly—the Board's "exercising the authority to deny institution under *NHK*."  *Id.*  For example, as to the first factor ("whether a stay exists or is likely to be granted if [an IPR] proceeding is instituted"), a litigation stay "has strongly weighed against exercising authority to deny institution," but a district's court's prior denial of a motion for a stay, and lack of indication that the court would reconsider such a motion, "has sometimes weighed in favor of exercising authority to deny institution under *NHK*."  *Id.*

In addition to the six identified factors "related to a parallel, co-pending proceeding"—including the sixth factor of "other circumstances that impact the Board's exercise of discretion, including the merits"—*Fintiv* noted that there may exist facts and circumstances "unrelated to parallel proceedings that bear on discretion to deny institution," including factors such as "the filing of serial petitions, parallel petitions challenging the same patent, and considerations implicated by 35 U.S.C. § 325(d)."  *Id.* at *6–7 (footnotes and citations omitted).  The precedential *Fintiv* decision ends with a request for supplemental briefing from the parties related to the various enumerated factors and about "whether these or other facts and circumstances exist in their proceeding and the impact of those facts and circumstances on efficiency and integrity of the patent system."  *Id.* at *7.

Accordingly, *Fintiv* "articulates [a] set of nonexclusive factors that the PTAB considers . . . in determining whether to institute an [IPR] proceeding where there is parallel district court litigation."  June 2022 Mem. 1–2.  That is, *Fintiv* summarized various factors that the PTAB had considered in evaluating patent owners' arguments that institution should be denied due to the status of a parallel district court proceeding, and the Director, by designating the decision precedential, required that future Board decisions also consider those identified factors when faced with similar arguments.

### B.     Classification of the *NHK-Fintiv* Standard

The dispositive question, then, is whether the Director's requirement that Boards consider

the factors enumerated in *Fintiv* constitutes a "substantive rule" that is invalid absent notice-and-comment rule making, or a "general statement of policy" for which the APA does not require such rule making processes.  Whether a particular agency action is a "substantive rule" or a "general statement of policy" is a significant question in administrative law.  *See, e.g.*, *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014) (describing framework for classification of agency action as "quite difficult and confused," and noting that "among the many complexities that trouble administrative law, few rank with that of sorting valid from invalid uses of so-called 'nonlegislative rules'") (quoting John F. Manning, Nonlegislative Rules, 72 GEO. WASH. L. REV. 893, 893 (2004)).  The Court will look primarily to Federal Circuit law in evaluating the classification of the *NHK-Fintiv* standard, as the inquiry here involves the Director's authority and duties under 35 U.S.C. §§ 314 and 316 and thus "can be said to raise a substantial question under the patent laws."  *Helfgott*, 209 F.3d at 1333–34; *see also Odyssey Logistics*, 959 F.3d at 1108.  However, as indicated below, there is a large degree of overlap between the circuits—including the Federal Circuit and the Ninth Circuit—regarding the classification of agency actions as substantive versus non-substantive rules.

### 1.    Analytical Framework

At base, the Federal Circuit and Ninth Circuit agree that substantive rules "alter the landscape of individual rights and obligations."  *Stupp Corp. v. United States*, 5 F.4th 1341, 1352 (Fed. Cir. 2021); *see also Paralyzed Veterans of Am.*, 138 F.3d at 1436 ("[C]ase law has defined 'substantive rules' as those that effect a change in existing law or policy or which affect individual rights and obligations.") (citation omitted); *Yesler Terrace*, 37 F.3d at 449 (Ninth Circuit decision stating that substantive rules "create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress") (citation omitted).  By contrast, a "general statement of policy" is a statement "issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power."  *Lincoln*, 508 U.S. at 197 (citation omitted); *see also Stupp*, 5 F.4th at 1351 (same under Federal Circuit law); *Serrato v. Clark*, 486 F.3d 560, 569 (9th Cir. 2007) (same).

Case No.: 20-cv-06128-EJD
ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.

United States District Court
Northern District of California

The Federal Circuit frequently cites to D.C. Circuit cases when discussing the distinction between substantive and non-substantive rules.  *See, e.g.*, *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 859 F.3d 1072, 1077 (Fed. Cir. 2017) ("The most important factor [in distinguishing substantive rules from general statements of policy] concerns the actual legal effect (or lack thereof) of the agency action in question on regulated entities.") (quoting *Nat'l Min. Ass'n*, 758 F.3d at 252); *id.* (generally describing substantive rulemaking under the APA) (citing *Molycorp, Inc. v. EPA*, 197 F.3d 543, 545 (D.C. Cir. 1999)); *Splane v. West*, 216 F.3d 1058, 1063 (Fed. Cir. 2000) ("The D.C. Circuit has recognized that 'an agency's characterization of its own action, while not decisive, is a factor [to] consider' [in deciding whether a rule is substantive].") (quoting *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C. Cir. 1987)).  As the D.C. Circuit has noted, its case law "guide[s] the determination of whether an action constitutes a [substantive] rule or a general statement of policy" through two lines of inquiry:  the first "considers the effects of an agency's action, inquiring whether the agency has '(1) imposed any rights and obligations, or (2) genuinely left the agency and its decisionmakers free to exercise discretion'"; and the second "looks to the agency's expressed intentions," and particularly as to "whether the action has binding effects on private parties or on the agency."  *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 357 (D.C. Cir. 2017) (citations omitted).

Similarly, under Ninth Circuit law, a general statement of policy (1) must "operate only prospectively," and (2) "must not establish a binding norm or be finally determinative of the issues or rights . . . but must instead leave [agency] officials free to consider the individual facts in the various cases that arise."  *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1014 (9th Cir. 1987) (internal quotation marks and citations omitted); *see also Gill v. U.S. Dep't of Just.*, 913 F.3d 1179, 1186 (9th Cir. 2019) ("The critical factor to determine whether a directive announcing a new policy constitutes a legislative rule or a general statement of policy is 'the extent to which the challenged directive leaves the agency, or its implementing official, free to exercise discretion to follow, or not to follow, the announced policy in an individual case.'") (alterations omitted) (quoting *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009)).

Case No.: 20-cv-06128-EJD
ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.

### 2.   Application of Analytical Framework

In light of the Court's above discussion of the relevant framework, the Court will evaluate whether the *NHK-Fintiv* standard (1) affects individual rights and obligations; (2) operates prospectively; (3) leaves the PTAB free to exercise discretion and consider the individual facts before it in a given case; and (4) has binding effects, establishes a binding norm, or is otherwise determinative of any issues or rights.

### a.   Affects Individual Rights and Obligations

Plaintiffs argue that the *NHK-Fintiv* standard affects private interests by increasing the risk of IPR denial and thereby "restricting the ability of infringement defendants to access IPR and its benefits." Pls.' MSJ 18–19. Plaintiffs urge that the Court look to *W.C. v. Bowen*, 807 F.2d 1502 (9th Cir. 1987), *amended on denial of reh'g*, 819 F.2d 137 (9th Cir. 1987), where the circuit held that a Social Security Administration program requiring mandatory screening and review of decisions allowing disability benefits, if those decisions were made by specified administrative law, constituted a substantive rule. *See* Pls.' MSJ 19–20. Plaintiffs argue that the *NHK-Fintiv* standard likewise changes existing policy because it established non-statutory factors that a petitioner "must satisfy to access the benefits of IPR," and was designed to alter the Board's decisionmaking and thereby displaced Board discretion. *See id.* The Director counters that the *Fintiv* factors do not affect any legally protected individual rights or obligations, as IPR petitioners have no right to IPR review, and the institution decision makes no determination regarding the validity of the underlying patent at issue. *See* Def.'s Opp'n/MSJ 10. The Director additionally notes that the Federal Circuit's finding in its remand decision in this case—that Plaintiffs alleged sufficient harm to establish standing—"does not automatically convert to a holding that Plaintiffs' rights are altered by the *Fintiv* factors." *Id.* at 12.

The Court agrees with the Director that the *NHK-Fintiv* standard—*i.e.*, the application of the *Fintiv* factors—does not "alter the landscape of individual rights and obligations," *Stupp*, 5 F.4th at 1352, or "create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress," *Yesler Terrace*, 37 F.3d at 449. Congress has provided that the

Case No.: 20-cv-06128-EJD
ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.

United States District Court
Northern District of California

1    Director "may *not* authorize an [IPR] to be instituted unless . . . there is a reasonable likelihood" of

2    success with respect to at least one challenged claim.  35 U.S.C. § 314(a) ("Threshold.")

3    (emphasis added).  However, there is no set of circumstances under which the Director is required

4    to authorize IPR institution.  *See generally* 35 U.S.C. §§ 311, *et seq.*; *see also, e.g.*, *SAS Inst., Inc.*

5    *v. Iancu*, 138 S. Ct. 1348, 1355 (2018) ("The Director, we see, is given . . . the choice 'whether' to

6    institute an inter partes review.").  The *NHK-Fintiv* standard, which requires that the Board

7    consider certain non-exclusive factors in determining whether to institute IPR is therefore

8    distinguishable from the program reviewed in *W.C. v. Bowen*, which affected individuals'

9    "existing rights" to social security benefits by altering decisions toward benefit denials.  *See* 807

10   F.2d at 1505.  Where there is no existing right to the action sought by a petitioner, *i.e.*, where a

11   grant of the requested relief is entirely discretionary, the fact that an agency action "diminishes the

12   likelihood," that the agency will grant relief does not require a finding that  preclude the action

13   from "constitut[ing] a general statement of policy," even if the agency action "will cause a

14   'substantial impact' to the rights of a specific class."  *Mada-Luna*, 813 F.2d at 1016.[5]

15          To the extent Plaintiffs argue that the *NHK-Fintiv* standard imposes on the right to bring a

16   petition for IPR within one year of being served with an infringement complaint, *see* Pls.' MSJ

17   21–22, the Federal Circuit has affirmed this Court's dismissal of Plaintiffs' claim that the *NHK-*

18   *Fintiv* standard is contrary to the one-year window set by statute.  *See Apple*, 63 F.4th at *11–13.

19   Further, there is no statutory language suggesting that Plaintiffs should expect the same likelihood

20   of institution regardless of the time of filing within the one-year window; rather the window

21

22   _____

23   [5] The Federal Circuit, in holding that Plaintiffs had alleged facts sufficient to confer standing,
     noted that Plaintiffs plausibly alleged that the *NHK-Fintiv* standard caused harm by denying IPR
     benefits linked to an infringement defendant's legally protected interests in the infringement suit.
24   *See Apple*, 63 F.4th at 17.  Plaintiffs argue that this finding should lead to the conclusion that the
     *NHK-Fintiv* standard is a substantive rule because it alters legal rights, *see* Pls.' MSJ 18, but that
25   argument would collapse the threshold analysis of standing with that of the merits of the APA
     claim, which is the very distinction between threshold and merits analysis that the Federal Circuit
26   concluded applied to this case.  *See Apple*, 63 F.4th at 15 ("The government in *Lincoln* explained
     this distinction . . . [and] [w]e conclude that the distinction applies here.").  The Court is not here
27   required to take Plaintiffs' allegations as true, and makes its finding regarding the merits question
     based on the analogous case law discussed in this section.

28   Case No.: 20-cv-06128-EJD
     ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.

1    functions to create a time bar in the event the petitioner has been served with a complaint alleging

2    infringement of the patent.  *See* 35 U.S.C. § 315(b).  Lastly, nothing in the *NHK-Fintiv* standard

3    requires any action on the part of a petitioner or patent owner; rather, the Director's designation of

4    the *NHK* and *Fintiv* decisions as precedential has required action only of the PTAB, as discussed

5    in greater detail below.  *See infra*, at Part III(B)(2)(c).  Accordingly, the Court finds that the *NHK-*

6    *Fintiv* factors do not alter, create, or impose any individual rights or obligations.

### b.    Operates Prospectively

8        As Plaintiffs note, the general definition of a "rule" is an "agency statement of general or

9    particular applicability and future effect designed to implement, interpret, or prescribe law or

10   policy."  Pls.' MSJ 16 (quoting 5 U.S.C. § 551(4)).  Such rules must be adopted through notice-

11   and-comment rule making, except for enumerated exceptions including "general statements of

12   policy."  *Id.* (quoting 5 U.S.C. § 553(b)).  For an agency action to be a general statement of policy,

13   one requirement is that the action must operate "only prospectively."  *Mada-Luna*, 813 F.2d at

14   1014; *see also Lincoln*, 508 U.S. at 197 (noting that general statements of policy are "statements

15   issued by an agency to advise the public prospectively of the manner in which the agency proposes

16   to exercise a discretionary power") (quoting *Chrysler*, 441 U.S. at 302 n.31).

17       Here, the parties do not dispute that the Director's designation of the *NHK* and *Fintiv*

18   decisions as precedential had only a prospective effect.  *See generally* Pls.' MSJ; Def.'s

19   Opp'n/MSJ; *see also* SOP-2, at 7 (stating that precedential decisions constitute authority for

20   "*subsequent matters* involving similar facts or issues") (emphasis added).  Accordingly, the *NHK-*

21   *Fintiv* standard meets this necessary, though not sufficient, criterion for a general statement of

22   policy.

### c.    Exercise of Discretion

24       This next avenue of analysis—whether the *NHK-Fintiv* standard leaves agency officials

25   "free to exercise discretion"—is perhaps the thorniest one presented by this case.  *Clarian Health*

26   *W.*, 878 F.3d at 357; *see also Mada-Luna*, 813 F.2d at 1014 (noting that general statement of

27   policy must "leave [agency] officials free to consider the individual facts in the various cases that

United States District Court
Northern District of California

1    arise").  Plaintiffs argue that the *NHK-Fintiv* standard leaves the Board with no discretion with

2    respect to both (1) considering the *Fintiv* factors and (2) denying institution "where those factors

3    on balance weigh against institution," regardless of any case specific facts.  *See* Pls.' MSJ 17–18.

4    The Director agrees that the *NHK-Fintiv* standard requires the Board to consider the enumerated

5    factors, and argues that (1) the Director's complete statutory discretion to deny institution of IPR

6    means that she may instruct the Board on her policy priorities, and (2) the *Fintiv* factors do not

7    require any particular outcome in a given case, but merely guide the Board's attention to certain

8    facts to consider in conducting a holistic analysis.  *See* Def.'s Opp'n/MSJ 13–18.  The parties'

9    arguments as to whether the *NHK-Fintiv* standard replaces the Board's discretion with respect to

10   the outcome of a petition to institute IPR overlap with the analysis of whether the standard is

11   binding or determinative, and the Court will therefore address those arguments in the following

12   section.  *See infra*, at Part III(B)(2)(d).  Here, the Court examines whether the *NHK-Fintiv*

13   standard's undisputed requirement that the Board to consider the *Fintiv* factors (when presented

14   with arguments about a parallel district court proceeding) is a substantive rule.

15        At the outset, to the extent the Director argues that her own complete discretion to deny

16   institution of IPR means that she may set forth instructions that would require the Board to make

17   specific institution decisions in specific circumstances as a general statement of policy, the Court

18   rejects the argument as contrary to the requirement that agency decisionmakers remain free to

19   exercise their discretion.  *See Lincoln*, 508 U.S. at 197 (general statements of policy concern "the

20   manner in which the agency proposes to exercise a discretionary power"); *Clarian Health W.*, 878

21   F.3d at 357 (general statement of policy "genuinely left the agency *and its decisionmakers* free to

22   exercise discretion") (emphasis added) (citation omitted).

23        The Court finds instructive the Ninth Circuit's reasoning in *Mada-Luna*.  There, the Court

24   considered whether two versions of operating instructions issued by the Immigration and

25   Naturalization Service ("INS") were substantive rules or general statements of policy regarding

26   the grant of deferred action status.  *See* 813 F.2d at 1017.  Both versions of the operating

27   instructions required the agency decisionmakers to consider several enumerated, non-exclusive

28   Case No.: 20-cv-06128-EJD
     ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.

factors when determining whether to recommend a case for deferred action, such as the age of the applicant.  *See id.* at 1008–09 nn. 1–2.  The Ninth Circuit found each version of the operating instruction to be a general statement of policy even though the instructions required the district director to consider the specified factors, reasoning that the instructions "expressly authorize[d]" and left the director free to consider any other individual facts in each case.  *See id.* at 1017.

Similarly, here, the *NHK-Fintiv* standard enumerates a set of non-exclusive factors for agency decisionmakers to consider when determining whether to institute an IPR.  *See Fintiv*, 2020 WL 2126495, at *2 (noting that *Fintiv* factors relating to early trial date arguments are similar to "other non-dispositive factors considered for institution," all of which "should be weighed as part of a 'balanced assessment of all relevant circumstances of the case'") (quoting TPG 58); *see also* June 2022 Mem. 1–2 ("[*Fintiv*] articulates the following . . . nonexclusive factors.").  Further, *Fintiv* not only includes a factor for "other circumstances"—a broad category that makes explicit that the Board should consider "all the relevant circumstances in the case," the decision also expressly notes that "factors unrelated to parallel proceedings [may] bear on discretion to deny institution," such as "the filing of serial petitions, parallel petitions challenging the same patent, and considerations implicated by 35 U.S.C. § 325(d)."  *Fintiv*, 2020 WL 2126495, at *6–7 (footnotes and citations omitted).  Accordingly, the "language and structure of the directive" not only permit but in fact require that the Board exercise its discretion in consideration of the particular facts presented in each case.  *See Mada-Luna*, 813 F.2d at 1015 (citation omitted).

### d.    Binding or Determinative Effect

The Court lastly considers whether the *NHK-Fintiv* standard establishes a binding norm or has a determinative effect.  Plaintiffs argue that the standard is binding because the Board "must grant or deny IPR petitions in accordance with the rule."  Pls.' MSJ 10; *see id.* at 18 ("The Board must apply the rule's factors and deny institution in accordance with the *NHK-Fintiv* rule where those factors on balance weigh against institution; the Board has no freedom to consider the individual facts in the various cases that arise and grant an IPR petition where the balancing of the

rule's factors dictates otherwise.") (internal quotation marks omitted) (citing *Mada-Luna*, 813 F.2d at 1014). Plaintiffs additionally argue that the *NHK-Fintiv* rule "overall has proven dispositive, as evidenced by its repeated use to deny IPR petitions." *Id.* at 18 (citing Am. Compl. ¶¶ 54–61); *see id.* at 9 ("[F]ollowing adoption of the rule, the percentage of cases raising parallel litigation as a ground for denying institution nearly doubled. . . [and in] the first half of [2021,] the Board denied institution in 38% of cases in which *NHK-Fintiv* was considered.") (citations omitted). The Director first counters a rule that is binding only within the agency is not a substantive rule. *See* Def.'s Opp'n/MSJ 13–14 (citing *Splane*, 216 F.3d at 1064). The Director further argues that the *Fintiv* factors in any event "do not compel a specific outcome on institution," *id.* at 12, and therefore do not establish a 'binding norm' because "merely guide the Board's decision-making process . . . without dictating any particular outcome," *id.* at 14.

With respect to the Director's first argument—that a rule that is binding within an agency may not be substantive rule—the Court finds the Director's reliance on *Splane* to be misplaced. In *Splane*, the Federal Circuit rejected the argument that a rule's binding effect within the agency meant that the rule "*necessarily* ha[d] the 'force and effect of law,'" such that it could not be anything but a substantive rule. *See* 216 F.3d at 1064 (emphasis added); *see id.* ("Petitioners assert that any agency rule that is binding on an agency tribunal has the 'force and effect of law,' and must therefore be deemed legislative in nature. We disagree."). Any rule—substantive or not—may be "binding on agency officials insofar as any directive by an agency head must be followed by agency employees." *Id.* (citation omitted). However, the Federal Circuit did not hold, as the Director appears to argue, that a rule that binds only the agency may never be a substantive rule. *See id.* Further, the Federal Circuit has since noted that one of the factors relevant to whether an agency action constitutes substantive rule making is "whether the action has binding effect on private parties *or on the agency*." *Disabled Veterans of Am.*, 859 F.3d at 1077 (emphasis added) (quoting *Molycorp*, 197 F.3d at 545).

The Director's next argument—that the *Fintiv* factors are not outcome-determinative—is more persuasive. The language of *Fintiv* repeatedly notes that various facts may weigh in favor of

or against instituting IPR.  For example, in considering the first *Fintiv* factor of whether a stay exists or is likely to be granted if an IPR proceeding is instituted, the Board noted that a district court's stay of litigation "has strongly weighed against exercising the authority to deny institution," while a court's lack of indication that it would consider a motion to stay if a PTAB proceeding were instituted "has sometimes weighed in favor of exercising authority to deny institution." *Fintiv*, 2020 WL 2126495, at *3.  *Fintiv* itself does not reach a decision on instituting an IPR, but rather only requests briefing consistent with the decision, *see id.* at *7; and the actual decision based on the supplemental briefing has not been designated precedential, *see Fintiv II*, 2020 WL 2486683.  Nothing in *Fintiv* would prevent a Board from considering all of the enumerated factors and any others the Board deemed appropriate, finding that the factors related to a parallel proceeding all weighed in favor of denial, but that the merits of the petition were so strong that institution was the preferred disposition.  *See Fintiv*, 2020 WL 2126495, at *6–7; *see also* June 2022 Mem. 9 ("[T]he PTAB will *not* deny institution of an IPR . . . when a petition presents compelling evidence of unpatentability.") (emphasis added).  For example, in *Commscope Techs. LLC v. Dali Wireless, Inc.*, the Director vacated and remanded the Board's decision instituting IPR without assessing the *Fintiv* factors, holding that on remand:

> The Board should first assess *Fintiv* factors 1–5; if that analysis supports discretionary denial, the Board should engage the compelling merits question.  If the Board reaches the compelling merits analysis and finds compelling merits, it shall provide reasoning to explain its determination.  By issuing this Order, I express no opinion on whether the Board need reach the compelling merits analysis, nor whether the record as it existed before institution meets the compelling merits standard; I leave these case-specific issues to the sound discretion of the Board.

IPR2022-01242, 2023 WL 2237986, at *3 (P.T.A.B. Feb. 27, 2023) (precedential).  Accordingly, the Court finds that the *NHK-Fintiv* standard does not "so fill[] out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion."  *Sacora v. Thomas*, 628 F.3d 1059, 1069 (9th Cir. 2010) (citation omitted).

Plaintiffs' main argument to the contrary relies on what the perceived effects of the *NHK-Fintiv* standard, *i.e.*, an increase in denials of institution where there lies a parallel district court

United States District Court
Northern District of California

1   proceeding.  *See* Pls.' MSJ 9, 17–18.  Plaintiffs cite to non-precedential decisions in which the

2   Board determined that it could not refuse to consider the *Fintiv* factors for policy reasons.  *See id.*

3   (citing, *e.g.*, *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00203, 2020 WL 3662522, at *7 (P.T.A.B.

4   July 6, 2020); *Supercell Oy v. GREE, Inc.*, No. IPR2020-00513, 2020 WL 3455515, at *7

5   (P.T.A.B. June 24, 2020)).  However, as discussed above, *see supra*, at Part III(B)(2)(c), a

6   requirement to consider a certain subset of factors as part of a holistic analysis is not a substantive

7   rule, and the decisions cited by Plaintiffs do not suggest that there existed other facts or

8   circumstances that would weigh in favor of instituting IPR that the Board was somehow prevented

9   from evaluating.  *See generally Apple*, 2020 WL 3662522; *Supercell Oy*, 2020 WL 3455515.

10        The Court is sympathetic to Plaintiffs' frustration that the Board has placed a greater

11   emphasis on efficiency between the combined PTAB and district court systems.  However,

12   although Plaintiffs are doubtless unhappy with the outcomes of their petitions for IPR when those

13   petitions are denied, including where the Board considered the *Fintiv* factors, Plaintiffs' claims

14   based on the allegedly unfair or absurd results have been dismissed, *see Apple*, 63 F.4th at *11–13,

15   and the outcome-based argument does not persuade the Court because the express language of

16   *Fintiv*, as well as the June 2022 Memo and other guidance from the Director, make clear that the

17   Board undertakes a holistic analysis when determining whether to exercise its discretion in

18   denying or instituting IPR.  The Director's guidance to the Board regarding her policy priorities of

19   "system efficiency, fairness, and patent quality," *Fintiv*, 2020 WL 2126495, at *2, does not mean

20   that the *NHK-Fintiv* standard creates a "binding norm" or is otherwise outcome determinative.[6]

21   The Court also notes that these policies are entirely consistent with the rationale behind the

22   creation of the IPR process, which, along with other processes, was a corrective measure that

23   relieved the pressure on district courts from an increasing volume of infringement litigation based

24   on "bad patents."  *See SAS Inst.*, 138 S. Ct. at 1353; 35 U.S.C. § 282(b)(2)–(3).

25        Accordingly, based on the Court's foregoing evaluation of the *NHK-Fintiv* standard, it

26

27   [6] In fact, counsel for the Director indicated at the hearing on these motions that *Fintiv* denials have dropped significantly.  *See* Tr. 37:7–12.

28   Case No.: 20-cv-06128-EJD
ORDER RE PARTIES' CROSS-MOTS. FOR SUMM. J.

United States District Court
Northern District of California

finds the *NHK-Fintiv* standard is a general statement of policy that guides the Board to consider

certain enumerated factors related to parallel district court litigation with an eye toward overall

system efficiency, but expressly leaves the Board with genuine discretion to evaluate all facts and

circumstances relevant to the institution or denial of IPR.  Because the *NHK-Fintiv* standard is a

general statement of policy, rather than a substantive or legislative rule, the Director was not

required to conduct notice-and-comment rule making prior to designating the *NHK* and *Fintiv*

decisions as precedential, and the lack of such rule making does not render the *NHK-Fintiv*

standard unlawful under the APA, 5 U.S.C. § 706(2)(D).

## IV.     CONCLUSION

For the foregoing reasons, the Court hereby ORDERS that Plaintiffs' motion for summary

judgment is DENIED, and the Director's motion for summary judgment is GRANTED.  This

order disposes of Plaintiffs' sole remaining claim in this action, and the Court will enter judgment

against Plaintiffs and in favor of the Director.


**IT IS SO ORDERED.**

Dated: March 31, 2024

EDWARD J. DAVILA
United States District Judge